1  LIONEL Z. GLANCY (#134180)
2  ROBERT V. PRONGAY (#270796)
   LESLEY F. PORTNOY (#304851)
3  CHARLES H. LINEHAN (#307439)
4  **GLANCY PRONGAY & MURRAY LLP**
   1925 Century Park East, Suite 2100
5  Los Angeles, California 90067
   Telephone: (310) 201-9150
6  Facsimile: (310) 201-9160
7  Email:      info@glancylaw.com

8  *Attorneys for Plaintiffs*
9
              **UNITED STATES DISTRICT COURT**
10             **SOUTHERN DISTRICT OF CALIFORNIA**
11

12  YI FAN CHEN, and FRONTLINE        Case No.:  **'16 CV 3044 H    MDD**
    GLOBAL TRADING PTE. LTD.,
13  Individually and on Behalf of All
14  Others Similarly Situated,        **CLASS ACTION COMPLAINT**
                                      **FOR VIOLATIONS OF THE**
15                    Plaintiffs,     **FEDERAL SECURITIES LAWS**

16
              v.                      **JURY TRIAL DEMANDED**
17

18  ILLUMINA, INC., FRANCIS A.
    DESOUZA, and MARC A.
19  STAPLEY,

20
                      Defendants.
21

22
23
24
25
26
27
28

Plaintiffs Yi Fan Chen and Frontline Global Trading Pte. Ltd. ("Plaintiffs"), by and through their attorneys, allege the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge. Plaintiffs' information and belief is based upon, among other things, their counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Illumina, Inc. ("Illumina" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Illumina; and (c) review of other publicly available information concerning Illumina.

## **NATURE OF THE ACTION AND OVERVIEW**

1.     This is a class action on behalf of persons and entities that acquired Illumina securities between July 26, 2016, and October 10, 2016, inclusive (the "Class Period"), against Defendants,[1] seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Illumina purportedly provides sequencing- and array-based solutions for genetic analysis.  The Company claims that its customers include genomic research centers, academic institutions, government laboratories, hospitals, pharmaceutical, biotechnology, agrigenomics, commercial molecular diagnostic laboratories, and consumer genomics companies.

3.     On October 10, 2016, Illumina issued a press release entitled "Illumina Announces Preliminary Revenue for Third Quarter of Fiscal Year 2016."  Therein, the Company announced estimated third quarter revenue of approximately $607 million, which was lower than the Company's third quarter revenue guidance of $625 million to $630 million.  The Company attributed the shortfall to "larger than anticipated year-over-year decline in high throughput sequencing instruments."  The

---

[1] "Defendants" refers collectively to Opus, Francis A. deSouza, and Marc A. Stapley

Company also announced that it expected fourth quarter revenue to be flat to slightly up sequentially.

4.     On this news, Illumina's stock price fell $45.86 per share, or 24.8%, to close at $138.99 per share on October 11, 2016, on unusually heavy trading volume.

5.     On November 1, 2016, Illumina announced third quarter 2016 revenue of $607 million and reiterated that the Company expected fourth quarter revenue to be flat to slightly up.  On an investor conference call held the same day, Defendant deSouza stated that the third quarter shortfall was partly attributable to "lower-than-anticipated HiSeq 2500 and 4000 orders, which we believe was driven by legacy HiSeq customers favoring the HiSeq X and NextSeq platforms."  deSouza also stated that "some high-throughput customers have been adopting NextSeq, given its flexible workflow, which enables batching fewer samples and attractive operating costs.  As a result, we will not see the second half uptick in high-throughput instrument placements we had previously expected."  deSouza also stressed the Company was taking steps to improve its forecasts, stating "to better identify trends like this earlier, we have initiated a global forecast improvement project, which I have asked Marc to lead, that will enhance both our visibility and forecast accuracy."  On the same call, Defendant Stapley backed up deSouza's remarks, stating "I would like to spend a minute on the forecast process improvement project that Francis mentioned.  We have already started the initial phase, which is expected to run until mid-December, and we'll identify key opportunities for improvement including any immediate changes that we can make to enhance our visibility."

6.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company was experiencing a large decline in high throughput sequencing instrument sales; (2) that the decline was negatively impacting the Company's revenue; (3) that the Company

lacked visibility into trends that could have a substantial impact on the Company's financial results; (4) that, as such, the Company's revenue guidance was unreliable and overstated; and (5) that, as a result of the foregoing, Defendants' positive statements about Illumina's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's headquarters are located in this Judicial District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

12.   Plaintiff Yi Fan Chen ("Chen"), as set forth in the accompanying certification, incorporated by reference herein, purchased Illumina securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.   Plaintiff Frontline Global Trading Pte. Ltd., as set forth in the accompanying certification, incorporated by reference herein, purchased Illumina securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.   Chen is the President of Frontline Global Trading Pte. Ltd.

