# EXHIBIT E

# Firm Resume

**Robbins Geller Rudman & Dowd LLP**



Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or the "Firm") is a 200-lawyer firm with offices in Atlanta, Boca Raton, Chicago, Manhattan, Melville, Nashville, San Diego, San Francisco, Philadelphia and Washington, D.C. (www.rgrdlaw.com). The Firm is actively engaged in complex litigation, emphasizing securities, consumer, antitrust, insurance, healthcare, human rights and employment discrimination class actions, as well as intellectual property disputes. The Firm's unparalleled experience and capabilities in these fields are based upon the talents of its attorneys, who have successfully prosecuted thousands of class action lawsuits and numerous individual cases, recovering billions of dollars.

This successful track record stems from our experienced attorneys, including many who came to the Firm from federal or state law enforcement agencies. The Firm also includes several dozen former federal and state judicial clerks.

The Firm currently represents more institutional investors, including public and multi-employer pension funds and domestic and international financial institutions, in securities and corporate litigation than any other plaintiffs' securities law firm in the United States.

The Firm is committed to practicing law with the highest level of integrity in an ethical and professional manner. We are a diverse firm with lawyers and staff from all walks of life. Our lawyers and other employees are hired and promoted based on the quality of their work and their ability to treat others with respect and dignity.

We strive to be good corporate citizens and work with a sense of global responsibility. Contributing to our communities and environment is important to us. We often take cases on a pro bono basis and are committed to the rights of workers, and to the extent possible, we contract with union vendors. We care about civil rights, workers' rights and treatment, workplace safety and environmental protection. Indeed, while we have built a reputation as the finest securities and consumer class action law firm in the nation, our lawyers have also worked tirelessly in less high-profile, but no less important, cases involving human rights and other social issues.

## Practice Areas and Services

### Securities Fraud

As recent corporate scandals demonstrate clearly, it has become all too common for companies and their executives – often with the help of their advisors, such as bankers, lawyers and accountants – to manipulate the market price of their securities by misleading the public about the company's financial condition or prospects for the future. This misleading information has the effect of artificially inflating the price of the company's securities above their true value. When the underlying truth is eventually revealed, the prices of these securities plummet, harming those innocent investors who relied upon the company's misrepresentations.

TABLE OF CONTENTS

PRACTICE AREAS AND SERVICES     1
  Securities Fraud ................................. 1
  Shareholder Derivative and
  Corporate Governance Litigation . 5
  Options Backdating Litigation ........ 8
  Corporate Takeover Litigation ....... 8
  Insurance ............................................ 9
  Antitrust ........................................... 11
  Consumer Fraud.............................. 12
  Intellectual Property...................... 14
  Human Rights, Labor Practices
  and Public Policy............................ 14
  Environment and Public Health .. 15
  Pro Bono .......................................... 16
  E-Discovery ..................................... 17

INSTITUTIONAL CLIENTS     18
  Public Fund Clients ......................... 18
  Multi-Employer Clients.................. 19
  International Investors .................. 20
  Additional Institutional Investors. 20

PROMINENT CASES, PRECEDENT-
SETTING DECISIONS AND JUDICIAL
COMMENDATIONS     21
  Prominent Cases............................. 21

PRECEDENT-SETTING DECISIONS     28
  Investor and Shareholder Rights 28
  Insurance .......................................... 31
  Consumer Protection ..................... 32
  Additional Judicial
  Commendations .............................. 33

ATTORNEY BIOGRAPHIES     37
  Partners ........................................... 37
  Of Counsel ....................................... 69
  Special Counsel .............................. 78
  Forensic Accountants ................... 79

Robbins Geller is the leader in the fight to protect investors from corporate securities fraud.  We utilize a wide range of federal and state laws to provide investors with remedies, either by bringing a class action on behalf of all affected investors or, where appropriate, by bringing individual cases.

The Firm's reputation for excellence has been repeatedly noted by courts and has resulted in the appointment of Firm attorneys to lead roles in hundreds of complex class-action securities and other cases.  In the securities area alone, the Firm's attorneys have been responsible for a number of outstanding recoveries on behalf of investors.  Currently, Robbins Geller attorneys are lead or named counsel in hundreds of securities class action or large institutional-investor cases.  Some notable current and past cases include:

- *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.).  Robbins Geller attorneys and lead plaintiff The Regents of the University of California aggressively pursued numerous defendants, including many of Wall Street's biggest banks, and successfully obtained settlements in excess of *$7.2 billion* for the benefit of investors.  *This is the largest aggregate class action settlement not only in a securities class action, but in class action history*.

- *Jaffe v. Household Int'l, Inc.*, No. 02-C-05893 (N.D. Ill.).  As sole lead counsel, Robbins Geller obtained a record-breaking settlement of $1.575 billion after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a securities fraud verdict in favor of the class.  In 2015, the Seventh Circuit Court of Appeals upheld the jury's verdict that defendants made false or misleading statements of material fact about the company's business practices and financial results, but remanded the case for a new trial on the issue of whether the individual defendants "made" certain false statements, whether those false statements caused plaintiffs' losses, and the amount of damages.  The parties reached an agreement to settle the case just hours before the retrial was scheduled to begin on June 6, 2016.  The $1.575 billion settlement, approved in October 2016, is the largest ever following a securities fraud class action trial, the largest securities fraud settlement in the Seventh Circuit and the seventh-largest settlement ever in a post-PSLRA securities fraud case.  According to published reports, the case was just the seventh securities fraud case tried to a verdict since the passage of the PSLRA.

- *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-CV-1691 (D. Minn.).  Robbins Geller represented the California Public Employees' Retirement System ("CalPERS") and demonstrated its willingness to vigorously advocate for its institutional clients, even under the most difficult circumstances.  The Firm obtained an $895 million recovery on behalf of the UnitedHealth shareholders, and former CEO William A. McGuire paid $30 million and returned stock options representing more than three million shares to the shareholders, bringing the total recovery for the class to over $925 million, the largest stock option backdating recovery ever, and *a recovery that is more than four times larger than the next largest options backdating recovery*.  Moreover, Robbins Geller obtained unprecedented corporate governance reforms, including election of a shareholder-nominated member to the company's board of directors, a mandatory holding period for shares acquired by executives via option exercise, and executive compensation reforms that tie pay to performance.

- *Alaska Elec. Pension Fund v. CitiGroup, Inc. (In re WorldCom Sec. Litig.)*, No. 03 Civ. 8269 (S.D.N.Y.).  Robbins Geller attorneys represented more than 50 private and public institutions that opted out of the class action case and sued WorldCom's bankers, officers and directors, and auditors in courts around the country for losses related to WorldCom bond offerings from 1998 to 2001.  The Firm's attorneys recovered more than $650 million for their clients, substantially more than they would have recovered as part of the class.

- *Luther v. Countrywide Fin. Corp.*, No. 12-cv-05125 (C.D. Cal.).  Robbins Geller attorneys secured a $500 million settlement for institutional and individual investors in what is the largest RMBS purchaser class action settlement in history, and one of the largest securities class action settlements of all time.  The unprecedented settlement resolves claims against Countrywide and Wall Street banks that issued the securities.  The action was the first securities class action case filed against originators and Wall Street banks as a result of the credit crisis.  As co-lead counsel Robbins Geller

forged through six years of hard-fought litigation, oftentimes litigating issues of first impression, in order to secure the landmark settlement for its clients and the class.

▪ *In re Wachovia Preferred Sec. & Bond/Notes Litig.*, No. 09-cv-06351 (S.D.N.Y.).  On behalf of investors in bonds and preferred securities issued between 2006 and 2008, Robbins Geller and co-counsel obtained a significant settlement with Wachovia successor Wells Fargo & Company and Wachovia auditor KPMG LLP.  *The total settlement – $627 million – is one of the largest credit-crisis settlements involving Securities Act claims and one of the 20 largest securities class action recoveries in history.* The settlement is also one of the biggest securities class action recoveries arising from the credit crisis. The lawsuit focused on Wachovia's exposure to "pick-a-pay" loans, which the bank's offering materials said were of "pristine credit quality," but which were actually allegedly made to subprime borrowers, and which ultimately massively impaired the bank's mortgage portfolio.  Robbins Geller served as co-lead counsel representing the City of Livonia Employees' Retirement System, Hawaii Sheet Metal Workers Pension Fund, and the investor class.

▪ *In re Cardinal Health, Inc. Sec. Litig.*, No. C2-04-575 (S.D. Ohio).  As sole lead counsel representing Cardinal Health shareholders, Robbins Geller obtained a recovery of $600 million for investors on behalf of the lead plaintiffs, Amalgamated Bank, the New Mexico State Investment Council, and the California Ironworkers Field Trust Fund.  At the time, the $600 million settlement was the tenth-largest settlement in the history of securities fraud litigation and is the largest-ever recovery in a securities fraud action in the Sixth Circuit.

▪ *AOL Time Warner Cases I & II*, JCCP Nos. 4322 & 4325 (Cal. Super. Ct., Los Angeles Cty.).  Robbins Geller represented The Regents of the University of California, six Ohio state pension funds, Rabo Bank (NL), the Scottish Widows Investment Partnership, several Australian public and private funds, insurance companies, and numerous additional institutional investors, both domestic and international, in state and federal court opt-out litigation stemming from Time Warner's disastrous 2001 merger with Internet high flier America Online.  After almost four years of litigation involving extensive discovery, the Firm secured combined settlements for its opt-out clients totaling over $629 million just weeks before The Regents' case pending in California state court was scheduled to go to trial.  The Regents' gross recovery of $246 million is the largest individual opt-out securities recovery in history.

▪ *In re HealthSouth Corp. Sec. Litig.*, No. CV-03-BE-1500-S (N.D. Ala.).  As court-appointed co-lead counsel, Robbins Geller attorneys obtained a combined recovery of $671 million from HealthSouth, its auditor Ernst & Young, and its investment banker, UBS, for the benefit of stockholder plaintiffs.  The settlement against HealthSouth represents one of the larger settlements in securities class action history and is considered among the top 15 settlements achieved after passage of the PSLRA.  Likewise, the settlement against Ernst & Young is one of the largest securities class action settlements entered into by an accounting firm since the passage of the PSLRA.

▪ *Jones v. Pfizer Inc.*, No. 1:10-cv-03864 (S.D.N.Y.).  Lead plaintiff Stichting Philips Pensioenfonds obtained a $400 million settlement on behalf of class members who purchased Pfizer Inc. common stock during the January 19, 2006 to January 23, 2009 class period.  The settlement against Pfizer resolves accusations that it misled investors about an alleged off-label drug marketing scheme.  As sole lead counsel, Robbins Geller attorneys helped achieve this exceptional result after five years of hard-fought litigation against the toughest and the brightest members of the securities defense bar by litigating this case all the way to trial.

▪ *In re Dynegy Inc. Sec. Litig.*, No. H-02-1571 (S.D. Tex.).  As sole lead counsel representing The Regents of the University of California and the class of Dynegy investors, Robbins Geller attorneys obtained a combined settlement of $474 million from Dynegy, Citigroup, Inc. and Arthur Andersen LLP for their involvement in a clandestine financing scheme known as Project Alpha.  Most notably, the settlement agreement provides that Dynegy will appoint two board members to be nominated by The Regents, which Robbins Geller and The Regents believe will benefit all of Dynegy's stockholders.

▪ *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 01-cv-1451 (D. Colo.).  In July 2001, the Firm filed the initial complaint in this action on behalf of its clients, long before any investigation into

Qwest's financial statements was initiated by the SEC or Department of Justice. After five years of litigation, lead plaintiffs entered into a settlement with Qwest and certain individual defendants that provided a $400 million recovery for the class and created a mechanism that allowed the vast majority of class members to share in an additional $250 million recovered by the SEC. In 2008, Robbins Geller attorneys recovered an additional $45 million for the class in a settlement with defendants Joseph P. Nacchio and Robert S. Woodruff, the CEO and CFO, respectively, of Qwest during large portions of the class period.

- *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 1:09-cv-03701 (S.D.N.Y.). Robbins Geller attorneys served as lead counsel for a class of investors and obtained court approval of a $388 million recovery in nine 2007 residential mortgage-backed securities offerings issued by J.P. Morgan. The settlement represents, on a percentage basis, the largest recovery ever achieved in an MBS purchaser class action. The result was achieved after more than five years of hard-fought litigation and an extensive investigation.

- *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 1:08-cv-10783 (S.D.N.Y.). As sole lead counsel, Robbins Geller obtained a $272 million settlement on behalf of Goldman Sachs' shareholders. The settlement concludes one of the last remaining mortgage-backed securities purchaser class actions arising out of the global financial crisis. The remarkable result was achieved following seven years of extensive litigation. After the claims were dismissed in 2010, Robbins Geller secured a landmark victory from the Second Circuit Court of Appeals that clarified the scope of permissible class actions asserting claims under the Securities Act of 1933 on behalf of MBS investors. Specifically, the Second Circuit's decision rejected the concept of "tranche" standing and concluded that a lead plaintiff in an MBS class action has class standing to pursue claims on behalf of purchasers of other securities that were issued from the same registration statement and backed by pools of mortgages originated by the same lenders who had originated mortgages backing the lead plaintiff's securities.

- *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033 (M.D. Tenn.). As sole lead counsel, Robbins Geller obtained a groundbreaking $215 million settlement for former HCA Holdings, Inc. shareholders – the largest securities class action recovery ever in Tennessee. Reached shortly before trial was scheduled to commence, the settlement resolves claims that the Registration Statement and Prospectus HCA filed in connection with the company's massive $4.3 billion 2011 IPO contained material misstatements and omissions. The recovery achieved represents between 34% and 70% of the aggregate class wide damages, far exceeding the typical recovery in a securities class action.

- *In re AT&T Corp. Sec. Litig.*, MDL No. 1399 (D.N.J.). Robbins Geller attorneys served as lead counsel for a class of investors that purchased AT&T common stock. The case charged defendants AT&T and its former Chairman and CEO, C. Michael Armstrong, with violations of the federal securities laws in connection with AT&T's April 2000 initial public offering of its wireless tracking stock, the largest IPO in American history. After two weeks of trial, and on the eve of scheduled testimony by Armstrong and infamous telecom analyst Jack Grubman, defendants agreed to settle the case for $100 million.

- *Silverman v. Motorola, Inc.*, No. 1:07-cv-04507 (N.D. Ill.). The Firm served as lead counsel on behalf of a class of investors in Motorola, Inc., ultimately recovering $200 million for investors just two months before the case was set for trial. This outstanding result was obtained despite the lack of an SEC investigation or any financial restatement.

- *Nieman v. Duke Energy Corp.*, No. 3:12-cv-00456 (W.D.N.C.). Robbins Geller, along with co-counsel, obtained a $146.25 million settlement on behalf of Duke Energy Corporation investors. The settlement resolves accusations that defendants misled investors regarding Duke's future leadership following its merger with Progress Energy, Inc., and specifically, their premeditated coup to oust William D. Johnson (CEO of Progress) and replace him with Duke's then-CEO, John Rogers. This historic settlement represents the largest recovery ever in a North Carolina securities fraud action, and one of the five largest recoveries in the Fourth Circuit.

- **Bennett v. Sprint Nextel Corp.**, No. 2:09-cv-02122 (D. Kan.).  As co-lead counsel, Robbins Geller obtained a $131 million recovery for a class of Sprint investors.  The settlement, secured after five years of hard-fought litigation, resolved claims that former Sprint executives misled investors concerning the success of Sprint's ill-advised merger with Nextel and the deteriorating credit quality of Sprint's customer base, artificially inflating the value of Sprint's securities.

- **Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.**, No. 3:09-cv-00882 (M.D. Tenn.).  In the *Psychiatric Solutions* case, Robbins Geller represented lead plaintiff and class representative Central States, Southeast and Southwest Areas Pension Fund in litigation spanning more than four years.  Psychiatric Solutions and its top executives were accused of insufficiently staffing their in-patient hospitals, downplaying the significance of regulatory investigations and manipulating their malpractice reserves.  Just days before trial was set to commence, attorneys from Robbins Geller achieved a $65 million settlement that was the third-largest securities recovery ever in the district and the largest in a decade.

- **In re St. Jude Med., Inc. Sec. Litig.**, No. 0:10-cv-00851 (D. Minn.).  After four and one half years of litigation and mere weeks before the jury selection, Robbins Geller obtained a $50 million settlement on behalf of investors in medical device company St. Jude Medical.  The settlement resolves accusations that St. Jude Medical misled investors by utilizing heavily discounted end-of-quarter bulk sales to meet quarterly expectations, which created a false picture of demand by increasing customer inventory due of St. Jude Medical devices.  The complaint alleged that the risk of St. Jude Medical's reliance on such bulk sales manifested when it failed to meet its forecast guidance for the third quarter of 2009, which the company had reaffirmed only weeks earlier.

Robbins Geller's securities practice is also strengthened by the existence of a strong appellate department, whose collective work has established numerous legal precedents.  The securities practice also utilizes an extensive group of in-house economic and damage analysts, investigators and forensic accountants to aid in the prosecution of complex securities issues.

## Shareholder Derivative and Corporate Governance Litigation

The Firm's shareholder derivative and corporate governance practice is focused on preserving corporate assets and enhancing long-term shareowner value.  Shareowner derivative actions are often brought by institutional investors to vindicate the rights of the corporation injured by its executives' misconduct, which can effect violations of the nation's securities, anti-corruption, false claims, cyber-security, labor, environmental and/or health & safety laws.

Robbins Geller attorneys have aided Firm clients in significantly enhancing shareowner value by obtaining hundreds of millions of dollars in financial clawbacks and successfully negotiating corporate governance enhancements.  Robbins Geller has worked with its institutional clients to address corporate misconduct such as options backdating, bribery of foreign officials, pollution, off-label marketing, and insider trading and related self-dealing.  Additionally, the Firm works closely with noted corporate governance consultants Robert Monks, Richard Bennett and their firm, ValueEdge Advisors LLC, to shape corporate governance practices that will benefit shareowners.

Robbins Geller's efforts have conferred substantial benefits upon shareowners, and the market effect of these benefits measures in the billions of dollars.  The Firm's significant achievements include:

- **In re Community Health Sys., Inc. S'holder Derivative Litig.**, No. 3:11-cv-00489 (M.D. Tenn.).  Robbins Geller obtained unprecedented corporate governance reforms on behalf of Community Health Systems, Inc. in a case against the company's directors and officers for breaching their fiduciary duties by causing Community Health to develop and implement admissions criteria that systematically steered patients into unnecessary inpatient admissions, in contravention of Medicare and Medicaid regulations.  The governance reforms obtained as part of the settlement include two shareholder-nominated directors, the creation of a Healthcare Law Compliance Coordinator with specified qualifications and duties, a requirement that the Board's Compensation Committee be comprised solely of independent directors, the implementation of a compensation clawback that will automatically recover compensation improperly paid to the company's CEO or CFO in the event of a

restatement, the establishment of an insider trading controls committee, and the adoption of a political expenditure disclosure policy.  In addition to these reforms, $60 million in financial relief was obtained, which is the largest shareholder derivative recovery ever in Tennessee and the Sixth Circuit.

▪ *City of Westland Police and Fire Retirement System v. Stumpf (Wells Fargo Derivative Litigation)*, No. 3:11-cv-02369 (N.D. Cal.).  Prosecuted shareholder derivative action on behalf of Wells Fargo & Co. alleging that Wells Fargo's executives allowed participation in the mass-processing of home foreclosure documents by engaging in widespread robo-signing, *i.e.*, the execution and submission of false legal documents in courts across the country without verification of their truth or accuracy, and failed to disclose Wells Fargo's lack of cooperation in a federal investigation into the bank's mortgage and foreclosure practices.  In settlement of the action, Wells Fargo agreed to provide $67 million in homeowner down-payment assistance, credit counseling and improvements to its mortgage servicing system.  The initiatives will be concentrated in cities severely impacted by the bank's foreclosure practices and the ensuing mortgage foreclosure crisis.  Additionally, Wells Fargo agreed to change its procedures for reviewing shareholder proposals and a strict ban on stock pledges by Wells Fargo board members.

▪ *In re Ormat Techs., Inc. Derivative Litig.*, No. CV10-00759 (Nev. Dist. Ct., Washoe Cty.).  Robbins Geller brought derivative claims for breach of fiduciary duty and unjust enrichment against the directors and certain officers of Ormat Technologies, Inc., a leading geothermal and recovered energy power business.  During the relevant time period, these Ormat insiders caused the company to engage in accounting manipulations that ultimately required restatement of the company's financial statements. The settlement in this action includes numerous corporate governance reforms designed to, among other things: (i) increase director independence; (ii) provide continuing education to directors; (iii) enhance the company's internal controls; (iv) make the company's board more independent; and (iv) strengthen the company's internal audit function.

▪ *In re Alphatec Holdings, Inc. Derivative S'holder Litig.*, No. 37-2010-00058586 (Cal. Super. Ct., San Diego Cty.).  Obtained sweeping changes to Alphatec's governance, including separation of the Chairman and CEO positions, enhanced conflict of interest procedures to address related-party transactions, rigorous director independence standards requiring that at least a majority of directors be outside independent directors, and ongoing director education and training.

▪ *In re Finisar Corp. Derivative Litig.*, No. C-06-07660 (N.D. Cal.).  Prosecuted shareholder derivative action on behalf of Finisar against certain of its current and former directors and officers for engaging in an alleged nearly decade-long stock option backdating scheme that was alleged to have inflicted substantial damage upon Finisar.  After obtaining a reversal of the district court's order dismissing the complaint for failing to adequately allege that a pre-suit demand was futile, Robbins Geller lawyers successfully prosecuted the derivative claims to resolution obtaining over $15 million in financial clawbacks for Finisar.  Robbins Geller attorneys also obtained significant changes to Finisar's stock option granting procedures and corporate governance.  As a part of the settlement, Finisar agreed to ban the repricing of stock options without first obtaining specific shareholder approval, prohibit the retrospective selection of grant dates for stock options and similar awards, limit the number of other boards on which Finisar directors may serve, require directors to own a minimum amount of Finisar shares, annually elect a Lead Independent Director whenever the position of Chairman and CEO are held by the same person, and require the board to appoint a Trading Compliance officer responsible for ensuring compliance with Finisar's insider trading policies.

▪ *Loizides v. Schramm (Maxwell Technology Derivative Litigation)*, No. 37-2010-00097953 (Cal. Super. Ct., San Diego Cty.).  Prosecuted shareholder derivative claims arising from the company's alleged violations of the Foreign Corrupt Practices Act of 1977 ("FCPA").  As a result of Robbins Geller's efforts, Maxwell insiders agreed to adopt significant changes in Maxwell's internal controls and systems designed to protect Maxwell against future potential violations of the FCPA.  These corporate governance changes included, establishing the following, among other things: a compliance plan to improve board oversight of Maxwell's compliance processes and internal controls; a clear corporate policy prohibiting bribery and subcontracting kickbacks, whereby individuals are accountable; mandatory employee training requirements, including the comprehensive explanation of

whistleblower provisions, to provide for confidential reporting of FCPA violations or other corruption; enhanced resources and internal control and compliance procedures for the audit committee to act quickly if an FCPA violation or other corruption is detected; an FCPA and Anti-Corruption Compliance department that has the authority and resources required to assess global operations and detect violations of the FCPA and other instances of corruption; a rigorous ethics and compliance program applicable to all directors, officers and employees, designed to prevent and detect violations of the FCPA and other applicable anti-corruption laws; an executive-level position of Chief Compliance Officer with direct board-level reporting responsibilities, who shall be responsible for overseeing and managing compliance issues within the company; a rigorous insider trading policy buttressed by enhanced review and supervision mechanisms and a requirement that all trades are timely disclosed; and enhanced provisions requiring that business entities are only acquired after thorough FCPA and anti-corruption due diligence by legal, accounting and compliance personnel at Maxwell.

- *In re SciClone Pharm., Inc. S'holder Derivative Litig.*, No. CIV 499030 (Cal. Super. Ct., San Mateo Cty.). Robbins Geller attorneys successfully prosecuted the derivative claims on behalf of nominal party SciClone Pharmaceuticals, Inc., resulting in the adoption of state-of-the-art corporate governance reforms. The corporate governance reforms included the establishment of an FCPA compliance coordinator; the adoption of an FCPA compliance program and code; and the adoption of additional internal controls and compliance functions.

- *Policemen & Firemen Ret. Sys. of the City of Detroit v. Cornelison (Halliburton Derivative Litigation)*, No. 2009-29987 (Tex. Dist. Ct., Harris Cty.). Prosecuted shareholder derivative claims on behalf of Halliburton Company against certain Halliburton insiders for breaches of fiduciary duty arising from Halliburton's alleged violations of the FCPA. In the settlement, Halliburton agreed, among other things, to adopt strict intensive controls and systems designed to detect and deter the payment of bribes and other improper payments to foreign officials, to enhanced executive compensation clawback, director stock ownership requirements, a limitation on the number of other boards that Halliburton directors may serve, a lead director charter, enhanced director independence standards, and the creation of a management compliance committee.

- *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-CV-1691 (D. Minn.). In the *UnitedHealth* case, our client, CalPERS, obtained sweeping corporate governance improvements, including the election of a shareholder-nominated member to the company's board of directors, a mandatory holding period for shares acquired by executives via option exercises, as well as executive compensation reforms that tie pay to performance. In addition, the class obtained $925 million, the largest stock option backdating recovery ever and four times the next largest options backdating recovery.

- *In re Fossil, Inc. Derivative Litig.*, No. 3:06-cv-01672 (N.D. Tex.). The settlement agreement included the following corporate governance changes: declassification of elected board members; retirement of three directors and addition of five new independent directors; two-thirds board independence requirements; corporate governance guidelines providing for "Majority Voting" election of directors; lead independent director requirements; revised accounting measurement dates of options; addition of standing finance committee; compensation clawbacks; director compensation standards; revised stock option plans and grant procedures; limited stock option granting authority, timing and pricing; enhanced education and training; and audit engagement partner rotation and outside audit firm review.

- *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Sinegal (Costco Derivative Litigation)*, No. 2:08-cv-01450 (W.D. Wash.). The parties agreed to settlement terms providing for the following corporate governance changes: the amendment of Costco's bylaws to provide "Majority Voting" election of directors; the elimination of overlapping compensation and audit committee membership on common subject matters; enhanced Dodd-Frank requirements; enhanced internal audit standards and controls, and revised information-sharing procedures; revised compensation policies and procedures; revised stock option plans and grant procedures; limited stock option granting authority, timing and pricing; and enhanced ethics compliance standards and training.

- *In re F5 Networks, Inc. Derivative Litig.,* No. C-06-0794 (W.D. Wash.).  The parties agreed to the following corporate governance changes as part of the settlement: revised stock option plans and grant procedures; limited stock option granting authority, timing and pricing; "Majority Voting" election of directors; lead independent director requirements; director independence standards; elimination of director perquisites; and revised compensation practices.

## Options Backdating Litigation

As has been widely reported in the media, the stock options backdating scandal suddenly engulfed hundreds of publicly traded companies throughout the country in 2006.  Robbins Geller was at the forefront of investigating and prosecuting options backdating derivative and securities cases.  The Firm has recovered over $1 billion in damages on behalf of injured companies and shareholders.

- *In re KLA-Tencor Corp. S'holder Derivative Litig.,* No. C-06-03445 (N.D. Cal.).  After successfully opposing the special litigation committee of the board of directors' motion to terminate the derivative claims, Robbins Geller recovered $43.6 million in direct financial benefits for KLATencor, including $33.2 million in cash payments by certain former executives and their directors' and officers' insurance carriers.

- *In re Marvell Technology Grp. Ltd. Derivative Litig.,* No. C-06-03894 (N.D. Cal.).  Robbins Geller recovered $54.9 million in financial benefits, including $14.6 million in cash, for Marvell, in addition to extensive corporate governance reforms related to Marvell's stock option granting practices, board of directors' procedures and executive compensation.

- *In re KB Home S'holder Derivative Litig.,* No. 06-CV-05148 (C.D. Cal.).  Robbins Geller served as co-lead counsel for the plaintiffs and recovered more than $31 million in financial benefits, including $21.5 million in cash, for KB Home, plus substantial corporate governance enhancements relating to KB Home's stock option granting practices, director elections and executive compensation practices.

## Corporate Takeover Litigation

Robbins Geller has earned a reputation as the leading law firm in representing shareholders in corporate takeover litigation.  Through its aggressive efforts in prosecuting corporate takeovers, the Firm has secured for shareholders billions of dollars of additional consideration as well as beneficial changes for shareholders in the context of mergers and acquisitions.

The Firm regularly prosecutes merger and acquisition cases post-merger, often through trial, to maximize the benefit for its shareholder class.  Some of these cases include:

- *In re Kinder Morgan, Inc. S'holders Litig.,* No. 06-C-801 (Kan. Dist. Ct., Shawnee Cty.).  In the largest recovery ever for corporate takeover class action litigation, the Firm negotiated a settlement fund of $200 million in 2010.

- I*n re Dole Food Co., Inc. Stockholder Litig.,* No. 8703-VCL (Del. Ch.).  Robbins Geller and co-counsel went to trial in the Delaware Court of Chancery on claims of breach of fiduciary duty on behalf of Dole Food Co., Inc. shareholders.  The litigation challenged the 2013 buyout of Dole by its billionaire Chief Executive Officer and Chairman, David H. Murdock.  On August 27, 2015, the court issued a post-trial ruling that Murdock and fellow director C. Michael Carter – who also served as Dole's General Counsel, Chief Operating Officer and Murdock's top lieutenant – had engaged in fraud and other misconduct in connection with the buyout and are liable to Dole's former stockholders for over $148 million, the largest trial verdict ever in a class action challenging a merger transaction.

- *In re Rural Metro Corp. Stockholders Litig.,* No. 6350-VCL (Del. Ch.).  Robbins Geller and co-counsel were appointed lead counsel in this case after successfully objecting to an inadequate settlement that did not take into account evidence of defendants' conflicts of interest.  In a post-trial opinion, Delaware Vice Chancellor J. Travis Laster found defendant RBC Capital Markets, LLC liable for aiding and abetting Rural/Metro's board of directors' fiduciary duty breaches in the $438 million buyout of Rural/Metro, citing "the magnitude of the conflict between RBC's claims and the evidence."

RBC was ordered to pay nearly $110 million as a result of its wrongdoing, the largest damage award ever obtained against a bank over its role as a merger adviser. The Delaware Supreme Court issued a landmark opinion affirming the judgment on November 30, 2015, *RBC Capital Mkts., LLC v. Jervis*, 129 A.3d 816 (Del. 2015).

- *In re Del Monte Foods Co. S'holders Litig.*, No. 6027-VCL (Del. Ch.). Robbins Geller exposed the unseemly practice by investment bankers of participating on both sides of large merger and acquisition transactions and ultimately secured an $89 million settlement for shareholders of Del Monte. For efforts in achieving these results, the Robbins Geller lawyers prosecuting the case were named Attorneys of the Year by *California Lawyer* magazine in 2012.

- *In re Chaparral Res., Inc. S'holders Litig.*, No. 2633-VCL (Del. Ch.). After a full trial and a subsequent mediation before the Delaware Chancellor, the Firm obtained a common fund settlement of $41 million (or 45% increase above merger price) for both class and appraisal claims.

- *In re TD Banknorth S'holders Litig.*, No. 2557-VCL (Del. Ch.). After objecting to a modest recovery of just a few cents per share, the Firm took over the litigation and obtained a common fund settlement of $50 million.

- *In re eMachines, Inc. Merger Litig.*, No. 01-CC-00156 (Cal. Super. Ct., Orange Cty.). After four years of litigation, the Firm secured a common fund settlement of $24 million on the brink of trial.

- *In re Prime Hospitality, Inc. S'holders Litig.*, No. 652-N (Del. Ch.). The Firm objected to a settlement that was unfair to the class and proceeded to litigate breach of fiduciary duty issues involving a sale of hotels to a private equity firm. The litigation yielded a common fund of $25 million for shareholders.

- *In re Dollar Gen. Corp. S'holder Litig.*, No. 07MD-1 (Tenn. Cir. Ct., Davidson Cty.). As lead counsel, the Firm secured a recovery of up to $57 million in cash for former Dollar General shareholders on the eve of trial.

- *In re UnitedGlobalCom, Inc. S'holder Litig.*, No. 1012-VCS (Del. Ch.). The Firm secured a common fund settlement of $25 million just weeks before trial.

- *Harrah's Entertainment*, No. A529183 (Nev. Dist. Ct., Clark Cty.). The Firm's active prosecution of the case on several fronts, both in federal and state court, assisted Harrah's shareholders in securing an additional $1.65 billion in merger consideration.

- *In re Chiron S'holder Deal Litig.*, No. RG 05-230567 (Cal. Super. Ct., Alameda Cty.). The Firm's efforts helped to obtain an additional $800 million in increased merger consideration for Chiron shareholders.

- *In re PeopleSoft, Inc. S'holder Litig.*, No. RG-03100291 (Cal. Super. Ct., Alameda Cty.). The Firm successfully objected to a proposed compromise of class claims arising from takeover defenses by PeopleSoft, Inc. to thwart an acquisition by Oracle Corp., resulting in shareholders receiving an increase of over $900 million in merger consideration.

- *ACS S'holder Litig.*, No. CC-09-07377-C (Tex. Cty. Ct., Dallas Cty.). The Firm forced ACS's acquirer, Xerox, to make significant concessions by which shareholders would not be locked out of receiving more money from another buyer.

## Insurance

Fraud and collusion in the insurance industry by executives, agents, brokers, lenders and others is one of the most costly crimes in the United States. Some experts have estimated the annual cost of white collar crime in the insurance industry to be over $120 billion nationally. Recent legislative proposals seek to curtail anti-competitive behavior within the industry. However, in the absence of comprehensive regulation, Robbins Geller has played a critical role as private attorney general in protecting the rights of consumers against insurance fraud and other unfair business practices within the insurance industry.

Robbins Geller attorneys have long been at the forefront of litigating race discrimination issues within the life insurance industry. For example, the Firm has fought the practice by certain insurers of charging African-Americans and other people of color more for life insurance than similarly situated Caucasians. The Firm recovered over $400 million for African-Americans and other minorities as redress for civil rights abuses, including landmark recoveries in *McNeil v. American General Life & Accident Insurance Company*; *Thompson v. Metropolitan Life Insurance Company*; and *Williams v. United Insurance Company of America*.

