Adam C. McCall (SBN 302130)
**LEVI & KORSINSKY, LLP**
Email: amccall@zlk.com
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel:  (213) 985-7290

*Attorneys for Lead Plaintiff Natissisa Enterprises
Ltd. and Lead Counsel for Class*

[*additional counsel on signature page*]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ILLUMINA, INC. SECURITIES LITIGATION | Master File No. 3:16-CV-03044-L-MDD |
| | **CLASS ACTION** |
| | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| | **DEMAND FOR JURY TRIAL** |
| | Judge: Hon. M. James Lorenz |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................1

II.  STATEMENT OF FACTS ..................................................................2

III. STANDARD OF REVIEW ................................................................5

IV.  PLAINTIFF STATES A CLAIM UNDER SECTION 10(B) ........................6

    A.   Plaintiff's Complaint Identifies Actionable Misrepresentations with Enough Specificity to State a Claim for Relief under Section 10(b)...6

        1.   Defendants' false and/or materially misleading statements are not "forward-looking" and, therefore, do not qualify for protection under the PSLRA's safe-harbor provision. ............13

        2.   Defendants' cautionary language was not "meaningful" and, therefore, does not support protection under the PSLRA's safe-harbor provision.....................................................................14

        3.   Defendants cannot claim protection under the PSLRA's safe-harbor because they knew that their statements were false and/or materially misleading at the time they were made.......18

        4.   Defendants' Sarbanes-Oxley certifications are actionable......18

    B.   Plaintiff Adequately Alleges Scienter for the Purposes of Pleading Liability under Section 10(b). ...........................................................19

V.   PLAINTIFF STATES A CLAIM UNDER SECTION 20(A).....................24

VI.  CONCLUSION ............................................................................24

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Cases**

*In re Amylin Pharms., Inc. Sec. Litig.*,
  No. 01cv1455 BTM(NLS), 2003 U.S. Dist. LEXIS 7667 (S.D. Cal. May 1, 2003).................................................................................................13

*In re Apple Computer, Inc.*,
  127 Fed. Appx. 296 (9th Cir. 2005)....................................................15

*In re Apple Computer, Inc.*,
  No. C-01-3667 CW, 2003 U.S. Dist. LEXIS 28303 (N.D. Cal. Aug. 13, 2003).15

*In re ArthroCare Corp. Secs. Litig.*,
  726 F. Supp. 2d 696 (W.D. Tex. 2010)...............................................19

*Commc'ns Workers of Am. Plan for Emps.' Pensions and Death Benefits v. CSK Auto Corp.*,
  525 F. Supp. 2d 1116 (D. Ariz. 2007) ..........................................20, 24

*In re Countrywide Fin. Corp. Sec. Litig.*,
  588 F. Supp. 2d 1132 (C.D. Cal. 2008) ..............................................14

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010) ...........................................................16

*In re Daou Sys.*,
  411 F.3d 1006 (9th Cir. 2005) .............................................................7

*ESG Capital Partners, LP v. Stratos*,
  828 F.3d 1023 (9th Cir. 2016) ...............................................7, 20, 24

*Fecht v. Price Co.*,
  70 F.3d 1078 (9th Cir. 1995)................................................................6

*Finisar Corp. Sec. Litig. v. Finisar Corp.*,
  No. 13-17199, 2016 U.S. App. LEXIS 5653 (9th Cir. Mar. 25, 2016) .........11, 23

*In re Finisar Corp. Sec. Litig.*,
  No. 5:11-cv-01252-EJD, 2017 U.S. Dist. LEXIS 66229 (N.D. Cal. May 1, 2017)......................................................................................23

ii

*Freedman v. Weatherford Int'l Ltd.*,
No. 12-CV-2121 (LAK), 2013 U.S. Dist. LEXIS 135149 (S.D.N.Y. Sept. 19,
2013)......................................................................................................................20

*In re Harman Int'l Indus., Inc. Sec. Litig.*,
791 F.3d 90 (D.C. Cir. 2015) ...............................................................................14

*Howard v. Everex Sys.*,
228 F.3d 1057 (9th Cir. 2000) ..............................................................................24

*Hsu v. Puma Biotechnology, Inc.*,
No. SACV 15-0865 AG (JCGx), 2016 U.S. Dist. LEXIS 136527 (C.D. Cal. Sep.
30, 2016) ..............................................................................................................6, 8

*In re Immune Response Sec. Litig.*,
375 F. Supp. 2d 983 (S.D. Cal. 2005)...................................................................10

*In re Lattice Semiconductor Corp. Sec. Litig.*,
No. CV04-1255-AA, 2006 U.S. Dist. LEXIS 262 (D. Or. Jan. 3, 2006) ...........19

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ..............................................................................25

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009)................................................................................16

*Maiman v. Talbott*,
No. SACV 09-0012 AG (ANx), 2010 U.S. Dist. LEXIS 142712 (C.D. Cal. Aug.
9, 2010) .................................................................................................................20

*In re Marvell Tech. Group Ltd. Secs. Litig.*,
No. C-06-06286 RMW 2008 U.S. Dist. LEXIS 84934 (N.D. Cal. Sept. 29,
2008).....................................................................................................................23

*NL Industries, Inc. v. Kaplan*,
792 F.2d 896 (9th Cir. 1986)..................................................................................5

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding
Corp.*,
320 F.3d 920 (9th Cir. 2003)..................................................................................6

*Nordstrom, Inc. v. Chubb & Son, Inc.*,
54 F.3d 1424 (9th Cir. 1995)..................................................................................5

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
Master File No. 3:16-CV-03044-L-MDD

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004) ...............................................................23

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
  135 S. Ct. 1318 (2015) .......................................................11, 12, 18

*Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*,
  89 F. Supp. 3d 602 (S.D.N.Y. 2015).....................................................23

*In re ProQuest Sec. Litig.*,
  No. 06-10619, 527 F. Supp. 2d 728 (E.D. Mich. 2007) .....................................19

*Reese v. Malone*,
  747 F.3d 557 (9th Cir. 2014)...............................................................22

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir.2004) ................................................................14

*S. Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008)...............................................................21

*Schueneman v. Arena Pharm., Inc.*,
  840 F.3d 698 (9th Cir. 2016)..........................................................5, 6, 10

*SEC v. Strategic Glob. Invs., Inc.*,
  No. 16-cv-514 JLB (WVG), 2017 U.S. Dist. LEXIS 59202 (S.D. Cal. Apr. 17, 2017)...............................................................................9

*SEC v. Todd*,
  642 F.3d 1207 (9th Cir. 2011) ..............................................................6

*In re Sipex Corp. Sec. Litig.*,
  No. C 05-00392 WHA, 2005 U.S. Dist. LEXIS 30854 (N.D. Cal. Nov. 17, 2005)..............................................................................24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ......................................................................19

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  672 F. Supp. 2d 596 (S.D.N.Y. 2009)...................................................13

