MARK P. GIMBEL
(*pro hac vice*; NY Registration No. 2998102)
C. WILLIAM PHILLIPS
(*pro hac vice* pending: NY Registration No. 1885573)
DAVID A. KRONIG
(*pro hac vice*; NY Registration No. 5302054)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Tel: (212) 841-1000
Fax: (646) 441-9161

MARK Y. CHEN (Bar No. 310450)
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067
Tel: (424) 332-4800
Fax: (424) 332-4749
mychen@cov.com

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

IN RE ILLUMINA, INC. SECURITIES LITIGATION

Master File No. 3:16-CV-03044-L-MDD

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

Date and Time: Stipulated Alternate Briefing Schedule (*see* ECF Doc. 26)

Courtroom: 5B

Hon. M. James Lorenz

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT............................................................................. 1

I. THE COMPLAINT FOCUSES PRINCIPALLY ON FORWARD-LOOKING STATEMENTS RELATING TO ILLUMINA'S EARNINGS GUIDANCE. ................................................................... 1

II. THE DEFENDANTS' FORWARD-LOOKING STATEMENTS ARE PROTECTED BY THE PSLRA SAFE HARBOR....................................... 3

A. *The Cautionary Statements Were Meaningful.* ................................... 4

B. *The Complaint Fails to Demonstrate Actual Knowledge that Any Forward-Looking Statement Was False or Misleading.*............... 5

III. THE SARBANES-OXLEY CERTIFICATIONS ARE NOT ACTIONABLE.................................................................................. 7

IV. THE COMPLAINT FAILS TO ADEQUATELY PLEAD SCIENTER. ............................................................................. 8

CONCLUSION ............................................................................................ 10

# TABLE OF AUTHORITIES

## Cases

*In re Apple Computer, Inc. Sec. Litig.*,
No. C-01-3667 CW, 2003 WL 26111982 (N.D. Cal. Aug. 13, 2003) ............4, 5

*Bodri v. GoPro, Inc.*,
__ F. Supp. 3d __, 2017 WL 1732022 (C.D. Cal. May 1, 2017) ........................7

*Footbalance Sys. Inc. v. Zero Gravity Inside, Inc.*,
No. 15-CV-1058 JLS (DHB), 2016 WL 5786936 (S.D. Cal. Oct. 4, 2016) .....10

*In re Copper Mountain Sec. Litig.*,
311 F. Supp. 2d 857 (N.D. Cal. 2004)..............................................................2

*In re Harman Int'l Indus., Inc. Sec. Litig.*,
791 F.3d 90 (D.C. Cir. 2015)..........................................................................5

*In re Leapfrog*,
200 F. Supp. 3d 987 (N.D. Cal. 2016)..............................................................7

*In re Marvell Tech. Grp. Ltd. Sec. Litig.*,
No. C-06-06286 RMW, 2008 WL 4544439 (N.D. Cal. Sept. 29, 2008) ..........10

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
380 F.3d 1226 (9th Cir. 2004) ..........................................................................9

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ......................................................................2, 4

*Reese v. Malone*,
747 F.3d 557 (9th Cir. 2014) ...........................................................................9

*Rok v. Identiv*,
No. 15-cv-5775, 2017 WL 35496 (N.D. Cal. Jan. 4, 2017) ................................8

*In re Sipex Corp.*,
No. C 05-00392 WHA, 2005 WL 3096178 (N.D. Cal. Nov. 17, 2005) ............10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).........................................................................................3

*In re Wash. Mut., Inc. Sec.*, 694 F. Supp. 2d 1192 (W.D. Wash. 2009) ........................................................8

*Zaghian v. Farrell*, 675 F. App'x 718 (9th Cir. 2017) ............................................................................5

**Statutes**

15 U.S.C. § 78u–5(c)(1)(B) ...........................................................................6

15 U.S.C. § 78u-5(i)(1)(A) .............................................................................2

15 U.S.C. § 78u-5(i)(1)(D) .............................................................................2

**Other Authorities**

Ninth Circuit Rule 36-3(a) ..............................................................................5

Federal Rule of Civil Procedure 9(b) ...............................................................3

## PRELIMINARY STATEMENT

Plaintiffs' opposition brief attempts to avoid dismissal by reinventing their claims and mischaracterizing Illumina's challenged disclosures. Despite this eleventh hour effort to recast the Complaint, it remains deficient because it focuses principally on forward-looking statements that are insulated from liability under the safe harbor provision of the PSLRA. Moreover, to the very limited extent that Plaintiffs plead statements that are not forward-looking, the Complaint fails to establish either falsity or scienter. For these and other reasons set forth below, the Complaint should be dismissed.

