UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ILLUMINA, INC. SECURITIES LITIGATION | Case No.: 3:16-cv-3044-L-KSC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION [Doc. 32] TO DISMISS** |

Pending before the Court is Illumina, Inc., Francis A. Desouza, and Marc A. Stapley's (collectively "Defendants") Fed. R. Civ. P. 12(b)(6) motion to dismiss. Pursuant to Civil Local Rule 7.1(d)(1), the Court decides the matter on the papers submitted and without oral argument. For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

//
//
//
//
//
//
//
//

## I. BACKGROUND

Defendant Illumina Inc. ("Illumina") is a publically traded company that is engaged in the business of providing genetic sequencing products to customers in the medical, academic, and pharmaceutical industries. Customers use Illumina's products to sequence[1] DNA for purposes of genetic analysis. Of special relevance to this motion, Illumina's product line includes three different sequencing systems: the HiSeq, the HiSeq X, and the NextSeq. Of these three systems, the HiSeq has been on the market longest. When Illumina introduced the HiSeq X and NextSeq systems in January 2014, customers began favoring them over the HiSeq almost immediately. (FAC [Doc. 28] ¶ 22, 23.)

Defendants Francis deSouza ("deSouza") and Marc Stapley ("Stapley") serve, respectively, as Chief Executive Officer and Executive Vice President of Illumina. During the timeframe relevant to this motion, Illumina, deSouza, Stapley, and deSouza's predecessor Jay Flatley ("Flatley") made a number of public statements regarding Illumina's financial performance and the demand for its products. They include:

- May 3, 2016 – during an investor conference call discussing 2016Q1[2] earnings, Flatley stated that Illumina failed to hit its earnings guidance for 2016Q1 in part because of lower than expected HiSeq sales. Flatley reasoned that the lower than expected HiSeq sales likely stemmed in part from customers deciding to purchase NextSeq systems instead of the HiSeq systems. (FAC ¶ 26.)
- During the same May 3, 2016 conference call, Stapley forecasted an increase in HiSeq shipments for the second half of 2016. (Doc. 32-3 Ex. 2 pg. 6)
- July 26, 2016 – In a press release announcing preliminary earnings results for 2016Q2, Illumina forecasted 2016Q3 revenue of $625 to $630 million and non-GAAP earnings per diluted share of $3.48 to $3.58. (FAC ¶ 31.)

---

[1] Sequencing refers to the process of determining the order of nucleotide bases in a DNA sample.

[2] As used throughout this order, a year followed by "Q" and a number indicates a specific quarter. Here, the first quarter of year 2016.

- July 26, 2016 – During an investor conference call, deSouza and Stapley (1) forecasted an increase in HiSeq sales during the second half of 2016; (2) repeated the 2016Q3 revenue and earnings per share forecasts provided in the press release; and (3) indicated that at least some customers were adopting newer systems (such as the HiSeq X and the NextSeq) instead of the HiSeq systems. (FAC ¶¶ 33, 34, 36.)
- August 2, 2016 – Illumina files an SEC Form 10-Q for 2016Q2. The Form 10-Q presented the historical results of Illumina's financial performance for 2016Q2 and certified that Defendants had adequate internal controls over financial reporting and that none of the information in the 10-Q was false or misleading. (FAC ¶ 45.)
- October 10, 2016 – Illumina issued a press release indicating it missed its 2016Q3 revenue forecast by $18 million. (FAC ¶ 52.)
- October 10, 2016 – deSouza hosted an investor conference call and indicated that lower than forecasted sales of the HiSeq systems was a driver of the earnings miss. (FAC ¶ 53.)
- November 1, 2016 – during an investor conference call deSouza explained that some customers who historically would have purchased HiSeq systems were opting instead to purchase the new HiSeq X and NextSeq systems. deSouza further explained that there existed a trend of increasing customer preference for certain features of the NextSeq over certain features of the HiSeq. deSouza indicated that this trend did not immediately show up in 2016Q3 but had been building over time. (FAC ¶¶ 59, 60.)

