MARK P. GIMBEL
(*pro hac vice*; NY Registration No. 2998102)
C. WILLIAM PHILLIPS
(*pro hac vice*; NY Registration No. 1885573)
RUSSELL M. SQUIRE
(*pro hac vice*; NY Registration No. 5225479)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Tel: (212) 841-1000
Fax: (646) 441-9161

MARK Y. CHEN (Bar No. 310450)
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067
Tel: (424) 332-4800
Fax: (424) 332-4749
mychen@cov.com

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ILLUMINA, INC. SECURITIES LITIGATION | Master File No. 3:16-CV-03044-L-KSC |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT** |
| | Date: October 15, 2018 |
| | Time: 10:30 a.m. |
| | Courtroom: 5B |
| | Judge: Hon. M. James Lorenz |
| | Magistrate: Hon. Karen S. Crawford |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................ 3

ARGUMENT ...................................................................................................... 7

I.   PLAINTIFF'S MOTION MUST BE DENIED BECAUSE IT HAS NOT DEMONSTRATED GOOD CAUSE FOR ITS DELAY. ................... 8

II.  THE MOTION SHOULD BE DENIED FOR THE ADDITIONAL REASON THAT GRANTING IT WOULD CAUSE PREJUDICE TO DEFENDANTS. ........................................................................................ 12

CONCLUSION .................................................................................................. 17

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT

16-CV-3044-L-KSC

<u>**T**ABLE OF **A**UTHORITIES</u>

**Page(s)**

**Cases**

*Aguilar v. Boulder Brands, Inc.*,
  No. 3:12-CV-01862-BTM-BGS, 2014 U.S. Dist. LEXIS 122822 (S.D.
  Cal. Sept. 2, 2014) ...................................................................................... 11

*Allchin v. Volume Servs., Inc.*,
  No. 3:16-CV-00488-H-KSC, 2017 WL 3575617 (S.D. Cal. Feb. 15,
  2017) ............................................................................................................. 8

*Barrett v. Thorofare Markets, Inc.*,
  77 F.R.D. 22 (W.D. Pa. 1977) ..................................................................... 14

*Bohn v. Pharmavite, LLC*,
  No. 11-CV-10430-GHK, 2013 WL 12246336 (C.D. Cal. Oct. 8, 2013) ............... 8, 10

*Burdick v. Union Sec. Ins. Co.*,
  No. CV 07-4028 ABC, 2009 WL 4798873 (C.D. Cal. Dec. 9, 2009)........................... 8

*DCD Programs, Ltd. v. Leighton*,
  833 F.2d 183 (9th Cir. 1987) ....................................................................... 10

*In re Flash Memory Antitrust Litig.*,
  No. C 07-0086 SBA, 2010 WL 2465329 (N.D. Cal. June 10, 2010).......................... 11

*Hitt v. Arizona Beverage Co., LLC*,
  No. 08-CV-809-WQH-POR, 2009 WL 4261192 (S.D. Cal. Nov. 24,
  2009) ............................................................................................................. 11

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992) ...............................................................*passim*

*Kimble v. ADT Sec. Servs.*,
  No. 3:16-CV-02519-GPC-BLM, 2018 WL 1898556 (S.D. Cal. Apr. 20,
  2018) ................................................................................................... 8, 10, 12

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
  256 F.R.D. 586 (N.D. Ill. 2009).................................................................... 14

*Martinelli v. Johnson & Johnson*,
No. 2:15-CV-01733-MCE-DB, 2017 WL 2257171 (E.D. Cal. May 23, 2017) ...................................................................................................................... 8

*McConnell v. Red Robin Int'l, Inc.*,
No. C 11-03026 WHA, 2012 U.S. Dist. LEXIS 53942 (N.D. Cal. Apr. 17, 2012) ................................................................................................................ 10

*McKinney v. Bayer Corp.*,
No. 1:10-CV-00224, 2011 U.S. Dist. LEXIS 69105 (N.D. Ohio June 28, 2011) .................................................................................................................... 11

*Myers v. Intuit, Inc.*,
No. 17-CV-1228-WQH-BLM, 2018 WL 2287425 (S.D. Cal. May 18, 2018) ...................................................................................................................... 8

*Osakan v. Apple Am. Grp.*,
No. C 08-4722, 2010 WL 1838701 (N.D. Cal. May 5, 2010)........................... 8, 11, 12

*Perez v. First Am. Title Ins. Co.*,
No. CV-08-1184-PHX-DGC, 2010 WL 2292994 (D. Ariz. June 8, 2010)................... 8

*Plascencia v. Lending 1st Mortg.*,
No. C 07-4485 CW, 2012 WL 253319 (N.D. Cal. Jan. 26, 2012) ................................ 8

*Rosales v. FitFlop USA, LLC*,
No. 11–CV–0973–W(KSC), 2013 WL 3049122 (S.D. Cal. June 17, 2013) ................................................................................................................ 8, 9

*Schwerdt v. Int'l Fid. Ins. Co.*,
28 F. App'x 715 (9th Cir. 2002) ................................................................................... 9