14.   Defendant Illumina, Inc. is a Delaware corporation with its principal executive offices located at 5200 Illumina Way, San Diego, California 92122. During the Class Period, the Company's common stock traded on the NASDAQ Stock Market (the "NASDAQ") under the symbol "ILMN."

15.   Defendant Francis A. deSouza ("deSouza") was, at all relevant times, the President and Chief Executive Officer ("CEO") of Illumina.

16.   Defendant Marc A. Stapley ("Stapley") was, at all relevant times, the Executive Vice President, Chief Administrative Officer and Chief Financial Officer ("CFO") of Illumina.

17.   Defendants deSouza and Stapley are collectively referred to hereinafter as the "Individual Defendants."   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Illumina's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.   Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance

and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

18.    Illumina purportedly provides sequencing- and array-based solutions for genetic analysis.  The Company claims that its customers include genomic research centers, academic institutions, government laboratories, hospitals, pharmaceutical, biotechnology, agrigenomics, commercial molecular diagnostic laboratories, and consumer genomics companies.

**Materially False and Misleading
Statements Issued During the Class Period**

19.    The Class Period begins on July 26, 2016.  On that day, Illumina issued a press release entitled "Illumina Reports Financial Results for Second Quarter of Fiscal Year 2016."  Therein, the Company, in relevant part, stated:

SAN   DIEGO--(BUSINESS   WIRE)--Jul.   26,   2016-- Illumina, Inc. (NASDAQ:ILMN) today announced its financial results for the second quarter of fiscal year 2016.

**Second quarter 2016 results**:

- Revenue of $600 million, an 11% increase compared to $539 million in the second quarter of 2015

- GAAP net income attributable to Illumina stockholders for the quarter of $120 million, or $0.82 per diluted share, compared to $102 million, or $0.69 per diluted share, for the second quarter of 2015

- Non-GAAP net income attributable to Illumina stockholders for the quarter of $127 million, or $0.86 per diluted share, compared to $120 million, or $0.80 per diluted share, for the second quarter of 2015 (see the table entitled "Itemized Reconciliation Between

GAAP and Non-GAAP Net Income Attributable to Illumina Stockholders" for a reconciliation of these GAAP and non-GAAP financial measures)

- Cash flow from operations of $217 million and free cash flow of $149 million for the quarter, compared to $171 million and $130 million in the prior year period

Gross margin in the second quarter of 2016 was 70.6% compared to 69.8% in the prior year period. Excluding the effect of non-cash stock compensation expense and amortization of acquired intangible assets, non-GAAP gross margin was 72.8% for the second quarter of 2016 compared to 72.4% in the prior year period.

Research and development (R&D) expenses for the second quarter of 2016 were $124.6 million compared to $96.2 million in the prior year period. R&D expenses included $10.7 million of non-cash stock compensation expense in the second quarters of 2016 and 2015. Excluding these charges and contingent compensation, R&D expenses as a percentage of revenue were 19.0%, including 1.4% attributable to GRAIL and Helix. This compares to 15.8% in the prior year period.

Selling, general and administrative (SG&A) expenses for the second quarter of 2016 were $148.5 million compared to $124.4 million in the prior year period. SG&A expenses included $18.9 million and $19.6 million of non-cash stock compensation expense in the second quarters of 2016 and 2015, respectively. Excluding these charges, amortization of acquired intangible assets, and contingent compensation, SG&A expenses as a percentage of revenue were 21.2%, including 1.1% attributable to GRAIL and Helix. This compares to 19.2% in the prior year period.

Depreciation and amortization expenses were $34.4 million and capital expenditures for free cash flow purposes were $67.8 million during the second quarter of 2016, which excludes a $75.4 million increase in property & equipment recorded under build-to-suit lease accounting since such expenses were paid for by the landlord. The company repurchased $100.0 million of common stock under the previously announced discretionary program. At the close of the quarter, the company held $1.43 billion in cash, cash equivalents and short-term investments, compared to $1.39 billion as of January 3, 2016.