The Firm's attorneys fight on behalf of elderly victims targeted for the sale of deferred annuity products with hidden sales loads and illusory bonus features. Sales agents for life insurance companies such as Allianz Life Insurance Company of North America, Midland National Life Insurance Company, and National Western Life Insurance Company targeted senior citizens for these annuities with lengthy investment horizons and high sales commissions. The Firm recovered millions of dollars for elderly victims and seeks to ensure that senior citizens are afforded full and accurate information regarding deferred annuities.

Robbins Geller attorneys also stopped the fraudulent sale of life insurance policies based on misrepresentations about how the life insurance policy would perform, the costs of the policy, and whether premiums would "vanish." Purchasers were also misled about the financing of a new life insurance policy, falling victim to a "replacement" or "churning" sales scheme where they were convinced to use loans, partial surrenders or withdrawals of cash values from an existing permanent life insurance policy to purchase a new policy.

- **Brokerage "Pay to Play" Cases.** On behalf of individuals, governmental entities, businesses, and non-profits, Robbins Geller has sued the largest commercial and employee benefit insurance brokers and insurers for unfair and deceptive business practices. While purporting to provide independent, unbiased advice as to the best policy, the brokers failed to adequately disclose that they had entered into separate "pay to play" agreements with certain third-party insurance companies. These agreements provide additional compensation to the brokers based on such factors as profitability, growth and the volume of insurance that they place with a particular insurer, and are akin to a profit-sharing arrangement between the brokers and the insurance companies. These agreements create a conflict of interest since the brokers have a direct financial interest in selling their customers only the insurance products offered by those insurance companies with which the brokers have such agreements.

  Robbins Geller attorneys were among the first to uncover and pursue the allegations of these practices in the insurance industry in both state and federal courts. On behalf of the California Insurance Commissioner, the Firm brought an injunctive case against the biggest employee benefit insurers and local San Diego brokerage, ULR, which resulted in major changes to the way they did business. The Firm also sued on behalf of the City and County of San Francisco to recover losses due to these practices. Finally, Robbins Geller represents a putative nationwide class of individuals, businesses, employers, and governmental entities against the largest brokerage houses and insurers in the nation. To date, the Firm has obtained over $200 million on behalf of policyholders and enacted landmark business reforms.

- **Discriminatory Credit Scoring and Redlining Cases.** Robbins Geller attorneys have prosecuted cases concerning countrywide schemes of alleged discrimination carried out by Nationwide, Allstate, and other insurance companies against African-American and other persons of color who are purchasers of homeowner and automobile insurance policies. Such discrimination includes alleged redlining and the improper use of "credit scores," which disparately impact minority communities. Plaintiffs in these actions have alleged that the insurance companies' corporate-driven scheme of intentional racial discrimination includes refusing coverage and/or charging them higher premiums for homeowners and automobile insurance. On behalf of the class of aggrieved policyholders, the Firm has recovered over $400 million for these predatory and racist policies.

- **Senior Annuities.** Robbins Geller has prosecuted numerous cases against insurance companies and their agents who targeted senior citizens for the sale of deferred annuities. Plaintiffs alleged that the insurers misrepresented or failed to disclose to senior consumers material facts concerning the costs associated with their fixed and equity indexed deferred annuities and enticed seniors to buy the annuities by promising them illusory up-front bonuses. As a result of the Firm's efforts, hundreds of

millions of dollars in economic relief has been made available to seniors who have been harmed by these practices.  Notable recoveries include:

- *Negrete v. Allianz Life Ins. Co. of N. Am.*, No. CV-05-6838 (C.D. Cal.).  Robbins Geller attorneys served as co-lead counsel on behalf of a nationwide RICO class consisting of over 200,000 senior citizens who had purchased deferred annuities issued by Allianz Life Insurance Company of North America.  In March 2015, after nine years of litigation, District Judge Christina A. Snyder granted final approval of a class action settlement that made available in excess of $250 million in cash payments and other benefits to class members.  In approving the settlement, the Court praised the effort of the Firm and noted that "counsel has represented their clients with great skill and they are to be complimented."

- *In re Am. Equity Annuity Practices & Sales Litig.*, No. CV-05-6735 (C.D. Cal.).  As co-lead counsel, Robbins Geller attorneys secured a settlement that made available $129 million in economic benefits to a nationwide class of 114,000 senior citizens.

- *In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*, MDL No. 07-1825 (C.D. Cal.).  After four years of litigation, the Firm secured a settlement that made available $79.5 million in economic benefits to a nationwide class of 70,000 senior citizens.

- *Negrete v. Fidelity & Guar. Life Ins. Co.*, No. CV-05-6837 (C.D. Cal.).  The Firm's efforts resulted in a settlement under which Fidelity made available $52.7 in benefits to 56,000 class members across the country.

- *In re Nat'l Western Life Ins. Deferred Annuities Litig.*, No. 05-CV-1018 (S.D. Cal.).  The Firm litigated this action for more than eight years.  On the eve of trial, the Firm negotiated a settlement providing over $21 million in value to a nationwide class of 12,000 senior citizens.

## Antitrust

Robbins Geller's antitrust practice focuses on representing businesses and individuals who have been the victims of price-fixing, unlawful monopolization, market allocation, tying and other anti-competitive conduct.  The Firm has taken a leading role in many of the largest federal and state price-fixing, monopolization, market allocation and tying cases throughout the United States.

- *Dahl v. Bain Capital Partners, LLC*, No. 07-cv-12388-EFH (D. Mass).  Robbins Geller attorneys served as co-lead counsel on behalf of shareholders in this action against the nation's largest private equity firms who colluded to restrain competition to suppress prices paid to shareholders of public companies in connection with leveraged buyouts.  After nearly seven years of hard-fought litigation, in March 2015, the court approved several settlements totaling $590.5 million.  The aggregate settlement is the largest antitrust class action settlement involving market allocation in which no government antitrust action was taken.

- *Alaska Elec. Pension Fund v. Bank of America Corporation*, No. 14-cv-07126-JMF (S.D.N.Y.).  Robbins Geller attorneys are prosecuting antitrust claims against 13 major banks and broker ICAP plc who are alleged to have conspired to manipulate the ISDAfix rate, the key interest rate for a broad range of interest rate derivatives and other financial instruments.  The class action is brought on behalf of investors and market participants who entered into an interest rate derivative transaction during an eight-year period from 2006 to 2014.

- *In re Currency Conversion Fee Antitrust Litig.*, 01 MDL No. 1409 (S.D.N.Y.).  Robbins Geller attorneys recovered $336 million for credit and debit cardholders in this multi-district litigation in which the Firm served as co-lead counsel.  The court praised the Firm as "indefatigable" and noted that the Firm's lawyers "represented the Class with a high degree of professionalism, and vigorously litigated every issue against some of the ablest lawyers in the antitrust defense bar."

- *In re Aftermarket Automotive Lighting Products Antitrust Litig.*, 09 MDL No. 2007 (C.D. Cal.).  Robbins Geller attorneys are co-lead counsel in this multi-district litigation in which plaintiffs allege

that defendants conspired to fix prices and allocate markets for automotive lighting products. The last defendants settled just before the scheduled trial, resulting in total settlements of more than $50 million. Commenting on the quality of representation, the court commended the Firm for "expend[ing] substantial and skilled time and efforts in an efficient manner to bring this action to conclusion."

- **In re Dig. Music Antitrust Litig.**, 06 MDL No. 1780 (S.D.N.Y.). Robbins Geller attorneys are co-lead counsel in an action against the major music labels (Sony-BMG, EMI, Universal and Warner Music Group) in a case involving music that can be downloaded digitally from the Internet. Plaintiffs allege that defendants restrained the development of digital downloads and agreed to fix the distribution price of digital downloads at supracompetitive prices. Plaintiffs also allege that as a result of defendants' restraint of the development of digital downloads, and the market and price for downloads, defendants were able to maintain the prices of their CDs at supracompetitive levels. The Second Circuit Court of Appeals upheld plaintiffs' complaint, reversing the trial court's dismissal. Discovery is ongoing.

- **In re NASDAQ Market-Makers Antitrust Litig.**, MDL No. 1023 (S.D.N.Y.). Robbins Geller attorneys served as co-lead counsel in this case in which investors alleged that NASDAQ market-makers set and maintained artificially wide spreads pursuant to an industry-wide conspiracy. After three and one half years of intense litigation, the case settled for a total of $1.027 billion, at the time the largest ever antitrust settlement.

- **In re Dynamic Random Access Memory (DRAM) Antitrust Litig.**, 02 MDL No. 1486 (N.D. Cal.). Robbins Geller attorneys served on the executive committee in this multi-district class action in which a class of purchasers of dynamic random access memory (or DRAM) chips alleged that the leading manufacturers of semiconductor products fixed the price of DRAM chips from the fall of 2001 through at least the end of June 2002. The case settled for more than $300 million.

- **Microsoft I-V Cases**, JCCP No. 4106 (Cal. Super. Ct., San Francisco Cty.). Robbins Geller attorneys served on the executive committee in these consolidated cases in which California indirect purchasers challenged Microsoft's illegal exercise of monopoly power in the operating system, word processing and spreadsheet markets. In a settlement approved by the court, class counsel obtained an unprecedented $1.1 billion worth of relief for the business and consumer class members who purchased the Microsoft products.

## Consumer Fraud

In our consumer-based economy, working families who purchase products and services must receive truthful information so they can make meaningful choices about how to spend their hard-earned money. When financial institutions and other corporations deceive consumers or take advantage of unequal bargaining power, class action suits provide, in many instances, the only realistic means for an individual to right a corporate wrong.

Robbins Geller attorneys represent consumers around the country in a variety of important, complex class actions. Our attorneys have taken a leading role in many of the largest federal and state consumer fraud, environmental, human rights and public health cases throughout the United States. The Firm is also actively involved in many cases relating to banks and the financial services industry, pursuing claims on behalf of individuals victimized by abusive telemarketing practices, abusive mortgage lending practices, market timing violations in the sale of variable annuities, and deceptive consumer credit lending practices in violation of the Truth-In-Lending Act. Below are a few representative samples of our robust, nationwide consumer practice.

- **Volkswagen "Clean Diesel" Marketing, Sale Practices, and Products Liability Litigation.** As a member of the Plaintiffs' Steering Committee, Robbins Geller partner Paul Geller, along with government agencies, reached a settlement that created a funding pool of up to $10.033 billion (plus $4.7 billion for environmental impact) for consumers affected by the illegal "defeat device" that Volkswagen installed on many of its diesel-engine vehicles. The device tricked regulators into believing the cars were complying with emissions standards, while the cars were actually emitting between 10 and 40 times the allowable limit for harmful pollutants.

- ▪ *Trump University*. After six and half years of tireless litigation and on the eve of trial, Robbins Geller, serving as co-lead counsel, secured a historic recovery on behalf of Trump University students around the country. The settlement provides $25 million to approximately 7,000 consumers, including senior citizens who accessed retirement accounts and maxed out credit cards to enroll in Trump University. The extraordinary result means individual class members will be eligible for upwards of $35,000 in restitution. The settlement resolves claims that President Donald J. Trump and Trump University violated federal and state laws by misleadingly marketing "Live Events" seminars and mentorships as teaching Trump's "real-estate techniques" through his "hand-picked" "professors" at his so-called "university." Robbins Geller represented the class on a *pro bono* basis.

- ▪ *Bank Overdraft Fees Litigation*. The banking industry charges consumers exorbitant amounts for "overdraft" of their checking accounts, even if the customer did not authorize a charge beyond the available balance and even if the account would not have been overdrawn had the transactions been ordered chronologically as they occurred – that is, banks reorder transactions to maximize such fees. The Firm brought lawsuits against major banks to stop this practice and recover these false fees. These cases have recovered over $500 million thus far from a dozen banks and we continue to investigate other banks engaging in this practice.

- ▪ *Chase Bank Home Equity Line of Credit Litigation*. In October 2008, after receiving $25 billion in TARP funding to encourage lending institutions to provide businesses and consumers with access to credit, Chase Bank began unilaterally suspending its customers' home equity lines of credit. Plaintiffs charged that Chase Bank did so using an unreliable computer model that did not reliably estimate the actual value of its customers' homes, in breach of the borrowers' contracts. The Firm brought a lawsuit to secure damages on behalf of borrowers whose credit lines were improperly suspended. In early 2013, the court approved a settlement that restored billions of dollars of credit to tens of thousands of borrowers, while requiring Chase to make cash payments to former customers. The total value of this settlement is projected to be between $3 and $4 billion.

- ▪ *Visa and MasterCard Fees*. After years of litigation and a six-month trial, Robbins Geller attorneys won one of the largest consumer-protection verdicts ever awarded in the United States. The Firm's attorneys represented California consumers in an action against Visa and MasterCard for intentionally imposing and concealing a fee from cardholders. The court ordered Visa and MasterCard to return $800 million in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest. In addition, the court ordered full disclosure of the hidden fee.

- ▪ *West Telemarketing Case*. Robbins Geller attorneys secured a $39 million settlement for class members caught up in a telemarketing scheme where consumers were charged for an unwanted membership program after purchasing Tae-Bo exercise videos. Under the settlement, consumers were entitled to claim between one and one-half to three times the amount of all fees they unknowingly paid.

- ▪ *Dannon Activia*®. Robbins Geller attorneys secured the largest ever settlement for a false advertising case involving a food product. The case alleged that Dannon's advertising for its Activia® and DanActive® branded products and their benefits from "probiotic" bacteria were overstated. As part of the nationwide settlement, Dannon agreed to modify its advertising and establish a fund of up to $45 million to compensate consumers for their purchases of Activia® and DanActive®.

- ▪ *Mattel Lead Paint Toys*. In 2006-2007, toy manufacturing giant Mattel and its subsidiary Fisher-Price announced the recall of over 14 million toys made in China due to hazardous lead and dangerous magnets. Robbins Geller attorneys filed lawsuits on behalf of millions of parents and other consumers who purchased or received toys for children that were marketed as safe but were later recalled because they were dangerous. The Firm's attorneys reached a landmark settlement for millions of dollars in refunds and lead testing reimbursements, as well as important testing requirements to ensure that Mattel's toys are safe for consumers in the future.

- ▪ *Tenet Healthcare Cases*. Robbins Geller attorneys were co-lead counsel in a class action alleging a fraudulent scheme of corporate misconduct, resulting in the overcharging of uninsured patients by the Tenet chain of hospitals. The Firm's attorneys represented uninsured patients of Tenet hospitals

nationwide who were overcharged by Tenet's admittedly "aggressive pricing strategy," which resulted in price gouging of the uninsured.  The case was settled with Tenet changing its practices and making refunds to patients.

▪ ***Pet Food Products Liability Litigation***.  Robbins Geller served as co-lead counsel in this massive, 100+ case products liability MDL in the District of New Jersey concerning the death of and injury to thousands of the nation's cats and dogs due to tainted pet food.  The case settled for $24 million.

▪ ***Sony Gaming Networks & Customer Data Security Breach Litigation***.  The Firm served as a member of the Plaintiffs' Steering Committee, helping to obtain a precedential opinion denying in part Sony's motion to dismiss plaintiffs' claims involving the breach of Sony's gaming network, leading to a pending $15 million settlement.

## Intellectual Property

Individual inventors, universities, and research organizations provide the fundamental research behind many existing and emerging technologies.  Every year, the majority of U.S. patents are issued to this group of inventors.  Through this fundamental research, these inventors provide a significant competitive advantage to this country.  Unfortunately, while responsible for most of the inventions that issue into U.S. patents every year, individual inventors, universities and research organizations receive very little of the licensing revenues for U.S. patents.  Large companies reap 99% of all patent licensing revenues.

Robbins Geller enforces the rights of these inventors by filing and litigating patent infringement cases against infringing entities.  Our attorneys have decades of patent litigation experience in a variety of technical applications.  This experience, combined with the Firm's extensive resources, gives individual inventors the ability to enforce their patent rights against even the largest infringing companies.

Our attorneys have experience handling cases involving a broad range of technologies, including:

▪ biochemistry

▪ telecommunications

▪ medical devices

▪ medical diagnostics

▪ networking systems

▪ computer hardware devices and software

▪ mechanical devices

▪ video gaming technologies

▪ audio and video recording devices

## Human Rights, Labor Practices and Public Policy

Robbins Geller attorneys have a long tradition of representing the victims of unfair labor practices and violations of human rights.  These include:

▪ ***Does I v. The Gap, Inc.***, No. 01 0031 (D. N. Mar. I.).  In this groundbreaking case, Robbins Geller attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target and J.C. Penney.  In the first action of its kind, Robbins Geller attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act, and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan.  This case was a companion to two other actions: ***Does I v. Advance Textile Corp.***, No. 99 0002 (D. N. Mar. I.), which alleged overtime violations by the garment factories under the Fair Labor

Standards Act and local labor law, and *UNITE v. The Gap, Inc.*, No. 300474 (Cal. Super. Ct., San Francisco Cty.), which alleged violations of California's Unfair Practices Law by the U.S. retailers. These actions resulted in a settlement of approximately $20 million that included a comprehensive monitoring program to address past violations by the factories and prevent future ones. The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- *Liberty Mutual Overtime Cases*, No. JCCP 4234 (Cal. Super. Ct., Los Angeles Cty.). Robbins Geller attorneys served as co-lead counsel on behalf of 1,600 current and former insurance claims adjusters at Liberty Mutual Insurance Company and several of its subsidiaries. Plaintiffs brought the case to recover unpaid overtime compensation and associated penalties, alleging that Liberty Mutual had misclassified its claims adjusters as exempt from overtime under California law. After 13 years of complex and exhaustive litigation, Robbins Geller secured a settlement in which Liberty Mutual agreed to pay $65 million into a fund to compensate the class of claims adjusters for unpaid overtime. The Liberty Mutual action is one of a few claims adjuster overtime actions brought in California or elsewhere to result in a successful outcome for plaintiffs since 2004.

- *Veliz v. Cintas Corp.*, No. 5:03-cv-01180 (N.D. Cal.). Brought against one of the nation's largest commercial laundries for violations of the Fair Labor Standards Act for misclassifying truck drivers as salesmen to avoid payment of overtime.

- *Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002). The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising. The Court rejected defense contentions that any misconduct was protected by the First Amendment, finding the heightened constitutional protection afforded to noncommercial speech inappropriate in such a circumstance.

Shareholder derivative litigation brought by Robbins Geller attorneys at times also involves stopping anti-union activities, including:

- *Southern Pacific/Overnite*. A shareholder action stemming from several hundred million dollars in loss of value in the company due to systematic violations by Overnite of U.S. labor laws.

- *Massey Energy*. A shareholder action against an anti-union employer for flagrant violations of environmental laws resulting in multi-million-dollar penalties.

- *Crown Petroleum*. A shareholder action against a Texas-based oil company for self-dealing and breach of fiduciary duty while also involved in a union lockout.

### Environment and Public Health

Robbins Geller attorneys have also represented plaintiffs in class actions related to environmental law. The Firm's attorneys represented, on a *pro bono* basis, the Sierra Club and the National Economic Development and Law Center as *amici curiae* in a federal suit designed to uphold the federal and state use of project labor agreements ("PLAs"). The suit represented a legal challenge to President Bush's Executive Order 13202, which prohibits the use of project labor agreements on construction projects receiving federal funds. Our *amici* brief in the matter outlined and stressed the significant environmental and socio-economic benefits associated with the use of PLAs on large-scale construction projects.

Attorneys with Robbins Geller have been involved in several other significant environmental cases, including:

- *Public Citizen v. U.S. D.O.T.* Robbins Geller attorneys represented a coalition of labor, environmental, industry and public health organizations including Public Citizen, The International Brotherhood of Teamsters, California AFL-CIO and California Trucking Industry in a challenge to a decision by the Bush administration to lift a Congressionally-imposed "moratorium" on cross-border trucking from Mexico on the basis that such trucks do not conform to emission controls under the Clean Air Act, and further, that the administration did not first complete a comprehensive environmental impact analysis as required by the National Environmental Policy Act. The suit was

dismissed by the United States Supreme Court, the Court holding that because the D.O.T. lacked discretion to prevent crossborder trucking, an environmental assessment was not required.

- *Sierra Club v. AK Steel*.  Brought on behalf of the Sierra Club for massive emissions of air and water pollution by a steel mill, including homes of workers living in the adjacent communities, in violation of the Federal Clean Air Act, Resource Conservation Recovery Act and the Clean Water Act.

- *MTBE Litigation*.  Brought on behalf of various water districts for befouling public drinking water with MTBE, a gasoline additive linked to cancer.

- *Exxon Valdez*.  Brought on behalf of fisherman and Alaska residents for billions of dollars in damages resulting from the greatest oil spill in U.S. history.

- *Avila Beach*.  A citizens' suit against UNOCAL for leakage from the oil company pipeline so severe it literally destroyed the town of Avila Beach, California.

Federal laws such as the Clean Water Act, the Clean Air Act, and the Resource Conservation and Recovery Act and state laws such as California's Proposition 65 exist to protect the environment and the public from abuses by corporate and government organizations.  Companies can be found liable for negligence, trespass or intentional environmental damage, be forced to pay for reparations and to come into compliance with existing laws.  Prominent cases litigated by Robbins Geller attorneys include representing more than 4,000 individuals suing for personal injury and property damage related to the Stringfellow Dump Site in Southern California, participation in the Exxon Valdez oil spill litigation, and litigation involving the toxic spill arising from a Southern Pacific train derailment near Dunsmuir, California.

Robbins Geller attorneys have led the fight against Big Tobacco since 1991.  As an example, Robbins Geller attorneys filed the case that helped get rid of Joe Camel, representing various public and private plaintiffs, including the State of Arkansas, the general public in California, the cities of San Francisco, Los Angeles and Birmingham, 14 counties in California, and the working men and women of this country in the Union Pension and Welfare Fund cases that have been filed in 40 states.  In 1992, Robbins Geller attorneys filed the first case in the country that alleged a conspiracy by the Big Tobacco companies.

### Pro Bono

Robbins Geller provides counsel to those unable to afford legal representation as part of a continuous and longstanding commitment to the communities in which it serves. Over the years the Firm has dedicated a considerable amount of time, energy, and a full range of its resources for many pro bono and charitable actions.

Robbins Geller has been honored for its pro bono efforts by the California State Bar (including a nomination for the President's Pro Bono Law Firm of the Year award) and the San Diego Volunteer Lawyer's Program, among others.

Some of the Firm's and its attorneys' pro bono and charitable actions include:

- Representing Trump University students in two class actions against President Donald J. Trump.  The historic settlement provides $25 million to approximately 7,000 consumers.  This means individual class members will be eligible for upwards of $35,000 in restitution – an extraordinary result.

- Representing children diagnosed with Autism Spectrum Disorder, as well as children with significant disabilities, in New York to remedy flawed educational policies and practices that cause substantial harm to these and other similar children year after year.

- Representing 19 San Diego County children diagnosed with Autism Spectrum Disorder in their appeal of the San Diego Regional Center's termination of funding for a crucial therapy. The victory resulted in a complete reinstatement of funding and set a precedent that allows other children to obtain the treatments they need.

- Serving as Northern California and Hawaii District Coordinator for the United States Court of Appeals for the Ninth Circuit's Pro Bono program since 1993.

- Representing the Sierra Club and the National Economic Development and Law Center as *amici curiae* before the U.S. Supreme Court.

- Obtaining political asylum, after an initial application had been denied, for an impoverished Somali family whose ethnic minority faced systematic persecution and genocidal violence in Somalia, as well as forced female mutilation.

- Working with the ACLU in a class action filed on behalf of welfare applicants subject to San Diego County's "Project 100%" program. Relief was had when the County admitted that food-stamp eligibility could not hinge upon Project 100% "home visits," and again when the district court ruled that unconsented "collateral contacts" violated state regulations. The decision was noted by the *Harvard Law Review*, *The New York Times* and *The Colbert Report*.

- Filing numerous *amicus curiae* briefs on behalf of religious organizations and clergy that support civil rights, oppose government-backed religious-viewpoint discrimination, and uphold the American traditions of religious freedom and church-state separation.

- Serving as *amicus* counsel in a Ninth Circuit appeal from a Board of Immigration Appeals deportation decision.  In addition to obtaining a reversal of the BIA's deportation order, the Firm consulted with the Federal Defenders' Office on cases presenting similar fact patterns, which resulted in a precedent-setting *en banc* decision from the Ninth Circuit resolving a question of state and federal law that had been contested and conflicted for decades.

## E-Discovery

Robbins Geller has successfully litigated some of the largest and most complex shareholder and antitrust actions in history and has become the vanguard of a rapidly evolving world of e-discovery in complex litigation. The Firm has 200 attorneys supported by a large staff of forensic and e-discovery specialists and has a level of technological sophistication that is unmatched by any other firm.  As the size and stakes of complex litigation continue to increase, it is more important than ever to retain counsel with a successful track record of results.  Robbins Geller has consistently proven to be the right choice for anyone seeking representation in actions against the largest corporations in the world.

Led by 20-year litigation veteran Tor Gronborg, and advised by Lea Bays, e-discovery counsel, and Christine Milliron, Director of E-Discovery and Litigation Support, the Robbins Geller e-discovery practice group is a multi-disciplinary team of attorneys, forensic analysts and database professionals.  No plaintiffs' firm is better equipped to develop the type of comprehensive and case specific e-discovery strategy that is necessary for today's complex litigation.  The attorneys have extensive knowledge and experience in drafting and negotiating sophisticated e-discovery protocols, including those involving the use of predictive coding.  High quality document review services are performed by a consistent group of staff attorneys who are experienced in the Firm's litigation practice areas and specialize in document review and analysis.  A team of forensic and technology professionals work closely with the attorneys to ensure an effective and efficient e-discovery strategy.  The litigation support team includes six Relativity Certified Administrators.  Collectively, the Robbins Geller forensic and technology professionals have more than 75 years of e-discovery experience.

Members of the practice group are also leaders in shaping the broader dialogue on e-discovery issues.  They regularly contribute to industry publications, speak at conferences organized by leading e-discovery think tanks such as The Sedona Conference and Georgetown University Law Center's Advanced eDiscovery Institute, and play prominent roles in the local chapters of Women in eDiscovery and the Relativity Users Steering Committee.  The e-discovery practice group also offers regular in-house training and education, ensuring that members of the Firm are always up-to-date on the evolving world of e-discovery law and technology.

Robbins Geller has always been a leader in document-intensive litigation.  Boasting high-performing infrastructure resources, state-of-the-art technology, and a deep bench of some of the most highly trained

Relativity Certified Administrators and network engineers, the Firm's capabilities rival, if not outshine, those of the top e-discovery vendors in the industry. Additionally, the Firm's implementation of advanced analytic technologies and custom workflows makes its work fast, smart and efficient. Combined with Robbins Geller's decision to manage and host its litigation support in-house, these technologies reduce the Firm's reliance on third-party vendors, enabling it to offer top-notch e-discovery services to clients at a fair and reasonable cost.

Security is a top priority at Robbins Geller. The Firm's hosted e-discovery is secured using bank-level 128 encryption and is protected behind state-of-the-art Cisco firewalls. All e-discovery data is hosted on Firm-owned equipment at an SSAE 16-compliant, SOC 1, 2, and 3 audited facility that features 9.1 megawatts of power, N+1 or better redundancy on all data center systems, and security protocols required by leading businesses in the most stringent verticals. Originally designed to support a large defense contractor, it is built to rigorous standards, complete with redundant power and cooling systems plus multiple generators.

## Institutional Clients

### Public Fund Clients

Robbins Geller advises or has represented numerous public funds, including:

- Alaska Department of Revenue
- Alaska State Pension Investment Board
- California Public Employees' Retirement System
- California State Teachers' Retirement System
- City of Birmingham Retirement & Relief Fund
- Illinois State Board of Investment
- Los Angeles County Employees Retirement Association
- Milwaukee Employees' Retirement System
- New Mexico Educational Retirement Board
- New Mexico Public Employees Retirement Association
- New Mexico State Investment Council
- Ohio Bureau of Workers' Compensation
- Ohio Police and Fire Pension Fund
- Ohio Public Employees' Retirement System
- Ohio State Highway Patrol Retirement System
- Public Employee Retirement System of Idaho
- School Employees Retirement System of Ohio
- State Teachers Retirement System of Ohio
- State Universities Retirement System of Illinois
- Teachers' Retirement System of the State of Illinois
- Tennessee Consolidated Retirement System
- The Regents of the University of California

- Vermont Pension Investment Committee
- Washington State Investment Board
- West Virginia Investment Management Board

## Multi-Employer Clients

Robbins Geller advises or has represented numerous multi-employer funds, including:

- 1199 SEIU Greater New York Pension Fund
- Alaska Electrical Pension Fund
- Alaska Ironworkers Pension Trust
- Carpenters Pension Fund of Illinois
- Carpenters Pension Fund of West Virginia
- Central States, Southeast and Southwest Areas Pension Fund
- Construction Workers Pension Trust Fund - Lake County and Vicinity
- Employer-Teamsters Local Nos. 175 & 505 Pension Trust Fund
- Heavy & General Laborers' Local 472 & 172 Pension & Annuity Funds
- IBEW Local 90 Pension Fund
- IBEW Local Union No. 58 Pension Fund
- Indiana Laborers Pension Fund
- International Brotherhood of Electrical Workers Local 697 Pension Fund
- Laborers Local 100 and 397 Pension Fund
- Laborers Pension Trust Fund for Northern Nevada
- Massachusetts Laborers' Annuity Fund
- Material Yard Workers Local 1175 Benefit Funds
- National Retirement Fund
- New England Carpenters Guaranteed Annuity Fund
- New England Carpenters Pension Fund
- New England Health Care Employees Pension Fund
- Operating Engineers Construction Industry and Miscellaneous Pension Fund
- Pipefitters Local No. 636 Defined Benefit Plan
- Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund
- Plumbers and Pipefitters National Pension Fund
- Plumbers Local Union No. 519 Pension Trust Fund
- Plumbers' Union Local No. 12 Pension Fund

- SEIU Pension Plans Master Trust

- Southwest Carpenters Pension Trust

- Western Pennsylvania Electrical Employees Pension Fund

## International Investors

Robbins Geller advises or has represented numerous international investors, including:

- Abu Dhabi Commercial Bank

- China Development Industrial Bank

- Commerzbank AG

- Global Investment Services Limited

- Gulf International Bank B.S.C

- ING Investment Management

- Mn Services B.V.

- National Agricultural Cooperative Federation

- Ontario Municipal Employees Retirement System

- Royal Park Investments

- Scottish Widows Investment Partnership Limited

- Stichting Philips Pensioenfonds

- The Bank of N.T. Butterfield & Son Limited

- The City of Edinburgh Council on Behalf of the Lothian Pension Fund

- The Council of the Borough of South Tyneside Acting in its Capacity as the Administering Authority of the Tyne and Wear Pension Fund

- The London Pensions Fund Authority

- Wirral MBC on Behalf of the Merseyside Pension Fund

- Wolverhampton City Council, Administering Authority for the West Midlands Metropolitan Authorities Pension Fund

## Additional Institutional Investors

Robbins Geller advises or has represented additional institutional investors, including:

- Northwestern Mutual Life Insurance Company

- Standard Life Investments

- The Union Central Life Insurance Company

Prominent Cases, Precedent-Setting Decisions and Judicial Commendations

## Prominent Cases

Robbins Geller attorneys obtained outstanding results in some of the most notorious and well-known cases, frequently earning judicial commendations for the quality of their representation.

- ▪ *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.). Investors lost billions of dollars as a result of the massive fraud at Enron. In appointing Robbins Geller lawyers as sole lead counsel to represent the interests of Enron investors, the court found that the Firm's zealous prosecution and level of "insight" set it apart from its peers. Robbins Geller attorneys and lead plaintiff The Regents of the University of California aggressively pursued numerous defendants, including many of Wall Street's biggest banks, and successfully obtained settlements in excess of *$7.2 billion* for the benefit of investors. *This is the largest aggregate class action settlement not only in a securities class action, but in class action history*.

  The court overseeing this action had utmost praise for Robbins Geller's efforts and stated that "[t]he experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008).

  The court further commented: "[I]n the face of extraordinary obstacles, the skills, expertise, commitment, and tenacity of [Robbins Geller] in this litigation cannot be overstated. Not to be overlooked are the unparalleled results, . . . which demonstrate counsel's clearly superlative litigating and negotiating skills." *Id.* at 789.

  The court stated that the Firm's attorneys "are to be commended for their zealousness, their diligence, their perseverance, their creativity, the enormous breadth and depth of their investigations and analysis, and their expertise in all areas of securities law on behalf of the proposed class." *Id.*

  In addition, the court noted, "This Court considers [Robbins Geller] 'a lion' at the securities bar on the national level," noting that the Lead Plaintiff selected Robbins Geller because of the Firm's "outstanding reputation, experience, and success in securities litigation nationwide." *Id.* at 790.

  The court further stated that "Lead Counsel's fearsome reputation and successful track record undoubtedly were substantial factors in . . . obtaining these recoveries." *Id.*

  Finally, Judge Harmon stated: "As this Court has explained [this is] an extraordinary group of attorneys who achieved the largest settlement fund ever despite the great odds against them." *Id.* at 828.

- ▪ *Jaffe v. Household Int'l, Inc.*, No. 02-C-05893 (N.D. Ill). As sole lead counsel, Robbins Geller obtained a record-breaking settlement of $1.575 billion after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a securities fraud verdict in favor of the class. In 2015, the Seventh Circuit Court of Appeals upheld the jury's verdict that defendants made false or misleading statements of material fact about the company's business practices and financial results, but remanded the case for a new trial on the issue of whether the individual defendants "made" certain false statements, whether those false statements caused plaintiffs' losses, and the amount of damages. The parties reached an agreement to settle the case just hours before the retrial was scheduled to begin on June 6, 2016. The $1.575 billion settlement, approved in October 2016, is the largest ever following a securities fraud class action trial, the largest securities fraud settlement in the Seventh Circuit and the seventh-largest settlement ever in a post-PSLRA securities fraud case. According to published reports, the case was just the seventh securities fraud case tried to a verdict since the passage of the PSLRA.