*Virginia Bankshares, Inc. v. Sandberg*,
  501 U.S. 1083 (1991)........................................................11, 12, 18

iv

*In re Wash. Mut., Inc. Sec.,*
  694 F. Supp. 2d 1192 (W.D. Wash. 2009)...........................................................19

*Zaghian v. Farrell,*
  675 F. App'x 718 (9th Cir. 2017).......................................................10, 11, 16, 21

*Zaghian v. THQ Inc.,*
  No. 2:12-cv-05227-R, 2015 U.S. Dist. LEXIS 53719 (C.D. Cal. Jan. 30, 2015)10

**Statutes**

15 U.S.C. § 78u-5 ........................................................................................15, 18

15 U.S.C. §78j ...................................................................................................5

15 U.S.C. §78t ...................................................................................................5

15 U.S.C. §78u-4 ...............................................................................................6

**Rules**

17 C.F.R. §240.10b-5 .........................................................................................5

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
Master File No. 3:16-CV-03044-L-MDD

1  | I.      INTRODUCTION

2  |        Defendants[1] defrauded Lead Plaintiff Natissisa Enterprises Ltd. ("Plaintiff")

3  | and all other similarly situated shareholders of Illumina. Between July 26, 2016 and

4  | October 10, 2016 (the "Class Period"), Defendants made a number of false and/or

5  | materially misleading statements about the current market demand for one of

6  | Illumina's most important products, the "HiSeq" sequencing instrument. According

7  | to Defendants, demand for the HiSeq was so strong during the third quarter of 2016

8  | that Illumina was on track to earn between $625 million and $630 million in revenue

9  | for the quarter. With this revenue, Defendants told investors that Illumina's

10 | earnings per share for the quarter would increase from between $3.35 per share and

11 | $3.45 per share to as high as $3.58 per share. Defendants' statements prompted an

12 | immediate rise in Illumina's stock price—in the span of just one day, the price of

13 | Illumina's stock rose from $150.10 per share to $162.25 per share.

14 |        Defendants' statements were false, however. Unbeknownst to the public,

15 | Illumina's HiSeq product sales were in a material state of decline. In fact,

16 | Defendants later admitted to investors that they had known about the decline in

17 | HiSeq sales throughout the entire third quarter—Defendants described it as a

18 | "trend" that had been "building" for some time and "didn't show up suddenly in

19 | this quarter [the third quarter]." On October 10, 2016, Defendants revealed that

20 | sales for the quarter amounted to only $607 million. Investors and analysts were

21 | reacted promptly to the news, accusing Illumina of wrongdoing and selling Illumina

22 | stock at deeply discounted prices. By the close of market on October 11, 2016,

23 | Illumina's stock price had fallen from $184.85 per share to $138.99 per share, a

24 | decline of nearly 25%.

25 |

26 |

27 | _____

28 | [1] "Defendants" refers to Illumina Inc. ("Illumina" or the "Company"), Francis A. deSouza ("deSouza"), and Marc A. Stapley ("Stapley").

Plaintiff brings this action to recover his losses in response to Defendants' knowingly false and/or materially misleading statements. In response to Plaintiff's Complaint, Defendants assert that they should be relieved of liability on a number of procedural grounds. First, Defendants claim that they cannot be held liable for statements that were "forward-looking" in nature and were accompanied by cautionary language warning investors of certain risks. These arguments, however, are contradicted by Ninth Circuit precedent. Where, as here, defendants conceal facts that tend to seriously undermine the basis of a statement, liability will stand.

Second, Defendants claim that Plaintiff's allegations fail to show that they knew their statements were false at the time they were made or otherwise acted with scienter. This argument also fails. Plaintiff's Complaint contains several well-reasoned bases—four, in fact—for supporting a cogent, compelling and strong inference of scienter against Defendants. Not only did Defendants admit that they knew of the "trend" that had been materially impacting their sales in a negative manner, but Defendants had been claiming to monitor the Company's sales pipeline the entire time.

Plaintiff's Complaint contains well-pleaded allegations of fact that meet the pleading requirements for a federal securities fraud claim. Defendants' motion to dismiss should be denied in its entirety.

## II.   STATEMENT OF FACTS

Illumina is a publicly traded company on the NASDAQ Stock Market. ¶12. The Company manufactures and sells genetic sequencing products to customers in the medical, academic, and pharmaceutical industries. ¶19. Illumina's principal products during the Class Period consisted of the HiSeq and NextSeq instruments. ¶20. The Company's sequencing products comprised a significant portion of Illumina's overall annual revenue. ¶20.

Two of Illumina's products are of special import in this lawsuit—the HiSeq X and NextSeq. Illumina introduced these devices to the market in January 2014

and, according to Illumina, the products offered "dramatic technology advances" over and above the products already on the market. ¶22. Customers began favoring the HiSeq X and NextSeq devices almost immediately, prompting significant increases in revenue across all segments of Illumina's business.  ¶¶23-25 (instrument and sequencing revenue increased year-over-year between 2014 and 2016 by 18%, 6%, and 6%).

The marked preference among Illumina's clientele was well known to Defendants. On May 3, 2016, several weeks prior to the start of the third quarter of 2016, Jay Flatley, Illumina's former Chief Executive Officer, told investors that Illumina had missed its revenue guidance for the first quarter of 2016 because of customers opting to purchase NextSeq systems instead of traditional HiSeq devices. ¶26. This "trend," as Defendants would later describe it, continued into and through the third quarter of 2016. On November 1, 2016, after the third quarter ended, Defendants revealed to the public that the market had continued to favor the NextSeq over the Company's traditional HiSeq devices. ¶27. Defendants told the public that the preference away from the HiSeq devices was a "trend" that had been "building" for some time and "didn't show up suddenly" during the third quarter. ¶27.

Notwithstanding Defendants' knowledge of this "trend," Defendants portrayed the market for HiSeq devices in an unduly and unreasonably optimistic light. ¶28. On July 26, 2016, the start of the Class Period, Defendants told investors that, based upon a robust pipeline and backlog, the Company was anticipating between $625 million and $630 million in revenue for the third quarter and that, as a result, earnings per share would be as much as $0.13 per share greater than initial estimates of between $3.35 per share and $3.45 per share. ¶¶33-34. Analysts and investors responded to these statements immediately, applauding the Company for its seemingly positive operations and buying Illumina's stock at inflated prices—in

the span of just one day, Illumina's stock price jumped from $150.10 per share to $162.25 per share. ¶42.

Defendants continued to falsely portray the strength of Illumina's HiSeq sales even as the third quarter came to an end. On September 13, 2016, with just over two weeks remaining in the quarter, Defendants reaffirmed the statements they had made to investors roughly six weeks earlier. During an investor presentation with Morgan Stanley, Defendants told the public that they were on track to recognize "sequential growth in Q3 [the third quarter] and a sequential growth from that point into Q4 [the fourth quarter] and part of that is driven by the backlog of HiSeq X's that we have now booked into our order system at this point in time." ¶49. Defendants made these statements even though they knew that the "trend" that had been negatively impacting HiSeq sales had been building throughout the entire course of the year and, in particular, the third quarter. ¶50.