## I. THE COMPLAINT FOCUSES PRINCIPALLY ON FORWARD-LOOKING STATEMENTS RELATING TO ILLUMINA'S EARNINGS GUIDANCE.

The central theory of Plaintiffs' Complaint — stated clearly in the pleading — is that Illumina "provided the public with *forecasts* that were materially flawed and inadequate." Compl. ¶ 30 (emphasis added). Because earnings forecasts are so clearly forward-looking statements that fall within the PSLRA's safe harbor, Plaintiffs attempt to run away from this theory in their opposition brief. Specifically, Plaintiffs argue that the "misrepresentation" alleged in the Complaint "was about [Illumina's] current *ability* to issue guidance, not . . . the content of the guidance." Pls.' Opp'n to Defs.' Mot. to Dismiss, ECF No. 34, at 14 ("Opp.") (emphasis added). The argument fails, not only because it blatantly reinvents the Complaint, but because it mischaracterizes Illumina's disclosures.

Illumina made no representations about its "ability to issue guidance." Not one of the statements Plaintiffs cite provided assurances about the accuracy of earnings projections. The statements reference the "outlook" for sales of HiSeq X instruments; "project[ions]" for "total Company revenue growth;" and the "backlog of HiSeq X's" booked into the order system. Opp. at 13 (citing Compl. ¶¶ 33, 34, 50). But they make no representations about the accuracy of Illumina's earnings guidance. Far from making such assurances, Illumina warned investors that its guidance might prove inaccurate for many reasons, including "that [w]hen we introduce or announce new or enhanced products" — as it had recently done with the HiSeq X and NextSeq — "we face numerous risks relating

to product transitions, *including the inability to accurately forecast demand (including with respect to existing products)* . . . ." *See* Ex. 1, 2015 Form 10-K, at 11 (emphasis added).

Plaintiffs not only mischaracterize Illumina's disclosures, but ignore their forward-looking nature. Statements about earnings "outlook" and revenue "projections" fall within the statutory definition of a forward-looking statement, which encompasses any "statement containing a projection of revenues, income" or "earnings." 15 U.S.C. § 78u-5(i)(1)(A). Even the statement that Illumina had a "backlog of HiSeq X's" was forward-looking within the meaning of the PSLRA. Although Plaintiffs' selective quotation of the statement obscures its context, it was an explanation of one of the assumptions underlying Illumina's guidance — specifically, that "sequential growth . . . driven by the backlog of HiSeq X's" would help the Company meet the earnings "*guidance*" provided "on the second quarter earnings call." Compl. ¶ 49 (emphasis added). The statutory definition of "forward-looking" statement includes any such "statement of the assumptions underlying or relating to" a Company's earnings guidance. 15 U.S.C. § 78u-5(i)(1)(D).

In *Police Retirement Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1059 (9th Cir. 2014), the Ninth Circuit considered whether a CFO's statement that there were no "indicators" of "lower capital expenditures by hospitals" was forward-looking in nature. The court rejected the plaintiffs' argument that the statement was not forward-looking because, "examined as a whole," it "related to future expectations and performance"; specifically, it was "properly classified as an assumption 'underlying or related to'" the defendant's revenue projections. *Id*. The same is true here. Statements about the HiSeq X backlog, and the role it was expected to play in future earnings, are properly classified as assumptions underlying or related to Illumina's earnings projections.

Plaintiffs also fail to demonstrate the falsity of any of the statements that they rely on in their effort to recast the Complaint. Falsity must be pled with particularity under Rule 9(b) and the exacting pleading requirements of the PSLRA. *See* Init. Br. at 11. Here, however, Plaintiffs have pleaded no facts demonstrating that Illumina's "outlook" for the HiSeq X was not "robust at 20 or 30 instruments per quarter;" that it did not in fact

"continue to project" revenue growth of "12% year over year"; or that it did not have a "backlog of HiSeq X's" booked "into our order system." *See* Compl. ¶¶ 33, 34, 49.