The Plaintiff in this case is Natissisa Enterprises Ltd. ("Plaintiff"), an institutional investor that sold Illumina stock at a loss of about $1 million. Plaintiff alleges that the stock market tracked many of the above statements. Specifically, Plaintiff alleges that the July 26, 2016 forecasts caused Illumina stock to jump from $150.10 per share to

$162.25 per share the next day, on unusually high volume trading. (FAC ¶ 42.) Plaintiff further alleges that the corrective disclosure on October 10, 2016, announcing the 2016Q3 earnings miss, caused Illumina stock to fall from $184.35 per share to $136.18 per share within forty eight hours, again on unusually high volume trading. (FAC ¶ 54.) Plaintiff, on behalf of itself and other harmed investors, filed an amended class action complaint against Defendants alleging securities fraud in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. (FAC.) Defendants now move to dismiss. (MTD.) Plaintiff opposes. (Opp'n [Doc. 34].)

## II. LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). In ruling on a Rule 12(b)(6) motion, the court must assume the truth of all factual allegations and "construe them in the light most favorable to [the nonmoving party]." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (internal citations and quotation marks omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

Securities fraud claims are subject to heightened pleading standards. *In re Cutera Securities Litigation*, 610 F.3d 1103, 1108–08 (9th Cir. 2010). A securities fraud plaintiff must therefore allege with particularity the circumstances constituting fraud and "specify each statement alleged to have been misleading, the reason or reasons why the statement

is misleading, and, if an allegation regarding the statement or omission is made on information and belief … state with particularity all facts on which that belief is formed." *Id.* at 1107 (citing 15 U.S.C. § 78u–4(b)(1)(B)); Fed. R. Civ. P. 9(b).

As a general matter, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, courts may consider documents specifically identified in the complaint whose authenticity is not questioned by the parties. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superseded by statute on other grounds). Moreover, courts may consider the full text of those documents, even when the complaint quotes only selected portions. *Id.* The court may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

### III. DISCUSSION

Section 10(b) of the Securities and Exchange Act of 1934 endowed the Securities and Exchange Commission ("SEC") with rulemaking authority to combat securities fraud. 15 U.S.C. § 78j(b). Under this grant of authority, the SEC promulgated Rule 10b–5, which prohibits untrue or misleading statements made in connection with the purchase or sale of a security. 17 C.F.R. § 240.10b–5. The elements of a Rule 10b–5 claim are (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the untrue or misleading statement and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) causation. *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016). The Private Securities Litigation Reform Act ("PSLRA") created a safe harbor ("Safe Harbor") immunizing defendants against liability for certain forward looking statements. 15 U.S.C. § 78u–5. The Safe Harbor applies if (1) the statement is identified as forward looking in nature and accompanied by meaningful cautionary language or (2) the plaintiff fails to show that the defendant made the forward looking

statement with actual knowledge that it was false or misleading. *Id.; Cutera*, 610 F.3d at 1108.

Section 20(a) of the Exchange Act provides that "controlling" persons can be held liable for violations of Section 10(b). *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). Because Defendants' motion presents no argument that deSouza and Stapley are not controlling persons, Plaintiff's Section 20(a) claims survive this motion to the extent that they adequately allege an underlying violation of Section 10(b).

In their motion, Defendants argue (1) that the Safe Harbor immunizes it from liability for missing on its earnings guidance and (2) that Plaintiff has failed to allege falsity with respect to any statements regarding the accuracy of Defendants' internal controls and forecasting processes.[3] The Court will address these arguments in turn.

### A. Earnings Guidance

The primary statements at issue are Defendants' financial forecasts. Defendants forecasted that third quarter revenue would fall in the $625 to $630 million dollar range; earnings per share would raise to as much as $3.58; and part of this growth would stem from increasingly strong HiSeq sales. Defendants argue these statements fall under the first prong of the Safe Harbor because they are forward looking statements identified as such and accompanied by meaningful cautionary language. Plaintiff disagrees, arguing that the Safe Harbor is inapplicable because meaningful cautionary language did not accompany the statements at issue.

Earnings projections and underpinning factual assumptions are by definition forward looking statements. *Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058–59; 15 U.S.C. § 78u–5(i)(1). The statements at issue here clearly qualify because forecasts of revenue

---

[3] Defendants also argue Plaintiff failed to allege scienter with respect to any statements regarding the accuracy of Defendants' internal controls and forecasting processes. Having found that Plaintiff failed to allege falsity, the scienter issue is moot.