*Signal Hill Serv., Inc. v. Macquarie Bank Ltd.*,
No. 11-CV-01539-MMM, 2012 WL 13008126 (C.D. Cal. May 22, 2012)................... 9

*Soto v. Castlerock Farming & Transp., Inc.*,
No. 1:09-CV-00701 AWI JLT, 2011 WL 3489876 (E.D. Cal. Aug. 9, 2011) .................................................................................................................... 12

*Texaco, Inc. v. Ponsoldt*,
939 F.2d 794 (9th Cir. 1991) ....................................................................................... 9

*Wilson v. Frito-Lay N. Am., Inc.*,
No. 12-CV-01586-JST, 2017 WL 3478776 (N.D. Cal. Aug. 14, 2017) ....................... 8

iii

**Rules**

Federal Rules of Civil Procedure

Rule 15 ...................................................................................................... 7, 10, 11

Rule 16 ............................................................................................................. *passim*

Rule 23 ................................................................................................................... 12

**Statutes**

11 U.S.C. § 548 ..................................................................................................... 14

Cyprus Company Laws

Section 265 ............................................................................................................ 15

Section 301 ...................................................................................................... 14, 15

Section 326 ...................................................................................................... 14, 15

Unif. Fraudulent Transfer Act §§ 4–5 ................................................................. 15

**Other Authorities**

Elias Neocleous, *Restructuring and Insolvency in Cyprus: Overview*,
    Practical Law Country Q&A ......................................................................... 14

Internal Revenue Service, *Abusive Offshore Tax Avoidance Schemes –
    Glossary of Offshore Terms*, https://www.irs.gov/businesses/small-
    businesses-self-employed/abusive-offshore-tax-avoidance-schemes-
    glossary-of-offshore-terms............................................................................. 3

Wright & Miller, Fed. Prac. & Proc. Civ. § 1522.2 (3d ed.) ............................... 7

Defendants Illumina, Inc. ("Illumina"), Francis A. deSouza, and Marc A. Stapley, respectfully submit this Memorandum of Points and Authorities in Opposition to the Motion to file Second Amended Complaint filed by Plaintiff Natissisa Enterprises, Ltd. ("Plaintiff" or "Natissisa").

## PRELIMINARY STATEMENT

A party that seeks leave to amend after a court-ordered deadline must demonstrate good cause by showing that it could not reasonably have complied with the deadline despite due diligence. Plaintiff does not even *attempt* to make this showing in its motion, which seeks leave to amend Plaintiff's existing Amended Complaint (the "Complaint") to add a new lead plaintiff and class representative three months after the deadline and more than eight months after the facts allegedly giving rise to the proposed amendment.

Plaintiff is a Cyprus corporation, which is owned by ███████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████. In December 2017, for reasons never explained, Plaintiff decided to commence dissolution proceedings and purported to assign all of its claims against the Defendants in this action to Oleksandr Agoshkov. Although nothing prevented Plaintiff from moving to amend at that time, it chose instead to sit on its hands. It did not file a motion to amend. It did not notify the Court or Defendants of the assignment of its claims. It did nothing.

Three months later, in March of 2018, Oleksandr Agoshkov purportedly assigned the claims in this litigation yet again — this time to his son, Anton Agoshkov. Although nothing prevented Plaintiff from moving to amend at that time, it chose again to sit on its hands. It did not file a motion for leave to amend. It did not notify the Court or Defendants of the assignment and re-assignment of its claims. It did nothing.

In May of 2018, the parties conducted a Rule 16(b) scheduling conference with the Court. Although the Court and the parties discussed setting a deadline for motions to amend and join new parties, Plaintiff once again did not disclose that it had assigned its claims or seek leave to amend and join a new plaintiff. Following the conference, without

any objection from Plaintiff, the Court issued an order setting a deadline of June 11, 2018 for "[a]ny motion to join other parties" or "amend the pleadings." The order stated that the deadline would "not be modified except for good cause shown."

The June 11, 2018 deadline came and went without any action from Plaintiff. Plaintiff did not file a motion to amend. Plaintiff did not seek to extend the deadline. It did not notify the Court or Defendants of the assignment of its claims. It proceeded instead as if nothing had happened while the parties engaged in months of class certification discovery in which the assignments were not produced. Indeed, as late as August 13, Plaintiff represented that it had searched for and produced all documents in its possession, custody, or control relating to Illumina — this despite the fact that it had yet to produce either of two written assignments by which "any claim that it has or could have against Illumina" had been assigned not once, but twice.

Now, three months after the June 11 Scheduling Order deadline and only two months before Defendants' opposition to class certification is due, Plaintiff has suddenly disclosed the assignment and re-assignment of its claims and sought leave to amend the Complaint to add a new lead plaintiff and class representative. Despite Plaintiff's astonishing delay, the motion says not a word about why Plaintiff failed to seek leave to amend until three months after the court-ordered deadline. For this reason alone, the motion should be denied.