"We delivered solid second quarter financial results with notable strength across our sequencing consumable and array portfolios," stated Francis deSouza, President and CEO. "We will continue to focus on our execution to deliver the sequential growth we are forecasting in the second half of the year. I would like to thank Jay Flatley for his leadership and strategic vision as CEO for the past 17 years and I look forward to his continued contribution in his new role as Executive Chairman of the Board of Directors."

**Updates since our last earnings release:**

- Received orders for more than 3 million samples of the new Infinium® Global Screening Array, a highly economical

tool for genetic risk screening of large global populations

- Received a product approval certificate for the MiSeqDx® Instrument and the MiSeqDx Universal Kit with the Ministry of Food and Drug Safety (MFDS) in South Korea

- Appointed Jay Flatley Executive Chairman of the Board of Directors of Illumina and Francis deSouza President and CEO

- Appointed Paula Dowdy Senior Vice President and General Manager of commercial operations for Europe, the Middle East and Africa

**Financial outlook and guidance**

The non-GAAP financial guidance discussed below reflects certain pro forma adjustments to assist in analyzing and assessing our core operational performance. Please see our Reconciliation of Non-GAAP Financial Guidance included in this release for a reconciliation of the GAAP and non-GAAP financial measures.

For fiscal 2016, the company continues to project approximately 12% revenue growth and non-GAAP earnings per diluted share attributable to Illumina stockholders of $3.48 to $3.58. For the third quarter 2016, the company is projecting revenue of $625 million to $630 million.

20.    On August 2, 2016, Illumina filed its Quarterly Report with the SEC on Form 10-Q for the fiscal quarter ended July 3, 2016.  The Company's Form 10-Q was signed by Defendant Stapley, and reaffirmed the Company's financial results announced in the press release issued on July 26, 2016.

21.    The above statements contained in ¶¶19-20 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, these statements were false and/or misleading and/or failed to disclose: (1) that the Company was experiencing a large decline in high throughput sequencing instrument sales; (2) that the decline was negatively impacting the Company's revenue; (3) that the Company lacked visibility into trends that could have a substantial impact on the Company's financial results; (4) that, as such, the Company's revenue guidance was unreliable and overstated; and (5) that, as a result of the foregoing, Defendants' positive statements about Illumina's business, operations, and prospects, were false and misleading and/or

1  lacked a reasonable basis.

2  **<u>Disclosures at the End of the Class Period</u>**

3  22.    On October 10, 2016, Illumina issued a press release entitled "Illumina

4  Announces Preliminary Revenue for Third Quarter of Fiscal Year 2016."  Therein,

5  the Company disclosed:

6  San Diego -- (BUSINESS WIRE) - October 10, 2016 - Illumina, Inc.
   (NASDAQ: ILMN) today announced estimated third quarter revenue of

7  approximately $607 million, a 10% increase compared to $550
   million in the third quarter of 2015. This unaudited estimate, based on

8  management's preliminary financial analysis, is lower than the third
   quarter revenue guidance of $625 million to $630 million.

9
   The shortfall in quarterly revenue was driven by a larger than

10  anticipated year-over-year decline in high throughput sequencing
    instruments. As a result, the company expects fourth quarter revenue

11  will be flat to slightly up sequentially.

12  23.    On this news, Illumina's stock price fell $45.86 per share, or 24.8%, to

13  close at $138.99 per share on October 11, 2016, on unusually heavy trading volume.

14  24.    On November 1, 2016, Illumina announced third quarter 2016 revenue

15  of $607 million and reiterated that the Company expected fourth quarter revenue to

16  be flat to slightly up.  On an investor conference call held the same day, Defendant

17  deSouza stated:

18  We have identified the factors we believe drove our Q3 miss and lower
    fourth quarter revenue guidance. . . .  The other factor that contributed

19  to the second half shortfall was lower-than-anticipated HiSeq 2500 and
    4000 orders, which we believe was driven by legacy HiSeq customers

20  favoring the HiSeq X and NextSeq platforms. The introduction of
    HiSeq X Ten – HiSeq X in January 2014 enabled whole-genome

21  sequencing to be performed much more economically. And as a result,
    samples have shifted to whole-genome sequencing at the expense of

22  other applications. Whole-genome sequencing on HiSeq X now
    represents approximately 15% of all high-throughput runs compared to

23  2% just two years ago. Additionally, the release of NextSeq's v2
    reagents in 2015 brought the quality on par with HiSeq. As a result,

24  some high-throughput customers have been adopting NextSeq, given its
    flexible workflow, which enables batching fewer samples and attractive

25  operating costs. As a result, we will not see the second half uptick in
    high-throughput instrument placements we had previously expected. To

26  better identify trends like this earlier, we have initiated a global forecast
    improvement project, which I have asked Marc to lead, that will

27  enhance both our visibility and forecast accuracy.