  In approving the settlement, the Honorable Jorge L. Alonso noted the team's "skill and determination" while recognizing that "Lead Counsel prosecuted the case vigorously and skillfully over 14 years against nine of the country's most prominent law firms" and "achieved an exceptionally significant recovery for the class." The court added that the team faced "significant hurdles" and "uphill battles"

throughout the case and recognized that "[c]lass counsel performed a very high-quality legal work in the context of a thorny case in which the state of the law has been and is in flux." The court succinctly concluded that the settlement was "a spectacular result for the class." *Jaffe v. Household Int'l, Inc.*, No. 02-C-5892, 2016 U.S. Dist. LEXIS 156921, at *8 (N.D. Ill. Nov. 10, 2016); *Jaffe v. Household Int'l, Inc.*, No. 02-C-05893, Transcript at 56, 65 (N.D. Ill. Oct. 20, 2016).

- *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-CV-1691 (D. Minn.). In the *UnitedHealth* case, Robbins Geller represented the California Public Employees' Retirement System ("CalPERS") and demonstrated its willingness to vigorously advocate for its institutional clients, even under the most difficult circumstances. For example, in 2006, the issue of high-level executives backdating stock options made national headlines. During that time, many law firms, including Robbins Geller, brought shareholder derivative lawsuits against the companies' boards of directors for breaches of their fiduciary duties or for improperly granting backdated options. Rather than pursuing a shareholder derivative case, the Firm filed a securities fraud class action against the company on behalf of CalPERS. In doing so, Robbins Geller faced significant and unprecedented legal obstacles with respect to loss causation, *i.e.*, that defendants' actions were responsible for causing the stock losses. Despite these legal hurdles, Robbins Geller obtained an $895 million recovery on behalf of the UnitedHealth shareholders. Shortly after reaching the $895 million settlement with UnitedHealth, the remaining corporate defendants, including former CEO William A. McGuire, also settled. McGuire paid $30 million and returned stock options representing more than three million shares to the shareholders. The total recovery for the class was over $925 million, the largest stock option backdating recovery ever, and *a recovery that is more than four times larger than the next largest options backdating recovery*. Moreover, Robbins Geller obtained unprecedented corporate governance reforms, including election of a shareholder-nominated member to the company's board of directors, a mandatory holding period for shares acquired by executives via option exercise, and executive compensation reforms that tie pay to performance.

- *Alaska Elec. Pension Fund v. CitiGroup, Inc. (In re WorldCom Sec. Litig.)*, No. 03 Civ. 8269 (S.D.N.Y.). Robbins Geller attorneys represented more than 50 private and public institutions that opted out of the class action case and sued WorldCom's bankers, officers and directors, and auditors in courts around the country for losses related to WorldCom bond offerings from 1998 to 2001. The Firm's clients included major public institutions from across the country such as CalPERS, CalSTRS, the state pension funds of Maine, Illinois, New Mexico and West Virginia, union pension funds, and private entities such as AIG and Northwestern Mutual. Robbins Geller attorneys recovered more than $650 million for their clients, substantially more than they would have recovered as part of the class.

- *Luther v. Countrywide Fin. Corp.*, No. 12-cv-05125 (C.D. Cal.). Robbins Geller attorneys secured a $500 million settlement for institutional and individual investors in what is the largest RMBS purchaser class action settlement in history, and one of the largest class action securities settlements of all time. The unprecedented settlement resolves claims against Countrywide and Wall Street banks that issued the securities. The action was the first securities class action case filed against originators and Wall Street banks as a result of the credit crisis. As co-lead counsel Robbins Geller forged through six years of hard-fought litigation, oftentimes litigating issues of first impression, in order to secure the landmark settlement for its clients and the class.

In approving the settlement, Judge Mariana R. Pfaelzer repeatedly complimented plaintiffs' attorneys, noting that it was "beyond serious dispute that Class Counsel has vigorously prosecuted the Settlement Actions on both the state and federal level over the last six years." Judge Pfaelzer also commented that "[w]ithout a settlement, these cases would continue indefinitely, resulting in significant risks to recovery and continued litigation costs. It is difficult to understate the risks to recovery if litigation had continued." *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-00302, 2013 U.S. Dist. LEXIS 179190, at *44, *56 (C.D. Cal. Dec. 5, 2013).

Judge Pfaelzer further noted that the proposed $500 million settlement represents one of the "largest MBS class action settlements to date. Indeed, this settlement easily surpasses the next largest . . . MBS settlement." *Id.* at *59.

Robbins Geller Rudman & Dowd LLP Firm Resume Prominent Cases, Precedent-Setting Decisions and Judicial Commendations | 22

Exhibit E
Page 81

- ***In re Wachovia Preferred Sec. & Bond/Notes Litig.***, No. 09-cv-06351 (S.D.N.Y.).  In litigation over bonds and preferred securities, issued by Wachovia between 2006 and 2008, Robbins Geller and co-counsel obtained a significant settlement with Wachovia successor Wells Fargo & Company ($590 million) and Wachovia auditor KPMG LLP ($37 million).  ***The total settlement − $627 million − is one of the largest credit-crisis settlements involving Securities Act claims and one of the 20 largest securities class action recoveries in history***.  The settlement is also one of the biggest securities class action recoveries arising from the credit crisis.

  As alleged in the complaint, the offering materials for the bonds and preferred securities misstated and failed to disclose the true nature and quality of Wachovia's mortgage loan portfolio, which exposed the bank and misled investors to tens of billions of dollars in losses on mortgage-related assets.  In reality, Wachovia employed high-risk underwriting standards and made loans to subprime borrowers, contrary to the offering materials and their statements of "pristine credit quality."  Robbins Geller served as co-lead counsel representing the City of Livonia Employees' Retirement System, Hawaii Sheet Metal Workers Pension Fund, and the investor class.

- ***In re Cardinal Health, Inc. Sec. Litig.***, No. C2-04-575 (S.D. Ohio).  As sole lead counsel representing Cardinal Health shareholders, Robbins Geller obtained a recovery of $600 million for investors.  On behalf of the lead plaintiffs, Amalgamated Bank, the New Mexico State Investment Council, and the California Ironworkers Field Trust Fund, the Firm aggressively pursued class claims and won notable courtroom victories, including a favorable decision on defendants' motion to dismiss.  *In re Cardinal Health, Inc. Sec. Litigs.*, 426 F. Supp. 2d 688 (S.D. Ohio 2006).  At the time, the $600 million settlement was the tenth-largest settlement in the history of securities fraud litigation and is the largest-ever recovery in a securities fraud action in the Sixth Circuit.  Judge Marbley commented:

  > The quality of representation in this case was superb.  Lead Counsel, [Robbins Geller], are nationally recognized leaders in complex securities litigation class actions.  The quality of the representation is demonstrated by the substantial benefit achieved for the Class and the efficient, effective prosecution and resolution of this action.  Lead Counsel defeated a volley of motions to dismiss, thwarting well-formed challenges from prominent and capable attorneys from six different law firms.

  *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007).

- ***AOL Time Warner Cases I & II***, JCCP Nos. 4322 & 4325 (Cal. Super. Ct., Los Angeles Cty.).  Robbins Geller represented The Regents of the University of California, six Ohio state pension funds, Rabo Bank (NL), the Scottish Widows Investment Partnership, several Australian public and private funds, insurance companies, and numerous additional institutional investors, both domestic and international, in state and federal court opt-out litigation stemming from Time Warner's disastrous 2001 merger with Internet high flier America Online.  Robbins Geller attorneys exposed a massive and sophisticated accounting fraud involving America Online's e-commerce and advertising revenue.  After almost four years of litigation involving extensive discovery, the Firm secured combined settlements for its opt-out clients totaling over $629 million just weeks before The Regents' case pending in California state court was scheduled to go to trial.  The Regents' gross recovery of $246 million is the largest individual opt-out securities recovery in history.

- ***Abu Dhabi Commercial Bank v. Morgan Stanley & Co.***, No. 1:08-cv-07508-SAS-DCF (S.D.N.Y.), and ***King County, Washington v. IKB Deutsche Industriebank AG***, No. 1:09-cv-08387-SAS (S.D.N.Y.).  The Firm represented multiple institutional investors in successfully pursuing recoveries from two failed structured investment vehicles, each of which had been rated "AAA" by Standard & Poors and Moody's, but which failed fantastically in 2007.  The matter settled just prior to trial in 2013.  This result was only made possible after Robbins Geller lawyers beat back the rating agencies' longtime argument that ratings were opinions protected by the First Amendment.

- ***In re HealthSouth Corp. Sec. Litig.***, No. CV-03-BE-1500-S (N.D. Ala.).  As court-appointed co-lead counsel, Robbins Geller attorneys obtained a combined recovery of $671 million from HealthSouth, its auditor Ernst & Young, and its investment banker, UBS, for the benefit of stockholder plaintiffs.  The settlement against HealthSouth represents one of the larger settlements in securities

Robbins Geller Rudman & Dowd LLP  Firm Resume  Prominent Cases, Precedent-Setting Decisions and Judicial Commendations | 23

Exhibit E
Page 82

class action history and is considered among the top 15 settlements achieved after passage of the PSLRA.  Likewise, the settlement against Ernst & Young is one of the largest securities class action settlements entered into by an accounting firm since the passage of the PSLRA.  HealthSouth and its financial advisors perpetrated one of the largest and most pervasive frauds in the history of U.S. healthcare, prompting Congressional and law enforcement inquiry and resulting in guilty pleas of 16 former HealthSouth executives in related federal criminal prosecutions.  In March 2009, Judge Karon Bowdre commented in the *HealthSouth* class certification opinion: "The court has had many opportunities since November 2001 to examine the work of class counsel and the supervision by the Class Representatives.  The court finds both to be far more than adequate."  *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260, 275 (N.D. Ala. 2009).

▪ *In re Dynegy Inc. Sec. Litig.*, No. H-02-1571 (S.D. Tex.).  As sole lead counsel representing The Regents of the University of California and the class of Dynegy investors, Robbins Geller attorneys obtained a combined settlement of $474 million from Dynegy, Citigroup, Inc. and Arthur Andersen LLP for their involvement in a clandestine financing scheme known as Project Alpha.  Given Dynegy's limited ability to pay, Robbins Geller attorneys structured a settlement (reached shortly before the commencement of trial) that maximized plaintiffs' recovery without bankrupting the company.  Most notably, the settlement agreement provides that Dynegy will appoint two board members to be nominated by The Regents, which Robbins Geller and The Regents believe will benefit all of Dynegy's stockholders.

▪ *Jones v. Pfizer Inc.*, No. 1:10-cv-03864 (S.D.N.Y.).  Lead plaintiff Stichting Philips Pensioenfonds obtained a $400 million settlement on behalf of class members who purchased Pfizer Inc. common stock during the January 19, 2006 to January 23, 2009 class period.  The settlement against Pfizer resolves accusations that it misled investors about an alleged off-label drug marketing scheme.  As sole lead counsel, Robbins Geller attorneys helped achieve this exceptional result after five years of hard-fought litigation against the toughest and the brightest members of the securities defense bar by litigating this case all the way to trial.

In approving the settlement, United States District Judge Alvin K. Hellerstein commended the Firm, noting that "[w]ithout the quality and the toughness that you have exhibited, our society would not be as good as it is with all its problems.  So from me to you is a vote of thanks for devoting yourself to this work and doing it well. . . .  You did a really good job.  Congratulations."

▪ *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 01-cv-1451 (D. Colo.).  Robbins Geller attorneys served as lead counsel for a class of investors that purchased Qwest securities.  In July 2001, the Firm filed the initial complaint in this action on behalf of its clients, long before any investigation into Qwest's financial statements was initiated by the SEC or Department of Justice.  After five years of litigation, lead plaintiffs entered into a settlement with Qwest and certain individual defendants that provided a $400 million recovery for the class and created a mechanism that allowed the vast majority of class members to share in an additional $250 million recovered by the SEC.  In 2008, Robbins Geller attorneys recovered an additional $45 million for the class in a settlement with defendants Joseph P. Nacchio and Robert S. Woodruff, the CEO and CFO, respectively, of Qwest during large portions of the class period.

▪ *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 1:09-cv-03701 (S.D.N.Y.).  Robbins Geller attorneys served as lead counsel for a class of investors and obtained court approval of a $388 million recovery in nine 2007 residential mortgage-backed securities offerings issued by J.P. Morgan.  The settlement represents, on a percentage basis, the largest recovery ever achieved in an MBS purchaser class action.  The result was achieved after more than five years of hard-fought litigation and an extensive investigation.  In granting approval of the settlement, the court stated the following about Robbins Geller attorneys litigating the case: "[T]here is no question in my mind that this is a very good result for the class and that the plaintiffs' counsel fought the case very hard with extensive discovery, a lot of depositions, several rounds of briefing of various legal issues going all the way through class certification."

Robbins Geller Rudman & Dowd LLP Firm Resume Prominent Cases, Precedent-Setting Decisions and Judicial Commendations | 24

Exhibit E
Page 83

- ***NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.***, No. 1:08-cv-10783 (S.D.N.Y.). As sole lead counsel, Robbins Geller obtained a $272 million settlement on behalf of Goldman Sachs' shareholders. The settlement concludes one of the last remaining mortgage-backed securities purchaser class actions arising out of the global financial crisis. The remarkable result was achieved following seven years of extensive litigation. After the claims were dismissed in 2010, Robbins Geller secured a landmark victory from the Second Circuit Court of Appeals that clarified the scope of permissible class actions asserting claims under the Securities Act of 1933 on behalf of MBS investors. Specifically, the Second Circuit's decision rejected the concept of "tranche" standing and concluded that a lead plaintiff in an MBS class action has class standing to pursue claims on behalf of purchasers of other securities that were issued from the same registration statement and backed by pools of mortgages originated by the same lenders who had originated mortgages backing the lead plaintiff's securities.

  In approving the settlement, the Honorable Loretta A. Preska of the Southern District of New York complimented Robbins Geller attorneys, noting:

  > Counsel, thank you for your papers. They were, by the way, extraordinary papers in support of the settlement, and I will particularly note Professor Miller's declaration in which he details the procedural aspects of the case and then speaks of plaintiffs' counsel's success in the Second Circuit essentially changing the law.
  >
  > I will also note what counsel have said, and that is that this case illustrates the proper functioning of the statute.
  >
  > \*       \*       \*
  >
  > Counsel, you can all be proud of what you've done for your clients. You've done an extraordinarily good job.

  *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 1:08-cv-10783, Transcript at 10-11 (S.D.N.Y. May 2, 2016).

- ***Schuh v. HCA Holdings, Inc.***, No. 3:11-cv-01033 (M.D. Tenn.). As sole lead counsel, Robbins Geller obtained a groundbreaking $215 million settlement for former HCA Holdings, Inc. shareholders – the largest securities class action recovery ever in Tennessee. Reached shortly before trial was scheduled to commence, the settlement resolves claims that the Registration Statement and Prospectus HCA filed in connection with the company's massive $4.3 billion 2011 IPO contained material misstatements and omissions. The recovery achieved represents between 34% and 70% of the aggregate class wide damages, far exceeding the typical recovery in a securities class action. At the hearing on final approval of the settlement, the Honorable Kevin H. Sharp described Robbins Geller attorneys as "gladiators" and commented: "Looking at the benefit obtained, the effort that you had to put into it, [and] the complexity in this case . . . I appreciate the work that you all have done on this." *Schuh v. HCA Holdings, Inc.*, No. 3:11-CV-01033, Transcript at 12-13 (M.D. Tenn. Apr. 11, 2016).

- ***Silverman v. Motorola, Inc.***, No. 1:07-cv-04507 (N.D. Ill.). The Firm served as lead counsel on behalf of a class of investors in Motorola, Inc., ultimately recovering $200 million for investors just two months before the case was set for trial. This outstanding result was obtained despite the lack of an SEC investigation or any financial restatement. In May 2012, the Honorable Amy J. St. Eve of the Northern District of Illinois commented: "The representation that [Robbins Geller] provided to the class was significant, both in terms of quality and quantity." *Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 U.S. Dist. LEXIS 63477, at *11 (N.D. Ill. May 7, 2012), *aff'd*, 739 F.3d 956 (7th Cir. 2013).

  In affirming the district court's award of attorneys' fees, the Seventh Circuit noted that "no other law firm was willing to serve as lead counsel. Lack of competition not only implies a higher fee but also suggests that most members of the securities bar saw this litigation as too risky for their practices." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013).

Robbins Geller Rudman & Dowd LLP  Firm Resume  Prominent Cases, Precedent-Setting Decisions and Judicial Commendations | 25

Exhibit E
Page 84

- *In re AT&T Corp. Sec. Litig.*, MDL No. 1399 (D.N.J.).  Robbins Geller attorneys served as lead counsel for a class of investors that purchased AT&T common stock.  The case charged defendants AT&T and its former Chairman and CEO, C. Michael Armstrong, with violations of the federal securities laws in connection with AT&T's April 2000 initial public offering of its wireless tracking stock, the largest IPO in American history.  After two weeks of trial, and on the eve of scheduled testimony by Armstrong and infamous telecom analyst Jack Grubman, defendants agreed to settle the case for $100 million.  In granting approval of the settlement, the court stated the following about the Robbins Geller attorneys handling the case:

> Lead Counsel are highly skilled attorneys with great experience in prosecuting complex securities action[s], and their professionalism and diligence displayed during [this] litigation substantiates this characterization.  The Court notes that Lead Counsel displayed excellent lawyering skills through their consistent preparedness during court proceedings, arguments and the trial, and their well-written and thoroughly researched submissions to the Court.  Undoubtedly, the attentive and persistent effort of Lead Counsel was integral in achieving the excellent result for the Class.

*In re AT&T Corp. Sec. Litig.*, MDL No. 1399, 2005 U.S. Dist. LEXIS 46144, at *28-*29 (D.N.J. Apr. 25, 2005), *aff'd*, 455 F.3d 160 (3d Cir. 2006).

- *In re Dollar Gen. Corp. Sec. Litig.*, No. 01-CV-00388 (M.D. Tenn.).  Robbins Geller attorneys served as lead counsel in this case in which the Firm recovered $172.5 million for investors.  The *Dollar General* settlement was the largest shareholder class action recovery ever in Tennessee.

- *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 00-CV-2838 (N.D. Ga.).  As co-lead counsel representing Coca-Cola shareholders, Robbins Geller attorneys obtained a recovery of $137.5 million after nearly eight years of litigation.  Robbins Geller attorneys traveled to three continents to uncover the evidence that ultimately resulted in the settlement of this hard-fought litigation.  The case concerned Coca-Cola's shipping of excess concentrate at the end of financial reporting periods for the sole purpose of meeting analyst earnings expectations, as well as the company's failure to properly account for certain impaired foreign bottling assets.

- *Schwartz v. TXU Corp.*, No. 02-CV-2243 (N.D. Tex.).  As co-lead counsel, Robbins Geller attorneys obtained a recovery of over $149 million for a class of purchasers of TXU securities.  The recovery compensated class members for damages they incurred as a result of their purchases of TXU securities at inflated prices.  Defendants had inflated the price of these securities by concealing the fact that TXU's operating earnings were declining due to a deteriorating gas pipeline and the failure of the company's European operations.

- *In re Doral Fin. Corp. Sec. Litig.*, 05 MDL No. 1706 (S.D.N.Y.).  In July 2007, the Honorable Richard Owen of the Southern District of New York approved the $129 million settlement, finding in his order:

> The services provided by Lead Counsel [Robbins Geller] were efficient and highly successful, resulting in an outstanding recovery for the Class without the substantial expense, risk and delay of continued litigation.  Such efficiency and effectiveness supports the requested fee percentage.
>
> Cases brought under the federal securities laws are notably difficult and notoriously uncertain. . . .  Despite the novelty and difficulty of the issues raised, Lead Plaintiffs' counsel secured an excellent result for the Class.
>
> . . . Based upon Lead Plaintiff's counsel's diligent efforts on behalf of the Class, as well as their skill and reputations, Lead Plaintiff's counsel were able to negotiate a very favorable result for the Class. . . .  The ability of [Robbins Geller] to obtain such a favorable partial settlement for the Class in the face of such formidable opposition confirms the superior quality of their representation . . . .

*In re Doral Fin. Corp. Sec. Litig.*, No. 1:05-md-01706, Order at 4-5 (S.D.N.Y. July 17, 2007).

- *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.).  Robbins Geller attorneys served as court-appointed co-lead counsel for a class of investors.  The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases in recent history.  After three and one half years of intense litigation, the case was settled for a total of $1.027 billion, at the time the largest ever antitrust settlement.  An excerpt from the court's opinion reads:

  > Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country.  It is difficult to conceive of better representation than the parties to this action achieved.

  *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998).

- *In re Exxon Valdez*, No. A89 095 Civ. (D. Alaska), and *In re Exxon Valdez Oil Spill Litig.*, No. 3 AN 89 2533 (Alaska Super. Ct., 3d Jud. Dist.).  Robbins Geller attorneys served on the Plaintiffs' Coordinating Committee and Plaintiffs' Law Committee in this massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989.  The jury awarded hundreds of millions in compensatory damages, as well as $5 billion in punitive damages (the latter were later reduced by the U.S. Supreme Court to $507 million).

- *Mangini v. R.J. Reynolds Tobacco Co.*, No. 939359 (Cal. Super. Ct., San Francisco Cty.).  In this case, R.J. Reynolds admitted that "the *Mangini* action, and the way that it was vigorously litigated, was an early, significant and unique driver of the overall legal and social controversy regarding underage smoking that led to the decision to phase out the Joe Camel Campaign."

- *Does I v. The Gap, Inc.*, No. 01 0031 (D. N. Mar. I.).  In this groundbreaking case, Robbins Geller attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target and J.C. Penney.  In the first action of its kind, Robbins Geller attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act, and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan.  This case was a companion to two other actions: *Does I v. Advance Textile Corp.*, No. 99 0002 (D. N. Mar. I.), which alleged overtime violations by the garment factories under the Fair Labor Standards Act and local labor law, and *UNITE v. The Gap, Inc.*, No. 300474 (Cal. Super. Ct., San Francisco Cty.), which alleged violations of California's Unfair Practices Law by the U.S. retailers.  These actions resulted in a settlement of approximately $20 million that included a comprehensive monitoring program to address past violations by the factories and prevent future ones.  The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts in bringing about the precedent-setting settlement of the actions.

- *Hall v. NCAA (Restricted Earnings Coach Antitrust Litigation)*, No. 94-2392 (D. Kan.).  Robbins Geller attorneys were lead counsel and lead trial counsel for one of three classes of coaches in these consolidated price-fixing actions against the National Collegiate Athletic Association.  On May 4, 1998, the jury returned verdicts in favor of the three classes for more than $70 million.

- *In re Prison Realty Sec. Litig.*, No. 3:99-0452 (M.D. Tenn.).  Robbins Geller attorneys served as lead counsel for the class, obtaining a $105 million recovery.

- *In re Honeywell Int'l, Inc. Sec. Litig.*, No. 00-cv-03605 (D.N.J.).  Robbins Geller attorneys served as lead counsel for a class of investors that purchased Honeywell common stock.  The case charged Honeywell and its top officers with violations of the federal securities laws, alleging the defendants made false public statements concerning Honeywell's merger with Allied Signal, Inc. and that defendants falsified Honeywell's financial statements.  After extensive discovery, Robbins Geller attorneys obtained a $100 million settlement for the class.

- *Schwartz v. Visa Int'l*, No. 822404-4 (Cal. Super. Ct., Alameda Cty.).  After years of litigation and a six-month trial, Robbins Geller attorneys won one of the largest consumer protection verdicts ever awarded in the United States.  Robbins Geller attorneys represented California consumers in an action against Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders.  The court ordered Visa and MasterCard to return $800 million in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest.  In addition, the court ordered full disclosure of the hidden fee.

- *Thompson v. Metro. Life Ins. Co.*, No. 00-cv-5071 (S.D.N.Y.).  Robbins Geller attorneys served as lead counsel and obtained $145 million for the class in a settlement involving racial discrimination claims in the sale of life insurance.

- *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, MDL No. 1061 (D.N.J.).  In one of the first cases of its kind, Robbins Geller attorneys obtained a settlement of $4 billion for deceptive sales practices in connection with the sale of life insurance involving the "vanishing premium" sales scheme.

### Precedent-Setting Decisions

Robbins Geller attorneys operate at the forefront of litigation.  Our work often changes the legal landscape, resulting in an environment that is more-favorable for obtaining recoveries for our clients.

## Investor and Shareholder Rights

- *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012), *cert. denied*, _U.S._, 133 S. Ct. 1624 (2013).  In a securities fraud action involving mortgage-backed securities, the Second Circuit rejected the concept of "tranche" standing and found that a lead plaintiff has class standing to pursue claims on behalf of purchasers of securities that were backed by pools of mortgages originated by the same lenders who had originated mortgages backing the lead plaintiff's securities.  The court noted that, given those common lenders, the lead plaintiff's claims as to its purchases implicated "the same set of concerns" that purchasers in several of the other offerings possessed.  The court also rejected the notion that the lead plaintiff lacked standing to represent investors in different tranches.

- *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694 (9th Cir. 2012).  The panel reversed in part and affirmed in part the dismissal of investors' securities fraud class action alleging violations of §§10(b), 20(a), and 20A of the Securities Exchange Act of 1934 and SEC Rule 10b-5 in connection with a restatement of financial results of the company in which the investors had purchased stock.

  The panel held that the third amended complaint adequately pleaded the §10(b), §20A and Rule 10b-5 claims.  Considering the allegations of scienter holistically, as the U.S. Supreme Court directed in *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S 27, 48-49 (2011), the panel concluded that the inference that the defendant company and its chief executive officer and former chief financial officer were deliberately reckless as to the truth of their financial reports and related public statements following a merger was at least as compelling as any opposing inference.

- *Fox v. JAMDAT Mobile, Inc.*, 185 Cal. App. 4th 1068 (2010).  Concluding that Delaware's shareholder ratification doctrine did not bar the claims, the California Court of Appeal reversed dismissal of a shareholder class action alleging breach of fiduciary duty in a corporate merger.

- *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774 (3d Cir. 2009).  The Third Circuit flatly rejected defense contentions that where relief is sought under §11 of the Securities Act of 1933, which imposes liability when securities are issued pursuant to an incomplete or misleading registration statement, class certification should depend upon findings concerning market efficiency and loss causation.

- *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S 27 (2011), *aff'g* 585 F.3d 1167 (9th Cir. 2009).  In a securities fraud action involving the defendants' failure to disclose a possible link between the company's popular cold remedy and a life-altering side effect observed in some users, the U.S.

Supreme Court unanimously affirmed the Ninth Circuit's (a) rejection of a bright-line "statistical significance" materiality standard, and (b) holding that plaintiffs had successfully pleaded a strong inference of the defendants' scienter.

▪ *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009). Aided by former U.S. Supreme Court Justice O'Connor's presence on the panel, the Fifth Circuit reversed a district court order denying class certification and also reversed an order granting summary judgment to defendants. The court held that the district court applied an incorrect fact-for-fact standard of loss causation, and that genuine issues of fact on loss causation precluded summary judgment.

▪ *In re F5 Networks, Inc., Derivative Litig.*, 207 P.3d 433 (Wash. 2009). In a derivative action alleging unlawful stock option backdating, the Supreme Court of Washington ruled that shareholders need not make a pre-suit demand on the board of directors where this step would be futile, agreeing with plaintiffs that favorable Delaware case law should be followed as persuasive authority.

▪ *Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009). In a rare win for investors in the Fifth Circuit, the court reversed an order of dismissal, holding that safe harbor warnings were not meaningful when the facts alleged established a strong inference that defendants knew their forecasts were false. The court also held that plaintiffs sufficiently alleged loss causation.

▪ *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009). In a victory for investors in the Third Circuit, the court reversed an order of dismissal, holding that shareholders pled with particularity why the company's repeated denials of price discounts on products were false and misleading when the totality of facts alleged established a strong inference that defendants knew their denials were false.

▪ *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342 (3d Cir. 2009). The Third Circuit held that claims filed for violation of §10(b) of the Securities Exchange Act of 1934 were timely, adopting investors' argument that because scienter is a critical element of the claims, the time for filing them cannot begin to run until the defendants' fraudulent state of mind should be apparent.

▪ *Rael v. Page*, 222 P.3d 678 (N.M. Ct. App. 2009). In this shareholder class and derivative action, Robbins Geller attorneys obtained an appellate decision reversing the trial court's dismissal of the complaint alleging serious director misconduct in connection with the merger of SunCal Companies and Westland Development Co., Inc., a New Mexico company with large and historic landholdings and other assets in the Albuquerque area. The appellate court held that plaintiff's claims for breach of fiduciary duty were direct, not derivative, because they constituted an attack on the validity or fairness of the merger and the conduct of the directors. Although New Mexico law had not addressed this question directly, at the urging of the Firm's attorneys, the court relied on Delaware law for guidance, rejecting the "special injury" test for determining the direct versus derivative inquiry and instead applying more recent Delaware case law.

▪ *Lane v. Page*, No. 06-cv-1071 (D.N.M. 2012). In May 2012, while granting final approval of the settlement in the federal component of the Westland cases, Judge Browning in the District of New Mexico commented:

> Class Counsel are highly skilled and specialized attorneys who use their substantial experience and expertise to prosecute complex securities class actions. In possibly one of the best known and most prominent recent securities cases, Robbins Geller served as sole lead counsel – *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.). *See* Report at 3. The Court has previously noted that the class would "receive high caliber legal representation" from class counsel, and throughout the course of the litigation the Court has been impressed with the quality of representation on each side. *Lane v. Page*, 250 F.R.D. at 647.

*Lane v. Page*, 862 F. Supp. 2d 1182, 1253-54 (D.N.M. 2012).

In addition, Judge Browning stated, "'Few plaintiffs' law firms could have devoted the kind of time, skill, and financial resources over a five-year period necessary to achieve the pre- and post-Merger benefits obtained for the class here.' . . . [Robbins Geller is] both skilled and experienced, and used those skills and experience for the benefit of the class [Robbins Geller is] both skilled and experienced, and used those skills and experience for the benefit of the class." *Id.* at 1254.

- *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031 (9th Cir. 2008). In a case of first impression, the Ninth Circuit held that the Securities Act of 1933's specific non-removal features had not been trumped by the general removal provisions of the Class Action Fairness Act of 2005.

- *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008). The Ninth Circuit upheld defrauded investors' loss causation theory as plausible, ruling that a limited temporal gap between the time defendants' misrepresentation was publicly revealed and the subsequent decline in stock value was reasonable where the public had not immediately understood the impact of defendants' fraud.

- *In re WorldCom Sec. Litig.*, 496 F.3d 245 (2d Cir. 2007). The Second Circuit held that the filing of a class action complaint tolls the limitations period for all members of the class, including those who choose to opt out of the class action and file their own individual actions without waiting to see whether the district court certifies a class – reversing the decision below and effectively overruling multiple district court rulings that *American Pipe* tolling did not apply under these circumstances.

- *In re Merck & Co. Sec., Derivative & ERISA Litig.*, 493 F.3d 393 (3d Cir. 2007). In a shareholder derivative suit appeal, the Third Circuit held that the general rule that discovery may not be used to supplement demand-futility allegations does not apply where the defendants enter a voluntary stipulation to produce materials relevant to demand futility without providing for any limitation as to their use. In April 2007, the Honorable D. Brooks Smith praised Robbins Geller partner Joe Daley's efforts in this litigation:

  > Thank you very much Mr. Daley and a thank you to all counsel. As Judge Cowen mentioned, this was an exquisitely well-briefed case; it was also an extremely well-argued case, and we thank counsel for their respective jobs here in the matter, which we will take under advisement. Thank you.

  *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. 06-2911, Transcript at 35:37-36:00 (3d Cir. Apr. 12, 2007).

- *Alaska Elec. Pension Fund v. Brown*, 941 A.2d 1011 (Del. 2007). The Supreme Court of Delaware held that the Alaska Electrical Pension Fund, for purposes of the "corporate benefit" attorney-fee doctrine, was presumed to have caused a substantial increase in the tender offer price paid in a "going private" buyout transaction. The Court of Chancery originally ruled that Alaska's counsel, Robbins Geller, was not entitled to an award of attorney fees, but Delaware's high court, in its published opinion, reversed and remanded for further proceedings.

- *Crandon Capital Partners v. Shelk*, 157 P.3d 176 (Or. 2007). Oregon's Supreme Court ruled that a shareholder plaintiff in a derivative action may still seek attorney fees even if the defendants took actions to moot the underlying claims. The Firm's attorneys convinced Oregon's highest court to take the case, and reverse, despite the contrary position articulated by both the trial court and the Oregon Court of Appeals.

- *In re Qwest Commc'ns Int'l*, 450 F.3d 1179 (10th Cir. 2006). In a case of first impression, the Tenth Circuit held that a corporation's deliberate release of purportedly privileged materials to governmental agencies was not a "selective waiver" of the privileges such that the corporation could refuse to produce the same materials to non-governmental plaintiffs in private securities fraud litigation.

- *In re Guidant S'holders Derivative Litig.*, 841 N.E.2d 571 (Ind. 2006). Answering a certified question from a federal court, the Supreme Court of Indiana unanimously held that a pre-suit demand in a derivative action is excused if the demand would be a futile gesture. The court adopted a

"demand futility" standard and rejected defendants' call for a "universal demand" standard that might have immediately ended the case.

- **Denver Area Meat Cutters v. Clayton**, 209 S.W.3d 584 (Tenn. Ct. App. 2006). The Tennessee Court of Appeals rejected an objector's challenge to a class action settlement arising out of Warren Buffet's 2003 acquisition of Tennessee-based Clayton Homes. In their effort to secure relief for Clayton Homes stockholders, the Firm's attorneys obtained a temporary injunction of the Buffet acquisition for six weeks in 2003 while the matter was litigated in the courts. The temporary halt to Buffet's acquisition received national press attention.

- **DeJulius v. New Eng. Health Care Emps. Pension Fund**, 429 F.3d 935 (10th Cir. 2005). The Tenth Circuit held that the multi-faceted notice of a $50 million settlement in a securities fraud class action had been the best notice practicable under the circumstances, and thus satisfied both constitutional due process and Rule 23 of the Federal Rules of Civil Procedure.

- **In re Daou Sys.**, 411 F.3d 1006 (9th Cir. 2005). The Ninth Circuit sustained investors' allegations of accounting fraud and ruled that loss causation was adequately alleged by pleading that the value of the stock they purchased declined when the issuer's true financial condition was revealed.

- **Barrie v. Intervoice-Brite, Inc.**, 397 F.3d 249 (5th Cir.), *reh'g denied and opinion modified*, 409 F.3d 653 (5th Cir. 2005). The Fifth Circuit upheld investors' accounting-fraud claims, holding that fraud is pled as to both defendants when one knowingly utters a false statement and the other knowingly fails to correct it, even if the complaint does not specify who spoke and who listened.

- **City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.**, 399 F.3d 651 (6th Cir. 2005). The Sixth Circuit held that a statement regarding objective data supposedly supporting a corporation's belief that its tires were safe was actionable where jurors could have found a reasonable basis to believe the corporation was aware of undisclosed facts seriously undermining the statement's accuracy.

- **Ill. Mun. Ret. Fund v. Citigroup, Inc.**, 391 F.3d 844 (7th Cir. 2004). The Seventh Circuit upheld a district court's decision that the Illinois Municipal Retirement Fund was entitled to litigate its claims under the Securities Act of 1933 against WorldCom's underwriters before a state court rather than before the federal forum sought by the defendants.

- **Nursing Home Pension Fund, Local 144 v. Oracle Corp.**, 380 F.3d 1226 (9th Cir. 2004). The Ninth Circuit ruled that defendants' fraudulent intent could be inferred from allegations concerning their false representations, insider stock sales and improper accounting methods.

- **Southland Sec. Corp. v. INSpire Ins. Sols. Inc.**, 365 F.3d 353 (5th Cir. 2004). The Fifth Circuit sustained allegations that an issuer's CEO made fraudulent statements in connection with a contract announcement.

## Insurance

- **Smith v. Am. Family Mut. Ins. Co.**, 289 S.W.3d 675 (Mo. Ct. App. 2009). Capping nearly a decade of hotly contested litigation, the Missouri Court of Appeals reversed the trial court's judgment notwithstanding the verdict for auto insurer American Family and reinstated a unanimous jury verdict for the plaintiff class.

- **Troyk v. Farmers Grp., Inc.**, 171 Cal. App. 4th 1305 (2009). The California Court of Appeal held that Farmers Insurance's practice of levying a "service charge" on one-month auto insurance policies, without specifying the charge in the policy, violated California's Insurance Code.

- **Lebrilla v. Farmers Grp., Inc.**, 119 Cal. App. 4th 1070 (2004). Reversing the trial court, the California Court of Appeal ordered class certification of a suit against Farmers, one of the largest automobile insurers in California, and ruled that Farmers' standard automobile policy requires it to provide parts that are as good as those made by vehicle's manufacturer. The case involved Farmers' practice of using inferior imitation parts when repairing insureds' vehicles.

- *In re Monumental Life Ins. Co.*, 365 F.3d 408, 416 (5th Cir. 2004). The Fifth Circuit Court of Appeals reversed a district court's denial of class certification in a case filed by African-Americans seeking to remedy racially discriminatory insurance practices. The Fifth Circuit held that a monetary relief claim is viable in a Rule 23(b)(2) class if it flows directly from liability to the class as a whole and is capable of classwide "'computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances.'"

## Consumer Protection

- *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). In a leading decision interpreting the scope of Proposition 64's new standing requirements under California's Unfair Competition Law (UCL), the California Supreme Court held that consumers alleging that a manufacturer has misrepresented its product have "lost money or property" within the meaning of the initiative, and thus have standing to sue under the UCL, if they "can truthfully allege that they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise." *Id.* at 317. *Kwikset* involved allegations, proven at trial, that defendants violated California's "Made in the U.S.A." statute by representing on their labels that their products were "Made in U.S.A." or "All-American Made" when, in fact, the products were substantially made with foreign parts and labor.

- *Safeco Ins. Co. of Am. v. Superior Court*, 173 Cal. App. 4th 814 (2009). In a class action against auto insurer Safeco, the California Court of Appeal agreed that the plaintiff should have access to discovery to identify a new class representative after her standing to sue was challenged.

- *Consumer Privacy Cases*, 175 Cal. App. 4th 545 (2009). The California Court of Appeal rejected objections to a nationwide class action settlement benefiting Bank of America customers.

- *Koponen v. Pac. Gas & Elec. Co.*, 165 Cal. App. 4th 345 (2008). The Firm's attorneys obtained a published decision reversing the trial court's dismissal of the action, and holding that the plaintiff's claims for damages arising from the utility's unauthorized use of rights-of-way or easements obtained from the plaintiff and other landowners were not barred by a statute limiting the authority of California courts to review or correct decisions of the California Public Utilities Commission.

- *Sanford v. MemberWorks, Inc.*, 483 F.3d 956 (9th Cir. 2007). In a telemarketing-fraud case, where the plaintiff consumer insisted she had never entered the contractual arrangement that defendants said bound her to arbitrate individual claims to the exclusion of pursuing class claims, the Ninth Circuit reversed an order compelling arbitration – allowing the plaintiff to litigate on behalf of a class.

- *Ritt v. Billy Blanks Enters.*, 870 N.E.2d 212 (Ohio Ct. App. 2007). In the Ohio analog to the West case, the Ohio Court of Appeals approved certification of a class of Ohio residents seeking relief under Ohio's consumer protection laws for the same telemarketing fraud.

- *Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n*, 148 P.3d 1179 (Haw. 2006). The Supreme Court of Hawaii ruled that claims of unfair competition were not subject to arbitration and that claims of tortious interference with prospective economic advantage were adequately alleged.

- *Branick v. Downey Sav. & Loan Ass'n*, 39 Cal. 4th 235 (2006). Robbins Geller attorneys were part of a team of lawyers that briefed this case before the Supreme Court of California. The court issued a unanimous decision holding that new plaintiffs may be substituted, if necessary, to preserve actions pending when Proposition 64 was passed by California voters in 2004. Proposition 64 amended California's Unfair Competition Law and was aggressively cited by defense lawyers in an effort to dismiss cases after the initiative was adopted.

- *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457 (2006). The California Court of Appeal reversed the trial court, holding that plaintiff's theories attacking a variety of allegedly inflated mortgage-related fees were actionable.

- *West Corp. v. Superior Court*, 116 Cal. App. 4th 1167 (2004).  The California Court of Appeal upheld the trial court's finding that jurisdiction in California was appropriate over the out-of-state corporate defendant whose telemarketing was aimed at California residents.  Exercise of jurisdiction was found to be in keeping with considerations of fair play and substantial justice.

- *Kruse v. Wells Fargo Home Mortg., Inc.*, 383 F.3d 49 (2d Cir. 2004), and *Santiago v. GMAC Mortg. Grp., Inc.*, 417 F.3d 384 (3d Cir. 2005).  In two groundbreaking federal appellate decisions, the Second and Third Circuits each ruled that the Real Estate Settlement Practices Act prohibits marking up home loan-related fees and charges.

## Additional Judicial Commendations

Robbins Geller attorneys have been praised by countless judges all over the country for the quality of their representation in class-action lawsuits.  In addition to the judicial commendations set forth in the Prominent Cases and Precedent-Setting Decisions sections, judges have acknowledged the successful results of the Firm and its attorneys with the following plaudits:

- In December 2016, at the final approval hearing, the Honorable James G. Carr stated: "I kept throwing the case out, and you kept coming back. . . .  And it's both remarkable and noteworthy and a credit to you and your firm that you did so. . . .  [Y]ou persuaded the Sixth Circuit.  As we know, that's no mean feat at all."  Judge Carr further complimented the Firm, noting that it "goes without question or even saying" that Robbins Geller is very well-known nationally and that the settlement is an excellent result for the class.  He succinctly concluded that "given the tenacity and the time and the effort that [Robbins Geller] lawyers put into [the case]" makes the class "a lot better off."  *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, No. 3:05-cv-07393-JGC, Transcript at 4, 10, 14, 17 (N.D. Ohio Nov. 18, 2016).

- In September 2016, in granting final approval of the settlement, Judge Arleo commended the "vigorous and skilled efforts" of Robbins Geller attorneys for obtaining "an excellent recovery."  Judge Arleo added that the settlement was reached after "contentious, hard-fought litigation" that ended with "a very, very good result for the class" in a "risky case."  *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, No. 2:12-cv-05275-MCA-LDW, Transcript of Hearing at 18-20 (D.N.J. Sept. 28, 2016).

- In August 2015, at the final approval hearing for the settlement, the Honorable Karen M. Humphreys praised Robbins Geller's "extraordinary efforts" and "excellent lawyering," noting that the settlement "really does signal that the best is yet to come for your clients and for your prodigious labor as professionals. . . .  I wish more citizens in our country could have an appreciation of what this [settlement] truly represents."  *Bennett v. Sprint Nextel Corp.*, No. 2:09-cv-02122-EFM-KMH, Transcript at 8, 25 (D. Kan. Aug. 12, 2015).

- In August 2015, the Honorable Judge Max O. Cogburn, Jr. noted that "plaintiffs' attorneys were able [to] achieve the big success early" in the case and obtained an "excellent result."  The "extraordinary" settlement was because of "good lawyers . . . doing their good work."  *Nieman v. Duke Energy Corp.*, No. 3:12-cv-456, Transcript at 21, 23, 30 (W.D.N.C. Aug. 12, 2015).

- In July 2015, in approving the settlement, the Honorable Douglas L. Rayes of the District of Arizona stated: "Settlement of the case during pendency of appeal for more than an insignificant amount is rare.  The settlement here is substantial and provides favorable recovery for the settlement class under these circumstances."  He continued, noting, "[a]s against the objective measures of . . . settlements [in] other similar cases, [the recovery] is on the high end."  *Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, No. 2:06-cv-02674-DLR, Transcript at 8, 11 (D. Ariz. July 28, 2015).

- In June 2015, at the conclusion of the hearing for final approval of the settlement, the Honorable Susan Richard Nelson of the District of Minnesota noted that it was "a pleasure to be able to preside over a case like this," praising Robbins Geller in achieving "an outstanding [result]" for [its] clients," as

she was "very impressed with the work done on th[e] case." *In re St. Jude Med., Inc. Sec. Litig.*, No. 0:10-cv-00851-SRN-TNL, Transcript at 7 (D. Minn. June 12, 2015).

- In May 2015, at the fairness hearing on the settlement, the Honorable William G. Young noted that the case was "very well litigated" by Robbins Geller attorneys, adding that "I don't just say that as a matter of form. . . . I thank you for the vigorous litigation that I've been permitted to be a part of." *Courtney v. Avid Tech., Inc.*, No. 1:13-cv-10686-WGY, Transcript at 8-9 (D. Mass May 12, 2015).

- In January 2015, the Honorable William J. Haynes, Jr. of the Middle District of Tennessee described the settlement as a "highly favorable result achieved for the Class" through Robbins Geller's "diligent prosecution . . . [and] quality of legal services." The settlement represents the third largest securities recovery ever in the Middle District of Tennessee and the largest in more than a decade. *Garden City Emps.' Ret. Sys. v. Psychiatric Solutions, Inc.*, No. 3:09-cv-00882, 2015 U.S. Dist. LEXIS 181943, at *6-*7 (M.D. Tenn. Jan. 16, 2015).

- In September 2014, in approving the settlement for shareholders, Vice Chancellor John W. Noble noted "[t]he litigation caused a substantial benefit for the class. It is unusual to see a $29 million recovery." Vice Chancellor Noble characterized the litigation as "novel" and "not easy," but "[t]he lawyers took a case and made something of it." The Court commended Robbins Geller's efforts in obtaining this result: "The standing and ability of counsel cannot be questioned" and "the benefits achieved by plaintiffs' counsel in this case cannot be ignored." *In re Gardner Denver, Inc. S'holder Litig.*, No. 8505-VCN, Transcript at 26-28 (Del. Ch. Sept. 3, 2014).

- In May 2014, at the conclusion of the hearing for final approval of the settlement, the Honorable Elihu M. Berle stated: "I would finally like to congratulate counsel on their efforts to resolve this case, on excellent terms – it was the best interest of the class – and to the exhibition of professionalism. So I do thank you for all your efforts." *Liberty Mutual Overtime Cases*, No. JCCP 4234, Transcript at 20:1-5 (Cal. Super. Ct., Los Angeles Cty. May 29, 2014).

- In March 2014, Ninth Circuit Judge J. Clifford Wallace (presiding) expressed the gratitude of the court: "Thank you. I want to especially thank counsel for this argument. This is a very complicated case and I think we were assisted no matter how we come out by competent counsel coming well prepared. . . . It was a model of the type of an exercise that we appreciate. Thank you very much for your work . . . you were of service to the court." *Eclectic Properties East, LLC v. The Marcus & Millichap Co.*, No. 12-16526, Transcript (9th Cir. Mar. 14, 2014).

- In February 2014, in approving a settlement, Judge Edward M. Chen noted the "very substantial risks" in the case and recognized Robbins Geller had performed "extensive work on the case." *In re VeriFone Holdings, Inc. Sec. Litig.*, No. C-07-6140, 2014 U.S. Dist. LEXIS 20044, at *5, *11-*12 (N.D. Cal. Feb. 18, 2014).

- In August 2013, in granting final approval of the settlement, the Honorable Richard J. Sullivan stated: "Lead Counsel is to be commended for this result: it expended considerable effort and resources over the course of the action researching, investigating, and prosecuting the claims, at significant risk to itself, and in a skillful and efficient manner, to achieve an outstanding recovery for class members. Indeed, the result – and the class's embrace of it – is a testament to the experience and tenacity Lead Counsel brought to bear." *City of Livonia Emps. Ret. Sys. v. Wyeth*, No. 07 Civ. 10329, 2013 U.S. Dist. LEXIS 113658, at *13 (S.D.N.Y. Aug. 7, 2013).

- In July 2013, in granting final approval of the settlement, the Honorable William H. Alsup stated that Robbins Geller did "excellent work in this case," and continued, "I look forward to seeing you on the next case." *Fraser v. Asus Comput. Int'l*, No. C 12-0652, Transcript at 12:2-3 (N.D. Cal. July 11, 2013).

- In June 2013, in certifying the class, U.S. District Judge James G. Carr recognized Robbins Geller's steadfast commitment to the class, noting that "plaintiffs, with the help of Robbins Geller, have twice successfully appealed this court's orders granting defendants' motion to dismiss." *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, 292 F.R.D. 515, 524 (N.D. Ohio 2013).

- In November 2012, in granting appointment of lead plaintiff, Chief Judge James F. Holderman commended Robbins Geller for its "substantial experience in securities class action litigation and is recognized as 'one of the most successful law firms in securities class actions, if not the preeminent one, in the country.' *In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008) (Harmon, J.)." He continued further that, "'Robbins Geller attorneys are responsible for obtaining the largest securities fraud class action recovery ever [**$7.2** billion in *Enron*], as well as the largest recoveries in the Fifth, Sixth, Eighth, Tenth and Eleventh Circuits.'" *Bristol Cty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*, No. 12 C 3297, 2012 U.S. Dist. LEXIS 161441 at *21 (N.D. Ill. Nov. 9, 2012).

- In June 2012, in granting plaintiffs' motion for class certification, the Honorable Inge Prytz Johnson noted that other courts have referred to Robbins Geller as "'one of the most successful law firms in securities class actions . . . in the country.'" *Local 703, I.B. v. Regions Fin. Corp.*, 282 F.R.D. 607, 616 (N.D. Ala. 2012) (quoting *In re Enron Corp. Sec. Litig.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008)), *aff'd in part and vacated in part on other grounds*, 762 F.3d 1248 (11th Cir. 2014).

- In June 2012, in granting final approval of the settlement, the Honorable Barbara S. Jones commented that "class counsel's representation, from the work that I saw, appeared to me to be of the highest quality." *In re CIT Grp. Inc. Sec. Litig.*, No. 08 Civ. 6613, Transcript at 9:16-18 (S.D.N.Y. June 13, 2012).

- In March 2012, in granting certification for the class, Judge Robert W. Sweet referenced the *Enron* case, agreeing that Robbins Geller's "'clearly superlative litigating and negotiating skills'" give the Firm an "'outstanding reputation, experience, and success in securities litigation nationwide,'" thus, "'[t]he experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country.'" *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 158 (S.D.N.Y. 2012).

- In March 2011, in denying defendants' motion to dismiss, Judge Richard Sullivan commented: "Let me thank you all. . . . [The motion] was well argued . . . and . . . well briefed . . . . I certainly appreciate having good lawyers who put the time in to be prepared . . . ." *Anegada Master Fund Ltd. v. PxRE Grp. Ltd.*, No. 08-cv-10584, Transcript at 83 (S.D.N.Y. Mar. 16, 2011).

- In January 2011, the court praised Robbins Geller attorneys: "They have gotten very good results for stockholders. . . . [Robbins Geller has] such a good track record." *In re Compellent Technologies, Inc. S'holder Litig.*, No. 6084-VCL, Transcript at 20-21 (Del. Ch. Jan. 13, 2011).

- In August 2010, in reviewing the settlement papers submitted by the Firm, Judge Carlos Murguia stated that Robbins Geller performed "a commendable job of addressing the relevant issues with great detail and in a comprehensive manner . . . . The court respects the [Firm's] experience in the field of derivative [litigation]." *Alaska Elec. Pension Fund v. Olofson*, No. 08-cv-02344-CM-JPO (D. Kan.) (Aug. 20, 2010 e-mail from court re: settlement papers).

- In June 2009, Judge Ira Warshawsky praised the Firm's efforts in *In re Aeroflex, Inc. S'holder Litig.*: "There is no doubt that the law firms involved in this matter represented in my opinion the cream of the crop of class action business law and mergers and acquisition litigators, and from a judicial point of view it was a pleasure working with them." *In re Aeroflex, Inc. S'holder Litig.*, No. 003943/07, Transcript at 25:14-18 (N.Y. Sup. Ct., Nassau Cty. June 30, 2009).

- In March 2009, in granting class certification, the Honorable Robert Sweet of the Southern District of New York commented in *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 74 (S.D.N.Y. 2009): "As to the second prong, the Specialist Firms have not challenged, in this motion, the qualifications, experience, or ability of counsel for Lead Plaintiff, [Robbins Geller], to conduct this litigation. Given [Robbins Geller's] substantial experience in securities class action litigation and the extensive discovery already conducted in this case, this element of adequacy has also been satisfied."

- In June 2008, the court commented, "Plaintiffs' lead counsel in this litigation, [Robbins Geller], has demonstrated its considerable expertise in shareholder litigation, diligently advocating the rights of Home Depot shareholders in this Litigation. [Robbins Geller] has acted with substantial skill and

professionalism in representing the plaintiffs and the interests of Home Depot and its shareholders in prosecuting this case." *City of Pontiac General Employees' Ret. Sys. v. Langone*, No. 2006-122302, Findings of Fact in Support of Order and Final Judgment at 2 (Ga. Super. Ct., Fulton Cty. June 10, 2008).

▪ In a December 2006 hearing on the $50 million consumer privacy class action settlement in *Kehoe v. Fidelity Fed. Bank & Tr.*, No. 03-80593-CIV (S.D. Fla.), United States District Court Judge Daniel T.K. Hurley said the following:

> First, I thank counsel. As I said repeatedly on both sides, we have been very, very fortunate. We have had fine lawyers on both sides. The issues in the case are significant issues. We are talking about issues dealing with consumer protection and privacy. Something that is increasingly important today in our society. . . . I want you to know I thought long and hard about this. I am absolutely satisfied that the settlement is a fair and reasonable settlement. . . . I thank the lawyers on both sides for the extraordinary effort that has been brought to bear here . . . .

*Kehoe v. Fidelity Fed. Bank & Tr.*, No. 03-80593-CIV, Transcript at 26, 28-29 (S.D. Fla. Dec. 7, 2007).

▪ In *Stanley v. Safeskin Corp.*, No. 99 CV 454 (S.D. Cal.), where Robbins Geller attorneys obtained $55 million for the class of investors, Judge Moskowitz stated:

> I said this once before, and I'll say it again. I thought the way that your firm handled this case was outstanding. This was not an easy case. It was a complicated case, and every step of the way, I thought they did a very professional job.

*Stanley v. Safeskin Corp.*, No. 99 CV 454, Transcript at 13 (S.D. Cal. May 25, 2004).

## Attorney Biographies

### Partners

#### Mario Alba Jr.



Mario Alba is a partner in the Firm's Melville office. He has served as lead counsel in numerous cases and is responsible for initiating, investigating, researching, and filing securities and consumer fraud class actions. He has recovered millions of dollars in numerous actions, including cases against NBTY, Inc. ($16 million), OSI Pharmaceuticals ($9 million recovery) and PXRe Group, Ltd. ($5.9 million). Alba is also a member of the Firm's Institutional Outreach Team, which provides advice to the Firm's institutional clients, including numerous public pension systems and Taft-Hartley funds throughout the United States, and consults with them on issues relating to corporate fraud in the U.S. securities markets, as well as corporate governance issues and shareholder litigation. Some of Alba's institutional clients are currently involved in cases involving Microsoft Corp., Endo International PLC, L-3 Communications Holdings, Inc., Iconix Brand Group and BHP Billiton Limited. Alba has lectured at institutional investor conferences throughout the United States on various shareholder issues, including at the Illinois Public Pension Fund Association, the New York State Teamsters Conference, the American Alliance Conference, and the TEXPERS/IPPFA Joint Conference at the New York Stock Exchange, among others.

| Education | B.S., St. John's University, 1999; J.D., Hofstra University School of Law, 2002 |
|---|---|
| Honors/ Awards | Super Lawyer "Rising Star," 2012-2013, 2016; B.S., Dean's List, St. John's University, 1999; Selected as participant in Hofstra Moot Court Seminar, Hofstra University School of Law |

#### Susan K. Alexander



Suzi Alexander is a partner in the Firm's San Francisco office. Her practice specializes in federal appeals of securities fraud class actions on behalf of investors. With nearly 30 years of federal appellate experience, she has argued on behalf of defrauded investors in circuit courts throughout the United States. Among her most notable cases are *In re VeriFone Holdings, Inc. Sec. Litig.* ($95 million recovery), which is one of the largest securities class action settlements ever achieved in the Northern District of California, and the successful appellate ruling in *Alaska Elec. Pension Fund v. Flowserve Corp.* ($55 million recovery). Other representative results include: *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227 (2d Cir. 2014) (reversing dismissal of securities fraud complaint, focused on loss causation); *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114 (2d Cir. 2012) (reversing dismissal of §11 claim); *City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169 (2d Cir. 2011) (reversing dismissal of securities fraud complaint, focused on statute of limitations*); In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) (reversing dismissal of securities fraud complaint, focused on loss causation); and *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249 (5th Cir. 2005) (reversing dismissal of securities fraud complaint, focused on scienter). Alexander's prior appellate work was with the California Appellate Project ("CAP"), where she prepared appeals and petitions for writs of *habeas corpus* on behalf of individuals sentenced to death. At CAP, and subsequently in private practice, she litigated and consulted on death penalty direct and collateral appeals for ten years.

| Education | B.A., Stanford University, 1983; J.D., University of California, Los Angeles, 1986 |
|---|---|
| Honors/ Awards | Super Lawyer, 2015-2016; American Academy of Appellate Lawyers; California Academy of Appellate Lawyers; Ninth Circuit Advisory Rules Committee; Appellate Delegate, Ninth Circuit Judicial Conference; ABA Council of Appellate Lawyers |

### Jason H. Alperstein



Jason Alperstein is a partner in the Firm's Boca Raton office. He focuses his practice in the areas of class action, consumer fraud and securities litigation, and is admitted to the bars of both Florida and New York. Alperstein is an integral member of the *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Prods. Liab. Litig.* (N.D. Cal.) litigation team, prosecuting claims on behalf of almost 600,000 consumers who were duped into purchasing and leasing Volkswagen, Audi and Porsche vehicles that were marketed as environmentally friendly, yet spewed toxic pollutants up to 40 times the legal limit permitted by the EPA. Working closely with named partner Paul J. Geller, who was selected by Judge Charles R. Breyer to serve as a member of the Plaintiffs' Steering Committee, Alperstein has been involved in almost all aspects of the litigation. The settlement pertaining to the 2.0-liter vehicles at issue, in combination with the related government settlements, is valued at over $16 billion and represents arguably the largest consumer class action settlement in U.S. history. He is also actively involved in a number of nationwide class actions currently pending throughout the country, including *In re National Hockey League Players' Concussion Injury Litig.* (D. Minn.), involving the NHL's failure to warn players of the risk of long-term neurological damages from repetitive head trauma, and *Evans v. Arizona Cardinals Football Club, LLC* (N.D. Cal.), involving the conspiracy of the NFL and its Clubs to violate federal drug laws to ensure that injured players returned to play as soon as possible.

Alperstein has also served on lead and co-lead litigation teams in nationwide and statewide class action lawsuits against dozens of the largest banking institutions in connection with the unlawful assessment of checking account overdraft fees. His efforts resulted in over $250 million in settlements for his clients and significant changes in the way banks charge overdraft fees to their customers. In addition, he has led consumer class actions against national banks for illegal payday lending, consumer product manufacturers for false and deceptive labeling, and some of the world's largest clothing retailers for their use of false and deceptive comparative pricing in their outlet stores.

| Education | B.A., Brown University, 2004; M.B.A., University of Miami School of Business, 2008, J.D., University of Miami School of Law, 2008 |
|---|---|
| Honors/ Awards | Super Lawyer "Rising Star," 2014-2016; J.D., *Cum Laude*, University of Miami School of Law, 2008 |

### Matthew I. Alpert



Matthew Alpert is a partner in the Firm's San Diego office and focuses on the prosecution of securities fraud litigation. He has helped recover over $800 million for individual and institutional investors financially harmed by corporate fraud. Alpert's current cases include securities fraud cases against Microsoft (W.D. Wash.), Marvell Technology (N.D. Cal.) and Molycorp (D. Colo.). Alpert is part of the litigation team that successfully obtained class certification in a securities fraud class action against Regions Financial, a class certification decision which was substantively affirmed by the United States Court of Appeals for the Eleventh Circuit in *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248 (11th Cir. 2014). Upon remand, the United States District Court for the Northern District of Alabama granted class certification again, rejecting defendants' post-*Halliburton II* arguments concerning stock price impact.

| Education | B.A., University of Wisconsin at Madison, 2001; J.D., Washington University, St. Louis, 2005 |
|---|---|
| Honors/ Awards | Super Lawyer "Rising Star," 2015-2017 |

### Darryl J. Alvarado



Darryl Alvarado is a partner in the Firm's San Diego office. Alvarado focuses his practice on securities fraud and other complex civil litigation. Alvarado helped secure $388 million for investors in J.P. Morgan RMBS in *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.* That settlement is, on a percentage basis, the largest recovery ever achieved in an RMBS class action. He was also a member of a team of attorneys that secured $95 million for investors in Morgan Stanley-issued RMBS in *In re Morgan Stanley Mortgage Pass-Through Certificates Litig.* In addition, Alvarado was a member of a team of lawyers that obtained landmark settlements, on the eve of trial, from the major credit rating agencies and Morgan Stanley arising out of the fraudulent ratings of bonds issued by the Cheyne and Rhinebridge structured investment vehicles in *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Incorporated* and *King County, Washington v. IKB Deutsche Industriebank AG.* He was integral in obtaining several precedent-setting decisions in those cases, including defeating the rating agencies' historic First Amendment defense and defeating the ratings agencies' motions for summary judgment concerning the actionability of credit ratings.

| Education | B.A., University of California, Santa Barbara, 2004; J.D., University of San Diego School of Law, 2007 |
|---|---|
| Honors/ Awards | Super Lawyer "Rising Star," 2015-2017; "Outstanding Young Attorneys," *San Diego Daily Transcript*, 2011 |

## X. Jay Alvarez



Jay Alvarez is a partner in the Firm's San Diego office. He focuses his practice on securities fraud litigation and other complex litigation. Alvarez's notable cases include *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.* ($400 million recovery*), In re Coca-Cola Sec. Litig.* ($137.5 million settlement), *In re St. Jude Medical, Inc. Sec. Lit.* ($50 million settlement) and *In re Cooper Cos. Sec. Litig.* ($27 million recovery). Most recently, Alvarez was a member of the litigation team that secured a historic recovery on behalf of Trump University students in two class actions against President Donald J. Trump. The settlement provides $25 million to approximately 7,000 consumers. This result means individual class members will be eligible for upwards of $35,000 in restitution. He represented the class on a *pro bono* basis.

Prior to joining the Firm, Alvarez served as an Assistant United States Attorney for the Southern District of California from 1991-2003. As an Assistant United States Attorney, he obtained extensive trial experience, including the prosecution of bank fraud, money laundering and complex narcotics conspiracy cases. During his tenure as an Assistant United States Attorney, Alvarez also briefed and argued numerous appeals before the Ninth Circuit Court of Appeals.

| Education | B.A., University of California, Berkeley, 1984; J.D., University of California, Berkeley, Boalt Hall School of Law, 1987 |
|---|---|

## Stephen R. Astley



Stephen Astley is a partner in the Firm's Boca Raton office. Astley devotes his practice to representing institutional and individual shareholders in their pursuit to recover investment losses caused by fraud. He has been lead counsel in numerous securities fraud class actions across the country, helping secure significant recoveries for his clients and investors. He was on the trial team that recovered $60 million on behalf of investors in *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.* Other notable representations include: *In re Red Hat, Inc. Sec. Litig.* (E.D.N.C.) ($20 million settlement); *Eshe Fund v. Fifth Third Bancorp* (S.D. Ohio) ($16 million); *City of St. Clair Shores Gen. Emps.' Ret. Sys. v. Lender Processing Servs., Inc.* (M.D. Fla.) ($14 million); and *In re Synovus Fin. Corp.* (N.D. Ga.) ($11.75 million).

Prior to joining the Firm, Astley was with the Miami office of Hunton & Williams, where he concentrated his practice on class action defense, including securities class actions and white collar criminal defense. Additionally, he represented numerous corporate clients accused of engaging in unfair and deceptive practices. Astley was also an active duty member of the United States Navy's Judge Advocate General's Corps where he was the Senior Defense Counsel for the Naval Legal Service Office Pearl Harbor Detachment. In that capacity, Astley oversaw trial operations for the Detachment and gained substantial first-chair trial experience as the lead defense counsel in over 75 courts-martial and administrative proceedings. Additionally, from 2002-2003, Astley clerked for the Honorable Peter T. Fay, U.S. Court of Appeals for the Eleventh Circuit.

| Education | B.S., Florida State University, 1992; M. Acc., University of Hawaii at Manoa, 2001; J.D., University of Miami School of Law, 1997 |
|---|---|
| Honors/ Awards | J.D., *Cum Laude*, University of Miami School of Law, 1997; United States Navy Judge Advocate General's Corps., Lieutenant |

## A. Rick Atwood, Jr.



Rick Atwood is a partner in the Firm's San Diego office. As a recipient of the California Lawyer Attorney of the Year ("CLAY") Award for his work on behalf of shareholders, he has successfully represented shareholders in securities class actions, merger-related class actions, and shareholder derivative suits in federal and state courts in more than 30 jurisdictions. Through his litigation efforts at both the trial and appellate levels, Atwood has helped recover billions of dollars for public shareholders, including the largest post-merger common fund recoveries on record.

Most recently, in *In re Dole Food Co., Inc. Stockholder Litig.*, which went to trial in the Delaware Court of Chancery on claims of breach of fiduciary duty on behalf of Dole Food Co., Inc. shareholders, Atwood helped obtain $148 million, the largest trial verdict ever in a class action challenging a merger transaction. He was also a key member of the litigation team in *In re Kinder Morgan, Inc. S'holders Litig.*, where he helped obtained an unprecedented $200 million common fund for former Kinder Morgan shareholders, the largest merger & acquisition class action recovery in history.

Atwood also led the litigation team that obtained an $89.4 million recovery for shareholders *in In re Del Monte Foods Co. S'holders Litig.*, after which the Delaware Court of Chancery stated that "it was only through the effective use of discovery that the plaintiffs were able to 'disturb[ ] the patina of normalcy surrounding the transaction.'" The court further commented that "Lead Counsel engaged in hard-nosed discovery to penetrate and expose problems with practices that Wall Street considered 'typical.'" One Wall Street banker even wrote in *The Wall Street Journal* that "'Everybody does it, but Barclays is the one that got caught with their hand in the cookie jar . . . . Now everybody has to rethink how we conduct ourselves in financing situations.'" Atwood's other significant opinions include *Brown v. Brewer* ($45 million recovery) and *In re Prime Hospitality, Inc. S'holders Litig.* ($25 million recovery).

| Education | B.A., University of Tennessee, Knoxville, 1987; B.A., Katholieke Universiteit Leuven, Belgium, 1988; J.D., Vanderbilt School of Law, 1991 |
|---|---|
| Honors/ Awards | M&A Litigation Attorney of the Year in California, *Corporate International*, 2015; Super Lawyer, 2014-2017; Attorney of the Year, *California Lawyer*, 2012; B.A., Great Distinction, Katholieke Universiteit Leuven, Belgium, 1988; B.A., Honors, University of Tennessee, Knoxville, 1987; Authorities Editor, *Vanderbilt Journal of Transnational Law*, 1991 |

## Aelish M. Baig



Aelish Marie Baig is a partner in the Firm's San Francisco office. She specializes in federal securities and consumer class actions. She focuses primarily on securities fraud litigation on behalf of individual and institutional investors, including state and municipal pension funds, Taft-Hartley funds, and private retirement and investment funds. Baig has litigated a number of cases through jury trial, resulting in multi-million dollar awards and settlements for her clients and has prosecuted securities fraud, consumer and derivative actions obtaining millions of dollars in recoveries against corporations such as Wells Fargo, Verizon, Celera, Pall and Prudential.

Baig prosecuted an action against Wells Fargo's directors and officers accusing the giant of engaging in robosigning foreclosure papers so as to mass-process home foreclosures, a practice which contributed significantly to the 2008-2009 financial crisis. The resulting settlement was worth more than $67 million in cash, corporate preventative measures and new lending initiatives for residents of cities devastated by Wells Fargo's alleged unlawful foreclosure practices. Baig was part of the litigation and trial team in *White v. Cellco Partnership d/b/a Verizon Wireless*, which resulted in a $25 million settlement and Verizon's agreement to an injunction restricting its ability to impose early termination fees in future subscriber agreements. She was also part of the team that prosecuted dozens of stock option backdating actions, securing tens of millions of dollars in cash recoveries as well as the implementation of comprehensive corporate governance enhancements for numerous companies victimized by their directors' and officers' fraudulent stock option backdating practices. Additionally, Baig prosecuted an action against Prudential Insurance for its alleged failure to pay life insurance benefits to beneficiaries of policyholders it knew or had reason to know had died, resulting in a settlement in excess of $30 million.

| Education | B.A., Brown University, 1992; J.D., Washington College of Law at American University, 1998 |
|---|---|
| Honors/ Awards | Super Lawyer, 2012-2013; J.D., *Cum Laude*, Washington College of Law at American University, 1998; Senior Editor, *Administrative Law Review*, Washington College of Law at American University |

## Randall J. Baron



Randy Baron is a partner in the Firm's San Diego office. He specializes in securities litigation, corporate takeover litigation and breach of fiduciary duty actions. For almost two decades, Baron has headed up a team of lawyers whose accomplishments include obtaining instrumental rulings both at injunction and trial phases, establishing liability of financial advisors and investment banks. With an in-depth understanding of merger and acquisition and breach of fiduciary duty law, an ability to work under extreme time pressures, and the experience and willingness to take a case through trial, he has been responsible for recovering more than a billion dollars for shareholders. Notable achievements over the years include: *In re Kinder Morgan, Inc. S'holders Litig.* (Kan. Dist. Ct., Shawnee Cty.) ($200 million common fund for former Kinder Morgan shareholders, the largest merger & acquisition class action recovery in history); *In re Dole Food Co., Inc. Stockholder Litig.* (Del. Ch.) (obtained $148 million, the largest trial verdict ever in a class action challenging a merger transaction); and *In re Rural/Metro Corp. Stockholders Litig.* (Del. Ch.) (Baron and co-counsel obtained nearly $110 million for shareholders against Royal Bank of Canada Capital Markets LLC). *In In re Del Monte Foods Co. S'holders Litig.* (Del. Ch.), he exposed the unseemly practice by investment bankers of participating on both sides of large merger and acquisition transactions and ultimately secured an $89 million settlement for shareholders of Del Monte. Baron was one of the lead attorneys representing about 75 public and private institutional investors that filed and settled individual actions in *In re WorldCom Sec. Litig.* (S.D.N.Y.), where more than $657 million was recovered, the largest opt-out (non-class) securities action in history. In *In re Dollar Gen. Corp. S'holder Litig.* (Tenn. Cir. Ct., Davidson Cty.), Baron was lead trial counsel and helped to secure a settlement of up to $57 million in a common fund shortly before trial, and in *Brown v. Brewer* (C.D. Cal.), he secured $45 million for shareholders of Intermix Corporation, relating to News Corp.'s acquisition of that company. Formerly, Baron served as a Deputy District Attorney from 1990-1997 in Los Angeles County.

| Education | B.A., University of Colorado at Boulder, 1987; J.D., University of San Diego School of Law, 1990 |
|---|---|
| Honors/ Awards | Litigation Star, *Benchmark Litigation*, 2016-2017; Leading Lawyer, *The Legal 500*, 2015-2016; Super Lawyer, 2014-2016; Leading Lawyer, *Chambers USA*, 2016; Mergers & Acquisitions Trailblazer, *The National Law Journal*, 2015-2016; Litigator of the Week, *The American Lawyer*, October 16, 2014; Attorney of the Year, *California Lawyer*, 2012; Leading Lawyer in America, *Lawdragon*, 2011; Litigator of the Week, *The American Lawyer*, October 7, 2011; J.D., *Cum Laude*, University of San Diego School of Law, 1990 |

## James E. Barz



James Barz is a partner at the Firm, manages the Firm's Chicago office, and is one of the co-leaders of the Firm's whistleblower practice. He is a former federal prosecutor and registered CPA with extensive experience in complex litigation. Barz has been lead counsel in approximately 20 jury trials and argued 9 appeals in the Seventh Circuit. He has been an adjunct professor at Northwestern University School of Law from 2008 to 2016, teaching courses on trial advocacy and class action litigation. Barz has focused on representing investors in securities fraud class actions that have resulted in recoveries of over $900 million, including: *HCA* ($215 million, M.D. Tenn.); *Motorola* ($200 million, N.D. Ill.); *Sprint* ($131 million, D. Kan.); *Psychiatric Solutions* ($65 million, M.D. Tenn.); and *Hospira* ($60 million, N.D. Ill.). He has been lead or co-lead trial counsel in several of these cases obtaining favorable settlements just days or weeks before trial and after obtaining denials of summary judgment. Barz is currently representing investors in securities fraud litigation against Valeant Pharmaceuticals Inc. (D.N.J.). Barz also has responsibilities for Firm training and professional responsibility matters.

Prior to joining the Firm, Barz was a partner at Mayer Brown LLP from 2006 to 2011 and an associate from 1998 to 2002. At Mayer Brown, he was active in their pro bono program where, in his first jury trial, he won an acquittal on all charges and, in his first appeal, he obtained the reversal of a decades-old conviction where the trial judge had solicited a bribe. From 2002 to 2006 he served as an Assistant United States Attorney in Chicago, trying cases and supervising investigations involving public corruption, financial frauds, tax offenses, money laundering, and drug and firearm offenses. He successfully obtained a conviction against every defendant who went to trial.

| Education | B.B.A., Loyola University Chicago, School of Business Administration, 1995; J.D., Northwestern University School of Law, 1998 |
|---|---|
| Honors/ Awards | B.B.A., *Summa Cum Laude*, Loyola University Chicago, School of Business Administration, 1995; J.D., *Cum Laude*, Northwestern University School of Law, 1998 |

## Nathan W. Bear



Nate Bear is a partner in the Firm's San Diego office. Bear advises institutional investors on a global basis. His clients include Taft-Hartley funds, public and multi-employer pension funds, fund managers, insurance companies and banks around the world. He counsels clients on securities fraud and corporate governance, and frequently speaks at conferences worldwide. He has recovered over $1 billion for investors, including *In re Cardinal Health, Inc. Sec. Litig.* ($600 million) and *Jones v. Pfizer Inc.* ($400 million). In addition to initiating securities fraud class actions in the United States, he possesses direct experience in potential group actions in the United Kingdom, as well as settlements in the European Union under the Wet Collectieve Afwikkeling Massaschade (WCAM), the Dutch Collective Mass Claims Settlement Act. Bear currently represents investors in group litigation against Volkswagen and Porsche in Germany, utilizing the Kapitalanlegermusterverfahrensgesetz (KapMuG), the Capital Market Investors' Model Proceeding Act. In *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, Bear commenced a lawsuit resulting in the first major ruling upholding fraud allegations against the chief credit rating agencies. That ruling led to the filing of a similar case, *King County, Washington v. IKB Deutsche Industriebank AG.* These cases, arising from the fraudulent ratings of bonds issued by the Cheyne and Rhinebridge structured investment vehicles, ultimately obtained landmark settlements – on the eve of trial – from the major credit rating agencies and Morgan Stanley. Bear maintained an active role in litigation at the heart of the worldwide financial crisis, and is currently pursuing banks over their manipulation of LIBOR, FOREX and other benchmark rates.

| Education | B.A., University of California at Berkeley, 1998; J.D., University of San Diego School of Law, 2006 |
|---|---|
| Honors/ Awards | Super Lawyer "Rising Star," 2015-2016; "Outstanding Young Attorneys," *San Diego Daily Transcript*, 2011 |

## Alexandra S. Bernay



Xan Bernay is a partner in the Firm's San Diego office, where she specializes in antitrust and unfair competition class-action litigation. She has also worked on some of the Firm's largest securities fraud class actions, including the *Enron* litigation, which recovered an unprecedented $7.3 billion for investors. Bernay's current practice focuses on the prosecution of antitrust and consumer fraud cases. She was on the litigation team that prosecuted *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.* She is also a member of the litigation team involved in *In re Digital Music Antitrust Litig.*, as well as a member of the Co-Lead Counsel team in *Lincoln Adventures, LLC v. Those Certain Underwriters at Lloyd's London*, pending in federal court in New Jersey, where she represents buyers of insurance in an action against insurance companies in the London market. She is also involved in a number of other cases in the Firm's antitrust practice area. Bernay was actively involved in the consumer action on behalf of bank customers who were overcharged for debit card transactions. That case, *In re Checking Account Overdraft Litig.*, resulted in more than $500 million in settlements with major banks that manipulated customers' debit transactions to maximize overdraft fees. She was also part of the trial team in an antitrust monopolization case against a multinational computer and software company.

| Education | B.A., Humboldt State University, 1997; J.D., University of San Diego School of Law, 2000 |
|---|---|
| Honors/ Awards | Litigator of the Week, *Global Competition Review*, October 1, 2014 |

## Erin W. Boardman



Erin Boardman is a partner in the Firm's Melville office, where her practice focuses on representing individual and institutional investors in class actions brought pursuant to the federal securities laws. She has been involved in the prosecution of numerous securities class actions that have resulted in millions of dollars in recoveries for defrauded investors, including: *Medoff v. CVS Caremark Corp.* (D.R.I.) ($48 million recovery); *Construction Laborers Pension Trust of Greater St. Louis v. Autoliv Inc.* (S.D.N.Y.) ($22.5 million recovery); *In re Gildan Activewear Inc. Sec. Litig.* (S.D.N.Y.) (resolved as part of a $22.5 million global settlement); *In re L.G. Phillips LCD Co., Ltd., Sec. Litig.* (S.D.N.Y.) ($18 million recovery); *In re Giant Interactive Grp., Inc. Sec. Litig.* (S.D.N.Y.) ($13 million recovery); *In re Coventry HealthCare, Inc. Sec. Litig.* (D. Md.) ($10 million recovery); *Lenartz v. American Superconductor Corp.* (D. Mass.) ($10 million recovery); *Dudley v. Haub* (D.N.J.) ($9 million recovery); *Hildenbrand v. W Holding Co.* (D.P.R.) ($8.75 million recovery); *In re Doral Financial Corp. Sec. Litig.* (D.P.R.) ($7 million recovery); and *Van Dongen v. CNinsure Inc.* (S.D.N.Y.) ($6.625 million recovery). During law school, Boardman served as Associate Managing Editor of the *Journal of Corporate, Financial and Commercial Law* interned in the chambers of the Honorable Kiyo A. Matsumoto in the United States District Court for the Eastern District of New York, and represented individuals on a *pro bono* basis through the Workers' Rights Clinic..

| Education | B.A., State University of New York at Binghamton, 2003; J.D., Brooklyn Law School, 2007 |
|---|---|
| Honors/ Awards | Super Lawyer "Rising Star," 2015-2016; B.A., *Magna Cum Laude*, State University of New York at Binghamton, 2003 |

## Douglas R. Britton



Doug Britton is a partner in the Firm's San Diego office. His practice focuses on securities fraud and corporate governance. Britton has been involved in settlements exceeding $1 billion and has secured significant corporate governance enhancements to improve corporate functioning. Notable achievements include *In re WorldCom, Inc. Sec. & "ERISA" Litig.*, where he was one of the lead partners that represented a number of opt-out institutional investors and secured an unprecedented recovery of $651 million; *In re SureBeam Corp. Sec. Litig.*, where he was the lead trial counsel and secured an impressive recovery of $32.75 million; and *In re Amazon.com, Inc. Sec. Litig.*, where he was one of the lead attorneys securing a $27.5 million recovery for investors.

| Education | B.B.A., Washburn University, 1991; J.D., Pepperdine University School of Law, 1996 |
|---|---|
| Honors/ Awards | J.D., *Cum Laude*, Pepperdine University School of Law, 1996 |

## Luke O. Brooks



Luke Brooks is a partner in the Firm's securities litigation practice group in the San Diego office. He focuses primarily on securities fraud litigation on behalf of individual and institutional investors, including state and municipal pension funds, Taft-Hartley funds, and private retirement and investment funds. Brooks was on the trial team in *Jaffe v. Household Int'l, Inc.*, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. Other prominent cases recently prosecuted by Brooks include *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*, in which plaintiffs recovered $388 million for investors in J.P. Morgan residential mortgage-backed securities, and a pair of cases – *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.* ("Cheyne") and *King County, Washington, et al. v. IKB Deutsche Industriebank AG* ("Rhinebridge") – in which plaintiffs obtained a settlement, on the eve of trial in Cheyne, from the major credit rating agencies and Morgan Stanley arising out of the fraudulent ratings of bonds issued by the Cheyne and Rhinebridge structured investment vehicles.

| Education | B.A., University of Massachusetts at Amherst, 1997; J.D., University of San Francisco, 2000 |
|---|---|
| Honors/ Awards | Local Litigation Star, *Benchmark Litigation*, 2017; Member, *University of San Francisco Law Review*, University of San Francisco |

## Andrew J. Brown



Andrew Brown is a partner in the Firm's San Diego office where his practice focuses on securities fraud, shareholder derivative and corporate governance litigation. He has worked on a variety of cases, recovering over $1 billion for investors and achieving precedent-setting changes in corporate practices. Brown's most notable cases include: *In re UnitedHealth Grp. Inc. PSLRA Litig.* ($895 million settlement); *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248 (11th Cir. 2014) ($90 million settlement); *In re Questcor Sec. Litig.*, 2013 U.S. Dist. LEXIS 142865 (C.D. Cal. 2013) ($38 million settlement); *In re Constar Int'l Inc. Sec. Litig.* ($23.5 million settlement); and *Freidus v. Barclays Bank Plc,* 734 F.3d 132 (2d Cir. 2013). Prior to joining the Firm, Brown worked as a trial lawyer for the San Diego County Public Defender's Office. He later opened his own firm in San Diego, representing consumers and insureds in lawsuits against major insurance companies.

| Education | B.A., University of Chicago, 1988; J.D., University of California, Hastings College of the Law, 1992 |
|---|---|

## Spencer A. Burkholz



Spence Burkholz is a partner in the Firm's San Diego office and a member of the Firm's Executive and Management Committees. He has 21 years of experience in prosecuting securities class actions and private actions on behalf of large institutional investors. Burkholz was one of the lead trial attorneys in *Jaffe v. Household Int'l, Inc.*, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. Burkholz has also recovered billions of dollars for injured shareholders in cases such as *Enron* ($7.2 billion), *WorldCom* ($657 million), *Countrywide* ($500 million) and *Qwest* ($445 million). He is currently representing large institutional investors in actions involving the credit crisis.

| Education | B.A., Clark University, 1985; J.D., University of Virginia School of Law, 1989 |
|---|---|
| Honors/ Awards | Local Litigation Star, *Benchmark Litigation*, 2015-2017; Super Lawyer, 2015-2016; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2016; B.A., *Cum Laude*, Clark University, 1985; *Phi Beta Kappa*, Clark University, 1985 |

## Joseph D. Daley



Joseph Daley is a partner in the Firm's San Diego office, serves on the Firm's Securities Hiring Committee, and is a member of the Firm's Appellate Practice Group. Precedents include: *DeJulius v. New Eng. Health Care Emps. Pension Fund*, 429 F.3d 935 (10th Cir. 2005); *Frank v. Dana Corp.* ("*Dana I*"), 547 F.3d 564 (6th Cir. 2008); *Frank v. Dana Corp.* ("*Dana II*"), 646 F.3d 954 (6th Cir. 2011); *Freidus v. Barclays Bank Plc*, 734 F.3d 132 (2d Cir. 2013); *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248 (11th Cir. 2009); *In re Merck & Co. Sec., Derivative & ERISA Litig.*, 493 F.3d 393 (3d Cir. 2007); *In re Qwest Commc'ns Int'l*, 450 F.3d 1179 (10th Cir. 2006); *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031 (9th Cir. 2008); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012); *Rosenbloom v. Pyott* ("*Allergan*"), 765 F.3d 1137 (9th Cir. 2014); *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956 (7th Cir. 2013); *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167 (9th Cir. 2009), *aff'd*, 563 U.S. 27 (2011); and *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353 (5th Cir. 2004). Daley is admitted to practice before the U.S. Supreme Court, as well as before 12 U.S. Courts of Appeals around the nation.

| Education | B.S., Jacksonville University, 1981; J.D., University of San Diego School of Law, 1996 |
|---|---|
| Honors/ Awards | Super Lawyer, 2011-2012, 2014-2017; Appellate Moot Court Board, Order of the Barristers, University of San Diego School of Law; Best Advocate Award (Traynore Constitutional Law Moot Court Competition), First Place and Best Briefs (Alumni Torts Moot Court Competition and USD Jessup International Law Moot Court Competition) |

## Patrick W. Daniels



Patrick Daniels is a founding and managing partner in the Firm's San Diego office. He is widely recognized as a leading corporate governance and investor advocate. The *Daily Journal*, the leading legal publisher in California, named him one of the 20 most influential lawyers in California under 40 years of age. Additionally, the Yale School of Management's Millstein Center for Corporate Governance and Performance awarded Daniels its "Rising Star of Corporate Governance" honor for his outstanding leadership in shareholder advocacy and activism. Daniels counsels private and state government pension funds, central banks and fund managers in the United States, Australia, United Arab Emirates, United Kingdom, the Netherlands, and other countries within the European Union on issues related to corporate fraud in the United States securities markets and on "best practices" in the corporate governance of publicly traded companies. Daniels has represented dozens of institutional investors in some of the largest and most significant shareholder actions, including *Enron*, *WorldCom*, *AOL Time Warner*, *BP*, *Pfizer*, *Countrywide*, *Petrobras* and *Volkswagen*, to name just a few. In the wake of the financial crisis, he represented dozens of investors in structured investment products in ground-breaking actions against the ratings agencies and Wall Street banks that packaged and sold supposedly highly rated shoddy securities to institutional investors all around the world.

| Education | B.A., University of California, Berkeley, 1993; J.D., University of San Diego School of Law, 1997 |
|---|---|
| Honors/ Awards | One of the Most 20 Most Influential Lawyers in the State of California Under 40 Years of Age, *Daily Journal*; Rising Star of Corporate Governance, Yale School of Management's Milstein Center for Corporate Governance & Performance; B.A., *Cum Laude*, University of California, Berkeley, 1993 |

## Stuart A. Davidson



Stuart Davidson is a partner in the Firm's Boca Raton office. His practice focuses on complex consumer class actions, including cases involving deceptive and unfair trade practices, privacy and data breach issues, as well as representing investors in class actions involving mergers and acquisitions, and prosecuting derivative lawsuits on behalf of public corporations. Since joining the Firm, Davidson has obtained multi-million dollar recoveries for consumers, healthcare providers and shareholders, including cases involving Aetna Health, Vista Healthplan, Fidelity Federal Bank & Trust, Winn-Dixie, and UnitedGlobalCom. He currently serves as co-lead counsel for hundreds of retired NHL players in *In re NHL Players' Concussion Injury Litigation* in the District of Minnesota, serves as co-lead counsel on behalf of over one thousand retired NFL players in *Evans v. Arizona Cardinals Football Club, LLC* in the Northern District of California regarding the illegal distribution of painkillers and other drugs to players, and is actively assisting the Plaintiffs' Steering Committee in *In re Volkswagen "Clean Diesel" Litigation* in the Northern District of California, a case involving Volkswagen's worldwide emissions cheating scandal.

Davidson is a former lead assistant public defender in the Felony Division of the Broward County, Florida Public Defender's Office. During his tenure at the Public Defender's Office, he tried over 30 jury trials, conducted hundreds of depositions, handled numerous evidentiary hearings, engaged in extensive motion practice, and defended individuals charged with major crimes ranging from third-degree felonies to life and capital felonies.

| Education | B.A., State University of New York at Geneseo, 1993; J.D., Nova Southeastern University Shepard Broad Law Center, 1996 |
|---|---|
| Honors/ Awards | J.D., *Summa Cum Laude*, Nova Southeastern University Shepard Broad Law Center, 1996; Associate Editor, *Nova Law Review*, Book Awards in Trial Advocacy, Criminal Pretrial Practice and International Law |

## Jason C. Davis



Jason Davis is a partner in the Firm's San Francisco office where he practices securities class actions and complex litigation involving equities, fixed-income, synthetic and structured securities issued in public and private transactions. Davis was on the trial team in *Jaffe v. Household Int'l, Inc.*, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs.

Prior to joining the Firm, Davis focused on cross-border transactions, mergers and acquisitions at Cravath, Swaine and Moore LLP in New York.

| Education | B.A., Syracuse University, 1998; J.D., University of California at Berkeley, Boalt Hall School of Law, 2002 |
|---|---|
| Honors/ Awards | B.A., *Summa Cum Laude*, Syracuse University, 1998; International Relations Scholar of the year, Syracuse University; Teaching fellow, examination awards, Moot court award, University of California at Berkeley, Boalt Hall School of Law |

## Mark J. Dearman



Mark Dearman is a partner in the Firm's Boca Raton office, where his practice focuses on consumer fraud, securities fraud, mass torts, antitrust, whistleblower and corporate takeover litigation. Dearman's recent representative cases include: *In re NHL Players' Concussion Injury Litig.*, 2015 U.S. Dist. LEXIS 38755 (D. Minn. 2015); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942 (S.D. Cal. 2012); *In re Volkswagen "Clean Diesel" Mktg. Sales Practice, & Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 1357 (N.D. Cal. 2016); *In re Ford Fusion & C-Max Fuel Econ. Litig.*, 2015 U.S. Dist. LEXIS 155383 (S.D.N.Y. 2015); *Looper v. FCA US LLC*, No. 5:14-cv-00700 (C.D. Cal.); *In re Aluminum Warehousing Antitrust Litig.*, 95 F. Supp. 3d 419 (S.D.N.Y. 2015), *aff'd*, 833 F.3d 151 (2d Cir. 2016); *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-md-2687 (D.N.J.); *In re Winn-Dixie Stores, Inc. S'holder Litig.*, No. 16-2011-CA-010616 (Fla. 4th Jud. Cir. Ct., Duval Cty.); *Gemelas v. Dannon Co. Inc.*, No. 1:08-cv-00236 (N.D. Ohio); and *In re AuthenTec, Inc. S'holder Litig.*, No. 05-2012-CA-57589 (Fla. 18th Jud. Cir. Ct., Brevard Cty.). Prior to joining the Firm, he founded Dearman & Gerson, where he defended Fortune 500 companies, with an emphasis on complex commercial litigation, consumer claims, and mass torts (products liability and personal injury), and has obtained extensive jury trial experience throughout the United States. Having represented defendants for so many years before joining the Firm, Dearman has a unique perspective that enables him to represent clients effectively.

| Education | B.A., University of Florida, 1990; J.D., Nova Southeastern University, 1993 |
|---|---|
| Honors/ Awards | AV rated by Martindale-Hubbell; Super Lawyer, 2014-2016; In top 1.5% of Florida Civil Trial Lawyers in *Florida Trend*'s Florida Legal Elite, 2006, 2004 |

## Travis E. Downs III



Travis Downs is a partner in the Firm's San Diego office. His areas of expertise include prosecution of shareholder and securities litigation, including complex shareholder derivative actions. Downs led a team of lawyers who successfully prosecuted over sixty-five stock option backdating derivative actions in federal and state courts across the country, resulting in hundreds of millions in financial givebacks for the plaintiffs and extensive corporate governance enhancements, including annual directors elections, majority voting for directors and shareholder nomination of directors. Notable cases include: *In re Community Health Sys., Inc. S'holder Derivative Litig.* ($60 million in financial relief and unprecedented corporate governance reforms);*In re Marvell Tech. Grp. Ltd. Derivative Litig.* ($54 million in financial relief and extensive corporate governance enhancements); *In re McAfee, Inc. Derivative Litig.* ($30 million in financial relief and extensive corporate governance enhancements); *In re Affiliated Computer Servs. Derivative Litig.* ($30 million in financial relief and extensive corporate governance enhancements); *In re KB Home S'holder Derivative Litig.* ($30 million in financial relief and extensive corporate governance enhancements); *In re Juniper Networks Derivative Litig.* ($22.7 million in financial relief and extensive corporate governance enhancements); and *In re Nvidia Corp. Derivative Litig.* ($15 million in financial relief and extensive corporate governance enhancements).

He was also part of the litigation team that obtained a $67 million settlement in *City of Westland Police & Fire Ret. Sys. v. Stumpf*, a shareholder derivative action alleging that Wells Fargo participated in the mass-processing of home foreclosure documents by engaging in widespread robo-signing, and a $250 million settlement *in In re Google, Inc. Derivative Litig.*, an action alleging that Google facilitated in the improper advertising of prescription drugs. Downs is a frequent speaker at conferences and seminars and has lectured on a variety of topics related to shareholder derivative and class action litigation.

| Education | B.A., Whitworth University, 1985; J.D., University of Washington School of Law, 1990 |
|---|---|
| Honors/ Awards | Top Lawyer in San Diego, *San Diego Magazine*, 2013-2016; Board of Trustees, Whitworth University; Super Lawyer, 2008; B.A., Honors, Whitworth University, 1985 |

## Daniel S. Drosman



Dan Drosman is a partner in the Firm's San Diego office and a member of the Firm's Management Committee. He focuses his practice on securities fraud and other complex civil litigation and has obtained significant recoveries for investors in cases such as *Morgan Stanley*, *Cisco Systems*, *Coca-Cola*, *Petco*, *PMI* and *America West*. Drosman served as one of the lead trial attorneys in *Jaffe v. Household Int'l, Inc.* in the Northern District of Illinois, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. Drosman also led a group of attorneys prosecuting fraud claims against the credit rating agencies, where he was distinguished as one of the few plaintiffs' counsel to overcome the credit rating agencies' motions to dismiss.

Prior to joining the Firm, Drosman served as an Assistant District Attorney for the Manhattan District Attorney's Office, and an Assistant United States Attorney in the Southern District of California, where he investigated and prosecuted violations of the federal narcotics, immigration, and official corruption law.

| Education | B.A., Reed College, 1990; J.D., Harvard Law School, 1993 |
|---|---|
| Honors/ Awards | Super Lawyer, 2017; Department of Justice Special Achievement Award, Sustained Superior Performance of Duty; B.A., Honors, Reed College, 1990; *Phi Beta Kappa*, Reed College, 1990 |

## Thomas E. Egler



Thomas Egler is a partner in the Firm's San Diego office and focuses his practice on the prosecution of securities class actions on behalf of defrauded shareholders. He is responsible for prosecuting securities fraud class actions and has obtained recoveries for investors in litigation involving WorldCom ($657 million), AOL Time Warner ($629 million), and Qwest ($445 million), as well as dozens of other actions. Prior to joining the Firm, Egler was a law clerk to the Honorable Donald E. Ziegler, Chief Judge, United States District Court, Western District of Pennsylvania.

| Education | B.A., Northwestern University, 1989; J.D., The Catholic University of America, Columbus School of Law, 1995 |
|---|---|
| Honors/ Awards | Super Lawyer, 2017; Associate Editor, *The Catholic University Law Review* |

## Jason A. Forge



Jason Forge is a partner in the Firm's San Diego office, specializing in complex investigations, litigation and trials. As a federal prosecutor and private practitioner, he has conducted dozens of jury and bench trials in federal and state courts, including the month-long trial of a defense contractor who conspired with Congressman Randy "Duke" Cunningham in the largest bribery scheme in congressional history.

Forge was a key member of the litigation team that secured a historic recovery on behalf of Trump University students in two class actions against President Donald J. Trump. The settlement provides $25 million to approximately 7,000 consumers. The result means individual class members will be eligible for upwards of $35,000 in restitution. He represented the class on a *pro bono* basis. He has also successfully defeated motions to dismiss against several prominent defendants, including the first securities fraud case against Wal-Mart Stores, Inc. and Scotts Miracle-Gro. In a case against another prominent defendant, Pfizer Inc., he led an investigation that uncovered key documents that Pfizer had not produced in discovery. Although fact discovery in the case had already closed, the district judge ruled that the documents had been improperly withheld, and ordered that discovery be reopened, including the reopening of the depositions of Pfizer's former CEO, CFO and General Counsel. Less than six months after completing these depositions, Pfizer settled the case for $400 million. Forge has also taught trial practice techniques on local and national levels, and has written and argued many state and federal appeals, including an en banc argument in the Ninth Circuit.

| Education | B.B.A., The University of Michigan Ross School of Business, 1990; J.D., The University of Michigan Law School, 1993 |
|---|---|
| Honors/ Awards | Two-time recipient of one of Department of Justice's highest awards: Director's Award for Superior Performance by Litigation Team; numerous commendations from Federal Bureau of Investigation (including commendation from FBI Director Robert Mueller III), Internal Revenue Service, and Defense Criminal Investigative Service; J.D., *Magna Cum Laude*, Order of the Coif, The University of Michigan Law School, 1993; B.B.A., High Distinction, The University of Michigan Ross School of Business, 1990 |

## Paul J. Geller



Paul Geller, Managing Partner of the Boca Raton, Florida office, is a Founding Partner of the Firm, a member of its Executive and Management Committees and head of the Firm's Consumer Practice Group. Geller's 23 years of litigation experience is broad, and he has handled cases in each of the Firm's practice areas. Notably, before devoting his practice to the representation of consumers and investors, he defended companies in high-stakes class action litigation, providing him an invaluable perspective. Geller has tried bench and jury trials on both the plaintiffs' and defendants' sides, and has argued before numerous state, federal and appellate courts throughout the country.

Geller was recently selected to serve in a leadership position on behalf of consumers in the massive Volkswagen "Clean Diesel" Emissions case pending in San Francisco. This notable appointment came after a record-setting application process in which over 150 attorneys sought the court's designation as a member of the plaintiffs' Steering Committee. Other noteworthy recent successes include a $265 million recovery against Massey Energy in *In re Massey Energy Co. Sec. Litig.*, in which Massey was found accountable for a tragic explosion at the Upper Big Branch mine in Raleigh County, West Virginia. Geller also secured a $146.25 million recovery against Duke Energy in *Nieman v. Duke Energy Corp.*, the largest recovery in North Carolina for a case involving securities fraud, and one of the five largest recoveries in the Fourth Circuit. Additionally, Geller was the lead counsel in *Kehoe v. Fidelity Fed. Bank & Tr.*, one of the country's first cases alleging a class-wide privacy violation, settling the case for a $50 million recovery in addition to enhanced privacy protections. More recently, he was one of the lead counsel in the Sony Gaming Networks Data Breach litigation, which resulted in significant monetary recovery and other benefits to class members. Geller was also instrumental in resolving a case against Dannon for falsely advertising the health benefits of yogurt products.

| Education | B.S., University of Florida, 1990; J.D., Emory University School of Law, 1993 |
|---|---|
| Honors/ Awards | Rated AV by Martindale-Hubbell; Fellow, Litigation Counsel of America (LCA) Proven Trial Lawyers; Best Lawyer in America, *Best Lawyers®*, 2017; Leading Lawyer in America, *Lawdragon*, 2006-2007, 2009-2016, Super Lawyer, 2007-2016; Top Rated Lawyer, South Florida's Legal Leaders, *Miami Herald*, 2015; Litigation Star, *Benchmark Litigation*, 2013; "Legal Elite," *Florida Trend Magazine*; One of "Florida's Most Effective Lawyers," *American Law Media*, One of Florida's top lawyers in *South Florida Business* Journal, One of the Nation's Top "40 Under 40," *The National Law Journal*; One of Florida's Top Lawyers, *Law & Politics*; Editor, *Emory Law Journal*; Order of the Coif, Emory University School of Law |

## Jonah H. Goldstein



Jonah Goldstein is a partner in the Firm's San Diego office and responsible for prosecuting complex securities cases and obtaining recoveries for investors. He also represents corporate whistleblowers who report violations of the securities laws. Goldstein has achieved significant settlements on behalf of investors including in *In re HealthSouth Sec. Litig.* (over $670 million recovered against HealthSouth, UBS and Ernst & Young) and *In re Cisco Sec. Litig.* (approximately $100 million). He also served on the Firm's trial team in *In re AT&T Corp. Sec. Litig.*, which settled after two weeks of trial for $100 million. Prior to joining the Firm, Goldstein served as a law clerk for the Honorable William H. Erickson on the Colorado Supreme Court and as an Assistant United States Attorney for the Southern District of California, where he tried numerous cases and briefed and argued appeals before the Ninth Circuit Court of Appeals.

| Education | B.A., Duke University, 1991; J.D., University of Denver College of Law, 1995 |
|---|---|
| Honors/ Awards | Comments Editor, *University of Denver Law Review*, University of Denver College of Law |

## Benny C. Goodman III



Benny Goodman is a partner in the Firm's San Diego office. He primarily represents plaintiffs in shareholder actions on behalf of aggrieved corporations. Goodman has recovered hundreds of millions of dollars in shareholder derivative actions pending in state and federal courts across the nation. Most recently, he led a team of lawyers in litigation brought on behalf of Community Health Systems, Inc., resulting in a $60 million payment to the Company, the largest recovery in a shareholder derivative action in Tennessee and the Sixth Circuit, as well as best in class value enhancing corporate governance reforms that included two shareholder nominated directors to the Community Health Board of Directors.

Similarly, Goodman recovered a $25 million payment to Lumber Liquidators and numerous corporate governance reforms, including a shareholder nominated director, *in In re Lumber Liquidators Holdings, Inc. S'holder Derivative Litig.* In *In re Google Inc. S'holder Derivative Litig.*, Goodman achieved groundbreaking corporate governance reforms designed to mitigate regulatory and legal compliance risk associated with online pharmaceutical advertising, including, among other things, the creation of a $250 million fund to help combat rogue pharmacies from improperly selling drugs online.

| Education | B.S., Arizona State University, 1994; J.D., University of San Diego School of Law, 2000 |
|---|---|

## Elise J. Grace

Elise Grace is a partner in the San Diego office and responsible for advising the Firm's state and government pension fund clients on issues related to securities fraud and corporate governance. Grace serves as the Editor-in-Chief of the Firm's Corporate Governance Bulletin and is a frequent lecturer on securities fraud, shareholder litigation, and options for institutional investors seeking to recover losses caused by securities and accounting fraud. She has prosecuted various significant securities fraud class actions, including the *AOL Time Warner* state and federal securities opt-out litigations, which resulted in a combined settlement of $629 million for defrauded shareholders. Prior to joining the Firm, Grace was an associate at Brobeck Phleger & Harrison LLP and Clifford Chance LLP, where she defended various Fortune 500 companies in securities class actions and complex business litigation.

| Education | B.A., University of California, Los Angeles, 1993; J.D., Pepperdine School of Law, 1999 |
|---|---|
| Honors/ Awards | J.D., *Magna Cum Laude*, Pepperdine School of Law, 1999; AMJUR American Jurisprudence Awards - Conflict of Laws; Remedies; Moot Court Oral Advocacy; Dean's Academic Scholarship, Pepperdine School of Law; B.A., *Summa Cum Laude*, University of California, Los Angeles, 1993; B.A., *Phi Beta Kappa*, University of California, Los Angeles, 1993 |

## John K. Grant



John Grant is a partner in the Firm's San Francisco office where he devotes his practice to representing investors in securities fraud class actions. Grant has been lead or co-lead counsel in numerous securities actions and recovered tens of millions of dollars for shareholders. His cases include: *In re Micron Tech, Inc. Sec. Litig.* ($42 million recovery); *Perera v. Chiron Corp.* ($40 million recovery); *King v. CBT Grp., PLC* ($32 million recovery); and *In re Exodus Commc'ns, Inc. Sec. Litig.* ($5 million recovery).

| Education | B.A., Brigham Young University, 1988; J.D., University of Texas at Austin, 1990 |
|---|---|

## Tor Gronborg



Tor Gronborg is a partner in the Firm's San Diego office and a member of the Firm's Management Committee. He often lectures on topics such as the Federal Rules of Civil Procedure and electronic discovery. Gronborg has served as lead or co-lead counsel in numerous securities fraud cases that have collectively recovered more than $1 billion for investors. Gronborg's work has included significant recoveries against corporations such as Cardinal Health ($600 million), Motorola ($200 million), Duke Energy ($146.25 million), Sprint Nextel Corp. ($131 million), Prison Realty ($104 million), CIT Group ($75 million), Wyeth ($67.5 million) and Psychiatric Solutions ($65 million). On three separate occasions, his pleadings have been upheld by the federal Courts of Appeals (*Broudo v. Dura Pharm., Inc.*, 339 F.3d 933 (9th Cir. 2003), *rev'd on other grounds*, 554 U.S. 336 (2005); *In re Daou Sys.*, 411 F.3d 1006 (9th Cir. 2005); *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406 (2d Cir. 2008)), and he has been responsible for a number of significant rulings, including *Silverman v. Motorola, Inc.*, 798 F. Supp. 2d 954 (N.D. Ill. 2011); *Roth v. Aon Corp.*, 2008 U.S. Dist. LEXIS 18471 (N.D. Ill. 2008); *In re Cardinal Health, Inc. Sec. Litigs.*, 426 F. Supp. 2d 688 (S.D. Ohio 2006); and *In re Dura Pharm., Inc. Sec. Litig.*, 452 F. Supp. 2d 1005 (S.D. Cal. 2006).

| Education | B.A., University of California, Santa Barbara, 1991; Rotary International Scholar, University of Lancaster, U.K., 1992; J.D., University of California, Berkeley, 1995 |
|---|---|
| Honors/ Awards | Super Lawyer, 2013-2017; Moot Court Board Member, University of California, Berkeley; AFL-CIO history scholarship, University of California, Santa Barbara |

## Ellen Gusikoff Stewart



Ellen Gusikoff Stewart is a partner in the Firm's San Diego office. She currently practices in the Firm's settlement department, negotiating and documenting complex securities, merger, ERISA and derivative action settlements. Notable settlements include: *Landmen Partners Inc. v. The Blackstone Grp. L.P.* (S.D.N.Y. 2013) ($85 million); *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.* (M.D. Tenn. 2015) ($65 million); *City of Sterling Heights Gen. Emps.' Ret. Sys v. Hospira, Inc.* (N.D. Ill. 2014) ($60 million); and *The Bd. of Trs. of the Operating Eng'rs Pension Tr. v. JPMorgan Chase Bank, N.A.* (S.D.N.Y. 2013) ($23 million).

| Education | B.A., Muhlenberg College, 1986; J.D., Case Western Reserve University, 1989 |
|---|---|
| Honors/ Awards | Peer-Rated by Martindale-Hubbell |

## Robert Henssler



Bobby Henssler is a partner in the Firm's San Diego office, where he focuses his practice on securities fraud and other complex civil litigation. He has obtained significant recoveries for investors in cases such as *Enron*, *Blackstone* and *CIT Group*. Henssler is currently a key member of the team of attorneys prosecuting fraud claims against Goldman Sachs stemming from Goldman's conduct in subprime mortgage transactions (including "Abacus").

Most recently, Henssler served on the litigation team for *Schuh v. HCA Holdings, Inc.*, which resulted in a $215 million recovery for shareholders, the largest securities class action recovery ever in Tennessee. The recovery represents between 34% and 70% of the aggregate damages, far exceeding the typical recovery in a securities class action. He was also part of the litigation teams for *Landmen Partners Inc. v. The Blackstone Group L.P.* ($85 million recovery); *In re Novatel Wireless Sec. Litig.* ($16 million recovery); *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC* ($14 million settlement); and *Kmiec v. Powerwave Technologies, Inc.* ($8.2 million settlement).

| Education | B.A., University of New Hampshire, 1997; J.D., University of San Diego School of Law, 2001 |
|---|---|

## Dennis J. Herman



Dennis Herman is a partner in the Firm's San Francisco office where he focuses his practice on securities class actions. He has led or been significantly involved in the prosecution of numerous securities fraud claims that have resulted in substantial recoveries for investors, including settled actions against Massey Energy ($265 million), Coca-Cola ($137 million), VeriSign ($78 million), Psychiatric Solutions, Inc. ($65 million), St. Jude Medical, Inc. ($50 million), NorthWestern ($40 million), BancorpSouth ($29.5 million), America Service Group ($15 million), Specialty Laboratories ($12 million), Stellent ($12 million) and Threshold Pharmaceuticals ($10 million).

| Education | B.S., Syracuse University, 1982; J.D., Stanford Law School, 1992 |
|---|---|
| Honors/ Awards | Order of the Coif, Stanford Law School; Urban A. Sontheimer Award (graduating second in his class), Stanford Law School; Award-winning Investigative Newspaper Reporter and Editor in California and Connecticut |

## John Herman



John Herman is a partner at the Firm, the Chair of the Firm's Intellectual Property Practice and manages the Firm's Atlanta office. His practice focuses on complex civil litigation, with a particular emphasis on high technology matters. His experience includes securities, patent, antitrust, whistleblower and class action litigation. Herman also has significant first chair trial experience, handling numerous cases through verdict in both federal and state courts. Herman has worked on many noteworthy cases and successfully achieved favorable results for his clients. His notable cases include a recent derivative settlement of $60 million on behalf of Community Health Systems, as well as leading a team of attorneys enforcing the 3Com Ethernet patents, winning two jury trial victories in federal court. Herman also represented renowned inventor Ed Phillips in the landmark case *of Phillips v. AWH Corp.* He has represented the pioneers of mesh technology – David Petite, Edwin Brownrigg and SIPCO – in connection with their mesh technology portfolio. Herman has also worked on numerous class action cases, including acting as lead plaintiffs' counsel in the Home Depot shareholder derivative action, which achieved landmark corporate governance reforms for investors.

| Education | B.S., Marquette University, 1988; J.D., Vanderbilt University Law School, 1992 |
|---|---|
| Honors/ Awards | Fellow, Litigation Counsel of America (LCA) Proven Trial Lawyers; Super Lawyer, 2005-2010, 2016; Top 100 Georgia Super Lawyers list, 2007; One of "Georgia's Most Effective Lawyers," *Legal Trend*; John Wade Scholar, Vanderbilt University Law School; Editor-in-Chief, *Vanderbilt Journal*, Vanderbilt University Law School; B.S., *Summa Cum Laude*, Marquette University, 1988 |

## Steven F. Hubachek



Steven Hubachek is a partner in the Firm's San Diego office. Hubachek is a member of the Firm's appellate group, where his practice concentrates on federal appeals. He has over 25 years of appellate experience, has argued over one hundred federal appeals, including three cases before the United States Supreme Court and seven cases before en banc panels of the Ninth Circuit Court of Appeals. Prior to joining Robbins Geller, Hubachek was Chief Appellate Attorney for Federal Defenders of San Diego, Inc. Before assuming the position of Chief Appellate Attorney, Hubachek also had an active trial practice, including over 30 jury trials.

| Education | B.A., University of California, Berkeley, 1983; J.D., Hastings College of the Law, 1987 |
|---|---|
| Honors/ Awards | Top Lawyer in San Diego, *San Diego Magazine*, 2014-2016; Assistant Federal Public Defender of the Year, National Federal Public Defenders Association, 2011; Appellate Attorney of the Year, San Diego Criminal Defense Bar Association, 2011 (co-recipient); President's Award for Outstanding Volunteer Service, Mid City Little League, San Diego, 2011; E. Stanley Conant Award for exceptional and unselfish devotion to protecting the rights of the indigent accused, 2009 (joint recipient); Super Lawyer, 2007-2009; *The Daily Transcript* Top Attorneys, 2007; AV rated by Martindale-Hubbell; J.D., *Cum Laude*, Order of the Coif, Thurston Honor Society, Hastings College of Law, 1987 |

**Exhibit E**
**Page 110**

## James I. Jaconette



James Jaconette is one of the founding partners of the Firm and is located in its San Diego office. He manages cases in the Firm's securities class action and shareholder derivative litigation practices. He has served as one of the lead counsel in securities cases with recoveries to individual and institutional investors totaling over $8 billion. He also advises institutional investors, including hedge funds, pension funds and financial institutions. Landmark securities actions in which he contributed in a primary litigating role include *In re Informix Corp. Sec. Litig.*, and *In re Dynegy Inc. Sec. Litig.* and *In re Enron Corp. Sec. Litig.*, where he represented lead plaintiff The Regents of the University of California. Most recently, Jaconette was part of the trial team in *Schuh v. HCA Holdings, Inc.*, which resulted in a $215 million recovery for shareholders, the largest securities class action recovery ever in Tennessee. The recovery represents between 34% and 70% of the aggregate damages, far exceeding the typical recovery in a securities class action.

| Education | B.A., San Diego State University, 1989; M.B.A., San Diego State University, 1992; J.D., University of California Hastings College of the Law, 1995 |
| --- | --- |
| Honors/ Awards | J.D., *Cum Laude*, University of California Hastings College of the Law, 1995; Associate Articles Editor, *Hastings Law Journal*, University of California Hastings College of the Law; B.A., with Honors and Distinction, San Diego State University, 1989 |

## Rachel L. Jensen



Rachel Jensen is a partner in the Firm's San Diego office. Her practice focuses on consumer, antitrust and securities fraud class actions. Jensen has played a key role in recovering billions of dollars for individuals, government entities, and businesses injured by fraudulent schemes, anti-competitive conduct, and hazardous products placed in the stream of commerce.

Jensen was one of the lead attorneys who secured a historic recovery on behalf of Trump University students in two class actions against President Donald J. Trump. The settlement provides $25 million to approximately 7,000 consumers. This result means individual class members will be eligible for upwards of $35,000 in restitution. She represented the class on a *pro bono* basis. She also represents car owners in the MDL litigation concerning the Volkswagen fraudulent emissions scandal, as well as litigation against Scotts Miracle-Gro, which has pled guilty to selling bird food as bird poison.

Among other recoveries, Jensen has played significant roles in the following cases: *In re Ins. Brokerage Antitrust Litig.* ($200 million recovered for policyholders who paid inflated premiums due to kickback scheme among major insurers and brokers); *In re Mattel, Inc., Toy Lead Paint Prods. Liab. Litig.* ($50 million in refunds and other relief for Mattel and Fisher-Price toys made in China with lead and dangerous magnets); *In re Nat'l Western Life Ins. Deferred Annuities Litig.* ($25 million in relief to senior citizens targeted for exorbitant deferred annuities that would not mature in their lifetime); *In re Checking Account Overdraft Litig.* ($500 million in settlements with major banks that manipulated customers' debit transactions to maximize overdraft fees); and *In re Groupon Mktg. & Sales Practices Litig.* ($8.5 million in refunds for consumers sold vouchers with illegal expiration dates). Prior to joining the Firm, Jensen was part of the litigation department at Morrison & Foerster in San Francisco, clerked for the Honorable Warren J. Ferguson of the Ninth Circuit Court of Appeals, worked abroad in Arusha, Tanzania as a law clerk in the Office of the Prosecutor at the International Criminal Tribunal for Rwanda (ICTR) and then worked at the International Criminal Tribunal for the Former Yugoslavia (ICTY), located in the Hague, Netherlands.

| Education | B.A., Florida State University, 1997; University of Oxford, International Human Rights Law Program at New College, Summer 1998; J.D., Georgetown University Law School, 2000 |
| --- | --- |
| Honors/ Awards | Super Lawyer, 2016-2017; Super Lawyer "Rising Star," 2015; Nominated for 2011 Woman of the Year, *San Diego Magazine*; Editor-in-Chief, *First Annual Review of Gender and Sexuality Law*, Georgetown University Law School; Dean's List 1998-1999; B.A., *Cum Laude*, Florida State University's Honors Program, 1997; *Phi Beta Kappa* |

## Steven M. Jodlowski



Steven Jodlowski is a partner in the Firm's San Diego office. He has handled a wide variety of cases involving antitrust violations, securities fraud, consumer fraud, corporate governance, employment, and complex insurance class action litigation, with recoveries exceeding $1 billion. Jodlowski has successfully prosecuted numerous RICO cases involving the fraudulent and deceptive sale of deferred annuities to senior citizens. These cases resulted in the recovery of more than $600 million in benefits for policyholders. He has also represented institutional and individual shareholders in corporate takeover actions and breach of fiduciary litigation in state and federal court. Additionally, Jodlowski handles securities and antitrust actions. His recent work includes *Dahl v. Bain Capital Partners, LLC*, which resulted in the recovery of $590.5 million on behalf of shareholders, the ISDAfix Benchmark litigation, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, and *In re Treasuries Sec. Auction Antitrust Litig.* Jodlowski was part of the trial team in an antitrust monopolization case against a multinational computer and software company.

| Education | B.B.A., University of Central Oklahoma, 2002; J.D., California Western School of Law, 2005 |
|---|---|
| Honors/ Awards | Super Lawyer "Rising Star," 2015-2017; CAOC Consumer Attorney of the Year Award Finalist, 2015; J.D., *Cum Laude*, California Western School of Law, 2005 |

## Peter M. Jones



Peter Jones is partner in the Firm's Atlanta office. Although Jones primarily focuses on patent litigation, he has experience handling a wide range of complex litigation matters, including product liability actions and commercial disputes. Prior to joining the Firm, Jones practiced at King & Spalding LLP and clerked for the Honorable J.L. Edmondson, then Chief Judge of the United States Court of Appeals for the Eleventh Circuit.

| Education | B.A., University of the South, 1999; J.D., University of Georgia School of Law, 2003 |
|---|---|
| Honors/ Awards | Super Lawyer "Rising Star," 2012-2013; Member, *Georgia Law Review*, Order of the Barristers, University of Georgia School of Law |

## Evan J. Kaufman



Evan Kaufman is a partner in the Firm's Melville office. He focuses his practice in the area of complex litigation in federal and state courts including securities, corporate mergers and acquisitions, derivative, and consumer fraud class actions. Kaufman has served as lead counsel or played a significant role in numerous actions, including *In re TD Banknorth S'holders Litig.* ($50 million recovery); *In re Gen. Elec. Co. ERISA Litig.* ($40 million cost to GE, including significant improvements to GE's employee retirement plan, and benefits to GE plan participants valued in excess of $100 million); Energy*Solutions*, Inc. Sec. Litig. ($26 million recovery); Lockheed Martin Corp. Sec. Litig. ($19.5 million recovery); *In re Warner Chilcott Ltd. Sec. Litig.* ($16.5 million recovery); *In re Giant Interactive Grp., Inc. Sec. Litig.* ($13 million recovery); *In re Royal Grp. Tech. Sec. Litig.* ($9 million recovery); Fidelity Ultra Short Bond Fund Litig ($7.5 million recovery); *In re Audiovox Derivative Litig.* ($6.75 million recovery and corporate governance reforms); State Street Yield Plus Fund Litig. ($6.25 million recovery); *In re Merrill Lynch & Co., Inc., Internet Strategies Sec. Litig.* (resolved as part of a $39 million global settlement); and *In re MONY Grp., Inc. S'holder Litig.* (obtained preliminary injunction requiring disclosures in proxy statement).

| Education | B.A., University of Michigan, 1992; J.D., Fordham University School of Law, 1995 |
|---|---|
| Honors/ Awards | Super Lawyer, 2013-2015; Member, *Fordham International Law Journal*, Fordham University School of Law |

## David A. Knotts



David Knotts is a partner in the Firm's San Diego office and, in addition to ongoing litigation work, is currently teaching a full-semester course on M&A litigation at the University of California Berkeley School of Law as a Lecturer. He focuses his practice on securities class action litigation in the context of mergers and acquisitions, representing both individual shareholders and institutional investors. Knotts has been counsel of record for shareholders on a number of significant recoveries in California state courts and in the Delaware Court of Chancery, *including In re Rural/Metro Corp. Stockholders Litig.* (nearly $110 million total recovery, affirmed by the Delaware Supreme Court in *RBC v. Jervis*), *In re Del Monte Foods Co. S'holders Litig.* ($89.4 million), *Websense* ($40 million), and *In re Onyx S'holders Litig.* ($30 million). Indeed, *Websense* and *Onyx* – both approved in late 2016 – are believed to be the largest post-merger class settlements in California state court history.

Prior to joining Robbins Geller, Knotts was an associate at one of the largest law firms in the world and represented corporate clients in various aspects of state and federal litigation, including major antitrust matters, trade secret disputes, unfair competition claims, and intellectual property litigation.

| Education | B.S., University of Pittsburgh, 2001; J.D., Cornell Law School, 2004 |
|---|---|
| Honors/ Awards | Wiley W. Manuel Award for Pro Bono Legal Services, State Bar of California; Casa Cornelia Inns of Court; J.D., *Cum Laude*, Cornell Law School, 2004 |

## Laurie L. Largent



Laurie Largent is a partner in the Firm's San Diego, California office. Her practice focuses on securities class action and shareholder derivative litigation and she has helped recover millions of dollars for injured shareholders. She earned her Bachelor of Business Administration degree from the University of Oklahoma in 1985 and her Juris Doctor degree from the University of Tulsa in 1988. While at the University of Tulsa, Largent served as a member of the *Energy Law Journal* and is the author of *Prospective Remedies Under NGA Section 5; Office of Consumers' Counsel v. FERC*, 23 Tulsa L.J. 613 (1988). She has also served as an Adjunct Business Law Professor at Southwestern College in Chula Vista, California. Prior to joining the Firm, Largent was in private practice for 15 years specializing in complex litigation, handling both trials and appeals in state and federal courts for plaintiffs and defendants.

| Education | B.B.A., University of Oklahoma, 1985; J.D., University of Tulsa, 1988 |
|---|---|
| Honors/ Awards | Board Member, San Diego County Bar Foundation, 2014-present; Board Member, San Diego Volunteer Lawyer Program, 2014-present |

## Arthur C. Leahy



Art Leahy is a founding partner in the Firm's San Diego office and a member of the Firm's Executive and Management Committees. He has nearly 20 years of experience successfully litigating securities actions and derivative cases. Leahy has recovered well over a billion dollars for the Firm's clients and has negotiated comprehensive pro-investor corporate governance reforms at several large public companies. Most recently, Leahy helped secure a $272 million recovery on behalf of mortgage-backed securities investors in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* In the *Goldman Sachs* case, he helped achieve favorable decisions in the Second Circuit Court of Appeals on behalf of investors of Goldman Sachs mortgage-backed securities and again in the Supreme Court, which denied Goldman Sachs' petition for certiorari, or review, of the Second Circuit's reinstatement of the plaintiff's case. He was also part of the Firm's trial team in the AT&T securities litigation, which AT&T and its former officers paid $100 million to settle after two weeks of trial. Prior to joining the Firm, he served as a judicial extern for the Honorable J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit, and served as a judicial law clerk for the Honorable Alan C. Kay of the United States District Court for the District of Hawaii.

| Education | B.A., Point Loma College, 1987; J.D., University of San Diego School of Law, 1990 |
|---|---|
| Honors/ Awards | Super Lawyer, 2016-2017; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2016; J.D., *Cum Laude*, University of San Diego School of Law, 1990; Managing Editor, *San Diego Law Review*, University of San Diego School of Law |

## Jeffrey D. Light



Jeff Light is a partner in the Firm's San Diego office and also currently serves as a Judge Pro Tem for the San Diego County Superior Court. Light practices in the Firm's settlement department, negotiating, documenting, and obtaining court approval of the Firm's complex securities, merger, consumer and derivative actions. These settlements include *In re VeriFone Holdings , Inc. Sec. Litig.* ($95 million recovery); *Louisiana Mun. Police Ret. Sys. v. KPMG, LLP* ($31.6 million recovery); *In re Kinder Morgan, Inc. S'holders Litig.* ($200 million recovery); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.* ($400 million recovery); *In re Currency Conversion Fee Antitrust Litig.* ($336 million recovery); and *In re AT&T Corp. Sec. Litig.* ($100 million recovery). Prior to joining the Firm, he served as a law clerk to the Honorable Louise DeCarl Adler, United States Bankruptcy Court, Southern District of California, and the Honorable James Meyers, Chief Judge, United States Bankruptcy Court, Southern District of California.

| Education | B.A., San Diego State University, 1987; J.D., University of San Diego School of Law, 1991 |
|---|---|
| Honors/ Awards | Top Lawyer in San Diego, *San Diego Magazine*, 2013-2016; J.D., *Cum Laude*, University of San Diego School of Law, 1991; Judge Pro Tem, San Diego Superior Court; American Jurisprudence Award in Constitutional Law |

## Nathan R. Lindell



Nate Lindell is a partner in the Firm's San Diego office, where his practice focuses on representing aggrieved investors in complex civil litigation. He has helped achieve numerous significant recoveries for investors, including: *In re Enron Corp. Sec. Litig.* (*$7.2* billion recovery); *In re HealthSouth Corp. Sec. Litig.* ($671 million recovery); *Luther v. Countrywide Fin. Corp.* ($500 million recovery); *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.* ($388 million recovery); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* ($272 million recovery); *In re Morgan Stanley Mortgage Pass-Through Certificates Litig.* ($95 million recovery); *Massachusetts Bricklayers and Masons Trust Funds v. Deutsche Alt-A Securities, Inc.* ($32.5 million recovery); *City of Ann Arbor Employees' Ret. Sys. v. Citigroup Mortgage Loan Trust Inc.* ($24.9 million recovery); and *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.* ($21.2 million recovery). In October 2016, Lindell successfully argued in front of the New York Supreme Court, Appellate Division, First Judicial Department, for the reversal of an earlier order granting defendants' motion to dismiss in *Phoenix Light SF Limited, et al. v. Morgan Stanley, et al.*

Lindell was also a member of the litigation team responsible for securing a landmark victory from the Second Circuit Court of Appeals in its precedent-setting *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* decision, which dramatically expanded the scope of permissible class actions asserting claims under the Securities Act of 1933 on behalf of mortgage-backed securities investors, and ultimately resulted in a $272 million recovery for investors.

| Education | B.S., Princeton University, 2003; J.D., University of San Diego School of Law, 2006 |
|---|---|
| Honors/ Awards | Super Lawyer "Rising Star," 2015-2017; Charles W. Caldwell Alumni Scholarship, University of San Diego School of Law; CALI/AmJur Award in Sports and the Law |

## Ryan Llorens



Ryan Llorens is a partner in the Firm's San Diego office. Llorens' practice focuses on litigating complex securities fraud cases. He has worked on a number of securities cases that have resulted in significant recoveries for investors, including *In re HealthSouth Corp. Sec. Litig.* ($670 million); *AOL Time Warner* ($629 million); *In re AT&T Corp. Sec. Litig.* ($100 million); *In re Fleming Cos. Sec. Litig.* ($95 million); and *In re Cooper Cos., Inc. Sec Litig.* ($27 million).

| Education | B.A., Pitzer College, 1997; J.D., University of San Diego School of Law, 2002 |
|---|---|
| Honors/ Awards | Super Lawyer "Rising Star," 2015 |

## Andrew S. Love



Andrew Love is a partner in the Firm's San Francisco office. His practice focuses on appeals of securities fraud class action cases. Love has briefed and/or argued appeals on behalf of defrauded investors in several U.S. Courts of Appeals as well as in the California appellate courts. Prior to joining the Firm, Love represented inmates on California's death row in appellate and habeas corpus proceedings, successfully arguing capital cases in both the California Supreme Court and the Ninth Circuit. During his many years as a death penalty lawyer, he co-chaired the Capital Case Defense Seminar (2004-2013), recognized as the largest conference for death penalty practitioners in the country. He regularly presented at the seminar and at other conferences on a wide variety of topics geared towards effective appellate practice. Additionally, he was on the faculty of the National Institute for Trial Advocacy's Post-Conviction Skills Seminar. Love has also written several articles on appellate advocacy and capital punishment that have appeared in *The Daily Journal*, *CACJ Forum*, *American Constitution Society*, and other publications.

| Education | University of Vermont, 1981; J.D., University of San Francisco School of Law, 1985 |
|---|---|
| Honors/ Awards | J.D., *Cum Laude*, University of San Francisco School of Law, 1985; McAuliffe Honor Society, University of San Francisco School of Law, 1982-1985 |

## Carmen A. Medici



Carmen Medici is a partner in the Firm's San Diego office. He represents businesses and consumers who are the victims of price-fixing, monopolization, collusion, and other anticompetitive and unfair business practices. Medici is currently part of the co-lead counsel team prosecuting *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.* He is also part of the co-lead counsel team in *Lincoln Adventures, LLC v. Those Certain Underwriters at Lloyd's London,* where Medici represents buyers of insurance in an antitrust action against insurance companies in the London market. He is also a member of the co-lead litigation team in *In re Aluminum Warehousing Antitrust Litig.* Medici was a member of the discovery team in *In re NCAA Student-Athlete Name & Likeness Licensing Litig.,* which culminated in a trial victory for student athletes against the NCAA. He is also on the litigation teams in *In re Fresh & Process Potatoes Antitrust Litig.* and *In re Digital Music Antitrust Litig.* In addition, he is involved in a number of the Firm's other major antitrust and consumer actions. Medici regularly identifies and pursues potential new antitrust matters and drafts complaints on behalf of individual and class plaintiffs.

| Education | B.S., Arizona State University, 2003; J.D., University of San Diego School of Law, 2006 |
|---|---|
| Honors/ Awards | Super Lawyer "Rising Star," 2015-2017 |

## Mark T. Millkey



Mark Millkey is a partner in the Firm's Melville office. He has significant experience in the areas of securities and consumer litigation, as well as in federal and state court appeals.

During his career, Millkey has worked on a major consumer litigation against MetLife that resulted in a benefit to the class of approximately $1.7 billion, as well as a securities class action against Royal Dutch/Shell that settled for a minimum cash benefit to the class of $130 million and a contingent value of more than $180 million. Since joining Robbins Geller, he has worked on securities class actions that have resulted in approximately $300 million in settlements.

| Education | B.A., Yale University, 1981; M.A., University of Virginia, 1983; J.D., University of Virginia, 1987 |
|---|---|
| Honors/ Awards | Super Lawyer, 2013-2016 |

## David W. Mitchell



David Mitchell is a partner in the Firm's San Diego office and focuses his practice on securities fraud, antitrust and derivative litigation. He leads the Firm's antitrust benchmark litigations as well as the Firm's pay-for-delay actions. He has served as lead or co-lead counsel in numerous cases and has helped achieve substantial settlements for shareholders. His recent cases *include Dahl v. Bain Capital Partners, LLC,* obtaining more than $590 million for shareholders, and *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.* Currently, Mitchell serves as court-appointed counsel in the ISDAfix Benchmark action and *In re Aluminum Warehousing Antitrust Litig.*

Prior to joining the Firm, he served as an Assistant United States Attorney in the Southern District of California and prosecuted cases involving narcotics trafficking, bank robbery, murder-for-hire, alien smuggling, and terrorism. Mitchell has tried nearly 20 cases to verdict before federal criminal juries and made numerous appellate arguments before the Ninth Circuit Court of Appeals.

| Education | B.A., University of Richmond, 1995; J.D., University of San Diego School of Law, 1998 |
|---|---|
| Honors/ Awards | Super Lawyer, 2017; Member, Enright Inn of Court; Super Lawyer, 2016; Antitrust Trailblazer, *The National Law Journal,* 2015; "Best of the Bar," *San Diego Business Journal,* 2014 |

## Maureen E. Mueller



Maureen Mueller is a partner in the Firm's Boca Raton office, where her practice focuses on complex securities litigation. Mueller has helped recover more than $1 billion for investors. She was a member of the team of attorneys responsible for recovering a record-breaking $925 million for investors in *In re UnitedHealth Grp. Inc. PSLRA Litig.* Mueller was also a member of the Firm's trial team in *Jaffe v. Household Int'l, Inc.,* a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. She also served as co-lead counsel in *In re Wachovia Preferred Securities and Bond/Notes Litig.,* which recovered $627 million.

| Education | B.S., Trinity University, 2002; J.D., University of San Diego School of Law, 2007 |
|---|---|
| Honors/ Awards | Super Lawyer "Rising Star," 2015-2016; "Outstanding Young Attorneys," *San Diego Daily Transcript,* 2010; Lead Articles Editor, *San Diego Law Review,* University of San Diego School of Law |

## Danielle S. Myers



Danielle Myers is a partner in the Firm's San Diego office, and focuses her practice on complex securities litigation. Myers is one of the partners that oversees the Portfolio Monitoring Program® and provides legal recommendations to the Firm's institutional investor clients on their options to maximize recoveries in securities litigation, both within the United States and internationally, from inception to settlement. In addition, Myers advises the Firm's clients in connection with lead plaintiff applications and has secured appointment of the Firm's clients as lead plaintiff in over 80 cases, including *Knurr v. Orbital ATK, Inc.*, No. 1:16-cv-01031 (E.D. Va.), *Evellard v. LendingClub Corp.*, No. 3:16-cv-02627 (N.D. Cal.), *In re Plains All American Pipeline, L.P. Sec. Litig.*, No. 4:15-cv-02404 (S.D. Tex.), *Marcus v. J.C. Penney Co., Inc.*, No. 6:13-cv-00736 (E.D. Tex.), *In re Hot Topic, Inc. Sec. Litig.*, No. 2:13-cv-02939 (C.D. Cal.), *Smilovits v. First Solar, Inc., No. 2:12-cv-00555* (D. Ariz.), and *In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 1:10-cv-03461 (S.D.N.Y.). Myers has obtained significant recoveries for shareholders in several cases, including: *In re Hot Topic, Inc. Sec. Litig.*, No. 2:13-cv-02939 (C.D. Cal.) ($14.9 million recovery); *Genesee Cty. Emps.' Ret. Sys. v. Thornburg Mortg., Inc.*, No. 1:09-cv-00300 (D.N.M.) ($11.25 million recovery); *Goldstein v. Tongxin Int'l Ltd.*, No. 2:11-cv-00348 (C.D. Cal.) ($3 million recovery); and *Lane v. Page*, No. Civ-06-1071 (D.N.M.) (pre-merger increase in cash consideration and post-merger cash settlement).

| Education | B.A., University of California at San Diego, 1997; J.D., University of San Diego, 2008 |
|---|---|
| Honors/ Awards | Super Lawyer "Rising Star," 2015-2017; One of the "Five Associates to Watch in 2012," *Daily Journal*; Member, *San Diego Law Review*; CALI Excellence Award in Statutory Interpretation |

## Eric I. Niehaus



Eric Niehaus is a partner in the Firm's San Diego office, where his practice focuses on complex securities and derivative litigation. His efforts have resulted in numerous multi-million dollar recoveries to shareholders and extensive corporate governance changes. Recent examples include: *In re NYSE Specialists Sec. Litig.* (S.D.N.Y.); *In re Novatel Wireless Sec. Litig.* (S.D. Cal.); *Batwin v. Occam Networks, Inc.* (C.D. Cal.); *Commc'ns Workers of Am. Plan for Emps.' Pensions and Death Benefits v. CSK Auto Corp.* (D. Ariz.); *Marie Raymond Revocable Tr. v. Mat Five* (Del. Ch.); and *Kelleher v. ADVO, Inc.* (D. Conn.). Niehaus is currently prosecuting cases against several financial institutions arising from their role in the collapse of the mortgage-backed securities market. Prior to joining the Firm, Niehaus worked as a Market Maker on the American Stock Exchange in New York, and the Pacific Stock Exchange in San Francisco.

| Education | B.S., University of Southern California, 1999; J.D., California Western School of Law, 2005 |
|---|---|
| Honors/ Awards | Super Lawyer "Rising Star," 2015-2016; J.D., *Cum Laude*, California Western School of Law, 2005; Member, *California Western Law Review* |

## Brian O. O'Mara



Brian O'Mara is a partner in the Firm's San Diego office. His practice focuses on complex securities and antitrust litigation. Since 2003, O'Mara has served as lead or co-lead counsel in numerous shareholder and antitrust actions, including: *Bennett v. Sprint Nextel Corp.* (D. Kan.) ($131 million recovery); *In re CIT Grp. Inc. Sec. Litig.* (S.D.N.Y.) ($75 million recovery); *In re MGM Mirage Sec. Litig.* (D. Nev.) ($75 million recovery); *C.D.T.S. No. 1 v. UBS AG* (S.D.N.Y.); *In re Aluminum Warehousing Antitrust Litig.* (S.D.N.Y.);and *Alaska Electrical Pension Fund v. Bank of America Corp.* (S.D.N.Y.). O'Mara has been responsible for a number of significant rulings, including*: Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44 (S.D.N.Y. 2016); *Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498 (D. Kan. 2014); *In re MGM Mirage Sec. Litig.*, 2013 U.S. Dist. LEXIS 139356 (D. Nev. 2013*); In re Constar Int'l, Inc. Sec. Litig.*, 2008 U.S. Dist. LEXIS 16966 (E.D. Pa. 2008), *aff'd*, 585 F.3d 774 (3d Cir. 2009); *In re Direct Gen. Corp. Sec. Litig.*, 2006 U.S. Dist. LEXIS 56128 (M.D. Tenn. 2006); and *In re Dura Pharm., Inc. Sec. Litig.*, 452 F. Supp. 2d 1005 (S.D. Cal. 2006). Prior to joining the Firm, he served as law clerk to the Honorable Jerome M. Polaha of the Second Judicial District Court of the State of Nevada.

| Education | B.A., University of Kansas, 1997; J.D., DePaul University, College of Law, 2002 |
|---|---|
| Honors/ Awards | Super Lawyer, 2016-2017; CALI Excellence Award in Securities Regulation, DePaul University, College of Law |

## Lucas F. Olts



Luke Olts is a partner in the Firm's San Diego office, where his practice focuses on securities litigation on behalf of individual and institutional investors. Olts has recently focused on litigation related to residential mortgage-backed securities, and has served as lead counsel or co-lead counsel in some of the largest recoveries arising from the collapse of the mortgage market. For example, he was a member of the team that recovered $388 million for investors in J.P. Morgan residential mortgage-backed securities in *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.,* and a member of the litigation team responsible for securing a $272 million settlement on behalf of mortgage-backed securities investors in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* Olts also served as co-lead counsel in *In re Wachovia Preferred Securities and Bond/Notes Litig.*, which recovered $627 million under the Securities Act of 1933. He also served as lead counsel in *Siracusano v. Matrixx Initiatives, Inc.*, in which the U.S. Supreme Court unanimously affirmed the decision of the Ninth Circuit that plaintiffs stated a claim for securities fraud under §10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. Prior to joining the Firm, Olts served as a Deputy District Attorney for the County of Sacramento, where he tried numerous cases to verdict, including crimes of domestic violence, child abuse and sexual assault.

| Education | B.A., University of California, Santa Barbara, 2001; J.D., University of San Diego School of Law, 2004 |
|---|---|
| Honors/ Awards | Top Litigator Under 40, *Benchmark Litigation*, 2016-2017 |

## Steven W. Pepich



Steven Pepich is a partner in the Firm's San Diego office. His practice primarily focuses on securities class action litigation, but he has also represented plaintiffs in a wide variety of complex civil cases, including mass tort, royalty, civil rights, human rights, ERISA and employment law actions. Pepich has participated in the successful prosecution of numerous securities class actions, including *Carpenters Health & Welfare Fund v. Coca-Cola Co.* ($137.5 million recovery); *In re Fleming Cos. Sec.* ($95 million recovery); and *In re Boeing Sec. Litig.* ($92 million recovery). He was also a member of the plaintiffs' trial team in *Mynaf v. Taco Bell Corp.*, which settled after two months at trial on terms favorable to two plaintiff classes of restaurant workers for recovery of unpaid wages, and a member of the plaintiffs' trial team in *Newman v. Stringfellow*, where after a nine-month trial, all claims for exposure to toxic chemicals were resolved for $109 million.

| Education | B.S., Utah State University, 1980; J.D., DePaul University, 1983 |
|---|---|

## Daniel J. Pfefferbaum



Daniel Pfefferbaum is a partner in the Firm's San Francisco office, where his practice focuses on complex securities litigation. He has been a member of litigation teams that have recovered more than $100 million for investors, including: *Garden City Emps.' Ret. Sys. v. Psychiatric Solutions, Inc.* ($65 million recovery); *In re PMI Grp., Inc. Sec. Litig.* ($31.25 million recovery); *Cunha v. Hansen Natural Corp.* ($16.25 million recovery); *In re Accuray Inc. Sec. Litig.* ($13.5 million recovery); *and Twinde v. Threshold Pharm., Inc.* ($10 million recovery). Pfefferbaum was a member of the litigation team that secured a historic recovery on behalf of Trump University students in two class actions against President Donald J. Trump. The settlement provides $25 million to approximately 7,000 consumers. This result means individual class members will be eligible for upwards of $35,000 in restitution. He represented the class on a *pro bono* basis.

| Education | B.A., Pomona College, 2002; J.D., University of San Francisco School of Law, 2006; LL.M. in Taxation, New York University School of Law, 2007 |
|---|---|
| Honors/ Awards | Top Litigator Under 40, *Benchmark Litigation*, 2016-2017; Super Lawyer "Rising Star," 2013-2016 |

## Theodore J. Pintar



Theodore Pintar is a partner in the Firm's San Diego office. Pintar has over 20 years of experience prosecuting securities fraud actions and over 15 years of experience prosecuting insurance-related consumer class actions, with recoveries in excess of $1 billion. He was a member of the litigation team in the *AOL Time Warner* securities opt-out actions, which resulted in a global settlement of $629 million. Pintar participated in the successful prosecution of insurance-related and consumer class actions that concern the following: the deceptive sale of annuities and life insurance, including actions against Manufacturer's Life ($555 million settlement value), Principal Mutual Life Insurance Company ($380+ million settlement value) and Allianz Life Insurance Co. of N. Am. ($250 million settlement value); homeowners insurance, including an action against Allstate ($50 million settlement); and automobile insurance companies under Proposition 103, including the Auto Club ($32 million settlement) and GEICO.

| Education | B.A., University of California, Berkeley, 1984; J.D., University of Utah College of Law, 1987 |
|---|---|
| Honors/ Awards | Super Lawyer, 2014-2017; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2016; CAOC Consumer Attorney of the Year Award Finalist, 2015; Note and Comment Editor, *Journal of Contemporary Law*, University of Utah College of Law; Note and Comment Editor, *Journal of Energy Law and Policy*, University of Utah College of Law |

## Willow E. Radcliffe



Willow Radcliffe is a partner in the Firm's San Francisco office and concentrates her practice on securities class action litigation in federal court. Radcliffe has been significantly involved in the prosecution of numerous securities fraud claims, including actions filed against Flowserve, NorthWestern and Ashworth, and has represented plaintiffs in other complex actions, including a class action against a major bank regarding the adequacy of disclosures made to consumers in California related to Access Checks. Prior to joining the Firm, she clerked for the Honorable Maria-Elena James, Magistrate Judge for the United States District Court for the Northern District of California.

| Education | B.A., University of California, Los Angeles 1994; J.D., Seton Hall University School of Law, 1998 |
|---|---|
| Honors/ Awards | J.D., *Cum Laude*, Seton Hall University School of Law, 1998; Most Outstanding Clinician Award; Constitutional Law Scholar Award |

## Mark S. Reich



Mark Reich is a partner in the Firm's New York office. Reich focuses his practice on challenging unfair mergers and acquisitions in courts throughout the country. Reich's notable cases include: *In re Aramark Corp. S'holders Litig.*, where he achieved a $222 million increase in consideration paid to shareholders of Aramark and a substantial reduction to management's voting power – from 37% to 3.5% – in connection with the approval of the going-private transaction; *In re Delphi Fin. Grp. S'holders Litig.*, resulting in a $49 million post-merger settlement for Class A Delphi shareholders; and *In re TD Banknorth S'holders Litig.*, where Reich played a significant role in raising the inadequacy of the $3 million initial settlement, which the court rejected as wholly inadequate, and later resulted in a vastly increased $50 million recovery.

Reich has also played a central role in other shareholder related litigation. His cases *include In re Gen. Elec. Co. ERISA Litig.*, resulting in structural changes to company's 401(k) plan valued at over $100 million, benefiting current and future plan participants, and *In re Doral Fin. Corp. Sec. Litig.*, obtaining a $129 million recovery for shareholders in a securities fraud litigation.

| Education | B.A., Queens College, 1997; J.D., Brooklyn Law School, 2000 |
|---|---|
| Honors/Awards | Super Lawyer, 2013-2016; Member, *The Journal of Law and Policy*, Brooklyn Law School; Member, Moot Court Honor Society, Brooklyn Law School |

## Jack Reise



Jack Reise is a partner in the Firm's Boca Raton office. Devoted to protecting the rights of those who have been harmed by corporate misconduct, his practice focuses on class action litigation (including securities fraud, shareholder derivative actions, consumer protection, antitrust, and unfair and deceptive insurance practices). Reise also dedicates a substantial portion of his practice to representing shareholders in actions brought under the federal securities laws. He is currently serving as lead counsel in more than a dozen cases nationwide. As lead counsel, Reise represented investors in a series of cases involving mutual funds charged with improperly valuing their net assets, which settled for a total of more than $50 million. Other notable actions include: *In re NewPower Holdings Sec. Litig.* ($41 million settlement); *In re Red Hat Sec. Litig.* ($20 million settlement); and *In re AFC Enters., Inc. Sec. Litig.* ($17.2 million settlement). Prior to joining the Firm, Reise represented individuals suffering the debilitating effects of asbestos exposure back in the 1950s and 1960s.

| Education | B.A., Binghamton University, 1992; J.D., University of Miami School of Law, 1995 |
|---|---|
| Honors/Awards | American Jurisprudence Book Award in Contracts; J.D., *Cum Laude*, University of Miami School of Law, 1995; *University of Miami Inter-American Law Review*, University of Miami School of Law |

## Darren J. Robbins



Darren Robbins is a founding partner of Robbins Geller and a member of the Firm's Executive Committee. Over the last two decades, Robbins has served as lead counsel in more than 100 securities actions and has recovered billions of dollars for injured shareholders. Robbins has obtained significant recoveries in a number of actions arising out of wrongdoing related to the issuance of residential mortgage-backed securities, including cases against Countrywide ($500 million) and Goldman Sachs ($272 million). Most recently, he served as lead counsel in *Schuh v. HCA Holdings, Inc.*, which resulted in a $215 million recovery for shareholders, the largest securities class action recovery ever in Tennessee. The recovery represents between 34% and 70% of the aggregate damages, far exceeding the typical recovery in a securities class action. He also served as co-lead counsel in connection with a $627 million recovery for investors in *In re Wachovia Preferred Securities & Bond/Notes Litig.*, one of the largest credit-crisis settlements involving Securities Act claims.

One of the hallmarks of Robbins' practice has been his focus on corporate governance reform. For example, in *UnitedHealth*, a securities fraud class action arising out of an options backdating scandal, Robbins represented lead plaintiff CalPERS and was able to obtain the cancellation of more than 3.6 million stock options held by the company's former CEO and secure a record $925 million cash recovery for shareholders. In addition, Robbins obtained sweeping corporate governance reforms, including the election of a shareholder-nominated member to the company's board of directors, a mandatory holding period for shares acquired via option exercise, and compensation reforms that tied executive pay to performance.

| Education | B.S., University of Southern California, 1990; M.A., University of Southern California, 1990; J.D., Vanderbilt Law School, 1993 |
|---|---|
| Honors/ Awards | Lawyer of the Year, *Best Lawyers®*, 2017; Best Lawyer in America, *Best Lawyers®*, 2010-2017; Local Litigation Star, *Benchmark Litigation*, 2013-2017; Top 50 Lawyers in San Diego, *Super Lawyers Magazine*, 2015; Super Lawyer, 2013-2017; Leading Lawyer, *Chambers USA*, 2014-2016; Leading Lawyer in America, *Lawdragon*; One of the Top 100 Lawyers Shaping the Future, *Daily Journal*; One of the "Young Litigators 45 and Under," *The American Lawyer*; Attorney of the Year, *California Lawyer*; Managing Editor, *Vanderbilt Journal of Transnational Law*, Vanderbilt Law School |

## Robert J. Robbins



Robert Robbins is a partner in the Firm's Boca Raton office. He focuses his practice on investigating securities fraud, initiating securities class actions, and helping institutional and individual shareholders litigate their claims to recover investment losses caused by fraud. Representing shareholders in all aspects of class actions brought pursuant to the federal securities laws, Robbins provides counsel in numerous securities fraud class actions across the country, helping secure significant recoveries for investors. He has been a member of litigation teams responsible for the successful prosecution of many securities class actions, including: *Hospira* ($60 million recovery); *CVS Caremark* ($48 million recovery); *R.H. Donnelley* ($25 million recovery); *Spiegel* ($17.5 million recovery); *TECO Energy, Inc.* ($17.35 million recovery); *AFC Enterprises* ($17.2 million recovery); *Mannatech, Inc.* ($11.5 million recovery); *Newpark Resources, Inc.* ($9.24 million recovery); *Cryo Cell Int'l, Inc.* ($7 million recovery); *Gainsco* ($4 million recovery); and *Body Central* ($3.425 million recovery).

| Education | B.S., University of Florida, 1999; J.D., University of Florida College of Law, 2002 |
|---|---|
| Honors/ Awards | Super Lawyer "Rising Star," 2015-2016; J.D., High Honors, University of Florida College of Law, 2002; Member, *Journal of Law and Public Policy*, University of Florida College of Law; Member, *Phi Delta Phi*, University of Florida College of Law; *Pro bono* certificate, Circuit Court of the Eighth Judicial Circuit of Florida; Order of the Coif |

## Henry Rosen



Henry Rosen is a partner in the Firm's San Diego office, where he is a member of the Hiring Committee and Technology Committee, the latter of which focuses on applications to digitally manage documents produced during litigation and internally generate research files. He has significant experience prosecuting every aspect of securities fraud class actions and has obtained more than $1 billion on behalf of defrauded investors. Prominent cases include *In re Cardinal Health, Inc. Sec. Litig.*, in which Rosen recovered $600 million for defrauded shareholders. This $600 million settlement is the largest recovery ever in a securities fraud class action in the Sixth Circuit, and remains one of the largest settlements in the history of securities fraud litigation. Additional cases include *Jones v. Pfizer Inc.* ($400 million); *In re First Energy* ($89.5 million); *In re CIT Grp. Inc. Sec. Litig* ($75 million); *Stanley v. Safeskin Corp.* ($55 million); *In re Storage Tech. Corp. Sec. Litig.* ($55 million); and *Rasner v. Sturm* (FirstWorld Communications ) ($25.9 million).

| Education | B.A., University of California, San Diego, 1984; J.D., University of Denver, 1988 |
|---|---|
| Honors/ Awards | Editor-in-Chief, *University of Denver Law Review*, University of Denver |

## David A. Rosenfeld



David Rosenfeld is a partner in the Firm's Melville and Manhattan offices. He has focused his practice of law for more than 15 years in the areas of securities litigation and corporate takeover litigation. He has been appointed as lead counsel in dozens of securities fraud lawsuits and has successfully recovered hundreds of millions of dollars for defrauded shareholders. Rosenfeld works on all stages of litigation, including drafting pleadings, arguing motions and negotiating settlements. Most recently, he led the Robbins Geller team in recovering in excess of $34 million for investors in Overseas Shipholding Group. Rosenfeld also led the effort that resulted in the recovery of nearly 90% of losses for investors in Austin Capital, a sub-feeder fund of Bernard Madoff. Rosenfeld has also achieved remarkable recoveries against companies in the financial industry. In addition to recovering $70 million for investors in Credit Suisse Group, and a $74.25 million recovery for First BanCorp shareholders, he recently settled claims against Barclays for $14 million, or 20% of investors' damages, for statements made about its LIBOR practices.

| Education | B.S., Yeshiva University, 1996; J.D., Benjamin N. Cardozo School of Law, 1999 |
|---|---|
| Honors/ Awards | Advisory Board Member of *Stafford's Securities Class Action Reporter*; Future Star, *Benchmark Litigation*, 2016-2017; Super Lawyer, 2014-2016; Super Lawyer "Rising Star," 2011-2013 |

## Robert M. Rothman



Robert Rothman is a partner in the Firm's New York offices. Rothman has extensive experience litigating cases involving investment fraud, consumer fraud and antitrust violations. He also lectures to institutional investors throughout the world. Rothman has served as lead counsel in numerous class actions alleging violations of securities laws, including cases against First Bancorp ($74.25 million recovery), CVS ($48 million recovery), Popular, Inc. ($37.5 million recovery), and iStar Financial, Inc. ($29 million recovery). He actively represents shareholders in connection with going-private transactions and tender offers. For example, in connection with a tender offer made by Citigroup, Rothman secured an increase of more than $38 million over what was originally offered to shareholders.

| Education | B.A., State University of New York at Binghamton, 1990; J.D., Hofstra University School of Law, 1993 |
|---|---|
| Honors/ Awards | Super Lawyer, 2011, 2013-2016; Dean's Academic Scholarship Award, Hofstra University School of Law; J.D., with Distinction, Hofstra University School of Law, 1993; Member, *Hofstra Law Review*, Hofstra University School of Law |

## Samuel H. Rudman



Sam Rudman is a founding member of the Firm, a member of the Firm's Executive and Management Committees, and manages the Firm's New York offices. His 22-year securities practice focuses on recognizing and investigating securities fraud, and initiating securities and shareholder class actions to vindicate shareholder rights and recover shareholder losses. A former attorney with the SEC, Rudman has recovered hundreds of millions of dollars for shareholders, including a $200 million recovery in *Motorola*, a $129 million recovery in *Doral Financial*, an $85 million recovery in *Blackstone*, a $74 million recovery in *First BanCorp*, a $65 million recovery in *Forest Labs*, a $50 million recovery in *TD Banknorth*, and a $48 million recovery in *CVS Caremark*.

| Education | B.A., Binghamton University, 1989; J.D., Brooklyn Law School, 1992 |
|---|---|
| Honors/ Awards | Local Litigation Star, *Benchmark Litigation*, 2013-2017; Litigation Star, *Benchmark Litigation*, 2013, 2017; Leading Lawyer in America, *Lawdragon*, 2016; Leading Lawyer, *Chambers USA*, 2014-2016; Super Lawyer, 2007-2016; Dean's Merit Scholar, Brooklyn Law School; Moot Court Honor Society, Brooklyn Law School; Member, *Brooklyn Journal of International Law*, Brooklyn Law School |

## Joseph Russello



Joseph Russello is a partner in the Firm's Melville office, where he concentrates his practice on prosecuting shareholder class action and breach of fiduciary duty claims, as well as complex commercial litigation and consumer class actions.

Russello has played a vital role in recovering millions of dollars for aggrieved investors, including those of Blackstone ($85 million); NBTY, Inc. ($16 million); LaBranche & Co., Inc. ($13 million); The Children's Place Retail Stores, Inc. ($12 million); Prestige Brands Holdings, Inc. ($11 million); and Jarden Corporation ($8 million). He also has significant experience in corporate takeover and breach of fiduciary duty litigation. In expedited litigation in the Delaware Court of Chancery involving Mat Five LLC, for example, his efforts paved the way for an "opt-out" settlement that offered investors more than $38 million in increased cash benefits. In addition, he played an integral role in convincing the Delaware Court of Chancery to enjoin Oracle Corporation's $1 billion acquisition of Art Technology Group, Inc. pending the disclosure of material information. He also has experience in litigating consumer class actions.

Prior to joining the Firm, Russello practiced in the professional liability group at Rivkin Radler LLP, where he defended attorneys, accountants and other professionals in state and federal litigation and assisted in evaluating and resolving complex insurance coverage matters.

| Education | B.A., Gettysburg College, 1998; J.D., Hofstra University School of Law, 2001 |
|---|---|
| Honors/ Awards | Super Lawyer, 2014-2016 |

## Scott H. Saham



Scott Saham is a partner in the Firm's San Diego office, where his practice focuses on complex securities litigation. He is licensed to practice law in both California and Michigan. Most recently, Saham was part of the litigation team in *Schuh v. HCA Holdings, Inc.*, which resulted in a $215 million recovery for shareholders, the largest securities class action recovery ever in Tennessee. He also served as lead counsel prosecuting the Pharmacia securities litigation in the District of New Jersey, which resulted in a $164 million recovery. Additionally, Saham was lead counsel in the *In re Coca-Cola Sec. Litig.* in the Northern District of Georgia, which resulted in a $137.5 million recovery after nearly eight years of litigation. He also obtained reversal from the California Court of Appeal of the trial court's initial dismissal of the landmark Countrywide mortgage-backed securities action. This decision is reported as *Luther v. Countrywide Fin. Corp.*, 195 Cal. App. 4th 789 (2011), and following this ruling that revived the action the case settled for $500 million.

| Education | B.A., University of Michigan, 1992; J.D., University of Michigan Law School, 1995 |
|---|---|

## Stephanie Schroder



Stephanie Schroder is a partner in the Firm's San Diego office. Schroder has significant experience prosecuting securities fraud class actions and shareholder derivative actions. Her practice also focuses on advising institutional investors, including multi-employer and public pension funds, on issues related to corporate fraud in the United States securities markets. Currently, she is representing clients that have suffered losses from the Madoff fraud in the *Austin Capital* and *Meridian Capital* litigations.

Schroder has obtained millions of dollars on behalf of defrauded investors. Prominent cases include *AT&T* ($100 million recovery at trial); *FirstEnergy* ($89.5 million recovery); *FirstWorld Commc'ns* ($25.9 million recovery). Major clients include the Pension Trust Fund for Operating Engineers, the Kentucky State District Council of Carpenters Pension Trust Fund, the Laborers Pension Trust Fund for Northern California, the Construction Laborers Pension Trust for Southern California, and the Iron Workers Mid-South Pension Fund.

| Education | B.A., University of Kentucky, 1997; J.D., University of Kentucky College of Law, 2000 |
|---|---|

## Jessica T. Shinnefield



Jessica Shinnefield is a partner in the Firm's San Diego office and currently focuses on initiating, investigating and prosecuting new securities fraud class actions. Shinnefield was a member of the litigation teams that obtained significant recoveries for investors in cases such as *AOL Time Warner*, *Cisco Systems*, *Aon* and *Petco*. Shinnefield was also a member of the litigation team prosecuting actions against investment banks and leading national credit rating agencies for their roles in structuring and rating structured investment vehicles backed by toxic assets. These cases are among the first to successfully allege fraud against the rating agencies, whose ratings have traditionally been protected by the First Amendment. She is currently litigating several securities actions, including an action against Omnicare, in which she helped obtain a favorable ruling from the U.S. Supreme Court.

| Education | B.A., University of California at Santa Barbara, B.A., 2001; J.D., University of San Diego School of Law, 2004 |
|---|---|
| Honors/ Awards | Super Lawyer "Rising Star," 2015-2016; B.A., *Phi Beta Kappa*, University of California at Santa Barbara, 2001 |

## Elizabeth A. Shonson



Elizabeth Shonson is a partner in the Firm's Boca Raton office. She concentrates her practice on representing investors in class actions brought pursuant to the federal securities laws. Shonson has litigated numerous securities fraud class actions nationwide, helping achieve significant recoveries for aggrieved investors. She was a member of the litigation teams responsible for recouping millions of dollars for defrauded investors, including: *In re Massey Energy Co. Sec. Litig.* (S.D. W.Va.) ($265 million); *Nieman v. Duke Energy Corp.* (W.D.N.C.) ($146.25 million recovery); *Eshe Fund v. Fifth Third Bancorp* (S.D. Ohio) ($16 million); *City of St. Clair Shores Gen. Emps. Ret. Sys. v. Lender Processing Servs., Inc.* (M.D. Fla.) ($14 million); and *In re Synovus Fin. Corp.* (N.D. Ga.) ($11.75 million).

| Education | B.A., Syracuse University, 2001; J.D., University of Florida Levin College of Law, 2005 |
|---|---|
| Honors/ Awards | Super Lawyer "Rising Star," 2016; J.D., *Cum Laude*, University of Florida Levin College of Law, 2005; Editor-in-Chief, *Journal of Technology Law & Policy*; Phi Delta Phi; B.A., with Honors, *Summa Cum Laude*, Syracuse University, 2001; Phi Beta Kappa |

## Trig Smith

Trig Smith is a partner in the Firm's San Diego office. Smith focuses on complex securities class actions in which he has helped obtain significant recoveries for investors in cases such as *Cardinal Health* ($600 million); *Qwest* ($445 million); *Forest Labs.* ($65 million); *Accredo* ($33 million); and *Exide* ($13.7 million).

| Education | B.S., University of Colorado, Denver, 1995; M.S., University of Colorado, Denver, 1997; J.D., Brooklyn Law School, 2000 |
|---|---|
| Honors/ Awards | Member, *Brooklyn Journal of International Law*, Brooklyn Law School; CALI Excellence Award in Legal Writing, Brooklyn Law School |

## Mark Solomon



Mark Solomon is a founding partner in the Firm's San Diego office and leads its international litigation practice. Over the last 23 years, he has regularly represented United States- and United Kingdom-based pension funds, and asset managers in class and non-class securities litigation in federal and state courts throughout the United States. He has been admitted to the Bars of England and Wales (Barrister), Ohio and California, but now practices exclusively in California, as well as in various United States federal district and appellate courts.

Solomon has spearheaded the prosecution of many significant securities fraud cases. He has obtained multi-hundred million dollar recoveries for plaintiffs in pre-trial settlements and significant corporate governance reforms designed to limit recidivism and promote appropriate standards. He litigated, through the rare event of trial, the securities class action against Helionetics Inc. and its executives, where he won a $15.4 million federal jury verdict. Prior to the most recent financial crisis, he was instrumental in obtaining some of the first mega-recoveries in the field in California and Texas, serving as co-lead counsel in *In re Informix Corp. Sec. Litig.* (N.D. Cal.) and recovering $131 million for Informix investors; and serving as co-lead counsel in *Schwartz v. TXU Corp.* (N.D. Tex.), where he helped obtain a recovery of over $149 million for a class of purchasers of TXU securities. Solomon is currently counsel to a number of pension funds serving as lead plaintiffs in cases throughout the United States.

| Education | B.A., Trinity College, Cambridge University, England, 1985; L.L.M., Harvard Law School, 1986; Inns of Court School of Law, Degree of Utter Barrister, England, 1987 |
|---|---|
| Honors/ Awards | Super Lawyer, 2017; Lizette Bentwich Law Prize, Trinity College, 1983 and 1984; Hollond Travelling Studentship, 1985; Harvard Law School Fellowship, 1985-1986; Member and Hardwicke Scholar of the Honourable Society of Lincoln's Inn |

## Susan G. Taylor



Susan Goss Taylor is a partner in the Firm's San Diego office. Taylor has been responsible for prosecuting securities fraud class actions and has obtained recoveries for investors in litigation involving *WorldCom* ($657 million), *AOL Time Warner* ($629 million), *Qwest* ($445 million) and *Motorola* ($200 million). She also served as counsel on the Microsoft, DRAM and Private Equity antitrust litigation teams, as well as on a number of consumer actions alleging false and misleading advertising and unfair business practices against major corporations such as General Motors, Saturn, Mercedes-Benz USA, LLC, BMG Direct Marketing, Inc., and Ameriquest Mortgage Company. Prior to joining the Firm, she served as a Special Assistant United States Attorney for the Southern District of California, where she obtained considerable trial experience prosecuting drug smuggling and alien smuggling cases.

| Education | B.A., Pennsylvania State University, 1994; J.D., The Catholic University of America, Columbus School of Law, 1997 |
|---|---|
| Honors/ Awards | Super Lawyer, 2015-2016; Member, Moot Court Team, The Catholic University of America, Columbus School of Law |

## David C. Walton



David Walton is a partner in the Firm's San Diego office and a member of the Firm's Executive and Management Committees. He specializes in pursuing financial fraud claims, using his background as a Certified Public Accountant and Certified Fraud Examiner to prosecute securities law violations on behalf of investors. For over 20 years, he has prosecuted class actions and private actions on behalf of defrauded investors, particularly in the area of accounting fraud. He has investigated and participated in the litigation of highly complex accounting scandals within some of America's largest corporations, including Enron ($7.2 billion), HealthSouth ($671 million), WorldCom ($657 million), AOL Time Warner ($629 million), Countrywide ($500 million), and Dynegy ($474 million), as well as numerous companies implicated in stock option backdating. In 2003-2004, he served as a member of the California Board of Accountancy, which is responsible for regulating the accounting profession in California.

| Education | B.A., University of Utah, 1988; J.D., University of Southern California Law Center, 1993 |
|---|---|
| Honors/ Awards | Super Lawyer, 2015-2016; California Board of Accountancy, Member, 2003-2004; *Southern California Law Review*, Member, University of Southern California Law Center; Hale Moot Court Honors Program, University of Southern California Law Center |

## Douglas Wilens



Douglas Wilens is a partner in the Firm's Boca Raton office. Wilens is a member of the Firm's appellate practice group, participating in numerous appeals in federal and state courts across the country. Most notably, Wilens handled successful appeals in the First Circuit Court of Appeals in *Mass. Ret. Sys. v. CVS Caremark Corp.*, 716 F.3d 229 (1st Cir. 2013) (reversal of order granting motion to dismiss), and in the Fifth Circuit Court of Appeals in *Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) (reversal of order granting motion to dismiss). Wilens is also involved in the Firm's lead plaintiff practice group, handling lead plaintiff issues arising under the PSLRA.

Prior to joining the Firm, Wilens was an associate at a nationally recognized firm, where he litigated complex actions on behalf of numerous professional sports leagues, including the National Basketball Association, the National Hockey League and Major League Soccer. He has also served as an adjunct professor at Florida Atlantic University and Nova Southeastern University, where he taught undergraduate and graduate-level business law classes.

| Education | B.S., University of Florida, 1992; J.D., University of Florida College of Law, 1995 |
|---|---|
| Honors/ Awards | Book Award for Legal Drafting, University of Florida College of Law; J.D., with Honors, University of Florida College of Law, 1995 |

## Shawn A. Williams



Shawn Williams is a partner in the Firm's San Francisco office and a member of the Firm's Management Committee. His practice focuses on securities class actions. Williams was among the lead class counsel for the Firm recovering investor losses in notable cases, including: *In re Krispy Kreme Doughnuts, Inc. Sec. Litig.* ($75 million); *In re Veritas Software Corp. Sec. Litig.* ($35 million); and *In re Cadence Design Sys. Sec. Litig.* ($38 million). Williams is also among the Firm's lead attorneys prosecuting shareholder derivative actions, securing tens of millions of dollars in cash recoveries and negotiating the implementation of comprehensive corporate governance enhancements, such as *In re McAfee, Inc. Derivative Litig.*; *In re Marvell Tech. Grp. Ltd. Derivative Litig.*; *In re KLA Tencor S'holder Derivative Litig.*; and *The Home Depot, Inc. Derivative Litig.* Prior to joining the Firm in 2000, Williams served for 5 years as an Assistant District Attorney in the Manhattan District Attorney's Office, where he tried over 20 cases to New York City juries and led white-collar fraud grand jury investigations.

| Education | B.A., The State of University of New York at Albany, 1991; J.D., University of Illinois, 1995 |
|---|---|
| Honors/ Awards | Super Lawyer, 2014-2016; Board Member, California Bar Foundation, 2012-present |

## David T. Wissbroecker



David Wissbroecker is a partner in the Firm's San Diego and Chicago offices and focuses his practice on securities class action litigation in the context of mergers and acquisitions, representing both individual shareholders and institutional investors. Wissbroecker has litigated numerous high profile cases in Delaware and other jurisdictions, including shareholder class actions challenging the acquisitions of Kinder Morgan, Del Monte Foods, Affiliated Computer Services and Rural Metro. As part of the deal litigation team at Robbins Geller, Wissbroecker has helped secure monetary recoveries for shareholders that collectively exceed $600 million. Prior to joining the Firm, Wissbroecker served as a staff attorney for the United States Court of Appeals for the Seventh Circuit, and then as a law clerk for the Honorable John L. Coffey, Circuit Judge for the Seventh Circuit.

| Education | B.A., Arizona State University, 1998; J.D., University of Illinois College of Law, 2003 |
|---|---|
| Honors/ Awards | Super Lawyer "Rising Star," 2015; J.D., *Magna Cum Laude*, University of Illinois College of Law, 2003; B.A., *Cum Laude*, Arizona State University, 1998 |

**Exhibit E**
**Page 126**

## Christopher M. Wood



Christopher Wood is a partner in the Firm's Nashville office, where his practice focuses on complex securities litigation. He has been a member of litigation teams responsible for recovering hundreds of millions of dollars for investors, including: *In re Massey Energy Co. Sec. Litig.* ($265 million recovery); *In re VeriFone Holdings, Inc. Sec. Litig.* ($95 million recovery); *Garden City Emps.' Ret. Sys. v. Psychiatric Solutions, Inc.* ($65 million recovery); *In re Micron Tech., Inc. Sec. Litig.* ($42 million recovery); and *Winslow v. BancorpSouth, Inc.* ($29.5 million recovery).

Wood has provided *pro bono* legal services through the San Francisco Bar Association's Volunteer Legal Services Program, the Ninth Circuit's Pro Bono Program, Volunteer Lawyers & Professionals for the Arts, and Tennessee Justice for Our Neighbors.

| | |
|---|---|
| **Education** | J.D., University of San Francisco School of Law, 2006; B.A., Vanderbilt University, 2003 |
| **Honors/ Awards** | Super Lawyer "Rising Star," 2011-2013, 2015-2016 |

## Debra J. Wyman



Debra Wyman is a partner in the Firm's San Diego office who specializes in securities litigation. She has litigated numerous cases against public companies in state and federal courts that have resulted in over $1 billion in securities fraud recoveries. Most recently, Wyman was a member of the trial team in *Schuh v. HCA Holdings, Inc.*, which resulted in a $215 million recovery for shareholders, the largest securities class action recovery ever in Tennessee. The recovery represents between 34% and 70% of the aggregate damages, far exceeding the typical recovery in a securities class action. Wyman was also part of the trial team that litigated *In re AT&T Corp. Sec. Litig.*, which was tried in the United States District Court, District of New Jersey, and settled after only two weeks of trial for $100 million. She prosecuted a complex securities and accounting fraud case against HealthSouth Corp., one of the largest and longest-running corporate frauds in history, in which $671 million was recovered for defrauded HealthSouth investors.

| | |
|---|---|
| **Education** | B.A., University of California Irvine, 1990; J.D., University of San Diego School of Law, 1997 |
| **Honors/ Awards** | Super Lawyer, 2016-2017 |

## Of Counsel

### Laura M. Andracchio

Laura Andracchio is Of Counsel in the Firm's San Diego office, where she focuses primarily on litigation under the federal securities laws. She has litigated dozens of cases against public companies in federal and state courts throughout the country, and has contributed to hundreds of millions of dollars in recoveries for injured investors.

Andracchio was a lead member of the trial team in *In re AT&T Corp. Sec. Litig.*, which settled for $100 million after two weeks of trial in district court in New Jersey. Prior to trial, she was responsible for managing and litigating the case, which was pending for four years. She also led the litigation team in *Brody v. Hellman*, a case against Qwest and former directors of U.S. West seeking an unpaid dividend, recovering $50 million. In addition, Andracchio was the lead litigator in *In re PCom, Inc. Sec. Litig.*, resulting in a $16 million recovery for the plaintiff class. Most recently, she has been focusing primarily on residential mortgage-backed securities litigation on behalf of investors against Wall Street financial institutions in federal courts.

| Education | J.D., Duquesne University School of Law, 1989; B.A., Bucknell University, 1986 |
|---|---|
| Honors/ Awards | Order of the Barristers, J.D., with honors, Duquesne University School of Law, 1989 |

### Randi D. Bandman



Randi Bandman has directed numerous complex securities cases at the Firm, such as the pending case of *In re BP plc Derivative Litig.*, a case brought to address the alleged utter failure of BP to ensure the safety of its operation in the United States, including Alaska, and which caused such devastating results as in the Deepwater Horizon oil spill, the worst environmental disaster in history. Bandman was instrumental in the Firm's development of representing coordinated groups of institutional investors in private opt-out cases that resulted in historical recoveries, such as in WorldCom and AOL Time Warner. Through her years at the Firm, she has represented hundreds of institutional investors, including domestic and non-U.S. investors, in some of the largest and most successful shareholder class actions ever prosecuted, resulting in billions of dollars of recoveries, involving such companies as Enron, Unocal and Boeing. Bandman was also instrumental in the landmark 1998 state settlement with the tobacco companies for $12.5 billion.

| Education | B.A., University of California, Los Angeles; J.D., University of Southern California |
|---|---|

### Lea Malani Bays

Lea Malani Bays is Of Counsel in the Firm's San Diego office. She focuses on e-discovery issues, from preservation through production, and provides counsel to the Firm's multi-disciplinary, e-discovery team consisting of attorneys, forensic analysts and database professionals. Through her role as counsel to the e-discovery team, Bays is very familiar with the various stages of e-discovery, including identification of relevant electronically stored information, data culling, predictive coding protocols, privilege and responsiveness reviews, as well as having experience in post-production discovery through trial preparation. Through speaking at various events, she is also a leader in shaping the broader dialogue on e-discovery issues.

Bays was recently part of the litigation team that earned the approval of a $131 million settlement in favor of plaintiffs in *Bennett v. Sprint Nextel Corp.* The settlement, which resolved claims arising from Sprint Corporation's ill-fated merger with Nextel Communications in 2005, represents a significant recovery for the plaintiff class, achieved after five years of tireless effort by the Firm. Prior to joining Robbins Geller, Bays was a Litigation Associate at Kaye Scholer LLP's Melville office. She has experience in a wide range of litigation, including complex securities litigation, commercial contract disputes, business torts, antitrust, civil fraud, and trust and estate litigation.

| Education | B.A., University of California, Santa Cruz, 1997; J.D., New York Law School, 2007 |
|---|---|
| Honors/ Awards | J.D., *Magna Cum Laude*, New York Law School, 2007; Executive Editor, *New York Law School Law Review*; Legal Aid Society's Pro Bono Publico Award; NYSBA Empire State Counsel; Professor Stephen J. Ellmann Clinical Legal Education Prize; John Marshall Harlan Scholars Program, Justice Action Center |

## Mary K. Blasy

Mary Blasy is Of Counsel to the Firm's and is based in the Firm's Melville and Washington, D.C. offices. Her practice focuses on the investigation, commencement, and prosecution of securities fraud class actions and shareholder derivative suits. Blasy has recovered hundreds of millions of dollars for investors in securities fraud class actions against Reliance Acceptance Corp. ($66 million); Sprint Corp. ($50 million); Titan Corporation ($15+ million); Martha Stewart Omni-Media, Inc. ($30 million); and Coca-Cola Co. ($137.5 million). Blasy has also been responsible for prosecuting numerous complex shareholder derivative actions against corporate malefactors to address violations of the nation's securities, environmental and labor laws, obtaining corporate governance enhancements valued by the market in the billions of dollars.

In 2014, the Presiding Justice of the Appellate Division of the Second Department of the Supreme Court of the State of New York appointed Blasy to serve as a member of the Independent Judicial Election Qualification Commission, which reviews the qualifications of candidates seeking public election to New York State Supreme Courts in the 10th Judicial District. Blasy also serves on the *Law 360* Securities Editorial Advisory Board.

| Education | B.A., California State University, Sacramento, 1996; J.D., UCLA School of Law, 2000 |
|---|---|
| Honors/ Awards | Super Lawyer, 2016; *Law 360* Securities Editorial Advisory Board, 2015-2016; Member, Independent Judicial Election Qualification Commission, 2014-present |

## Bruce Boyens

Bruce Boyens has served as Of Counsel to the Firm since 2001. A private practitioner in Denver, Colorado since 1990, Boyens specializes in issues relating to labor and environmental law, labor organizing, labor education, union elections, internal union governance and alternative dispute resolutions. In this capacity, he previously served as a Regional Director for the International Brotherhood of Teamsters elections in 1991 and 1995, and developed and taught collective bargaining and labor law courses for the George Meany Center, Kennedy School of Government, Harvard University, and the Kentucky Nurses Association, among others.

In addition, Boyens served as the Western Regional Director and Counsel for the United Mine Workers from 1983-1990, where he was the chief negotiator in over 30 major agreements, and represented the United Mine Workers in all legal matters. From 1973-1977, he served as General Counsel to District 17 of the United Mine Workers Association, and also worked as an underground coal miner during that time.

| Education | J.D., University of Kentucky College of Law, 1973; Harvard University, Certificate in Environmental Policy and Management |
|---|---|

## Christopher Collins



Christopher Collins is Of Counsel in the Firm's San Diego office. His practice areas include antitrust, consumer protection and tobacco litigation. Collins served as co-lead counsel in *Wholesale Elec. Antitrust Cases I & II*, charging an antitrust conspiracy by wholesale electricity suppliers and traders of electricity in California's newly deregulated wholesale electricity market wherein plaintiffs secured a global settlement for California consumers, businesses and local governments valued at more than $1.1 billion. He was also involved in California's tobacco litigation, which resulted in the $25.5 billion recovery for California and its local entities. Collins is currently counsel on the MemberWorks upsell litigation, as well as a number of consumer actions alleging false and misleading advertising and unfair business practices against major corporations. He formerly served as a Deputy District Attorney for Imperial County.

| Education | B.A., Sonoma State University, 1988; J.D., Thomas Jefferson School of Law, 1995 |
|---|---|

## Patrick J. Coughlin



Patrick Coughlin is Of Counsel to the Firm and has served as lead counsel in several major securities matters, including one of the earliest and largest class action securities cases to go to trial, *In re Apple Comput. Sec. Litig.* Coughlin was recently one of the lead attorneys who secured a historic recovery on behalf of Trump University students in two class actions against President Donald J. Trump. The settlement provides $25 million to approximately 7,000 consumers. This result means individual class members will be eligible for upwards of $35,000 in restitution. He represented the class on a *pro bono* basis. Additional prominent securities class actions prosecuted by Coughlin include the *Enron* litigation (**$7.2** billion recovery); the *Qwest* litigation ($445 million recovery); and the *HealthSouth* litigation ($671 million recovery). In addition to the numerous securities cases, Coughlin has handled a number of large antitrust cases including the Visa/Master Card *Interchange Fee* case, the *Currency Conversion* cases in which $360 million was recovered for consumers and the Private Equity litigation (*Dahl v. Bain Capital Partners, LLC*) in which $590.5 million was recovered for investors. Coughlin was formerly an Assistant United States Attorney in the District of Columbia and the Southern District of California, handling complex white-collar fraud matters.

| **Education** | B.S., Santa Clara University, 1977; J.D., Golden Gate University, 1983 |
|---|---|
| **Honors/ Awards** | Best Lawyer in America, *Best Lawyers®*, 2006-2017; Super Lawyer, 2004-2017; Antitrust Trailblazer, *The National Law Journal*, 2015; Leading Lawyer, Senior Statesman, *Chambers USA*, 2014-2016; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2016; Top 100 Lawyers, *Daily Journal*, 2008; Leading Lawyers in America, *Lawdragon*, 2006, 2008-2009 |

## Michael J. Dowd



Mike Dowd was a founding partner of the Firm. He has practiced in the area of securities litigation for 20 years, prosecuting dozens of complex securities cases and obtaining significant recoveries for investors in cases such as *UnitedHealth* ($925 million), *WorldCom* ($657 million), *AOL Time Warner* ($629 million), *Qwest* ($445 million) and *Pfizer* ($400 million). Dowd served as lead trial counsel in *Jaffe v. Household Int'l, Inc.* in the Northern District of Illinois, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. Dowd also served as the lead trial lawyer in *In re AT&T Corp. Sec. Litig.*, which was tried in the District of New Jersey and settled after only two weeks of trial for $100 million.

Dowd served as an Assistant United States Attorney in the Southern District of California from 1987-1991, and again from 1994-1998.

| **Education** | B.A., Fordham University, 1981; J.D., University of Michigan School of Law, 1984 |
|---|---|
| **Honors/ Awards** | Best Lawyer in America, *Best Lawyers®*, 2015-2017; Leading Lawyer in America, *Lawdragon*, 2014-2016; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2016; Super Lawyer, 2010-2017; Litigator of the Week, *The American Lawyer*, 2015; Litigation Star, *Benchmark Litigation* 2013; Directorship 100, NACD Directorship, 2012; Attorney of the Year, *California Lawyer*, 2010; Top 100 Lawyers, *Daily Journal*, 2009; Director's Award for Superior Performance, United States Attorney's Office; B.A., *Magna Cum Laude*, Fordham University, 1981 |

## Alan I. Ellman



Alan Ellman is Of Counsel in the Firm's Melville office, where he concentrates his practice on prosecuting complex securities fraud cases on behalf of institutional investors. Most recently, he was on the team of attorneys who recovered in excess of $34 million for investors in *In re OSG Sec. Litig.*, which represented an outsized recovery of 93% of bond purchasers' damages and 28% of stock purchasers' damages. The creatively structured settlement included more than $15 million paid by a bankrupt entity. In 2006, Ellman received a Volunteer and Leadership Award from Housing Conservation Coordinators (HCC) for his *pro bono* service defending a client in Housing Court against a non-payment action, arguing an appeal before the Appellate Term, and staffing HCC's legal clinic. He also successfully appealed a *pro bono* client's criminal sentence before the Appellate Division.

| Education | B.S., B.A., State University of New York at Binghamton, 1999; J.D., Georgetown University Law Center, 2003 |
|---|---|
| Honors/ Awards | Super Lawyer "Rising Star," 2014-2015; B.S., B.A., *Cum Laude*, State University of New York at Binghamton, 1999 |

## L. Thomas Galloway

Thomas Galloway is Of Counsel to the Firm. Galloway is the founding partner of Galloway & Associates PLLC, a law firm that specializes in the representation of institutional investors – namely, public and multi-employer pension funds. He is also President of the Galloway Family Foundation, which funds investigative journalism into human rights abuses around the world.

| Education | B.A., Florida State University, 1967; J.D., University of Virginia School of Law, 1972 |
|---|---|
| Honors/ Awards | Articles Editor, *University of Virginia Law Review*, University of Virginia School of Law; *Phi Beta Kappa*, University of Virginia School of Law; Trial Lawyer of the Year in the United States, 2003 |

## Edward M. Gergosian



Ed Gergosian is Of Counsel in the Firm's San Diego office. Gergosian has practiced solely in complex litigation for 28 years, first with a nationwide securities and antitrust class action firm, managing its San Diego office, and thereafter as a founding member of his own firm. He has actively participated in the leadership and successful prosecution of several securities and antitrust class actions and shareholder derivative actions, including *In re 3Com Corp. Sec. Litig.* (which settled for $259 million); *In re Informix Corp. Sec. Litig.* (which settled for $142 million); and the Carbon Fiber antitrust litigation (which settled for $60 million). Gergosian was part of the team that prosecuted the *AOL Time Warner* state and federal court securities opt-out actions, which settled for $629 million. He also obtained a jury verdict in excess of $14 million in a consumer class action captioned *Gutierrez v. Charles J. Givens Organization*.

| Education | B.A., Michigan State University, 1975; J.D., University of San Diego School of Law, 1982 |
|---|---|
| Honors/ Awards | Super Lawyer, 2014-2017; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2016; J.D., *Cum Laude*, University of San Diego School of Law, 1982 |

## Mitchell D. Gravo



Mitchell Gravo is Of Counsel to the Firm and concentrates his practice on government relations. He represents clients before the Alaska Congressional delegation, the Alaska Legislature, the Alaska State Government and the Municipality of Anchorage.

Gravo's clients include Anchorage Economic Development Corporation, Anchorage Convention and Visitors Bureau, UST Public Affairs, Inc., International Brotherhood of Electrical Workers, Alaska Seafood International, Distilled Spirits Council of America, RIM Architects, Anchorage Police Department Employees Association, Fred Meyer, and the Automobile Manufacturer's Association. Prior to joining the Firm, he served as an intern with the Municipality of Anchorage, and then served as a law clerk to Superior Court Judge J. Justin Ripley.

| Education | B.A., Ohio State University; J.D., University of San Diego School of Law |
|---|---|

## Helen J. Hodges



Helen Hodges is Of Counsel to the Firm and is based in the Firm's San Diego office. Hodges has been involved in numerous securities class actions, including *Knapp v. Gomez*, in which a plaintiffs' verdict was returned in a Rule 10b-5 class action; *Nat'l Health Labs*, which settled for $64 million; *Thurber v. Mattel*, which settled for $122 million; and *Dynegy*, which settled for $474 million. More recently, she focused on the prosecution of *Enron*, where a record recovery (**$7.2** billion) was obtained for investors.

| Education | B.S., Oklahoma State University, 1979; J.D., University of Oklahoma, 1983 |
|---|---|
| Honors/ Awards | Rated AV by Martindale-Hubbell; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2016; Super Lawyer, 2007; Oklahoma State University Foundation Board of Trustees, 2013 |

## David J. Hoffa



David Hoffa is based in Michigan and works out of the Firm's Washington, D.C. office. Since 2006, Hoffa has been serving as a liaison to over 110 institutional investors in portfolio monitoring, securities litigation and claims filing matters. His practice focuses on providing a variety of legal and consulting services to U.S. state and municipal employee retirement systems, single and multi-employer U.S. Taft-Hartley benefit funds, as well as a leader on the Firm's Israel institutional investor outreach team. Hoffa also serves as a member of the Firm's lead plaintiff advisory team, and advises public and multi-employer pension funds around the country on issues related to fiduciary responsibility, legislative and regulatory updates, and "best practices" in the corporate governance of publicly traded companies.

Early in his legal career, Hoffa worked for a law firm based in Birmingham, Michigan, where he appeared regularly in Michigan state court in litigation pertaining to business, construction and employment related matters. Hoffa has also appeared before the Michigan Court of Appeals on several occasions.

| Education | B.A., Michigan State University, 1993; J.D., Michigan State University College of Law, 2000 |
|---|---|

## Frank J. Janecek, Jr.



Frank Janecek. is Of Counsel in the Firm's San Diego office and practices in the areas of consumer/antitrust, Proposition 65, taxpayer and tobacco litigation. He served as co-lead counsel, as well as court appointed liaison counsel, in *Wholesale Elec. Antitrust Cases I & II*, charging an antitrust conspiracy by wholesale electricity suppliers and traders of electricity in California's newly deregulated wholesale electricity market. In conjunction with the Governor of the State of California, the California State Attorney General, the California Public Utilities Commission, the California Electricity Oversight Board, a number of other state and local governmental entities and agencies, and California's large, investor-owned electric utilities, plaintiffs secured a global settlement for California consumers, businesses and local governments valued at more than $1.1 billion. Janecek also chaired several of the litigation committees in California's tobacco litigation, which resulted in the $25.5 billion recovery for California and its local entities, and also handled a constitutional challenge to the State of California's Smog Impact Fee in *Ramos v. Dep't of Motor Vehicles*, which resulted in more than a million California residents receiving full refunds and interest, totaling $665 million.

| Education | B.S., University of California, Davis, 1987; J.D., Loyola Law School, 1991 |
|---|---|
| Honors/ Awards | Super Lawyer, 2013-2017 |

## Nancy M. Juda



Nancy Juda is Of Counsel to the Firm and is based in the Firm's Washington, D.C. office. She concentrates her practice on employee benefits law and works in the Firm's Institutional Outreach Department. Using her extensive experience representing union pension funds, Juda advises Taft-Hartley fund trustees regarding their options for seeking redress for losses due to securities fraud. She also represents workers in ERISA class actions involving breach of fiduciary duty claims against corporate plan sponsors and fiduciaries.

Prior to joining the Firm, Juda was employed by the United Mine Workers of America Health & Retirement Funds, where she practiced in the area of employee benefits law. Juda was also associated with union-side labor law firms in Washington, D.C., where she represented the trustees of Taft-Hartley pension and welfare funds on qualification, compliance, fiduciary, and transactional issues under ERISA and the Internal Revenue Code.

| Education | B.A., St. Lawrence University, 1988; J.D., American University, 1992 |
|---|---|

## Francis P. Karam

Frank Karam is Of Counsel to the Firm and is based in the Firm's Melville office. Karam is a trial lawyer with 30 years of experience. His practice focuses on complex class action litigation involving shareholders' rights and securities fraud. He also represents a number of landowners and royalty owners in litigation against large energy companies. He has tried complex cases involving investment fraud and commercial fraud, both on the plaintiff and defense side, and has argued numerous appeals in state and federal courts. Throughout his career, Karam has tried more than 100 cases to verdict.

Karam has served as a partner at several prominent plaintiffs' securities firms. From 1984 to 1990, Karam was an Assistant District Attorney in the Bronx, New York, where he served as a senior Trial Attorney in the Homicide Bureau. He entered private practice in 1990, concentrating on trial and appellate work in state and federal courts.

| | |
|---|---|
| **Education** | A.B., College of the Holy Cross; J.D., Tulane University School of Law |
| **Honors/ Awards** | "Who's Who" for Securities Lawyers, *Corporate Governance Magazine*, 2015 |

## Jerry E. Martin



Jerry Martin served as the presidentially appointed United States Attorney for the Middle District of Tennessee from May 2010 to April 2013. As U.S. Attorney, he made prosecuting financial, tax and health care fraud a top priority. During his tenure, Martin co-chaired the Attorney General's Advisory Committee's Health Care Fraud Working Group.

Martin specializes in representing individuals who wish to blow the whistle to expose fraud and abuse committed by federal contractors, health care providers, tax cheats or those who violate the securities laws.

Martin has been recognized as a national leader in combatting fraud and has addressed numerous groups and associations such as Taxpayers Against Fraud and the National Association of Attorneys General. In 2012, he was the keynote speaker at the American Bar Association's Annual Health Care Fraud Conference.

| | |
|---|---|
| **Education** | B.A., Dartmouth College, 1996; J.D., Stanford University, 1999 |
| **Honors/ Awards** | Super Lawyer, 2016 |

## Ruby Menon



Ruby Menon is Of Counsel to the Firm and serves as a member of the Firm's legal, advisory and business development group. She also serves as the liaison to the Firm's many institutional investor clients in the United States and abroad. For over 12 years, Menon served as Chief Legal Counsel to two large multi-employer retirement plans, developing her expertise in many areas of employee benefits and pension administration, including legislative initiatives and regulatory affairs, investments, tax, fiduciary compliance and plan administration.

| | |
|---|---|
| **Education** | B.A., Indiana University, 1985; J.D., Indiana University School of Law, 1988 |

## Eugene Mikolajczyk



Eugene Mikolajczyk is Of Counsel to the Firm and is based in the Firm's San Diego Office. Mikolajczyk has over 30 years' experience prosecuting shareholder and securities litigation cases as both individual and class actions. Among the cases are *Heckmann v. Ahmanson*, in which the court granted a preliminary injunction to prevent a corporate raider from exacting greenmail from a large domestic media/entertainment company.

Mikolajczyk was a primary litigation counsel in an international coalition of attorneys and human rights groups that won a historic settlement with major U.S. clothing retailers and manufacturers on behalf of a class of over 50,000 predominantly female Chinese garment workers, in an action seeking to hold the Saipan garment industry responsible for creating a system of indentured servitude and forced labor. The coalition obtained an unprecedented agreement for supervision of working conditions in the Saipan factories by an independent NGO, as well as a substantial multi-million dollar compensation award for the workers.

| | |
|---|---|
| **Education** | B.S., Elizabethtown College, 1974; J.D., Dickinson School of Law, Penn State University, 1978 |

## Roxana Pierce



Roxana Pierce is Of Counsel to the Firm and focuses her practice on securities litigation, arbitration, negotiations, contracts, international trade, real estate transactions and project development. She has represented clients in over 75 countries, with extensive experience in the Middle East, Asia, Russia, the former Soviet Union, Germany, Belgium, the Caribbean and India. Pierce counsels institutional investors on recourse available to them when the investors have been victims of fraud or other schemes. Pierce's client base includes large institutional investors, international banks, asset managers, foreign governments, multi-national corporations, sovereign wealth funds and high net worth individuals.

Pierce has counseled international clients since 1994. She has spearheaded the contract negotiations for hundreds of projects, including several valued at over $1 billion, and typically conducts her negotiations with the leadership of foreign governments and the leadership of Fortune 500 corporations, foreign and domestic. Pierce presently represents several European legacy banks in litigation concerning the 2008 financial crisis.

| Education | B.A., Pepperdine University, 1988; J.D., Thomas Jefferson School of Law, 1994 |
|---|---|
| Honors/ Awards | Certificate of Accomplishment, Export-Import Bank of the United States |

## Svenna Prado



Svenna Prado is Of Counsel in the Firm's San Diego office, where she focuses on various aspects of international securities and consumer litigation. She was part of the litigation teams that secured settlements against German defendant IKB, as well as Deutsche Bank and Deutsche Bank/West LB for their role in structuring residential mortgage-backed securities and their subsequent collapse. Prior to joining the Firm, Prado was Head of the Legal Department for a leading international staffing agency in Germany where she focused on all aspects of employment litigation and corporate governance. After she moved to the United States, Prado worked with an internationally oriented German law firm as Counsel to corporate clients establishing subsidiaries in the United States and Germany. As a law student, Prado worked directly for several years for one of the appointed Trustees winding up Eastern German operations under receivership in the aftermath of the German reunification. Utilizing her experience in this area of law, Prado later helped many clients secure successful outcomes in U.S. Bankruptcy Court.

| Education | J.D., University of Erlangen-Nuremberg, Germany, 1996; Qualification for Judicial Office, Upper Regional Court Nuremberg, Germany, 1998; New York University, "U.S. Law and Methodologies," 2001 |
|---|---|

## Christopher P. Seefer



Christopher Seefer is Of Counsel in the Firm's San Francisco office. Seefer concentrates his practice in securities class action litigation. One recent notable recovery was a $30 million settlement with UTStarcom in 2010, a recovery that dwarfed a $150,000 penalty obtained by the SEC. Prior to joining the Firm, he was a Fraud Investigator with the Office of Thrift Supervision, Department of the Treasury (1990-1999), and a field examiner with the Office of Thrift Supervision (1986-1990).

| Education | B.A., University of California Berkeley, 1984; M.B.A., University of California, Berkeley, 1990; J.D., Golden Gate University School of Law, 1998 |
|---|---|

Exhibit E
Page 134

## Arthur L. Shingler III



Arthur Shingler is Of Counsel to the Firm and is based in the Firm's San Diego office. Shingler has successfully represented both public and private sector clients in hundreds of complex, multi-party actions with billions of dollars in dispute. Throughout his career, he has obtained outstanding results for those he has represented in cases generally encompassing shareholder derivative and securities litigation, unfair business practices litigation, publicity rights and advertising litigation, ERISA litigation, and other insurance, health care, employment and commercial disputes.

Representative matters in which Shingler served as lead litigation or settlement counsel include, among others: *In re Royal Dutch/Shell ERISA Litig.* ($90 million settlement); *In re Priceline.com Sec. Litig.* ($80 million settlement); *In re General Motors ERISA Litig.* ($37.5 million settlement, in addition to significant revision of retirement plan administration); *Wood v. Ionatron, Inc.* ($6.5 million settlement); *In re Lattice Semiconductor Corp. Derivative Litig.* (corporate governance settlement, including substantial revision of board policies and executive management); *In re 360networks Class Action Sec. Litig.* ($7 million settlement); and *Rothschild v. Tyco Int'l (US), Inc.*, 83 Cal. App. 4th 488 (2000) (shaped scope of California's Unfair Practices Act as related to limits of State's False Claims Act).

| Education | B.A., Point Loma Nazarene College, 1989; J.D., Boston University School of Law, 1995 |
|---|---|
| **Honors/ Awards** | B.A., *Cum Laude*, Point Loma Nazarene College, 1989 |

## Leonard B. Simon



Leonard Simon is Of Counsel to the Firm. His practice has been devoted heavily to litigation in the federal courts, including both the prosecution and defense of major class actions and other complex litigation in the securities and antitrust fields. Simon has also handled a substantial number of complex appellate matters, arguing cases in the U.S. Supreme Court, several federal Courts of Appeals, and several California appellate courts. He has served as plaintiffs' co-lead counsel in dozens of class actions, including *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.* (settled for $240 million) and *In re NASDAQ Market-Makers Antitrust Litig.* (settled for more than $1 billion), and was centrally involved in the prosecution of *In re Washington Pub. Power Supply Sys. Sec. Litig.*, the largest securities class action ever litigated.

Simon is an Adjunct Professor of Law at Duke University, the University of San Diego, and the University of Southern California Law Schools. He is an Editor of California Federal Court Practice and has authored a law review article on the PSLRA.

| Education | B.A., Union College, 1970; J.D., Duke University School of Law, 1973 |
|---|---|
| **Honors/ Awards** | Super Lawyer, 2008-2016; Top Lawyer in San Diego, *San Diego Magazine*, 2016; J.D., Order of the Coif and with Distinction, Duke University School of Law, 1973 |

## Laura S. Stein



Laura Stein is Of Counsel to the Firm and has practiced in the areas of securities class action litigation, complex litigation and legislative law. In a unique partnership with her mother, attorney Sandra Stein, also Of Counsel to the Firm, the Steins focus on minimizing losses suffered by shareholders due to corporate fraud and breaches of fiduciary duty. The Steins also seek to deter future violations of federal and state securities laws by reinforcing the standards of good corporate governance. The Steins work with over 500 institutional investors across the nation and abroad, and their clients have served as lead plaintiff in successful cases where billions of dollars were recovered for defrauded investors against such companies as AOL Time Warner, Tyco, Cardinal Health, AT&T, Hanover Compressor, First Bancorp, Enron, Dynegy, Honeywell International and Bridgestone.

Stein is Special Counsel to the Institute for Law and Economic Policy (ILEP), a think tank that develops policy positions on selected issues involving the administration of justice within the American legal system. She has also served as Counsel to the Annenberg Institute of Public Service at the University of Pennsylvania.

| Education | B.A., University of Pennsylvania, 1992; J.D., University of Pennsylvania Law School, 1995 |
|---|---|

## Sandra Stein



Sandra Stein is Of Counsel to the Firm and concentrates her practice in securities class action litigation, legislative law and antitrust litigation. In a unique partnership with her daughter, Laura Stein, also Of Counsel to the Firm, the Steins focus on minimizing losses suffered by shareholders due to corporate fraud and breaches of fiduciary duty.

Previously, Stein served as Counsel to United States Senator Arlen Specter of Pennsylvania. During her service in the United States Senate, Stein was a member of Senator Specter's legal staff and a member of the United States Senate Judiciary Committee staff. She is also the Founder of the Institute for Law and Economic Policy (ILEP), a think tank that develops policy positions on selected issues involving the administration of justice within the American legal system. Stein has also produced numerous public service documentaries for which she was nominated for an Emmy and received an ACE award, cable television's highest award for excellence in programming.

| Education | B.S., University of Pennsylvania, 1961; J.D., Temple University School of Law, 1966 |
|---|---|
| Honors/Awards | Nominated for an Emmy and received an ACE award for public service documentaries |

## John J. Stoia, Jr.



John Stoia is Of Counsel to the Firm and is based in the Firm's San Diego office. He is one of the founding partners and former managing partner of the Firm. He focuses his practice on insurance fraud, consumer fraud and securities fraud class actions. Stoia has been responsible for over $10 billion in recoveries on behalf of victims of insurance fraud due to deceptive sales practices such as "vanishing premiums" and "churning." He has worked on dozens of nationwide complex securities class actions, including *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, which arose out of the collapse of Lincoln Savings & Loan and Charles Keating's empire. Stoia was a member of the plaintiffs' trial team that obtained verdicts against Keating and his co-defendants in excess of $3 billion and settlements of over $240 million.

He also represented numerous large institutional investors who suffered hundreds of millions of dollars in losses as a result of major financial scandals, including AOL Time Warner and WorldCom. Currently, Stoia is lead counsel in numerous cases against online discount voucher companies for violations of both federal and state laws including violation of state gift card statutes.

| Education | B.S., University of Tulsa, 1983; J.D., University of Tulsa, 1986; LL.M. Georgetown University Law Center, 1987 |
|---|---|
| Honors/Awards | Rated AV Preeminent by Martindale-Hubbell; Super Lawyer, 2007-2017; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2016; Litigator of the Month, *The National Law Journal*, July 2000; LL.M. Top of Class, Georgetown University Law Center |

**Special Counsel**

### Bruce Gamble



Bruce Gamble is Special Counsel to the Firm and a member of the Institutional Outreach Department.

Gamble serves as a liaison with the Firm's institutional investor clients in the United States and abroad, advising them on securities litigation matters. Previously, he was General Counsel and Chief Compliance Officer for the District of Columbia Retirement Board, where he served as chief legal advisor to the Board of Trustees and staff. Gamble's experience also includes serving as Chief Executive Officer of two national trade associations and several senior level staff positions on Capitol Hill.

| Education | B.S., University of Louisville, 1979; J.D., Georgetown University Law Center, 1989 |
| --- | --- |
| Honors/ Awards | Executive Board Member, National Association of Public Pension Attorneys, 2000-2006; American Banker selection as one of the most promising U.S. bank executives under 40 years of age, 1992 |

### Carlton R. Jones

Carlton Jones is Special Counsel to the Firm and is a member of the Intellectual Property group in the Atlanta office. Although Jones primarily focuses on patent litigation, he has experience handling a variety of legal matters of a technical nature, including performing invention patentability analysis and licensing work for the Centers for Disease Control as well as litigation involving internet streaming-audio licensing disputes and medical technologies. He is a registered Patent Attorney with the United States Patent and Trademark Office.

| Education | B.S., Georgia Institute of Technology, 2006; J.D., Georgia State University College of Law, 2009 |
| --- | --- |

### Tricia L. McCormick



Tricia McCormick is Special Counsel to the Firm and focuses primarily on the prosecution of securities class actions. McCormick has litigated numerous cases against public companies in state and federal courts that resulted in hundreds of millions of dollars in recoveries for investors. She is also a member of a team that is in constant contact with clients who wish to become actively involved in the litigation of securities fraud. In addition, McCormick is active in all phases of the Firm's lead plaintiff motion practice.

| Education | B.A., University of Michigan, 1995; J.D., University of San Diego School of Law, 1998 |
| --- | --- |
| Honors/ Awards | J.D., *Cum Laude*, University of San Diego School of Law, 1998 |

## Forensic Accountants

### R. Steven Aronica

Steven Aronica is a Certified Public Accountant licensed in the States of New York and Georgia and is a member of the American Institute of Certified Public Accountants, the Institute of Internal Auditors and the Association of Certified Fraud Examiners. Aronica has been instrumental in the prosecution of numerous financial and accounting fraud civil litigation claims against companies that include Lucent Technologies, Tyco, Oxford Health Plans, Computer Associates, Aetna, WorldCom, Vivendi, AOL Time Warner, Ikon, Doral Financial, First BanCorp, Acclaim Entertainment, Pall Corporation, iStar Financial, Hibernia Foods, NBTY, Tommy Hilfiger, Lockheed Martin, the Blackstone Group and Motorola. In addition, he assisted in the prosecution of numerous civil claims against the major United States public accounting firms.

Aronica has been employed in the practice of financial accounting for more than 30 years, including public accounting, where he was responsible for providing clients with a wide range of accounting and auditing services; the investment bank Drexel Burnham Lambert, Inc., where he held positions with accounting and financial reporting responsibilities; and at the SEC, where he held various positions in the divisions of Corporation Finance and Enforcement and participated in the prosecution of both criminal and civil fraud claims.

| Education | B.B.A., University of Georgia, 1979 |
| --- | --- |

### Andrew J. Rudolph



Andrew Rudolph is the Director of the Firm's Forensic Accounting Department, which provides in-house forensic accounting expertise in connection with securities fraud litigation against national and foreign companies. He has directed hundreds of financial statement fraud investigations, which were instrumental in recovering billions of dollars for defrauded investors. Prominent cases include *Qwest*, *HealthSouth*, *WorldCom*, *Boeing*, *Honeywell*, *Vivendi*, *Aurora Foods*, *Informix*, *Platinum Software*, *AOL Time Warner*, and *UnitedHealth*.

Rudolph is a Certified Fraud Examiner and a Certified Public Accountant licensed to practice in California. He is an active member of the American Institute of Certified Public Accountants, California's Society of Certified Public Accountants, and the Association of Certified Fraud Examiners. His 20 years of public accounting, consulting and forensic accounting experience includes financial fraud investigation, auditor malpractice, auditing of public and private companies, business litigation consulting, due diligence investigations and taxation.

| Education | B.A., Central Connecticut State University, 1985 |
| --- | --- |

### Christopher Yurcek



Christopher Yurcek is the Assistant Director of the Firm's Forensic Accounting Department, which provides in-house forensic accounting and litigation expertise in connection with major securities fraud litigation. He has directed the Firm's forensic accounting efforts on numerous high-profile cases, including *In re Enron Corp. Sec. Litig.* and *Jaffe v. Household Int'l, Inc.*, which obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. Other prominent cases include *HealthSouth*, *UnitedHealth*, *Vesta*, *Informix*, *Mattel*, *Coca-Cola* and *Media Vision*.

Yurcek has over 20 years of accounting, auditing, and consulting experience in areas including financial statement audit, forensic accounting and fraud investigation, auditor malpractice, turn-around consulting, business litigation and business valuation. He is a Certified Public Accountant licensed in California, holds a Certified in Financial Forensics (CFF) Credential from the American Institute of Certified Public Accountants, and is a member of the California Society of CPAs and the Association of Certified Fraud Examiners.

| Education | B.A., University of California, Santa Barbara, 1985 |
| --- | --- |