Illumina investors did not discover the truth about the Company's HiSeq sales until October 10, 2016. At that time, Illumina pre-announced its financial earnings for the third quarter, which included that the Company had earned $607 million in revenue (about $20 million less than Defendants had stated). ¶52. Defendants also revealed that the shortfall in revenue was due to fewer HiSeq sales. ¶53. Three weeks later, on November 1, 2016, Defendants elaborated on the reasons for the revenue miss, stating that the Company's weak HiSeq sales was due to an ongoing "trend" that had "been building" for some time and negatively impacting the Company's sales. ¶60. In particular, Defendants explained that Illumina's customers were opting to purchase NextSeq devices instead of the Company's traditional HiSeq devices. ¶60.

Investors and analysts were extraordinarily unhappy with Defendants' statements. An analyst from Wells Fargo highlighted the fact that Illumina's third quarter was the third time in the last five consecutive quarters that the Company had "negatively pre-announced" financial earnings and noted that Illumina

1 appeared to have less than a competent grasp over its projection process given that

2 the reason for the misses "[had been] different every quarter." ¶57. In response to

3 Defendants' disclosures on October 10, the price of Illumina's stock declined from

4 $184.85 per share to $138.99 per share in the span of just one day—a total market

5 capitalization decline of nearly 25%.

## III.  STANDARD OF REVIEW

7 On a motion to dismiss, all material allegations in the complaint must be

8 accepted as true and construed in the light most favorable to the non-moving party.

9 *See NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). When

10 reviewing a complaint, the Court should "construe the complaint liberally and [is]

11 not bound by its formal language." *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d

12 1424, 1433 (9th Cir. 1995). A complaint need not "plead evidence" without the

13 benefit of discovery in order to survive a motion to dismiss. *Id.* Indeed, "a well-

14 pleaded complaint may proceed even if it strikes a savvy judge that actual proof of

15 those facts is improbable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556

16 (2007).

17 Plaintiff alleges securities fraud under Section 10(b) of the Securities

18 Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78j(b), and SEC Rule 10b-5

19 promulgated thereunder, 17 C.F.R. §240.10b-5. Plaintiff also alleges liability under

20 Section 20(a) of the Exchange Act, 15 U.S.C. §78t. Plaintiff's claims are subject to

21 Rule 9 and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4

22 ("PSLRA"). *See Arena Pharms., Inc.*, 840 F.3d at 705. "Rule 9 imposes a

23 heightened pleading requirement, which requires that a party state with particularity

24 the circumstances constituting fraud" and the PSLRA "requir[es] that the complaint

25 . . . specify each statement alleged to have been misleading, [and] the reason or

26 reasons why the statement is misleading." *Id.* (quotations omitted). The PSLRA

27 also requires that "the allegations give rise to a strong inference that the defendant

28 acted with the required state of mind." *Id.* (quotations omitted). While the PSLRA

1    sets a higher pleading standard, courts are wary against "rais[ing] the bar of the

2    PSLRA any higher than that which is required." *No. 84 Employer-Teamster Joint*

3    *Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 946 (9th Cir.

4    2003).

5    **IV.    PLAINTIFF STATES A CLAIM UNDER SECTION 10(B)**

6        The elements of a claim for securities fraud under Section 10(b) are: "(1) a

7    material misrepresentation or omission by the defendant; (2) scienter; (3) a

8    connection between the misrepresentation or omission and the purchase or sale of

9    a security; (4) reliance upon the misrepresentation or omission; (5) economic loss;

10    and (6) loss causation." *Arena Pharms.*, 840 F.3d at 704. Defendants oppose

11    Plaintiff's Complaint with regard to the first and second elements only.

12        **A.    Plaintiff's Complaint Identifies Actionable Misrepresentations**

13        **with Enough Specificity to State a Claim for Relief under Section**

14        **10(b).**

15    "'[W]hether a public statement is misleading, or whether adverse facts were

16    adequately disclosed is a mixed question to be decided by the trier of fact.'" *SEC v.*

17    *Todd*, 642 F.3d 1207, 1220 (9th Cir. 2011) (quoting *Fecht v. Price Co.*, 70 F.3d

18    1078, 1081 (9th Cir. 1995)). A complaint sufficiently pleads falsity if it "specif[ies]

19    each statement alleged to have been misleading" and "the reason or reasons why

20    the statement is misleading." 15 U.S.C. §78u-4(b)(1)(B). A statement is misleading

21    "if it would give a reasonable investor the impression of a state of affairs that differs

22    in a material way from the one that actually exists." *Berson v. Applied Signal Tech.,*

23    *Inc.*, 527 F.3d 982, 985 (9th Cir. 2008). At the pleading stage, a plaintiff need not

24    prove falsity, but instead only "allege[] why each of the[] statements . . . could be

25    false or at least misleading." *Hsu v. Puma Biotechnology, Inc.*, No. SACV 15-0865

26    AG (JCGx), 2016 U.S. Dist. LEXIS 136527, at *27 (C.D. Cal. Sep. 30, 2016).

27    Further, a plaintiff is entitled to a presumption that his allegations are true at the

28    pleading stage, *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1035 (9th Cir.

6

2016), and the most favorable inferences to be drawn from those allegations, *In re Daou Sys.*, 411 F.3d 1006, 1013 (9th Cir. 2005).

Plaintiff identifies in the Complaint specific statements that are alleged to be false and/or materially misleading. Each of the alleged misleading statements provided investors with the false impression that (a) demand for Illumina's HiSeq products was substantially stronger than it was *at the time the statements were made* and (b) that Illumina's statements about anticipated revenue were supported by *then-existing* facts. For each statement alleged to have been misleading, Plaintiff specifies the date of the statements, the manner in which the statements were made, the individual(s) responsible for the statements, the content of the statements, and a detailed explanation as to why each statement was materially misleading. These allegations are located within Paragraphs 31 to 51 of the Complaint, and are sufficient to allege falsity at the pleading stage.

To demonstrate, Plaintiff identifies several statements made within an investor conference call on July 26, 2016, the start of the Class Period, as materially misleading statements. During the call, Defendants deSouza and Stapley made statements, including that: "our HiSeq X outlook remains robust at 20 or 30 instrument orders per quarter," "[w]e continue to project total Company revenue growth of approximately 12% year over year," "[w]e are forecasting Q3 revenue of $625 million to $630 million," and "[w]e have increased our "non-GAAP EPS guidance to $3.48 to $3.58, up from $3.35 to $3.45 . . . ." ¶¶33, 34.

Plaintiff, in the Complaint, explains that these statements were false and/or materially misleading because they provided investors with a false impression of the demand for Illumina's HiSeq products *at the time the statements were made*. ¶35. As later disclosed by Defendants, customer preferences for newer HiSeq models *had already* negatively impacted the Company's sales and revenues, so much so that Defendants referred to this shift in preferences as a "trend" that had been "building" for some time and "didn't show up suddenly in this quarter [the

third quarter].” ¶35. At the pleading stage, Plaintiff's allegations sufficiently "allege[] why each of the[] statements . . . could be false or at least misleading." *Hsu*, 2016 U.S. Dist. LEXIS 136527, at *27.

Plaintiff's Complaint identifies a number of other false and/or materially misleading statements and, like the example above, the Complaint specifies the date, manner, and maker of the statement and explains why the statement "***could be false or at least misleading***." *Id.* (emphasis added). In fact, as the Class Period progressed, Defendants' statements became increasingly more false given that the "trend" for newer HiSeq models continued to develop while less and less time remained in the third quarter (and, thus, less and less time to compensate for lower than expected sales). For example, on August 2, 2016, Illumina filed its quarterly report for the second quarter (Form 10-Q). The report was accompanied by certifications from each deSouza and Stapley which, pursuant to the Sarbanes-Oxley Act of 2002, represented to investors that the Company's internal controls over financial reporting was designed "to provide reasonable assurance regarding the reliability of financial reporting." ¶45. The certifications also represented that Illumina's disclosure controls were designed "to ensure that material information relating to the [Company] . . . [was] made known to [deSouza and Stapley]"; this, of course, would have included the fact that the demand for Illumina's HiSeq products was materially different than Defendants had portrayed just a few days earlier. ¶45. As explained previously, Defendants made representations about the then-current demand for Illumina's HiSeq products notwithstanding the fact that these statements were inaccurate. ¶46.

Defendants continued to falsely portray the demand for Illumina's HiSeq products even as late as September 13, 2016, with just over two weeks remaining in the quarter. On that day, during a presentation at the Morgan Stanley Global Healthcare Conference, Defendant Stapley reiterated that statements Defendants had made on July 26 about demand for Illumina's HiSeq products. ¶49. In

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Master File No. 3:16-CV-03044-L-MDD

particular, Stapley stated that "we've provided guidance on the second quarter earnings call that implied a sequential growth in Q3 and a sequential growth from that point into Q4 and part of that is driven by the backlog of HiSeq X's that we have now booked into our order system at this point in time; some of which is driven by strength in China and we [cited] 30 systems per quarter in Q3 and Q4 of HiSeq X; that's individual units of X." ¶49. When the quarter ended just two weeks later, Illumina had not made those sales; nor did it expect to make them in the fourth quarter either as Defendants guided fourth quarter revenue lower. ¶53. Apparently, a significant number of HiSeq and HiSeq X sales just vanished in the last two weeks of September. But, as Defendants later admitted, HiSeq sales were in a material state of decline due to a shift in consumer preferences that had been "building over time" and "didn't show up suddenly this quarter [the third quarter]." ¶50. There simply was no basis for the bullish statements by Stapley on September 13.[2]

The above statements were misleading because they provided reasonable investors with "the impression of a state of affairs . . . that differed materially from the one that actually existed." *SEC v. Strategic Glob. Invs., Inc.*, No. 16-cv-514 JLB (WVG), 2017 U.S. Dist. LEXIS 59202, at *20 (S.D. Cal. Apr. 17, 2017). Once Defendants opted to discuss the market demand for Illumina's HiSeq products and the Company's backlog of sales, "they were bound to do so in a manner that

---

[2] Plaintiff, since filing the Complaint, has obtained additional information showing that Defendants knew that HiSeq sales were lower than publicly stated and that the Company's statements about estimated revenue were materially misleading. In addition to Defendants' statements about the known "trend" negatively impacting sales, a former employee of Illumina who worked in the Company's production facility during the Class Period explained that Illumina abruptly cut production orders for HiSeq instruments very early in the third quarter of 2016 (within the first two weeks of July). This information further shows that Defendants knew—prior to making the misrepresentations alleged herein—that HiSeq sales were in a material state of decline. Plaintiff will, if necessary, include this information in an amended pleading.

9

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

1   wouldn't mislead investors as to potentially negative information within their

2   possession." *Zaghian v. Farrell*, 675 F. App'x 718, 721 (9th Cir. 2017). However,

3   Defendants failed to disclose that HiSeq sales were already in a material state of

4   decline and the fact that Illumina's statements were materially contradicted by facts

5   existing at the time. Accordingly, Defendants materially misled investors. *See*

6   *Arena Pharm., Inc.*, 840 F.3d at 706 ("once defendants choose to tout positive

7   information to the market, they are bound to do so in a manner that wouldn't mislead

8   investors"); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008)

9   ("once defendants chose to tout the company's backlog, they were bound to do so

10   in a manner that wouldn't mislead investors as to what that backlog consisted of.");

11   *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1019 (S.D. Cal. 2005)

12   (denying motion to dismiss where statements were "incomplete" and therefore

13   improperly "portray[ed] the results . . . in an unduly optimistic light").

14       The Ninth Circuit's recent decision in *Zaghian v. Farrell*, *supra*, is directly

15   on point and weighs heavily in favor of denying Defendants' motion. In that case,

16   the plaintiff sued the defendants for securities fraud in connection with false

17   statements about the market demand for a given product and estimates of revenue.

18   Specifically, like Defendants here, the defendants in *Zaghian* "repeatedly assured

19   investors of their 'confidence' in the uDraw [a product], and forecasted that the

20   product would 'generate significant growth, profitability, and cash' and result in the

21   'largest quarter' in THQ's history." *Zaghian v. THQ Inc.*, No. 2:12-cv-05227-R,

22   2015 U.S. Dist. LEXIS 53719, at *2 (C.D. Cal. Jan. 30, 2015). Contrary to the

23   defendants' statements, customers were not purchasing the uDraw and, "within

24   approximately one month of reiterating their confidence in the product, [the]

25   [d]efendants lowered their expected net sales for the quarter by 25% ($130 million)

26   due to weaker-than-expected sales of the uDraw." *Id*.

27       Although the district court in *Zaghian* dismissed the plaintiff's complaint, the

28   Ninth Circuit reversed and remanded. In its decision, the Ninth Circuit explained

10

that the defendants' statements were actionable and that the plaintiff's allegations sufficiently stated a claim for relief under Section 10(b) and Section 20(a) of the Exchange Act. Like Defendants here, the defendants in *Zaghian* staked their defense on the premise that they had adequately warned investors that the uDraw might not sell well as they anticipated. But, according to the Ninth Circuit, the defendants' "cautionary language did not sufficiently address the harm that resulted" because the "[d]efendants were aware—as a result of feedback from a senior vice president and an independent study that THQ commissioned—that the uDraw would likely fail" and "with such knowledge, did not disclose that risk." *Zaghian*, 675 Fed. Appx. at 720.

The Ninth Circuit's reasoning in *Zaghian* is equally applicable here, if not more so. Defendants admitted that they were aware of a "trend" that had been materially impacting HiSeq sales in a negative manner throughout the third quarter. Defendants' admission in this regard is far more compelling in terms of pleading fraud than the secondary information the plaintiffs received from the "senior vice president" and "independent study" in *Zaghian*. Defendants said one thing—that HiSeq sales were driving increased revenues—while knowing another—that HiSeq sales were in a material state of decline. *See Finisar Corp. Sec. Litig. v. Finisar Corp.*, No. 13-17199, 2016 U.S. App. LEXIS 5653, at *2-3 (9th Cir. Mar. 25, 2016) (falsity adequately alleged where defendants would have been made aware of true state of affairs during material contract negotiations).

The Supreme Court of the United States' decisions in *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991), and *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 135 S. Ct. 1318 (2015), further support Plaintiff's case. In *Virginia Bankshares*, the Supreme Court decided whether "statements of reasons, opinion, or belief" could be actionable (albeit within the context of Section 14(a) of the Exchange Act). 501 U.S. at 1090. The Supreme Court held that such statements could be actionable because they "are

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

reasonably understood to rest on a factual basis that justifies them as accurate, the absence of which renders them misleading." *Id*. at 1093. The decision directed courts to examine facts relating to whether a statement of opinion "also expressly or impliedly asserted something false or misleading about its subject matter." *Id*. at 1095-96.

The Supreme Court of the United States elaborated upon this point in *Omnicare* (albeit within the context of Section 11 of the Securities Act of 1933). The Supreme Court reasoned that an "investor may, depending on the circumstances, understand an opinion statement to convey facts about how the speaker has formed the opinion—or, otherwise put, about the speaker's basis for holding that view. And if the real facts are otherwise, but not provided, the opinion statement will mislead its audience." *Id*. at 1328.

Both *Virginia Bankshares* and *Omnicare* are applicable to the matter at hand. Here, Defendants admitted that they had been aware of a worsening "trend" impacting their HiSeq instruments that had been "building" for some time and "didn't show up suddenly" during the third quarter. ¶60. What occurred here was not akin to the *Omnicare* Court's hypothetical example of a company failing to disclose "that a single junior attorney expressed doubts about a practice's legality, when six of his more senior colleagues gave a stamp of approval"; instead, "[Defendants] made the statement in the face of its [senior staff's] contrary advice" concerning a known trend that was actively impacting sales in a materially negative manner. *Omnicare*, 135 S. Ct. at 1329. Accordingly, Plaintiff "has cause to complain: He expect[ed] not just that the [Defendants] believe[d] the opinion (however irrationally), but that it fairly align[ed] with the information in [Defendants'] possession at the time." *Id*.

1  **1.  Defendants' false and/or materially misleading statements**
2  **are not "forward-looking" and, therefore, do not qualify for**
   **protection under the PSLRA's safe-harbor provision.**

3      Defendants attempt to avoid liability by claiming protection under the safe-
4  harbor provision of the PSLRA. The PSLRA's safe-harbor allows defendants to
5  escape liability arising from "forward-looking statements" under Section 10(b) of
6  the Exchange Act.  In order to claim protection under the safe-harbor, the "forward-
7  looking statement" must be identified as such and accompanied by "*meaningful*
8  cautionary statements identifying *important* factors that could cause actual results
9  to differ materially."   15 U.S.C. §78u-5(c)(1)(A)(i) (emphasis added). The safe-
10 harbor is inapplicable in the matter at hand because, first and foremost, the
11 statements at issue are not "forward-looking."

12     Specifically, Defendants' statements relate to the then-current demand for
13 Illumina's HiSeq products as well as the Company's then-existing pipeline of
14 HiSeq sales. *E.g.*, ¶¶33 ("our HiSeq X outlook *remains* robust at 20 or 30
15 instrument orders per quarter"); 34 ("[w]e *continue to* project total Company
16 revenue growth of approximately 12% year over year"); 50 (". . . that is driven by
17 *the backlog of HiSeq X's that we have now booked* into our order system *at this*
18 *point in time*). Defendants' statements were not "forward-looking." *See In re*
19 *Amylin Pharms., Inc. Sec. Litig.*, No. 01cv1455 BTM(NLS), 2003 U.S. Dist. LEXIS
20 7667, *16 (S.D. Cal. May 1, 2003) (statements concerning historical or current facts
21 are not forward-looking); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 672
22 F. Supp. 2d 596, 606 (S.D.N.Y. 2009) (misreported financial information clearly
23 amounts to a false statement of fact).

24     Defendants misplace reliance on the fact that some of their statements
25 contained estimates of future revenue. As alleged in the Complaint, this case is
26 about Illumina's *current demand and ability to properly oversee its backlog*, not
27 the guidance in and of itself. This is evidenced by the fact that Plaintiff's losses
28 were caused by the revelation that Illumina had failed to meet its revenue target as

well as the fact that Illumina's oversight of its sales pipeline was so poor that the Company was forced to "initiate[] a global forecast improvement project." ¶84. Accordingly, the misrepresentation was about its current ability to issue guidance, not as Defendants state, the content of the guidance. Defendants' statements are not "forward looking" and, as discussed above, were materially misleading. ¶89.

### 2.   Defendants' cautionary language was not "meaningful" and, therefore, does not support protection under the PSLRA's safe-harbor provision.

Even if the court finds that the statements are "forward-looking" (they are not), Defendants' argument still fails. Defendants argue that because before each call, they made a broad disclaimer that the call may contain "forward-looking" statements that they are free from liability. Defs. Br. at 13. However, broadly labeling something as "forward-looking" does not provide defendants with the freedom to provide guidance *while knowing it was false*.

For "cautionary language" to be "meaningful" under the PSLRA safe-harbor, it must "identify[] important factors that could cause actual results to differ materially from those in the forward-looking statement."   15 U.S.C. §78u-5(c)(1)(A)(i). Significantly, "cautionary words about future risk cannot insulate from liability the failure to disclose that the risk has transpired." *In re Countrywide Fin. Corp. Sec. Litig.,* 588 F. Supp. 2d 1132, 1178 n.62 (C.D. Cal. 2008) (citing *Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir.2004); *see In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90, 102 (D.C. Cir. 2015) (cautionary language cannot be "meaningful" if it is misleading in light of historical facts that were established at the time the statement was made." (internal citations omitted)).

Defendants here made no effort to comply with the PSLRA safe-harbor's statutory requirements.  Further, while Defendants referred to cautionary statements in Illumina's SEC filings (discussed below), "refer[ring] to a generic class of documents" is insufficient because it "'identifies' no specific documents or page

14

1  numbers or even a date on which the relevant documents were filed.  Investors

2  cannot be expected to sift through the entire historical record of [a company's] SEC

3  filings."  *In re Apple Computer, Inc.*, No. C-01-3667 CW, 2003 U.S. Dist. LEXIS

4  28303, *7-8 (N.D. Cal. Aug. 13, 2003), *aff'd In re Apple Computer, Inc.*, 127 Fed.

5  Appx. 296 (9th Cir. 2005); *see also*  15 U.S.C. §78u-5(c)(2)(B)(ii) (requiring

6  speaker to "identif[y] *the* document, or portion thereof, that contains the additional

7  information . . . .") (emphasis added). The disclaimer provided to investors at the

8  outset of the conference calls was insufficient in and of itself to trigger protection

9  under the PSLRA's safe-harbor.   *See*  15 U.S.C. §78u-5(c)(1)(A)(i) (requiring

10  identification of "important factors that could cause actual results to differ").

11      In *Harman*, the Court of Appeals evaluated whether general disclaimers at

12  the outset of an investor conference call could qualify as "meaningful cautionary

13  statements" for the purposes of the PSLRA safe-harbor.  The Court of Appeals

14  described the general disclaimers as follows:

15          At the beginning of the conference call the moderator had stated that
16      "certain statements by the [C]ompany during this call are forward-
        looking statements" that "include the [C]ompany's beliefs and
17      expectations as to future events and trends affecting the [C]ompany's
        business and are subject to risks and uncertainties."  Persons on the call
18      were "advised to review the reports filed by Harman International with
        the [SEC] regarding these risks and uncertainties."
19

20  and

21          The conference call was convened to discuss the Company's almost-
        completed first quarter FY 2008 financial results and expectations for
22      the remainder of the fiscal year.  The conference call's moderator again
        began the call by stating that "certain statements made by the Company
23      during this call are forward-looking statements" that "include the
        Company's beliefs and expectations as to future events and trends
24      affecting the Company's business and are subject to risks and
25      uncertainties."  Those on the call were "advised to review the reports
        filed by Harman International with the [SEC] regarding these risks and
26      uncertainties."
27

28

*Harman*, 791 F.3d at 97, 98 (citations omitted).  The Court of Appeals held that these words, which are virtually identical to Defendants' disclaimers here, consisted of "boilerplate" and "generalities."  *Id.* at 104.  Here, just like in *Harman*, Defendants' disclaimers at the outset of the July 26 investor conference call and September 13 investor presentations failed to identify *any* factors that could have caused actual results to differ materially (let alone *important* ones).  *See also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 244-45 (5th Cir. 2009) (holding disclaimer language to be "generic and formulaic" and "boilerplate and not meaningful[ly] cautionary").

*In re Cutera Securities Litigation*, 610 F.3d 1103, 1112 (9th Cir. 2010), and *Police Retirement Systems v. Intuitive Surgical, Inc.*, 759 F.3d 1051 (9th Cir. 2014), do not change the outcome on the issue. Subsequent to both of these decisions, the Ninth Circuit decided *Zaghian v. Farrell*, *supra*. In that case, the Ninth Circuit distinguished *Cutera* and *Intuitive* on the basis that cautionary language cannot be considered "meaningful" where defendants possess information that materially contradicts their statements and "Defendants, with such knowledge, [do] not disclose that risk." *Id*. at 720. Like the defendants in *Zaghian*, Defendants here were in possession of information that materially contradicted their public statements; indeed, Defendants admitted they had been aware of a worsening "trend" impacting their HiSeq instruments that had been "building" for some time and "didn't show up suddenly" during the third quarter. ¶¶59, 60.

Defendants' cautionary statements within their SEC filings fare no better. In particular, Defendants' cautionary statements do not disclose that demand for the HiSeq instruments had **already** declined at the time of the alleged false statements. ¶89. Accordingly, the cautionary language in the Company's SEC filings fails for the same reasons the cautionary language during the investor call and presentation fails. *See Zaghian*, 675 F. App'x at 720.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

*In re Harman International Industries, Inc. Securities Litigation*, *supra*, is once again instructive. The particular risk at issue in *Harman* related to obsolescence of inventory. The defendant argued that it had warned investors of the risk of inventory obsolescence many times throughout the class period. *Harman*, 2015 U.S. App. LEXIS 10552 at *26. The Court of Appeals described the warnings relied upon by the defendant as follows: "The 2006 Annual Report, referred to in the April conference call, stated sales could suffer if the Company failed to 'develop, introduce and achieve market acceptance of new and enhanced products,' that it had to 'maintain and improve existing products, while successfully developing and introducing new products,' and could 'experience difficulties that delay or prevent the development, introduction or market acceptance of new or enhanced products,' as well as that competitors could 'introduce superior designs or business strategies, impairing [the Company's] distinctive image and [its] products' desirability.'" *Id*. The Court of Appeals determined that these warnings consisted of "boilerplate" or were insufficient to the extent that they were "misleading in light of historical fact." *Id*. at *27. The warnings were "boilerplate" because they "spoke generally of 'products,' both 'existing' and 'new.'" *Id*. at *30. Further, to the extent that they failed to communicate to investors that obsolescence had already occurred, they were misleading. *Id*.

Similar to *Harman*, the risk warnings relied upon by Defendants do not reflect that demand for the HiSeq had already decreased or that Illumina's revenue estimates were materially misleading. ¶¶59, 60. In other words, the warnings relied upon by Defendants failed to indicate to investors that Defendants were in possession of information contradicting their public statements.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

**3.    Defendants cannot claim protection under the PSLRA's safe-harbor because they knew that their statements were false and/or materially misleading at the time they were made.**

The PSLRA's safe-harbor also provides protection to defendants in instances where a plaintiff fails to show that a statement "was made with actual knowledge by that person that the statement was false or misleading."   15 U.S.C. §78u-5(c)(1)(B)(i).   Considering the information that Defendants possessed when they made the statements they did, Defendants knowingly misled investors when they spoke about the market demand for Illumina's HiSeq instruments.

As discussed previously, both *Virginia Bankshares* and *Omnicare* weigh heavily in Plaintiff's favor.   Defendants knew that HiSeq sales were in a state of material decline. ¶60. When Defendants decided to tell investors that the demand for the HiSeq instruments was consistently strong and that sales would be supported by a robust pipeline *without also telling them of the negative information they had also received*, they did so with actual knowledge that their statements were misleading. *See Omnicare*, 135 S. Ct. at 1327-28.  Accordingly, the PSLRA's safe-harbor is unavailable to Defendants in this action.

**4.    Defendants' Sarbanes-Oxley certifications are actionable.**

Defendants take the position that a certification pursuant to Sarbanes-Oxley can only be actionable if and when a company's financial statements are at issue. Defs. Br. at 20-21. This is wrong. By making the statements it did about the demand for the Company's HiSeq instruments, Illumina did not account for a known trend that was negatively impacting its sales. Defendants' Sarbanes-Oxley certifications represented that deSouza and Stapley had designed a set of internal controls that would "provide reasonable assurance regarding the reliability of financial reporting" as well as "ensure that material information relating to the [Company] . . . [was] made known to [deSouza and Stapley]." ¶45. Had this been true, Illumina would have disclosed the trend as it was occurring rather than keeping it concealed

during the Class Period. ¶¶45, 46. Under the circumstances at hand, deSouza's and Stapley's certifications are actionable. *See In re Wash. Mut., Inc. Sec.,* 694 F. Supp. 2d 1192, 1212-13 (W.D. Wash. 2009) (statements regarding the effectiveness of internal controls were not true where defendants lacked adequate control environment).[3]

### B. Plaintiff Adequately Alleges Scienter for the Purposes of Pleading Liability under Section 10(b).

When considering scienter, "a court must first accept all factual allegations in the complaint as true" and must "consider the complaint in its entirety." *Reese*, 747 F.3d at 568 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). The "relevant inquiry is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 569. The inference of scienter "need not be irrefutable . . . or even the most plausible." *Tellabs*, 551 U.S. at 324. A "strong inference" is merely one that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*

---

[3] Sarbanes-Oxley certifications are also actionable in the sense that they can support or, at the very least, further an inference of scienter when signed knowingly false. *See In re ArthroCare Corp. Secs. Litig.*, 726 F. Supp. 2d 696, 724 (W.D. Tex. 2010) ("SOX certifications . . . contribute[d] significantly to a strong inference of scienter, as there were clearly facts in the public domain at that time which gave the Individual Defendants reason to know or suspect the financial statements they were then signing contained material misrepresentations or omissions"); *In re ProQuest Sec. Litig.*, No. 06-10619, 527 F. Supp. 2d 728, 743 (E.D. Mich. 2007) ("SOX certifications" giving rise to inference of scienter where defendant "knew about the improper accounting practices or, alternatively, knew that the controls he attested to were inadequate"); *In re Lattice Semiconductor Corp. Sec. Litig.*, No. CV04-1255-AA, 2006 U.S. Dist. LEXIS 262, at *50 (D. Or. Jan. 3, 2006) ("Sarbanes-Oxley certifications" giving rise to inference of scienter because "they provide evidence either that defendants knew about the improper journal entries and unreported sales credits . . . or, alternatively, knew that the controls they attested to were inadequate . . .").

Plaintiffs need only "provide a narrative of fraud – facts which, if true, substantiate an explanation at least as plausible as a nonfraudulent alternative." *ESG Capital Partners, LP v. Stratos*, 828 F.3d at 1033, 1035 (If the "nonfraudulent alternative[]" inferences are only "equally compelling, [then] a plaintiff has demonstrated a strong inference of scienter."). "'[A] tie goes to the Plaintiff.'" *Maiman v. Talbott*, No. SACV 09-0012 AG (ANx), 2010 U.S. Dist. LEXIS 142712, at *15 (C.D. Cal. Aug. 9, 2010) (quoting *Commc'ns Workers of Am. Plan for Emps.' Pensions and Death Benefits v. CSK Auto Corp.*, 525 F. Supp. 2d 1116, 1120 (D. Ariz. 2007)).

Plaintiff's Complaint contains four separate categories of allegations that, when considered collectively, are far more than sufficient for the purposes of stating a claim for relief under Rule 12(b)(6). First, Plaintiff explains that Defendants routinely provided the public with flawed revenue estimates. ¶63. As emphasized by a Wells Fargo analyst after the close of the Class Period, Illumina had demonstrated an inability to properly forecast revenue and/or sales quarter after quarter after quarter. ¶¶64-65. As such, deSouza and Stapley were aware of Illumina's inability to properly oversee the sales pipeline, yet continued to speak about it publicly. ¶¶66. deSouza's and Stapley's apparent disregard as to whether they were misleading the public supports a strong inference of scienter. ¶67.

*Freedman v. Weatherford International Ltd.* is significant in light of the facts at hand. No. 12-CV-2121 (LAK), 2013 U.S. Dist. LEXIS 135149 (S.D.N.Y. Sept. 19, 2013). In that case, the plaintiffs sued the defendants for failing to accurately report the company's tax expenses. *Id*. at *9-11. Considering "circumstantial evidence of recklessness" only, the court held that the defendants' excuse of an "honest" and "negligent" mistake was insufficient to outweigh the plaintiffs' allegations of "reckless disregard" as a matter of law. *Id*. at 14-15 & n.46. Importantly, the court placed special emphasis on the fact that the company's tax expenses were receiving "presumably intense, high-level focus" from the defendants in light of an earlier restatement involving the same tax expense issues.

*Id.* at 15-16. Here, too, Plaintiff's allegations support the conclusion that Defendants' statements about the Company's revenue estimates were receiving a high level of scrutiny in light of past misstatements and, therefore, implicate Defendants as having acted deliberately reckless.

    <u>Second</u>, Plaintiff emphasizes in the Complaint the fact that Defendants ***admitted that they knew HiSeq sales were actively declining*** throughout fiscal 2016. In addition to the admissions made on November 1 about the "trend" that had been "building" for some time, Plaintiff also points to statements made by Illumina's former Chief Executive Officer on May 3, 2016, prior to the start of the Class Period. Specifically, at that time, Jay Flatley told investors that Illumina had missed revenue estimates for the first quarter of 2016 because of customers opting to purchase NextSeq systems instead of HiSeq devices. ¶70. This, combined with deSouza's and Stapley's statements on November 1, 2016, confirm that the "trend" that had caused Illumina to miss its revenue estimates for the third quarter had been negatively impacting the Company's sales ***throughout the entire year***. ¶70. Consequently, this is a case where it truly "would be 'absurd' to suggest that management was without knowledge" that Defendants did not know that demand for the HiSeq instruments was in a material state of decline. *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008) (quoting *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 988 (9th Cir. 2008)). *See Reese*, 747 F.3d at 570-72 (drawing inference of scienter from defendants' positions within company, temporal proximity between wrongdoing and public statements, and defendants' apparent access to information); *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 948 (9th Cir. 2005) (reversing dismissal where defendants themselves were personally responsible for events giving rise to the fraud). Defendants' admissions on November 1 support a strong inference of scienter. ¶71. *See Zaghian*, 675 F. App'x at 721 ("strong inference of scienter" where defendants discussed "confidence" in product while doing so in a misleading manner by "'fail[ing] to

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

inform the market about the risk' that PS3 and Xbox 360 users would be uninterested in the uDraw").

Third, Defendants made a number of statements during the Class Period demonstrating that they had access to Illumina's sales data. In particular, during the July 26, 2016 investor conference call, deSouza explained that he and Stapley actively checked the Company's sales pipeline and that they had a "good line of sight into [the] pipeline for the HiSeq instrument sales towards the end of the year." ¶¶72, 73. deSouza and Stapley emphasized their oversight of HiSeq sales in response to analyst questions. ¶74. Given deSouza's and Stapley's role of actively monitoring the HiSeq pipeline, the Complaint supports the inference that Defendants either lied about their oversight of HiSeq sales or intentionally disregarded the information that was available to them; in either event, Plaintiff's allegations give rise to a strong inference of scienter. ¶75.

Reese v. Malone, 747 F.3d 557 (9th Cir. 2014), is instructive on this point. In that case, the Ninth Circuit held that the plaintiffs had adequately alleged scienter where the defendants had access to information that directly contradicted the public statements at issue in the lawsuit. Id. at 574-75. Specifically, the court held that a strong inference of scienter could be inferred from the fact that the defendants received a "Corrective Action Order" issued by the U.S. Department of Transportation at or around the time of the defendants' public statements. Id. The "Corrective Action Order" discussed facts that, if true, contradicted the statements made by the defendants to the public. Id.

Similar to Reese, deSouza and Stapley admitted to being aware of a "trend" that had been "building" for some time and that "didn't show up suddenly in this quarter [the third quarter]." ¶60. Moreover, as discussed above, Mr. Flatley likewise acknowledged the "trend," but as early as the first quarter of 2016. ¶70. Accordingly, the inference of scienter in this case is just as strong as it was in Reese. See also Nursing Home Pension Fund, Local 144 v. Oracle Corp., 380 F.3d 1226,

1231 (9th Cir. 2004) (inference of scienter where defendants held to have known truth based on access to sales information in corporate database); *Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 617 (S.D.N.Y. 2015) ("Read most favorably to the plaintiff and accepting the Complaint's allegations as true, the above allegations raise an inference that [defendant] either knew or had access to information about [the Company's] large sales increases with loosened terms, and thus possessed information contrary to her public statements.").[4]

Fourth, Illumina implemented significant remedial measures in the wake of its third quarter disclosures, which suggests strongly that the problems at hand went much further than simple mismanagement or negligence. ¶76. These remedial measures included initiating a "global forecast improvement project," relocating high-level members of the Company's sales team, and executing a "much more disciplined sales process." ¶¶77-79. Assuming that these remedial measures were proportionate to the problems that necessitated them (which is a fair inference to be drawn from Plaintiff's Complaint), then Illumina's response is indicative of a severe problems within the Company. Illumina's remedial measures further the inference of scienter against Defendants. *See In re Marvell Tech. Group Ltd. Secs. Litig.*, No. C-06-06286 RMW 2008 U.S. Dist. LEXIS 84934, *21-22, 30 (N.D. Cal. Sept. 29, 2008) (scope of "[r]emedial [a]ctions," including removal of chief operating officer and cancellation of stock options, supported inference of scienter); *In re Sipex Corp. Sec. Litig.*, No. C 05-00392 WHA, 2005 U.S. Dist. LEXIS 30854, at *3, 9 (N.D.

---

[4] The Ninth Circuit's decision in *Finisar Corp.*, *supra*, and the Norther District of California's subsequent opinion on remand, *In re Finisar Corp. Sec. Litig.*, No. 5:11-cv-01252-EJD, 2017 U.S. Dist. LEXIS 66229 (N.D. Cal. May 1, 2017), further support Plaintiff's argument on this point. Having the benefit of the Ninth Circuit's ruling on the issue of falsity, the district court held that the defendants were at the very least "deliberately reckless" given the information they had access to at the time of the alleged misrepresentations. *Id.* at *21-22.

Cal. Nov. 17, 2005) (remedial measures including increased oversight, training, and staff increases was "strong medicine" and indicative of strong inference of scienter).

*          *          *

When considered collectively, Plaintiff's allegations support a "cogent" theory of scienter that is "at least as" compelling as Defendants explanation of nonculpable conduct. *Tellabs*, 551 U.S. at 324. At the pleading stage, this is all that is necessary. Plaintiffs need only "provide a narrative of fraud – facts which, if true, substantiate an explanation at least as plausible as a nonfraudulent alternative." *ESG Capital Partners, LP*, 828 F.3d at 1033.

## V.   PLAINTIFF STATES A CLAIM UNDER SECTION 20(A)

"In order to prove a prima facie case under § 20(a), plaintiff must prove: (1) a primary violation of federal securities laws (not at issue here); and (2) that the defendant exercised actual power or control over the primary violator." *Howard v. Everex Sys.*, 228 F.3d 1057, 1065 (9th Cir. 2000). "Whether [the defendant] is a controlling person is an intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions." *Kaplan v. Rose*, 49 F.3d 1363, 1382 (9th Cir. 1994). As explained above, Plaintiff adequately alleged a violation of Section 10(b) against Defendants. Moreover, given that Defendants were Illumina's executive officers, they are control persons under Section 20(a) of the Exchange Act. ¶¶16, 109-12. *See Howard*, 228 F.3d at 1065.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' motion in its entirety, order the parties to submit a proposed case

1  scheduling order by a date certain, and grant such other and further relief as the

2  Court deems appropriate.[5]

3

4  Dated: September 29, 2017          /s/ Adam C. McCall

5                                    **LEVI & KORSINSKY, LLP**
                                     Adam C. McCall (SBN 302130)

6                                    445 South Figueroa Street, 31st Floor
                                     Los Angeles, CA 90071

7                                    Tel: (213) 985-7290

8                                    Fax: (202) 333-2121
                                     Email: amccall@zlk.com

9

10                                   **LEVI & KORSINSKY, LLP**
                                     Nicholas I. Porritt (DC 457611) (NY 2798460)

11                                   Adam M. Apton (DC 1017720) (NY 4759841)

12                                   1101 30th Street NW, Suite 115
                                     Washington, DC 20007

13                                   Tel: (202) 524-4290

14                                   Fax: (202) 333-2121
                                     Email: nporritt@zlk.com

15                                   Email: aapton@zlk.com

16                                   *pro hac vice to be submitted*

17                                   *Attorneys for Lead Plaintiff Natissisa*

18                                   *Enterprises Ltd. and Lead Counsel for Class*

19

20

21

22  [5] Plaintiff, since filing the Complaint, has obtained additional information showing

23  that Defendants knew that HiSeq sales were lower than publicly stated and that the
    Company's statements about estimated revenue were materially misleading. In

24  particular, a former employee of Illumina who worked in the Company's production

25  facility during the Class Period advised Plaintiff's counsel that Illumina abruptly
    cut production orders for HiSeq instruments very early in the third quarter of 2016.

26  This information, along with other facts obtained to date, further support Plaintiff's

27  claims. If the Court finds that Plaintiff's Complaint is currently insufficient to defeat
    the motion to dismiss, Plaintiff respectfully requests leave to amend. *See Lopez v.*

28  *Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that on September 29, 2017, I electronically filed the

3 document(s) with the Clerk of the Court by using the CM/ECF System for filing

4 and transmittal of a Notice of Electronic Filing was automatically generated to the

5 CM/ECF registrants on record.  Participants in the case who are not registered

6 CM/ECF users will be served by mail or by other means permitted by the court

7 rules.

8 Dated:  September 29, 2017                    s/ Adam C. McCall

9                                                              Adam C. McCall

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28