Instead, Plaintiffs attempt to manufacture the illusion of a misleading statement by confusing different genetic sequencing platforms — the HiSeq and the HiSeq X.[1] The argument is disingenuous. The Defendants' alleged knowledge of a negative trend in HiSeq sales would not render statements about robust demand for the HiSeq X false or misleading because the platforms are distinct. If anything, a decline in HiSeq sales was consistent with robust demand for the HiSeq X because it reflected what Plaintiffs allege was a "growing preference" for the HiSeq X "over the traditional HiSeq instrument." Compl. ¶ 27. Indeed, Illumina met its "robust" projection of "20 to 30" HiSeq X sales, by shipping 26 HiSeq X instruments in the quarter. Compl. ¶ 33, 53.[2] Plaintiffs' conflation of different products thus amounts to nothing but smoke and mirrors.

## II. THE DEFENDANTS' FORWARD-LOOKING STATEMENTS ARE PROTECTED BY THE PSLRA SAFE HARBOR.

Plaintiffs also attempt to avoid application of the safe harbor by arguing that the cautionary language accompanying Illumina's forward-looking statements was not sufficiently meaningful to insulate the statements from liability. Plaintiffs are wrong and, even if they were not, their claims would fail because the Complaint does not plead that the Defendants had "actual knowledge" that any forward-looking statement was misleading. Unless a defendant has actual knowledge that a forward-looking statement is false or misleading, the safe harbor applies even in the absence of adequate cautionary language. *See* 15 U.S.C. § 78u-5(c)(1)(B); *see also* Init. Br. at 16.

---

[1] Illumina's different sequencing platforms — including the HiSeq X platform (which encompasses the HiSeq X Ten and the HiSeq X Five) and the HiSeq platform (which includes the HiSeq 2500, 3000, and 4000 systems) — are described in its annual report. *See* Ex. 1, 2015 Form 10-K, at 7.

[2] Although the actual sales of 26 HiSeq X units were within the robust "20 to 30" range referenced in the challenged statement, Illumina sold one less HiSeq X unit than anticipated in other, more specific projections underlying its guidance. *See* Compl. ¶ 53. Plaintiffs do not argue that this one-unit "miss," which resulted from the "capital constraints" of a single customer (Ex. 3, at 3), demonstrates that Illumina's projections were misleading.

*A. The Cautionary Statements Were Meaningful.*

Plaintiffs' assertion that Illumina "made no effort to comply with the PSLRA safe-harbor's statutory requirements," *see* Opp. at 14, is false. As the Defendants' initial brief makes clear, each challenged statement was identified as forward-looking and accompanied by meaningful warnings about factors that might cause actual results to differ from what the company projected. *See* Init. Br. at 7-8, 13-16. These warnings were not merely "broad disclaimer[s]," as Plaintiffs assert (Opp. at 14), but specific explanations of relevant risks, including the risk highlighted in Illumina's Form 10-K that it would be unable "*to accurately forecast demand (including with respect to existing products)*" following new product introductions. Ex. 1, 2015 Form 10-K, at 11 (emphasis added).

Citing to the unpublished decision in *In re Apple Computer, Inc. Sec. Litig.*, No. C-01-3667 CW, 2003 WL 26111982 (N.D. Cal. Aug. 13, 2003), Plaintiffs argue that the Court should ignore these specific risk disclosures, because Illumina merely referred investors to the risk factors in its SEC filings without supplying the dates of the filings or the relevant page numbers. Plaintiffs are wrong. Since *Apple Computer* was decided, the Ninth Circuit has upheld cautionary statements that simply refer investors to "the company's [SEC] filings" without more, *Police Retirement Sys.*, 759 F.3d at 1059, implicitly overruling any holding in *Apple Computer* to the contrary. Here, moreover, Illumina did more than refer to its SEC filings generically; it pointed investors to specific SEC disclosures — namely, the Company's most recent SEC filings on Form 10-Q and Form 10-K. *See, e.g.*, Ex. 2, May 3, 2016 Earnings Call Transcript, at 3; Ex. 5, July 26, 2016 Earnings Call Transcript, at 2-3. Thus, even though it is unnecessary under Ninth Circuit law, the Company went well beyond the level of specificity the district court found insufficient in *Apple Computer*.

The Ninth Circuit's ruling in *Zaghian v. Farrell*, 675 F. App'x 718 (9th Cir. 2017) does not help Plaintiffs. Because the case is unpublished, it is not precedent. *See* Ninth Circuit Rule 36-3(a). It also lacks persuasive value because it is distinguishable as a case where the defendant failed to warn of the relevant risk. In *Zaghian*, the defendants launched a gaming console targeted at "hardcore gamers," but suffered poor results because

the system was centered on child-focused games in which "hardcore gamers" had no interest. *Id.* at 720. Even though the defendants were aware of this risk, the cautionary language they relied upon did not mention it, but instead cautioned about the sales impact of "potential product defects and supply chain disruption." *Id.* The court distinguished this warning from those in *Police Retirement Systems* and *Cutera* because the "cautionary language did not sufficiently address the harm that resulted." *Id.* Here, by contrast, Illumina warned about relevant risks, including the very risk that transpired — that it might be unable to "accurately forecast demand" after introducing "new or enhanced products." *See* Ex. 1, 2015 Form 10-K, at 11; Init. Br. at 7-8. *Zaghian* is therefore inapposite.

Plaintiffs' reliance on *In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90 (D.C. Cir. 2015) is equally misplaced. Because the decision is from another circuit, it is not binding. It is also distinguishable. In *Harman*, the court held that, even assuming the defendant had "warned of obsolescence," the warning was "misleading" because it failed to disclose that "there was no longer a mere risk" of obsolescence but an "intractable problem" of obsolescence evidenced by "millions of dollars['] worth of obsolete" products lying in inventory. *Id.* at 106-07. Here, by contrast, Plaintiffs allege no facts demonstrating that, at the time that Illumina warned of the risk that product introductions could render sales projections inaccurate, the Company already knew that its guidance was incorrect.

*B. The Complaint Fails to Demonstrate Actual Knowledge that Any Forward-Looking Statement Was False or Misleading.*

Even if Illumina's cautionary language had been inadequate, the forward-looking statements at issue would still be protected by the safe harbor because Plaintiffs have failed to plead facts showing that any statement was "made with *actual knowledge*" that it was "false or misleading." 15 U.S.C. § 78u–5(c)(1)(B) (emphasis added). Plaintiffs' argument to the contrary depends on mischaracterizations of what Illumina allegedly said and knew.

As discussed above, for example, Plaintiffs' argument that the Company "knowingly misled investors when" it spoke about "market demand for HiSeq" products (Opp. at 18) is untenable, because the statements Plaintiffs cite relate to a different sequencing platform

— the HiSeq X. Even assuming, *arguendo*, that Illumina was aware of a negative sales trend involving HiSeq instruments,[3] that would not demonstrate that any of its statements about "robust" demand for the HiSeq X — a different product — were false or misleading.

Furthermore, the Company never represented that "demand for the HiSeq was so strong during the third quarter of 2016 that Illumina was on track to earn between $625 million and $630 million in revenue for the quarter," as Plaintiffs misleadingly contend. Opp. at 1. Illumina's $625 to $630 million aggregate revenue projection was not based solely on HiSeq sales. *See* Ex. 5, at 6 (projecting overall "revenue of $625 million to $630 million" without making specific projections as to particular products). The Company's guidance included revenues expected from *all* of its products and services, including other instruments and the "consumables" that generate a majority of Illumina's earnings.

Significantly, Plaintiffs make no effort to address or distinguish *In re Leapfrog*, 200 F. Supp. 3d 987 (N.D. Cal. 2016) or *Bodri v. GoPro, Inc.*, __ F. Supp. 3d __, 2017 WL 1732022 (C.D. Cal. May 1, 2017). In each of those cases, the court found the plaintiffs' allegations insufficient to establish actual knowledge that projections were false or misleading, despite the claim that the defendants were aware of certain negative sales trends. *See* Init. Br. at 17-18. The negative trends at issue were insufficient to establish actual knowledge because the defendants could have concluded that the trends would reverse themselves (*Leapfrog*) or that sales of the product in question were not instrumental

[3] Plaintiffs' statements about this purported HiSeq sales "trend" are themselves misleading. Plaintiffs assert that Defendants "admitted to investors that they had known about the decline in HiSeq sales throughout the entire third quarter," citing a statement by deSouza on the November 2016 earnings call about a "phenomenon" that had been "building." Opp. at 1. DeSouza was asked about what Illumina could learn from the success of the NextSeq for particular applications in order to "drive increased performance" on other platforms. Ex. 3 at 15. In response, he stated that "one application that . . . we're getting a lot of traction on NextSeq on, is NIPT" (i.e. non-invasive pre-natal testing) because customers who use NextSeq for this purpose liked features such as "flexible work flows" and the ability not to "batch as many samples as they would have to[] with the HiSeq. And that's a phenomenon that's been building." *Id.* This statement does not support an inference that HiSeq sales were in decline. Rather, it speaks to the satisfaction of customers with the functionality of the NextSeq for a specific application. Moreover, the fact that a "building" phenomenon was recognized *in hindsight* does not mean it was recognized earlier.

to the guidance (*GoPro*). *See id.* The same logic applies with equal force here. Even assuming that Illumina was aware of a negative HiSeq sales trend, the Defendants could reasonably have concluded that the trend would not continue or that the earnings guidance was attainable based on sales of Illumina's many other products and services.

## III. THE SARBANES-OXLEY CERTIFICATIONS ARE NOT ACTIONABLE.

Plaintiffs' opposition brief offers no persuasive authority for the proposition that Sarbanes-Oxley certifications are actionable under Section 10(b) — much less any authority suggesting that the certifications extend to financial forecasts, as opposed to retrospective financial reporting. But even assuming that certifications are actionable in theory, and that they extend to earnings forecasts, Plaintiffs offer no convincing defense of their Sarbanes-Oxley claim in the single paragraph they devote to the claim.

Instead, Plaintiffs largely abandon the Complaint's allegations. For example, Plaintiffs do not defend the allegation that the certifications were false because the Form 10-Q to which they were attached purportedly contained misleading statements or omissions. *See* Compl. ¶¶ 45(2), 46. Plaintiffs likewise abandon their claim that the certifications were false because the Company failed to disclose an internal control deficiency to its auditors. *See id.* ¶¶ 45(5)(a), 46. Unable to support these allegations, Plaintiffs argue only that the certifications were misleading to the extent that they represented that the certifying parties had designed "disclosure controls and procedures" to ensure that material information about the Company was made known to them. The argument fails because the Complaint pleads no "specific facts" showing how "that statement was false or misleading," *Rok v. Identiv*, No. 15-cv-5775, 2017 WL 35496, at *9 (N.D. Cal. Jan. 4, 2017), such as a failure to implement a specific disclosure control.

The case Plaintiffs rely on only illustrates what is lacking in Plaintiffs' Complaint. In *In re Wash. Mut., Inc. Sec.*, 694 F. Supp. 2d 1192 (W.D. Wash. 2009), the complaint had "forty-eight paragraphs" of allegations that detailed the "applicable accounting guidelines" and the defendant's failure to abide by them. *Id.* at 1212. The complaint

identified specific deficiencies in accounting practices and alleged that the defendant's CEO had received a report giving him actual knowledge of these deficiencies. *Id.* at 1213. Here, by contrast, Plaintiffs plead not a single specific internal control deficiency — much less knowledge of such a deficiency by anyone at Illumina.

## IV. THE COMPLAINT FAILS TO ADEQUATELY PLEAD SCIENTER.

Plaintiffs devote pages to arguing that the Complaint adequately pleads scienter, ignoring that the forward-looking statements on which the Complaint focuses require an even higher level of intent — actual knowledge. *See supra* pp. 5-6; Init. Br. 16-19. Scienter is relevant only to the tangential Sarbanes-Oxley claim. Even without regard to this distinction, however, Plaintiffs' arguments all fail.

First, Plaintiffs contend that Illumina repeatedly missed earnings projections, which Plaintiffs allege made the Defendants aware of Illumina's "inability to properly forecast revenue . . . ." Opp. Br. at 20. The argument is a red herring, because Illumina made no representations about its *ability* to accurately forecast revenue, as discussed above. *See supra* pp. 1-2. To the contrary, it warned investors of the risk that its guidance could prove inaccurate, particularly in the wake of new product introductions. *See id.*

Second, Plaintiffs point to the purported decline in HiSeq sales, which Plaintiffs claim was brought to the attention of Defendants before the beginning of the putative class period. Opp. at 21. As discussed above, even assuming there was such a negative trend, the allegation proves nothing, because the Complaint fails to plead facts demonstrating that any decline in HiSeq sales — which represent only a fraction of Illumina's revenue[4] — was enduring and of sufficient magnitude to render the Company's guidance unattainable.

Third, Plaintiffs assert that the Individual Defendants "had access to Illumina's sales data," *id.* at 22, but this again proves nothing. Even assuming the Individual Defendants

[4] In 2015, for example, sales of all Illumina instruments — including not only HiSeq but HiSeq X, NextSeq, MiSeq, and MiniSeq — accounted for only $594.7 million (26.8 %) of Illumina's total revenue of $2,219.8 million. *See* Ex. 1, 2015 Form 10-K, at 29.

monitored sales data, Plaintiffs fail to plead that any of that data was inconsistent with any of the statements challenged in the Complaint. As discussed above, the only purported inconsistency is an illusion concocted by conflating different sequencing platforms — the HiSeq and HiSeq X. *See supra* pp. 3, 6. By contrast, in the distinguishable cases Plaintiffs cite, the allegations demonstrated that, among other indicia of wrongdoing, the defendants had information directly contradicting their public statements. *See Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1231-32 (9th Cir. 2004) (prior to making revenue projections, Oracle knew that four critical deals worth $186 million had been lost or delayed; CEO suspiciously sold $900 million of stock before earnings miss; and company created 46,000 debit memos that falsely counted customer overpayments as revenue); *Reese v. Malone*, 747 F.3d 557, 569, 572 (9th Cir. 2014) (scientist stated publicly that pipeline corrosion rates were at a "low manageable . . . rate," despite having information that "high corrosion levels detected were objectively alarming").

Fourth, Plaintiffs argue that "remedial measures" implemented by Illumina following its earnings miss are indicative of scienter, *see* Opp. at 23-24, but the argument is untenable. While the Company instituted a global forecasting improvement project in order to improve the accuracy of its earnings guidance, that good faith effort does not create a "strong inference" that any of the Defendants intended to mislead investors when they provided projections in the past. The cases Plaintiffs rely on for the proposition that "remedial measures" are indicative of scienter are distinguishable, because they involve measures that "customarily . . . follow systemic and fraudulent abuse of internal financial controls," such as the termination of key employees and the implementation of corporate governance reforms. *In re Sipex Corp.*, No. C 05-00392 WHA, 2005 WL 3096178, at *1 (N.D. Cal. Nov. 17, 2005) (after admitting improper accounting, company instituted "house-cleaning . . . reforms" that included termination of employees and annual ethics training and compliance confirmation for employees); *In re Marvell Tech. Grp. Ltd. Sec. Litig.*, No. C-06-06286 RMW, 2008 WL 4544439 (N.D. Cal. Sept. 29, 2008) (termination of COO in wake of fraudulent options backdating). Nothing like that is alleged here.

Finally, in a tacit admission that the existing allegations are deficient, Plaintiffs allude in a footnote to "additional information" they purportedly obtained from an anonymous source after filing their Complaint. Opp. at 9 n.2, 25 n.5. Plaintiffs' new allegations cannot be considered, because it is axiomatic that, "'[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.'" *Footbalance Sys. Inc. v. Zero Gravity Inside, Inc.*, No. 15-CV-1058 JLS (DHB), 2016 WL 5786936, at *4 (S.D. Cal. Oct. 4, 2016) (quoting *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998)). Moreover, the new allegations — which concern a purported decision to "cut production orders" for HiSeq instruments "very early in the third quarter of 2016" Opp. at 25 n. 5 — prove nothing. Even if Illumina decided to cut production of HiSeq platforms at the beginning of the third quarter of 2016, that would not indicate that it believed its third quarter earnings guidance was unattainable because the Company sells many other products and services. In addition, any such production cut might have reflected concerns unrelated to third quarter sales, such as projected demand in later periods like the fourth quarter of 2016 or the first quarter of 2017.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed.

Respectfully submitted,

Dated: November 13, 2017

COVINGTON & BURLING LLP

By: */s/ Mark P. Gimbel*
Mark P. Gimbel

Mark P. Gimbel (admitted pro hac vice)
C. William Phillips (pro hac vice pending)
David A. Kronig (admitted pro hac vice)
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Tel: (212) 841-1000

Mark Y. Chen (Bar No. 310450)
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067
Tel: (424) 332-4800

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the following document was originally served on November 13, 2017 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4:

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

Any other counsel of record will be served by electronic mail, facsimile, and/or overnight delivery.

I declare under penalty of perjury under the laws of United States that the foregoing is true and correct and that this certificate of service was executed on November 14, 2017 at Los Angeles, California.

*/s/ Mark Y. Chen*
Mark Y. Chen