6

and earnings per share are earnings projections and the predicted increase in HiSeq sales was presented as an underpinning assumption explaining why the forecasted results would likely occur. Further, the Earnings report and the Investor Call in which Defendants presented these statements contained clear language explaining that these projections were forward looking in nature. (2016Q2 Earnings Report [Doc. 32-3 Ex. 4] Pg. 166; Investor Call [Doc. 32-3 Ex. 5] Pgs. 2–3.)

The dispositive question therefore is whether Defendants presented meaningful cautionary language in connection with these identified forward looking statements. For cautionary language to be "meaningful" and thus trigger the first prong of the Safe Harbor, it must identify "important factors that could cause actual results to differ materially from those in the forward-looking statement…" 15 U.S.C. § 78u–5(c)(1)(A)(i). General boilerplate cautions will not suffice. *Zaghian v. Farrell*, 675 Fed. Appx. 718, 720 (9th Cir. 2017).

The Ninth Circuit's decision in *Cutera* provides an instructive example of legally sufficient cautionary language. In *Cutera*, the corporate defendant Cutera was in the business of selling high quality lasers for use in cosmetic procedures. *Cutera*, 610 F.3d at 1106. Cutera issued revenue forecasts that it failed to meet as a result of a failure to develop and retain a high caliber sales force. *Id.* at 1107. Accompanying its revenue forecasts was a caution that its

> ability to compete and perform in the industry depended on the ability of its sales force to sell products to new customers and upgraded products to current customers, and that failure to attract and retain sales and marketing personnel would materially harm its ability to compete effectively and grow its business.

*Id.* at 1112. Cutera argued that its cautionary statements should trigger the first prong of the Safe Harbor. The Ninth Circuit agreed, reasoning that the cautionary language was meaningful because it identified a specific variable (sales force maintenance) that could hurt or harm Cutera's ability to remain competitive. *Id.*

The cautionary language Defendants' rely upon here is distinguishable. In both the Q2 Earnings Report and the Q2 Earnings Call Defendants referred investors to Illumina's most recent SEC Form 10-K and 10-Q filings.[4] The most recent Form 10-K provided the following cautionary language:

> When we introduce or announce new or enhanced products, we face numerous risks relating to product transitions, including the inability to accurately forecast demand (including with respect to our existing products)…

(2015 10-K [Doc. 32-2 Ex. 1] 11.)

This broad cautionary language does not appear to provide any especially useful information. Presumably the introduction or announcement of "new or enhanced products" is a constant occurrence in Defendants' business. Further, at the time Defendants made this statement, they had already introduced the "new or enhanced products" at issue here: the HiSeq X and NextSeq systems. Thus, unlike in *Cutera*, where the defendant identified a variable (sales force development and retention) whose occurrence or non-occurrence was uncertain and could affect results, the cautionary language here did not even identify a specific factor whose occurrence or non-occurrence was unknown. Rather, it simply rehashed a constant reality of most product driven businesses: demand can change in the context of evolving product lines. The statement therefore appears to be uninformative boilerplate. Accordingly, for purposes of this Fed. R. Civ. P. 12(b)(6) motion, the Court finds the first prong of the Safe Harbor inapplicable.

Alternatively, Defendants argue for application of the second prong of the Safe Harbor. The second prong immunizes a defendant from liability where a plaintiff fails to allege that the defendant made the statement with actual knowledge of its falsity or

---

[4] In doing so, Defendants incorporated by reference the cautionary language contained in these filings. *See In re Apple Computer, Inc., Sec. Litig.*, 2003 WL 26111982 *2 (N.D. Cal. 2003); *Police Ret. Sys. Of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1059 (9th Cir. 2014).

tendency to mislead. 15 U.S.C. § 78u-5(c)(B)(i). Defendants' argue that, even if they were aware of a trend in declining HiSeq sales, it does not follow that they knew their earnings guidance was false. Thus, Defendants argue, they

> could … have concluded that [Illumina's] earnings projections were attainable either because they did not believe the decline in HiSeq sales would continue or because other positive trends–such as projected increases in sales of other instruments or of the consumables that constitute a majority of [Illumina's] business–would allow [Illumina] to meet its earnings forecasts [notwithstanding a decline in HiSeq sales].

(MTD 17.)

Defendants are correct. Plaintiff has not proven that Defendants had actual knowledge that they would fail to hit their earnings guidance. It is possible that Defendants believed they could hit their earnings forecast notwithstanding lower HiSeq sales. However, to survive this Fed. R. Civ. P. 12(b)6 motion, Plaintiff need not *prove* anything. It is sufficient if Plaintiff plausibly alleges facts showing that deliberate recklessness or an intention to deceive is no less likely an explanation of Defendants' motivation than an innocent explanation–such as a good faith belief that the projections would prove accurate. *Tellabs, Inc. v. Makor Issues & Rights*, LTD., 551 U.S. 308, 324, (2007).

Plaintiff's complaint accomplishes this much. Plaintiff has alleged that, prior to making the forecasts at issue here, Defendants publically stated that the lower than expected first quarter 2016 HiSeq sales were likely, at least in part, the product of customers preferring the newer NextSeq systems over the older HiSeq systems. (FAC ¶ 26.) Furthermore, after announcing the earnings miss for the third quarter of 2016, Defendants explained that the miss was driven by lower than expected HiSeq sales, which reflected an increasing customer preference towards the HiSeq X and NextSeq systems. (FAC ¶ 60.) Defendants further suggested that this system preference shift may reflect a trend (that started to develop prior to 2016Q3) of increasing customer preference for certain features of the NextSeq systems over certain features of the HiSeq systems. (FAC ¶ 60.)

Taken together, this before-the-fact knowledge of lower HiSeq sales and after-the-fact statement recognizing a trend toward customers favoring certain features of the NextSeq systems plausibly suggest the following: Defendants knew HiSeq sales were in a state of decline at the time they forecasted an increase in HiSeq sales. Because Defendants justified their overall earnings guidance in part on increased HiSeq sales, the Court finds for purpose of this motion that Plaintiff has adequately alleged that Defendants knew their earnings guidance was misguided. Accordingly, the Court **DENIES** Defendants' motion to dismiss as to the earnings projections and the underpinning assumptions regarding HiSeq sales.

### B. Internal Controls and Forecasting Processes

Plaintiff alleges that Defendants misrepresented that they had adequate internal controls over financial reporting and could accurately forecast future performance. This allegation seems to rest heavily on Defendants' Sarbanes-Oxley certification ("SOX certification) of its Form 10-Q for the second quarter of 2016. The SOX certification, signed by Defendants deSouza and Stapley, represents that Defendants have adequate internal controls over financial reporting and that none of the information in the 2016Q2 10-Q is false or misleading. Plaintiff seems to argue that the SOX certification was fraudulent because Defendants missed on their 2016Q3 revenue forecast.

Plaintiff's argument is unpersuasive. The SOX certification makes no representation as to the soundness of Defendants' forecasting procedures. Indeed, the only statements Defendants appear to have made regarding their ability to forecast future results are boilerplate cautions to the effect that such forecasts can prove inaccurate. (2015 10-K, 11.) As to historical results and internal controls, Plaintiff's allegations are mere conclusions that fail to identify any reported historical results that were inaccurate or any internal control that failed. Accordingly, the Court **GRANTS** Defendants' motion with respect to claims based on the SOX certification and representations about Defendants' ability to provide accurate financial reporting and forecasting.

## IV. CONCLUSION & ORDER

For the foregoing reasons the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion as follows:

- Plaintiff's §10(b) and §20(a) claims based on the Sarbanes Oxley certification and representations about Defendants' ability to provide accurate financial reporting and forecasting are dismissed without prejudice. If Plaintiff chooses to file an amended complaint, it must do so within twenty one days of the entry of this order.
- Plaintiff's §10(b) and §20(a) claims based on Defendants' earnings projections and the underpinning assumptions regarding HiSeq sales may proceed.

**IT IS SO ORDERED.**

Dated: January 22, 2018

_____
Hon. M. James Lorenz
United States District Judge