Unable to offer any explanation for its extraordinary lack of diligence, Plaintiff avoids the issue, by focusing instead on the purported lack of prejudice to Defendants. Plaintiff's arguments about prejudice are untenable — both factually and legally. As a factual matter, it is highly prejudicial to suddenly and belatedly introduce a whole host of new factual and legal issues requiring discovery and analysis in the middle of class certification proceedings. As a legal matter, prejudice is beside the point. Under binding Ninth Circuit precedent, prejudice may supply "*additional* reasons to deny a motion," *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992), but a purported

2

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT
16-CV-3044-L-KSC

lack of prejudice does not excuse the movant's burden of demonstrating diligence.  "If that party was not diligent, the inquiry should end."  *Id.*  Full stop.

## FACTUAL AND PROCEDURAL BACKGROUND

Illumina is a biotechnology company based in Southern California that develops, manufactures, and sells genetic sequencing equipment and related products and services. (*See* Amended Complaint ("Compl.") ¶¶ 19–22, ECF No. 28).  On October 10, 2016, Illumina announced revenue for the third quarter of 2016 of approximately $607 million — a miss of its financial guidance for that quarter of $625 to $630 million.  *See* Compl. ¶ 52.  A few months later, this stock drop action was filed against Illumina and two Illumina executives, Francis A. deSouza and Marc A. Stapley, alleging that they violated federal securities laws by issuing misleading earnings guidance and making related statements.

Natissisa was appointed as lead plaintiff on March 30, 2017. (ECF No. 19.) According to documents recently produced in discovery, Natissisa is a Cyprus corporation owned by ███████████████████████████████.  (*See* Declaration of Mark P. Gimbel ("Gimbel Decl.") ¶ 2, Ex. 1).  All of the shares in ██████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████.  *Id.* Ex. 2.  A "nominee is an individual or entity, which acts on behalf of a beneficial owner" and "pretends to be the owner of an entity, asset, or transaction to provide a veil of secrecy as to the beneficial owner's involvement."  Internal Revenue Service, *Abusive Offshore Tax Avoidance Schemes – Glossary of Offshore Terms*, https://www.irs.gov/businesses/small-businesses-self-employed/abusive-offshore-tax-avoidance-schemes-glossary-of-offshore-terms.  Plaintiff has thus far refused to provide any discovery concerning the reasons why this corporate structure was adopted or why Mr. Agoshkov's purported beneficial ownership of Plaintiff was ██████████████████ ████████████████████████████████████████████████████.  *See* Gimbel Decl. ¶ 17.

3

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT
16-CV-3044-L-KSC

Plaintiff asserts that, on or about December 1, 2017, it decided to commence voluntary dissolution proceedings to unwind the company. (*See* Declaration of Anton Agoshkov in Support of Plaintiffs' Motion for Class Certification ("Agoshkov Decl.") ¶ 5, ECF No. 63-4.)  According to Plaintiff, these dissolution proceedings are still in progress. *Id.*  Plaintiff has not explained why the decision was made to unwind.

On December 26, 2017, Natissisa executed an "Assignment of Claim" which purported to assign to Oleksandr Agoshkov all of Natissisa's "right, title and interest in any claim that [Natissisa] has or could have against Illumina, Inc., Francis A. deSouza, Marc A. Stapley, or any other entity or individual that could be liable in connection with or arising from the acts and/or omissions alleged in the litigation entitled *In re Illumina, Inc. Securities Litigation*, No. 3:16-cv-03044-L-MDD (S.D. Cal.)."  Gimbel Decl. Ex. 12. Anton Agoshkov claims that the assignment was made "to prevent [Natissisa's] dissolution proceedings from interfering with this action."  Agoshkov Decl. ¶ 6.  However, Plaintiff took no steps at the time to inform the Court or Defendants of the dissolution proceedings or the assignment.  Nor did it seek leave to amend to add a new named Plaintiff promptly, in a manner that would avoid disruption or delay.

Approximately three months later, on March 21, 2018, Oleksandr Agoshkov executed a second "Assignment of Claim" purporting to re-assign the same claims he received from Natissisa to his son, Anton Agoshkov.  Gimbel Decl. Ex. 13.  Again, Plaintiff did not notify Defendants or the Court of the assignment.  Again, Plaintiff did not seek leave to amend to add a new named Plaintiff.

On January 22, 2018, the Court granted in part and denied in part Defendants' motion to dismiss.  (ECF No. 39.)  On May 4, 2018, Plaintiff served its Initial Disclosures, purporting to identify all documents and witnesses it might rely on to prosecute its claims. Gimbel Decl. Ex. 3.  Plaintiff did not include the assignments in its disclosure of documents.  Nor did it identify any of the individuals who are a party to the assignments as potential witnesses.

4

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT
16-CV-3044-L-KSC

On May 11, 2018, both parties appeared for a telephonic case management conference, at which the parties and the Court discussed a variety of scheduling issues including the deadline for amending pleadings and joining new parties. *Id.* ¶ 5. During the conference, Plaintiff did not inform Defendants or the Court that it had executed assignments purporting to transfer all of its claims against Defendants to a non-party. Nor did it seek leave to amend to add a new named plaintiff and class representative. *Id.*

On May 11, 2018, following the case management conference, the Court entered a Scheduling Order under Federal Rule of Civil Procedure 16(b). (Scheduling Order, ECF No. 55). Under the Scheduling Order, "[a]ny motion to join other parties, to amend the pleadings, or to file additional pleadings shall be filed no later than **June 11, 2018**." *Id.* The order also provides that "[a] Motion for Class Certification shall be filed on or before **September 14, 2018**. Any Opposition to a Motion for Class Certification shall be filed on or before **November 16, 2018**." *Id.* The Scheduling Order states that "[t]he dates and times set forth herein will not be modified except for good cause shown." *Id.*

Defendants thereafter sought discovery related to class certification in reliance on the deadlines set by the Scheduling Order. On June 5, 2018, Defendants served their First Set of Requests for Production of Documents to Plaintiff. Gimbel Decl. Ex 4. In their Request for Production No. 1, Defendants requested "[a]ll documents relating to Illumina or any Individual Defendant." *Id.* Although the request was simple and Plaintiff presumably has no documents relating to the Defendants apart from those that concern this litigation, Plaintiff refused to comply, asserting on July 3 that the request was somehow "vague" or "overbroad" and that it would "not produce documents in response to this request." *Id.* Ex. 7.

After further correspondence and a meet and confer, Plaintiff finally agreed, on July 26, to produce responsive materials. *Id.* ¶ 9. By letter dated August 13, Plaintiff confirmed that it had searched its files for all documents relating to Illumina and stated that "[n]o documents were found, except the brokerage report previously provided to Defendants in native form (Plaintiff 193)." *Id.* Ex 10. Notably, however, Plaintiff had not yet produced

5

the two purported assignments, both of which explicitly referenced Illumina and the Individual Defendants and could not be more central to the litigation.

On September 5, 2018 — more than eight months after the first purported assignment of Plaintiff's claims and nearly three months after the Scheduling Order deadline to join other parties or to amend the pleadings — Plaintiff's counsel sent Defendants' counsel an email requesting Defendants' consent to a motion to amend the Complaint to add Anton Agoshkov as an additional named plaintiff and class representative. Gimbel Decl. Ex. 11. The September 5 email explained that Natissisa had assigned its interests in this case to Oleksandr Agoshkov, who had subsequently assigned interests to Anton Agoshkov. *Id.* Later that day, Plaintiff for the first time produced copies of these two purported assignments. *See id.* Exs. 12, 13. In neither communication did Plaintiff explain why it had failed to produce the assignments earlier or why it had waited until three months after the applicable deadline in the Scheduling Order to suddenly seek leave to amend. Nor did Plaintiff explain why it had inaccurately represented on August 13 that it had searched for and produced all documents in its possession concerning Illumina.

On September 7, 2018, during a meet and confer between the parties, Defendants' counsel asked Plaintiff's counsel why Plaintiff only now was raising its request to add an additional lead plaintiff and class representative even though it knew about the assignment of Natissisa's claim as early as December 2017. Gimbel Decl. ¶ 13. Plaintiff's counsel offered no explanation for the delay. *Id.*

On September 11, 2018, Defendants wrote to Plaintiff's counsel, asking certain questions concerning the assignments and related matters in an effort to obtain information relating to Plaintiff's request that Defendants consent to an amendment of the complaint. *Id.* Ex. 15. Defendants also served a Fourth Set of Requests for Production (the "Fourth RFPs") seeking formal discovery concerning the assignments and related matters. *Id.* Ex. 14.

As of the date of this opposition, Plaintiff has produced only 9 pages of documents in response to Defendants' Fourth RFPs and has categorically refused to provide discovery on certain topics relating to the assignment of its claims. *Id.* ¶¶ 17-19. Plaintiff has also refused to respond to the questions in Defendants' September 11 letter, telling Defendants that they should instead ask the questions in a deposition and reserving the right to object during any such examination. *Id.* Ex. 16.

On September 12, 2018, Plaintiff filed its Motion to Amend. As explained in detail below, the motion utterly fails to explain Plaintiff's delay in moving, and granting it would cause prejudice to Defendants. The motion should be denied.

### ARGUMENT

Plaintiff seeks leave to amend the Complaint three months after the June 11 deadline set in the Scheduling Order. Plaintiff concedes (Pl. Br. at 3) that, as a result, it must show "good cause" to modify the order under Federal Rule of Civil Procedure 16(b)(4). *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.* Good cause exists if a deadline "cannot reasonably be met *despite the diligence of the party seeking the extension*." *Id.* (quoting Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment) (emphasis added)). By contrast, "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.*

Although prejudice to the opposing party may supply "additional reasons to *deny* a motion," the moving party cannot avoid the threshold burden of demonstrating diligence by claiming a lack of prejudice. *Id.* (emphasis added). Rather, if the moving party "was not diligent, the inquiry should end." *Id.*; *see also* Wright & Miller, Fed. Prac. & Proc. Civ. § 1522.2 (3d ed.) (stating that that "the failure to explain satisfactorily delays that led to the need for modification will result in a refusal to modify the order").

7

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT
16-CV-3044-L-KSC

Applying this rule, courts in this Circuit have consistently rejected requests to add or substitute a class representative after a scheduling order deadline where the plaintiff failed to demonstrate reasonable diligence. *See, e.g.*, *Martinelli v. Johnson & Johnson*, No. 2:15-CV-01733-MCE-DB, 2017 WL 2257171, at *4 (E.D. Cal. May 23, 2017) (denying motion to amend complaint to add class representative under Rule 16(b)); *Allchin v. Volume Servs., Inc.*, No. 3:16-CV-00488-H-KSC, 2017 WL 3575617, at *2 (S.D. Cal. Feb. 15, 2017) (same); *Rosales v. FitFlop USA, LLC*, No. 11–CV–0973–W(KSC), 2013 WL 3049122, at *4 (S.D. Cal. June 17, 2013) (same); *Plascencia v. Lending 1st Mortg.*, No. C 07-4485 CW, 2012 WL 253319, at *6 (N.D. Cal. Jan. 26, 2012) (same); *Osakan v. Apple Am. Grp.*, No. C 08-4722 SBA, 2010 WL 1838701, at *6 (N.D. Cal. May 5, 2010) (same); *Burdick v. Union Sec. Ins. Co.*, No. CV 07-4028 ABC (JCx), 2009 WL 4798873, at *9 (C.D. Cal. Dec. 9, 2009) (same); *Myers v. Intuit, Inc.*, No. 17-CV-1228-WQH-BLM, 2018 WL 2287425, at *8 (S.D. Cal. May 18, 2018) (denying motion to amend complaint to substitute class representative under Rule 16(b)); *Kimble v. ADT Sec. Servs.*, No. 3:16-CV-02519-GPC-BLM, 2018 WL 1898556, at **4–5 (S.D. Cal. Apr. 20, 2018) (same); *Wilson v. Frito-Lay N. Am., Inc.*, No. 12-CV-01586-JST, 2017 WL 3478776, at *5 (N.D. Cal. Aug. 14, 2017) (same); *Bohn v. Pharmavite, LLC*, No. 11-CV-10430-GHK (AGRx), 2013 WL 12246336, at *4 (C.D. Cal. Oct. 8, 2013) (same); *Perez v. First Am. Title Ins. Co.*, No. CV-08-1184-PHX-DGC, 2010 WL 2292994, at *3 (D. Ariz. June 8, 2010) (same). This Court should do the same.

## I.    PLAINTIFF'S MOTION MUST BE DENIED BECAUSE IT HAS NOT DEMONSTRATED GOOD CAUSE FOR ITS DELAY.

Although Plaintiff pays lip service to Rule 16(b)'s "good cause" requirement in its motion, it conspicuously makes no effort to demonstrate that it acted diligently in seeking leave to amend.  Nor could it, because there is no good explanation for Plaintiff's extraordinary delay.

By Plaintiff's own account, it decided to dissolve on December 1, 2017 — over nine months before it sought leave to amend.  Although nothing prevented it from seeking leave

8

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT
16-CV-3044-L-KSC

to amend at the time, it chose instead to sit on its hands. This pattern of behavior was then repeated over and over again as the litigation progressed. When Plaintiff executed the first Assignment of Claim on December 26, 2017, it once again failed to seek leave to amend. When Plaintiff's claims were re-assigned on March 26, 2018, it once again failed to seek leave to amend. When the parties and the Court had a case management conference on May 11, Plaintiff once again did nothing. When the Court issued a scheduling order setting a June 11 deadline for motions to amend or join new parties, Plaintiff allowed the deadline to come and go without taking any action.

Plaintiff's unexplained and inexcusable delay forecloses a finding of diligence. *See Schwerdt v. Int'l Fid. Ins. Co.*, 28 F. App'x 715, 720 (9th Cir. 2002) (finding that a less than four month delay between time obtaining relevant facts and seeking leave to amend amounted to lack of diligence); *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991) (finding that an eight month delay between time obtaining relevant facts and seeking leave to amend amounted to lack of diligence); *Rosales*, 2013 WL 3049122, at *4 (S.D. Cal. June 17, 2013) (finding that a five month delay between time obtaining relevant facts and seeking leave to amend to add a new class representative amounted to lack of diligence); *see also Signal Hill Serv., Inc. v. Macquarie Bank Ltd.*, No. 11-CV-01539-MMM (JEMx), 2012 WL 13008126, at *3 (C.D. Cal. May 22, 2012) (denying motion to amend complaint where plaintiffs "provide[d] no explanation for the fact that they did not move to amend until three full months after that deadline passed").

Notably, this is not a case in which the movant can claim to have discovered the need to seek amendment after the applicable deadline. Plaintiff clearly had knowledge of the facts leading to its motion well before June 11: Plaintiff was aware of its dissolution proceedings and the assignment and re-assignment of its claims as they occurred and does not claim otherwise. Nor can it claim ignorance of the Court-ordered deadline. Plaintiff's counsel appeared at the case management conference at which the deadline was set (ECF No. 54) and received the Scheduling Order by ECF (ECF No. 55). In addition, Anton Agoshkov, the purported assignee of Plaintiff's claim, alleges that he has been

9

"monitor[ing] the litigation" and "routinely communicat[ing] with [his] attorneys, Levi & Korsinsky, LLP, and ha[s] supervised their handing of this matter since the case began." Agoshkov Decl. ¶ 7.

Because Plaintiff can provide no explanation for its astonishing lack of diligence, it attempts to change the topic.  In asserting that good cause exists, Plaintiff focuses on the "unnecessary waste of resources" and the possibility that putative "members" of the as-yet uncertified class "[may] lose their rights" if an amendment is denied.  (Pl. Br. at 4.)  But neither of these concerns has any place in the "good cause" analysis; the focus of the "good cause" inquiry is on *the diligence of the moving party* in seeking the amendment.  *See Bohn*, 2013 WL 12246336, at *3 ("Plaintiff suggests, however, that good cause exists for two additional reasons: (1) substituting Bradach as the named plaintiff is in the interest of judicial economy, and (2) substituting Bradach is necessary to protect the rights of the absent class members. Neither argument is well taken.").  In any event, Plaintiff has only itself to blame for any consequences that may result from its unjustified failure to comply with the Scheduling Order.  *See id.* ("If judicial economy concerns alone were enough to establish good cause, Rule 16(b) would largely become a nullity.").

The remainder of Plaintiff's motion focuses on whether the Court should grant leave to amend the Complaint under the more liberal standard of Rule 15(a)(2).  But Plaintiff's reliance on these cases is misplaced, because "Rule 16's good cause standard is more stringent tha[n] the liberal amendment standard under Rule 15."  *Kimble*, 2018 WL 1898556, at *2.  The cases Plaintiff cites applying the more forgiving standard of Rule 15(a), under which Plaintiff contends that "delay, by itself is insufficient" (Pl. Br. at 3), are therefore completely inapposite. *See, e.g.*, *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) (applying Rule 15(a) to a motion to amend the Complaint and noting "there is no evidence of unjust delay in this case"); *McConnell v. Red Robin Int'l, Inc.*, No. C 11-03026 WHA, 2012 U.S. Dist. LEXIS 53942, at *5 (N.D. Cal. Apr. 17, 2012) (evaluating Plaintiff's application under the "traditional Rule 15 standard" and holding that

Rule 16's more stringent good cause standard was inapplicable because Plaintiff had already been granted leave to add a new class representative).[1]

The few cases in Plaintiff's brief that do address Rule 16(a) are likewise readily distinguishable because the moving party did not delay in seeking to modify a scheduling order deadline.  *See, e.g.*, *McKinney v. Bayer Corp.*, No. 1:10-CV-00224, 2011 U.S. Dist. LEXIS 69105, at *4 (N.D. Ohio June 28, 2011) ("Nor is there suggestion of undue delay, bad faith or dilatory motive on the Plaintiff's part in seeking substitution . . . . ").  For instance, in *Aguilar v. Boulder Brands, Inc.*, No. 3:12-CV-01862-BTM-BGS, 2014 U.S. Dist. LEXIS 122822 (S.D. Cal. Sept. 2, 2014), the Court found good cause to permit a substitution of the plaintiff after the scheduling order deadline because the "Plaintiff and her counsel *were diligent* in responding to an event *outside their control*."  *Id.* at *25 (emphasis added).  In particular, the plaintiff's counsel in *Aguilar* quickly informed opposing counsel and filed a motion only 22 days after first learning that the plaintiff had emergent health issues.  *Id.*  By contrast, here, Plaintiff controlled the timing of the corporate dissolution proceedings that ostensibly led to this motion and waited inexcusably for over 9 months after deciding to dissolve before finally making its motion.  Thus, unlike *Aguilar*, Plaintiff was not "diligent in responding to an event outside [its] control."  *Id.*

Because Plaintiff cannot demonstrate good cause for its failure to request an amendment to the Complaint until three months after the deadline specified in the

---

[1] Even under the more liberal standard of Rule 15(a), Plaintiff's motion would lack merit.  As explained further in Part II of Defendants' opposition, if Plaintiff's motion is granted despite its unjustified delay in moving to amend, it would cause undue prejudice by requiring Defendants to obtain substantial additional discovery; such prejudicial delay warrants denial of a motion to amend even under Rule 15(a).  *See In re Flash Memory Antitrust Litig.*, No. C 07-0086 SBA, 2010 WL 2465329, at *4 (N.D. Cal. June 10, 2010) (denying leave to amend complaint to substitute class representative under Rule 15(a) where Plaintiff delayed moving to amend without explanation and "[t]he proposed amendment [] would result in prejudice to Defendants because it likely will necessitate additional discovery as to the new parties"); *Hitt v. Arizona Beverage Co., LLC*, No. 08-CV-809-WQH-POR, 2009 WL 4261192, at *6 (S.D. Cal. Nov. 24, 2009) (denying leave to amend complaint to substitute class representative under Rule 15(a) where "Defendants have participated in substantial discovery, including discovery related specifically to the named Plaintiff").

Scheduling Order, "the inquiry should end" and Plaintiff's motion should be denied. *Johnson*, 975 F.2d at 609.

## II. THE MOTION SHOULD BE DENIED FOR THE ADDITIONAL REASON THAT GRANTING IT WOULD CAUSE PREJUDICE TO DEFENDANTS.

A party's diligence in meeting a scheduling order deadline is the focus of the Court's inquiry under Rule 16(b), and when it is lacking, the inquiry should end. *Id.* But the Court may also look to prejudice to the opposing party as an additional basis to deny a request to modify a scheduling order. *See Kimble*, 2018 WL 1898556, at *2 ("Prejudice to the non-moving party, though not required under FRCP 16(b), can supply additional reasons to deny a motion.").

Here, contrary to Plaintiff's argument, Defendants would suffer prejudice if the Court grants Plaintiff's motion. Plaintiff's motion comes in the middle of class certification proceedings — the very issue most relevant to Plaintiff's request to add a new class representative. The parties have engaged in months of document discovery on class certification issues; Plaintiff's motion for class certification has already been filed; and Defendants' opposition is due in less than two months. As other courts in this Circuit have recognized, adding a class representative during class discovery results in undue prejudice because it requires the defendant to obtain additional discovery to ascertain whether the proposed class representative is subject to unique defenses or is otherwise ineligible under Federal Rule of Civil Procedure 23. *See, e.g.*, *Soto v. Castlerock Farming & Transp., Inc.*, No. 1:09-CV-00701 AWI JLT, 2011 WL 3489876, at *7 (E.D. Cal. Aug. 9, 2011) (rejecting the plaintiffs' request to add a new class representative prior to the filing of class-certification briefing based on finding that it would unduly prejudice the defendant); *Osakan*, 2010 WL 1838701, at *5 ("Allowing Plaintiffs to add new plaintiffs at this juncture would require the Defendants to conduct new and/or additional discovery. For instance, Defendants would need to ascertain whether any of the four proposed plaintiffs are subject to unique defenses, which would bear upon the typicality requirement of Rule

23.   The need to conduct additional discovery is considered prejudicial." (citation omitted)).

In order to obtain the appointment of Anton Agoshkov as a class representative, Plaintiff would need to demonstrate that he is both typical and adequate, as Plaintiff's own class certification motion concedes. (*See* Pl. Mem., ECF No. 63-1, at 8–10.) To effectively respond to Plaintiff's case on these issues, Defendants would need to obtain significant discovery before the November 16 deadline for opposing class certification. By way of example, to obtain similar discovery as to the existing Plaintiff, Defendants had to serve three sets of document requests and a set of interrogatories on Plaintiff seeking, among other things, documents and information regarding Plaintiff's investment history and background and Plaintiff's prior litigation history. *See, e.g.*, Gimbel Decl. Exs. 4-6. This process has required over three months, between the service of written discovery requests and responses, the meet and confer process, and Plaintiff's slow production of documents, and it still has not concluded because Plaintiff continues to withhold relevant discovery on the basis of objections which Defendants believe are meritless. *See id.* at ¶ 18. If Plaintiff's motion to amend the Complaint is granted, Defendants would be forced to begin the process anew, by tailoring new requests to Anton Agoshkov personally and exploring the host of new issues created by the chain of assignments by which he now purports to have a claim against the Defendants.

For example, Defendants would need to pursue discovery related to why Plaintiff's claims were assigned to Oleksandr Agoshkov and then re-assigned to Anton Agoshkov; whether any consideration was paid in exchange for either assignment; and whether there are potential creditors that might object and seek to set aside either assignment. These issues plainly bear on Anton Agoshkov's standing, adequacy, and typicality as a class representative. It would therefore be critical that Defendants have a full opportunity to explore these and similar issues prior to filing their opposition to class certification.

Whether, for example, Anton Agoshkov paid any money in exchange for the assignment of claims to him goes to whether he has any real "skin in the game" that would

13

make him typical and adequate.  *See Barrett v. Thorofare Markets, Inc.*, 77 F.R.D. 22, 26 (W.D. Pa. 1977) ("[T]he named representatives must also be personally affected and harmed by the defendant in the same manner as the requested class."); *see also Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 600 (N.D. Ill. 2009) (finding proposed class representative atypical where he was subject to the unique defense that he did not suffer harm).  And, if he paid no or less-than-fair-market consideration, then it raises the prospect that a creditor of Oleksandr Agoshkov or Natissisa could seek to set aside the assignment as a fraudulent conveyance, compromising his ability to prosecute and settle the claims in this action.  *See* Cyprus Companies Law § 301(1) (providing for the avoidance of fraudulent preferences); *cf.* 11 U.S.C. § 548 (allowing the avoidance of certain transfers made for "less than a reasonably equivalent value in exchange").  This inquiry would necessarily entail discovery regarding Plaintiff's financial condition at the time of the purported assignment, as well as the financial condition of Oleksandr Agoshkov at the time of the re-assignment.[2]  Although Plaintiff claims not to have any creditors, Plaintiff's financial statements produced to Defendants appear to show liabilities in excess of assets for both 2017 and 2018.  Gimbel Decl. Ex. 17.  Moreover, Plaintiff's dissolution proceedings are ongoing (Agoshkov Decl. ¶ 5), raising the prospect that creditors will come forward before the dissolution is complete or within the two-year window thereafter during which a dissolution may be set aside under Cyprus law.  *See* Cyprus Companies Law § 326(1).

Furthermore, the unorthodox corporate structure that appears to have been created to conceal Oleksandr Agoshkov's investments behind the veils of a Cyprus corporation, ▮ ███████████████████ raises concerns about whether tax authorities might themselves assert claims and seek to set aside the assignments and re-assignments that took place here.  Cyprus law gives the Courts broad powers to remedy

---

[2] *See* Elias Neocleous, *Restructuring and Insolvency in Cyprus: Overview*, Practical Law Country Q&A ("In determining whether there was a fraudulent preference [under Cyprus law], the court looks at the dominant or real intention and not at the result."); *cf.* § 548(a)(1)((A)).

fraudulent transfers and other situations in which a corporation is used for "any fraudulent purpose."   Cyprus Companies Law §§ 265, 301–306, 326(1); *id.* § 311(1) (holding personally liable any person who knowingly carried on business "for any fraudulent purpose").   The law of other jurisdictions is much the same.   *See, e.g.,* Unif. Fraudulent Transfer Act §§ 4–5 (providing for the avoidance of fraudulent transfers where, among other things, the transfer was made "with actual intent to hinder, delay, or defraud any creditor of the debtor" or "without receiving reasonably equivalent value in exchange for the transfer or the obligation").

Defendants' concerns regarding these issues are heightened because of Plaintiff's lack of transparency concerning the assignments.   As noted earlier, Plaintiff has known about the initial assignment of its claims against Illumina and the Individual Defendants since December of 2017, and the subsequent re-assignment of those claims since March of 2018.   Plaintiff nevertheless failed to produce either assignment until September of 2018, despite representing in August that it had searched for and produced all documents in its possession relating to Illumina. *See id.* ¶ 10.   Moreover, since its belated production of the two purported assignments, Plaintiff has responded to Defendants' requests for additional information with stonewalling.

In particular, on September 11, Defendants sent Plaintiff a letter asking a series of questions about the assignments and related matters and enclosing a fourth set of document requests.   *Id.* Exs. 15, 18.   By letter dated September 17, Plaintiff stated that it would not respond at all to inquiries concerning why Oleksandr Agoshkov held investments through Plaintiff, a Cyprus corporation; why Oleksandr Agoshvok's ownership of Plaintiff was ████████████████████████████████████████████; whether this elaborate corporate structure was established to avoid creditors or tax authorities who might challenge the validity of an assignment; or what Oleksandr Agoshkov's financial condition was as of the attempted assignment.   Plaintiff also refused to respond promptly to Defendants' remaining questions, telling Defendants to instead ask them at a deposition and reserving the right to object if and when the deposition took place. *See id.* ¶ 16, Ex. 16.   Similarly, on September

15

25, Plaintiff served its responses and objections to Defendants' Fourth RFPs. *Id.* Ex. 18. In its responses, Plaintiff categorically refused to provide any documents in response to Request No. 40, which concerned Oleksandr Agoshkov's financial condition at the time of his purported re-assignment of Plaintiff's claims to Anton Agoshkov.   Moreover, Plaintiff's production in response to Defendants' Fourth RFPs — which consisted of a meagre 9 pages — did not include even a single document related to the purported assignments.

Plaintiff's attitude appears to be that the Defendants should ask no questions and seek no discovery concerning the assignment and re-assignment of claims in this litigation, even though they were disclosed belatedly and occurred against a backdrop of offshore corporations, nominee shareholders, dissolution proceedings in Cyprus, and other highly irregular facts.  But, in an adversary system, litigants are not required to blindly accept an adversary's unsubstantiated assurances that there is "nothing to see here."  Discovery rules are designed to promote timely disclosure of all relevant facts.  There is no doubt that introducing a new class representative at this late stage would be prejudicial by creating the need for substantial additional discovery and analysis of a whole host of factual and legal issues.

In short, although Plaintiff's failure to demonstrate diligence alone forecloses the relief it seeks, the obvious prejudice to Defendants of adding a new proposed class representative at the eleventh hour provides "additional reasons to deny" Plaintiff's motion. *Johnson*, 975 F.2d at 609.

CONCLUSION

For the foregoing reasons, Plaintiff's Motion to File Second Amended Complaint should be denied.

Respectfully submitted,

Dated: October 1, 2018                    COVINGTON & BURLING LLP

By:    */s/Mark P. Gimbel*
          Mark P. Gimbel

Mark P. Gimbel (admitted pro hac vice)
C. William Phillips (pro hac vice pending)
Russell M. Squire (admitted pro hac vice)
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Tel: (212) 841-1000

Mark Y. Chen (Bar No. 310450)
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067
Tel: (424) 332-4800

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the following document has been served on October 1, 2018 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4:

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT

Any other counsel of record will be served by electronic mail, facsimile, and/or overnight delivery.

I declare under penalty of perjury under the laws of United States that the foregoing is true and correct and that this certificate of service was executed on October 1, 2018 at New York, New York.

*/s/ Mark P. Gimbel*
Mark P. Gimbel