28  On the same call, Defendant Stapley backed up deSouza's remarks, stating:

In closing, I would like to spend a minute on the forecast process improvement project that Francis mentioned. We have already started the initial phase, which is expected to run until mid-December, and we'll identify key opportunities for improvement including any immediate changes that we can make to enhance our visibility. We will fold the good work already underway in Europe into this process and identify areas for improving global consistency, taking the best of the best practices from each region and adding best-in-class practices where needed. This will inevitably lead to a second stage of the project next year which we anticipate will incorporate longer-term tool and process implementations. I look forward to updating you on our progress periodically.

## CLASS ACTION ALLEGATIONS

25.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Illumina securities between July 26, 2016, and October 10, 2016, inclusive (the "Class Period") and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

26.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Illumina's securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class.  Millions of Illumina shares were traded publicly during the Class Period on the NASDAQ.  As of October 21, 2016, Illumina had 146.9 million shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Illumina or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27.     Plaintiffs' claims are typical of the claims of the members of the Class

as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

28.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

29.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Illumina; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

30.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**<u>UNDISCLOSED ADVERSE FACTS</u>**

31.     The market for Illumina's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Illumina's securities traded at artificially inflated prices during the Class Period.  Plaintiffs and other members of the Class purchased or otherwise acquired Illumina's securities relying upon the integrity of the market price of the Company's securities and market information relating to

Illumina, and have been damaged thereby.

32.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Illumina's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Illumina's business, operations, and prospects as alleged herein.

33.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Illumina's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

34.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiffs and the Class.

35.    During the Class Period, Plaintiffs and the Class purchased Illumina's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the

market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

36.    As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Illumina, his/her control over, and/or receipt and/or modification of Illumina's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Illumina, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

37.    The market for Illumina's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Illumina's securities traded at artificially inflated prices during the Class Period.  On October 5, 2016, the Company's stock closed at a Class Period high of $186.17 per share.  Plaintiffs and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Illumina's securities and market information relating to Illumina, and have been damaged thereby.

38.    During the Class Period, the artificial inflation of Illumina's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiffs and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to

be made a series of materially false and/or misleading statements about Illumina's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Illumina and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

39.   At all relevant times, the market for Illumina's securities was an efficient market for the following reasons, among others:

(a)   Illumina stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)   As a regulated issuer, Illumina filed periodic public reports with the SEC and/or the NASDAQ;

(c)   Illumina regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)   Illumina was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.   Each of these reports was publicly available and entered the public marketplace.

40.   As a result of the foregoing, the market for Illumina's securities promptly digested current information regarding Illumina from all publicly available sources and reflected such information in Illumina's stock price. Under these

circumstances, all purchasers of Illumina's securities during the Class Period suffered similar injury through their purchase of Illumina's securities at artificially inflated prices and a presumption of reliance applies.

41.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

42.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the

forward-looking statement was authorized or approved by an executive officer of Illumina who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

43.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

44.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (ii) cause Plaintiffs and other members of the Class to purchase Illumina's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

45.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Illumina's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

46.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Illumina's financial well-being and prospects, as specified herein.

47.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts,

practices, and a course of conduct as alleged herein in an effort to assure investors of Illumina's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Illumina and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

48.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

49.     The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of

concealing Illumina's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

50.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Illumina's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiffs and the other members of the Class acquired Illumina's securities during the Class Period at artificially high prices and were damaged thereby.

51.    At the time of said misrepresentations and/or omissions, Plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiffs and the other members of the Class and the marketplace known the truth regarding the problems that Illumina was experiencing, which were not disclosed by Defendants, Plaintiffs and other members of the Class would not have purchased or otherwise acquired their Illumina securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

52.    By virtue of the foregoing, Defendants have violated Section 10(b) of

the Exchange Act and Rule 10b-5 promulgated thereunder.

53.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

54.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

55.    The Individual Defendants acted as controlling persons of Illumina within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading.   The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

57.    As set forth above, Illumina and the Individual Defendants each

violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiffs and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated:  December 16, 2016          **GLANCY PRONGAY & MURRAY LLP**

By: *s/ Robert V. Prongay*
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email: info@glancylaw.com

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiffs*