UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ILLUMINA, INC. SECURITIES LITIGATION | Case No.: 3:16-cv-3044-L-MSB<br><br>**ORDER CONDITIONALLY GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br>**[Doc. 95]** |

Pending before the Court is a motion for preliminary approval of class action settlement and directing dissemination of notice filed by Lead Plaintiff Natissisa Enterprises Ltd. ("Natissisa") and Plaintiffs Anton Agoshkov, Braden Van Der Wall, and Steven Romanoff (hereinafter referred together as "Plaintiffs"). Doc. 95. This motion is unopposed. Notwithstanding, after reviewing the proposed settlement, the Court hereby conditionally **GRANTS** the instant motion.

## Background

This is a securities class action brought on behalf of all persons who purchased or otherwise acquired Illumina, Inc. ("Illumina") common stock during the period between July 26, 2016 and October 10, 2016. Plaintiffs' Amended Complaint claimed that Illumina and Defendants Francis A. deSouza and Marc A. Stapley (together, "individual

defendants") (all together "Defendants") violated federal securities laws by providing investors misleading material information concerning Illumina's revenue and sales for the third quarter of the 2016 fiscal year. *See* Doc. 28. Specifically, it is alleged Defendants failed to disclose that Illumina lacked adequate internal controls over financial reporting; and, on October 10, 2016, Illumina revealed, in a press release, that its third quarter revenue ($607 million) was significantly lower than Defendants' previous forecast of $625 million to $630 million. *Id.* After the press release, Illumina's stock price fell from $184.85 per share on October 10, 2016 to $138.99 per share on October 11, 2016. *Id.*

On December 16, 2016, plaintiffs Yi Fan Chen and Frontline Global Trading Pte. filed a class action complaint in this Court against Defendants, alleging violations of the Security Exchange Act of 1943 ("SEA"). *See* Doc. 1. On January 10, 2017, plaintiff James McLeod filed a second, substantially similar class action complaint against Defendants in this Court for the same violations. *See McLeod v. Illumina Inc., et al.*, No. 3:17-cv-0053. Subsequently, the district court consolidated both class actions and appointed Natissisa as lead plaintiff and Levi & Korsinsky, LLP, as lead counsel pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4. *See* Doc. 19. On May 30, 2017, Natissisa filed the Amended Complaint alleging Defendants committed fraud under Section 10(b) of the SEA and SEC Rule 10b-5 as: (1) Illumina failed to truthfully disclose that the demand for one of its premier products was decreasing, (2) Illumina's earning projections were misleading, and (3) control liability had attached. *See* Doc. 28.

Defendant moved to dismiss the Amended Complaint, and the Court granted in part and denied in part the motion on certain allegations. *See* Docs. 32, 39. The parties began discovery after the Honorable Karen S. Crawford, United States Magistrate Judge, held a case management conference and issued a scheduled order. Docs. 54, 55. On September 12, 2018, Natissisa moved to amend the Amended Complaint to include Anton Agoshkov as an additional named plaintiff. *See* Doc. 62. On September 14, 2018, Natissisa and Anton Agoshkov moved for class certification. *See* Doc. 63. On October 4, 2018, plaintiffs, Braden Van Der Wall and Steven Romanoff filed a Complaint against the

Defendants. *See Van Der Wall et ano. v. Illumina, Inc., et al.*, No. 3:18-cv-2307. Upon joint motion of the parties, the Court granted a stay in the *Van Der Wall* action pending the resolution of the class certification motion. *Id.* at Doc. 26.

On December 14, 2018, the parties filed a joint request to extend scheduling order deadlines in order to provide the parties more time to complete discovery and participate in private mediation. Doc. 83. The Court granted the joint motion on December 18, 2018. Doc. 84. On January 8, 2019, the Court denied Natissisa's motion to amend without prejudice. Doc. 85. Around January 30, 2019, the parties scheduled a mediation for April 18, 2019. Doc. 95-1 at 11. The parties participated in mediation on April 18, 2019 and tentatively agreed to a settlement after a full day of negotiations. *Id.* at 11-12. On April 25, 2019, the Court granted the parties' joint motion to stay resolution of the class certification motion due to the settlement. Doc. 93. On May 29, 2019, the Court granted the joint motion to hold the Court's ruling on class certification in abeyance in order to (1) allow the parties to finalize necessary settlement paperwork and (2) Plaintiff to file a motion for preliminary approval of the settlement. *See* Doc. 94. On June 11, 2019, filed the instant motion.

## Settlement Proposal

### a. Class Definition

The parties define the Settlement Class as "[A]ll persons or entities who purchased or otherwise acquired a legal or beneficial ownership interest in Illumina's common stock between July 26, 2016 through October 10, 2016, inclusive." Doc. 95-1 at 12. The parties exclude the following from the Settlement Class:

> "(i) [A]ny putative Settlement Class Members who exclude themselves by filing a timely and valid request for exclusion in accordance with the requirements set forth in the Notice; (ii) Defendants and their family members; (iii) any entity in which Defendants have or had controlling interest; and (iv) the legal representatives, agents, executors, successors, or assigns of any of the foregoing excluded persons or entities, in their capacities as such." *Ibid.*

3

**b. Settlement Amount**

The parties' Stipulation and Agreement of Settlement (the "Agreement") requires Illumina to cause "Defendants' insurers to pay the Settlement Amount [$13,850,000.00] into the Escrow Account[.]" Doc. 95-2 at 14, 18. The Settlement Amount includes

> "[A]ll Lead Counsel's attorneys' fees and Litigation Expenses that may be awarded by the Court, and all Notice and Administration Costs and Taxes, and is the total, full and final amount of all payments to be paid by, or on behalf of, Defendants . . . for the benefit of the Settlement Class in this Consolidated Action[.]" *Id.* at 18-19.

Lead Counsel intends to apply for an attorneys' fees award in an amount not to exceed twenty-five (25%) of the total Settlement Fund amount (approximately $3,462,500), incentive awards payable to Plaintiffs, and for reimbursement of reasonable litigation expenses incurred during this case (not to exceed $180,000). Doc. 95-1 at 14.

The Agreement defines "Settlement Fund" as "the Settlement Amount plus any and all income and gains earned thereon less any losses incurred thereon, after it is deposited into the Escrow Account." Doc. 95-1 at 14. Notably, the Agreement absolves Defendants and the Released Parties[1] of any responsibility for the Settlement Fund, including any loss of the principal, upon deposit of the Settlement Amount. *Id.* at 19.

**c. Release**

The parties stipulated that the Agreement would (1) fully and finally dispose of the Consolidated Action; (2) fully and finally release any and all Released Claims as against all Released Parties; and (3) release all of the Settled Defendants' Claims against the Plaintiff Released Parties. Doc. 95-2 at 19. Once Final Judgment is entered, Plaintiffs and

---

[1] Under the Agreement, "Released Parties" are the Defendants and "each of their respective current and former officers, directors, employees, agents, servants, representatives, parents, subsidiaries, affiliates, trusts, controlled persons and entities, controlling persons and entities, successors, predecessors, assigns, assignees, attorneys, accountants, advisors, insurers, family members and partners; and each of their respective heirs, executors, administrators, legal representatives, successors and assigns." Doc. 95-2 at 13.

the Settlement Class members will be deemed to have released all Released claims against the Released Parties and forever enjoined from commencing any of the Released Claims against any of the Released Parties, whether in the United States or elsewhere. *Ibid.* "[T]he parties acknowledge and agree that the releases granted herein are intended to release all claims that have been or could have been asserted by Natissisa in the Consolidated Action[.]" *Id.* at 20.

### d. Cy Pres Doctrine

The Agreement makes clear that "no portion of the Settlement Fund will be returned to Illumina" even after all conditions of the Settlement are satisfied and the Effective Date has occurred. Doc. 95-2 at 24. The Agreement calls for any portion of the Net Settlement Fund remaining following distribution, granted the amount limits the effectiveness of a redistribution to the Settlement Class, to be donated to "a nonsectarian charitable organization(s) certified as tax-exempt under United States Internal Revenue Code Section 501(c)(3)[.]" *Ibid.*

### e. Notice

Within ten (10) days of the filing of this order, Illumina must provide the Claims Administrator, JND Legal Administration, lists of record holders of Illumina common stock during the Class Period. Doc. 95-2 at 29. Illumina's provision of these lists comes at no cost to the Settlement Fund, Lead Counsel or the Claims Administrator. *Ibid.* However, Illumina limits its duty as it only must provide the lists "to the extent such lists are maintained by its stock transfer agent and reasonably available to Illumina upon request." *Id.* at 29-30.

Once the lists are provided, the Claims Administrator will mail notice [doc. 95-2 at Exh. A-2] to the Settlement Class members if their records have been maintained by or on behalf of Illumina. Doc. 95-2 at 30. The Claims Administrator will also publish Summary Notice [doc. 95-2 at Exh. A-3]. *Ibid.* A copy of the Agreement can be obtained at www.IlluminaSecuritiesSettlement.com.

Defendants must serve notice of the Settlement as required under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b), within the time period statutorily set forth and certify that CAFA Notice has been served with Lead Counsel within three (3) business days after service. Doc. 95-2 at 21.

**f. Plan of Allocation**

A Recognized Loss will be assigned to each Settlement Class member that submits a valid claim (an "Authorized Claimant"). *See* Doc. 95-2 at 70. An Authorized Claimant's Recognized Loss will depend upon the number of Illumina shares purchased or acquired during the Class Period *and* held at the close of trading on October 10, 2016. *Ibid.* The Plan of Allocation as set forth in the long-form Notice of Proposed Settlement reads as follows:

For each share of Common Stock purchased, an Authorized Claimant's Recognized Loss is equal to:

• If the share was purchased during the Class Period and held through January 9, 2017, then the Recognized Loss is equal to the price paid for the share minus $134.01 (which is the mean trading price of Illumina's Common Stock during the 90-day period following the Class Period);

• If the share was purchased during the Class Period and sold between October 11, 2016 and January 9, 2017, then the Recognized Loss is equal to the price paid for the share minus the greater of (i) $134.01 or (ii) the price at which you sold the share.

• If the share was purchased during the Class Period and sold on or before October 10, 2016, then the Recognized Loss is $0. This is because the share was not harmed in accordance with Plaintiffs' theory of liability and, therefore, there are no recoverable damages. *See* Doc. 95-2 at 70.

This will not be the amount of your payment. *See* Doc. 95-2 at 71. After the deadline for all Authorized Claimants to send in their Proof of Claim forms, the payment you get will be a proportion of the Net Settlement Fund equal to your Recognized Loss divided by the total of each Authorized Claimant's Recognized Losses. *Ibid.* Your payment will be made in cash. *Ibid.*

/ / /

/ / /

The Plan of Allocation also includes the following provisions:

1) An Authorized Claimant will have a Recognized Loss only in connection with damaged shares. Thus, any transaction that resulted in a profit or gain will not be included in an Authorized Claimant's overall Recognized Loss;

2) There shall be no Recognized Loss attributed to any Illumina securities other than Common Stock or to any shares of Common Stock purchased on a foreign exchange;

3) The date of a purchase or sale is the "trade" date and not the "settlement" date;

4) The last-in, first-out basis ("LIFO") will be applied to both purchases and sales;

5) Exercise of option contracts or the conversion of preferred stock into Common Stock will be considered to be purchases or sales of Common Stock as of the date of the exercise or conversion. Your purchase or sale price will be the closing price for the stock on that day, unless otherwise stated herein;

6) No cash payment will be made on a claim where the potential distribution amount is less than $10. Please be advised that if you did not incur a Recognized Loss as defined in the Plan of Allocation, you will not receive a cash distribution from the Net Settlement Fund, but you will be bound by all determinations and judgments of the Court in connection with the Settlement, including being barred from asserting any of the Released Claims against the Released Parties;

7) No person shall have any claim against Lead Counsel or the Claims Administrator based on the distribution made substantially in accordance with the Stipulation and this Plan of Allocation, or further orders of the Court. In addition, Defendants and Defendants' Counsel have no responsibility for the Plan of Allocation, the administration of the settlement, or the distribution to Settlement Class Members, and no person shall have any claim against Defendants or Defendants' Counsel based on the Plan of Allocation, the administration of the settlement, or the distribution to the Settlement Class Members; and

8) Settlement Class Members who do not submit valid Proof of Claim forms will not share in the settlement proceeds. Settlement Class Members who do not either submit a request for exclusion or submit a valid Proof of Claim form will nevertheless be bound by

the Settlement and the Order and Final Judgment of the Court dismissing this Consolidated Action. *See* Doc. 95-2 at 71-72.

### g. Claims Process

A Settlement Class member must complete and sign the Proof of Claim and Release Form to recover from the Settlement Fund. Doc. 95-2 at 82. The Proof of Claim and Release Form contains two parts: Part I deals with identification of each purchaser of record and Part II calls for potential Authorized Claimants to supply all required details of their transaction(s) in Illumina Common Stock. Doc. 95-2 at 83-84. As provided in the Proof of Claim form, Settlement Class members must proceed as follows to recover:

- On the schedules, provide all of the requested information with respect to *all* of your purchases or acquisitions and *all* of your sales of Illumina, Inc. Common Stock which took place at any time from July 26, 2016 through October 10, 2016, inclusive, whether such transactions resulted in a profit or a loss. You must also provide all of the requested information with respect to all of the shares of Illumina, Inc. Common Stock you held at the close of trading on October 10, 2016. Failure to report all such transactions may result in the rejection of your Claim.
- List each transaction in the Class Period separately and in chronological order by trade date, beginning with the earliest. You must accurately provide the month, day, and year of each transaction you list.
- Broker confirmations or other documentation of your transactions in Illumina, Inc. Common Stock should be attached to your Proof of Claim and Release Form. Failure to provide this documentation could delay verification of your Claim or result in rejection of your Claim. *Id.*

To be excluded, a Settlement Class member must send a letter, by mail, to Lead Counsel's office stating the member's desire to be excluded from *In re Illumina Inc. Securities Litigation,* No. 3:16-cv-3044-L-MSB. Doc. 95-2 at 75. In the letter, a Settlement Class member must provide their name, address, telephone number, signature, the number of Illumina shares they purchased or otherwise acquired during the Class Period, and the dates of such purchases or acquisitions. *Ibid.*

/ / /

/ / /

/ / /

## Discussion

**A. Settlement Terms**

A class action settlement must be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). When, as here, parties reach an agreement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The court's responsibility at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." *See* Manual for Complex Litigation, Fourth § 21.632 (FJC 2004). If "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval[,]" then preliminary approval the settlements should be granted. *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (FJC 1985)).

### 1. Product of Non-collusive Negotiations

"Settlements reached with the help of a mediator are likely non-collusive." *Barbosa v. MediCredit, Inc.*, at *6 (C.D. Cal. May 1, 2015) (citing *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.")). The Parties here engaged in formal mediation before an experienced mediator for a full day, after completing discovery. Following a full day of negotiation, the parties tentatively agreed to a settlement with the mediator's assistance. As such, the Court finds that this settlement was the product of arm's-length negotiation. Accordingly, the Court finds this factor weighs in favor of approval.

/ / /

/ / /

## 2. Obvious Deficiencies

A *cy pres* award must qualify as "the next best distribution" to giving the funds directly to class members. *See Dennis v. Kellogg Co.* 697 F.3d 858, 865 (9th Cir. 2012). For that reason, "[n]ot just any worthy recipient can qualify as an appropriate *cy pres* beneficiary. *Id.* The Ninth Circuit "require[s] that there be a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Id.* (citations omitted). A *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and the interests of the silent class members, and must not benefit a group too remote from the plaintiff class[.]" *Id.* (internal quotation marks omitted) (citing *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011) and *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990)).

Here, the Agreement calls for any portion of the Net Settlement Fund remaining following distribution, granted the amount limits the effectiveness of a redistribution to the Settlement Class, to be donated to "a nonsectarian charitable organization(s) certified as tax-exempt under United States Internal Revenue Code Section 501(c)(3)[.]" Doc. 95-2 at 24. While the Agreement makes clear that "no portion of the Settlement Fund will be returned to Illumina" even after all conditions of the Agreement are satisfied and the Effective Date has occurred, the Court still finds the potential *cy pres* distribution lacking in light of the *Six Mexican Workers* standards. The distribution wholly fails to address the objectives of the federal securities law statutes underpinning this Consolidated Action. The distribution bears no relation to the Plaintiff Class. In consideration of the geographic scope of the class, the proposed *cy pres* award must at least conceivably benefit a national recipient that has an apparent relation to the objectives of the underlying statutes. If a suitable *cy pres* beneficiary cannot be located, the Court could consider escheating the remaining funds to the United States Treasury. *Nachshin*, 663 F.3d at 1041 (see citing *Six Mexican Workers*, 904 F.2d at 1309)). As currently drafted, the Court finds the Agreement's *cy pres* award recipient is deficient.

"[T]he district court has a fiduciary duty to look after the interests of [] absent class members." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (citation omitted).  Here, the Agreement pardons Defendants and the Released Parties of any responsibility for the Settlement Fund, including any loss of the principal, upon deposit of the Settlement Amount.  *Id.* at 19.  "Up to $200,000 of the Settlement Fund may be held in an interest-bearing bank account insured by the FDIC."  *Id.* at 22.  The Agreement calls for an Escrow Agent to invest the remaining portion of the Settlement Fund in either (1) United States Agency or Treasury Securities having maturities of 180 days or less, money market mutual funds comprised of investments secured by the full faith and credit of the United States government; or (2) an interest-bearing account insured by the FDIC.  *Ibid.*  The Released Parties will not benefit from or be liable for any investment decisions made by the Escrow Agent. *Ibid.*  The Settlement Fund and any party with an interest in the Settlement Fund, including the Settlement Class, bears all risk of loss related to the investment of the Settlement Amount.  *Ibid.*  The Court finds that risking the principal balance of the Settlement Fund by investing the absent class members' funds, even in conservative financial vehicles, is not reasonable in light of the claims in the underlying Consolidated Action.  Accordingly, the principal balance of the Settlement Fund shall be guaranteed against loss of the principal amount by the Escrow Agent if it chooses to invest the Settlement Fund balance into securities.  Notwithstanding, this Court has jurisdiction over the subject matter of this litigation and all of its parties, including Class Members.

### 3. No Preferential Treatment

"Although [the Ninth Circuit] ha[s] approved incentive awards for class representatives in some cases, [it has instructed] district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Solutions Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (reversing the district court's class action settlement approval).  In *Radcliffe*, the court questioned, but did not determine whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 are a fair settlement value when they would receive

$5,000 incentive awards. *Id.* at 1165. The Ninth Circuit in *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. 2015) revealed that it examines the following factors when evaluating incentive awards: "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Id.* at 947 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)).

Here, the class representative service awards amounts will be scrutinized upon motion for final approval. Lead Counsel will request the Court award Plaintiffs incentive awards as follows: $25,000 for Natissisa and/or Anton Agoshkov; $1,000 for Braden Van Der Wall; and $1,000 for Steven Romanoff. Doc. 95-2 at 77. "Plaintiffs estimate the average cash recovery [to absent class members] per share of Illumina Common Stock will be approximately $1.67 (assuming claims representing all damaged shares are filed)[.]" The justification given for these rewards amounts is for Plaintiffs' active participation in the Consolidated Action. *Id.* Using the *Staton* factors, each named plaintiff is receiving an incentive award under the Agreement of which, the maximum amount of incentive awards, collectively, would equate to less than one percent of the total settlement amount. Each payment is capped at a modest amount, and these awards merely compensate the class representatives for the risk they assumed and the successful assistance they provided in this case. For example, the Natissisa participated in discovery, was deposed, served a number of non-party subpoenas, and filed a motion to compel. Doc. 95-1 at 11-12. However, Lead Counsel should make a showing why the class representatives, specifically Natissisa, are still able to adequately represent the absent class members. The Court finds the class representatives may adequately represent the class in light of their levels of participation in a complicated case in which the absent class members will receive monetary relief without any effort. Accordingly, this factor does not weigh against approval.

### 4. Attorneys' Fee Award and Timing of Payment

In order to determine the fairness and adequacy of a settlement, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement

agreement." *Staton*, 327 F.3d at 963. "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted).

In a common fund case, district courts may use either the percentage-of-the-fund method or the lodestar method to calculate an appropriate attorneys' fee award. *Viciano v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994). "The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value[.]" *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010). When applying the percentage-of-the-fund method, an attorneys' fee award of "twenty-five percent is the 'benchmark' that district courts should award." *In re Pac. Enters. Sec. litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). Court "may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate." *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379 (citing *Six (6) Mexican Workers*, 904 F.2d at 1311). The following factors have been used as grounds to adjust the percentage upward or downward: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee; (5) the burdens carried by the class counsel; and (6) the awards in similar cases. *Monterrubio v. Best Buy Stores, LP*, 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citation omitted); *Craft v. San Bernardino*, 624 F.Supp.2d 1113, 1116-17 (C.D. Cal. 2008). Any class member must be allowed an opportunity to object to the fee motion itself, aside from any objection the class member may have to the preliminary notice that such a motion will be filed. *See In re Mercury Interactive Corp. Sec. Litig.* 618 F.3d 988, 993-95 (9th Cir. 2010).

Under the Agreement, the Parties have agreed that Class Counsel can apply for an award from the Settlement not to exceed 25% ($3,462,500) of the Settlement Value. Doc. 95-2 at 76. Class Counsel is also entitled to "apply for reimbursement of their out-of-pocket litigation expenses up to $180,000, that were advanced in connection with the Consolidated Action." *Ibid.* Lead Counsel contends that the fees "are within the range of fees awarded to class counsel under similar circumstances in other cases of this type." *Ibid.* However, no cases or citation were provided at this time for support. The Court will scrutinize Class Counsel's request for an award of Class Counsel's attorneys' fees, costs, and expenses more closely upon filing of the application for reasonable attorneys' fees and incentive awards. At this point, the Court finds the Class Counsel's award provision reasonable because of its language that Class Counsel may *apply* for an award *up to* 25% of the Settlement Fund.

To date, Lead Counsel has not been paid for their services in this litigation on behalf of Plaintiffs and the Settlement Class nor for their substantial out-of-pocket expenses." *Id.* at 76. The Agreement demands that Lead Counsel be paid any amounts awarded in the Court's later attorneys' fees order from the Escrow Account within three (3) days of that order's filing, notwithstanding any appeal or collateral attack. Doc. 95-2 at 28. The Agreement also obligates Lead Counsel to refund any "attorneys' fess and Litigation Expenses that have been paid, plus interest thereon at the same rate as would have been earned had those sums remained in the Escrow Account[,]" to the extent the attorneys' fess order is later reversed or modified. The Court finds this timing is reasonable as it compensates Lead Counsel for its unpaid efforts as soon as practicable without forfeiting protection of the Settlement Fund's principal held in the Escrow Account. Therefore, this factor weighs in favor of approval.

### 5. Effectiveness of Distribution of Class Relief

The Court considers "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(C)(ii). While left to the Court's discretion, "[a]pproval of a plan of allocation of settlement proceeds in a class action . . . is governed

by the same standards of review applicable to approval of the settlement as a whole; the plan must be fair, reasonable and adequate." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, *12 (N.D. Cal. Dec. 18, 2018) (quoting *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1-2 (N.D. Cal. June 16, 1994) (see *Class Pls. v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992))).

The Plan of Allocation outlined above correlates each Settlement Class members' recovery to the timing of any sales or purchases of Illumina common stock to calculate each Settlement Class member's Recognized Loss. *See* Doc. 95-2 at 71. Each Settlement Class member will then receive a cash payment in proportion of the Net Settlement Fund equal to their Recognized Loss divided by the total of each Settlement Class member's Recognized Loss. *Ibid.* The Court finds that "[i]t is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1045 (N.D. Cal. 2008). The Court also finds that the Settlement treats absent class members equitably relative to each other. Therefore, this factor weighs in favor of approval.

### 6. Cost, Risks, and Delay of Trial and Appeal

"[S]ettlement avoids the risks of extreme results on either end, *i.e.*, complete or no recovery. Thus, it is plainly reasonable for the parties at this stage to agree that the actual recovery realized, and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, 2013 WL 6055326, at *3 (Nov. 14, 2013).

The Court concludes that the strength of Plaintiffs' case, risk, expense, complexity, and risk of maintaining class status throughout trial factors weighs in favor of approving settlement. Plaintiffs recognize that settlement prevails over the substantial risks of continued litigation. Doc. 95-1 at 17-18. Whether the alleged misrepresentation in this case was "forward-looking" and thus protected under the safe harbor provision of the Exchange is a critical risk to Plaintiffs' case. Defendants would likely challenge this issue by introducing evidence that could prove dispositive at summary judgment. Another issue

that Defendants would challenge in continued litigation is Plaintiffs' ability to prove damages. Either issue would be appealed by the non-prevailing party; therefore, considerable expenditure and delay of any recovery by Settlement Class members, assuming Plaintiffs actually succeed, would arise in further litigation. Moreover, continued litigation could prove to be difficult, expensive, time consuming, and possibly fruitless as a motion for class certification was contested and pending prior to settlement. Thus, this factor tilts in favor of approval.

### 7. Rule 23(e)(3) Agreements

In a Supplemental Agreement, separate from the parties' stipulation, the parties gave Illumina the right to terminate the Settlement if the "Opt-Out Threshold" is exceeded. Docs. 95-1 at 20-21, 95-2 at 11. The Court finds the content and confidentiality of the Supplemental Agreement adequate and reasonable under the circumstances. *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, *7 (N.D. Cal. 2018); *see also Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 329 (C.D. Cal. 2016) (compiling cases). Therefore, the Rule 23(e)(3) agreement does not weigh against approval.

## B. Conditional Class Certification

When evaluating a class action settlement, courts must pay "undiluted, even heightened attention" to the class certification requirements. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### 1. Numerosity

If "the class is so large that joinder of all members is impracticable[,]" the numerosity requirement is satisfied. Fed. R. Civ. P. 23(a)(1). Here, the numerosity requirement is satisfied as it is asserted here that, while the exact number of class members is unknown, the number of Settlement Class members exceeds any number practicable for joinder. Doc. 95-1 at 24. Illumina had over 90 million common stock shares outstanding during the Class Period. *Id.* For that reason, the Court presumes thousands of potential Class Members owned that amount of outstanding common stock. *See In re Applied Micro Circuits Corp. Sec. Litig.*, 2003 WL 25419526, *8 (S.D. Cal. July 15, 2003).

### 2. Commonality

"The crux of . . . commonality [is] the rule requiring a plaintiff to show that 'there are questions of law or fact common to the class.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). The common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Plaintiffs point out the following questions of law and fact common to the class:

(1) Whether the federal securities laws were violated by Defendants' acts as alleged in the Amended Complaint;

(2) Whether the misstatements and omissions alleged herein were made with scienter;

(3) Whether Defendants' statements to the investing public during the Class Period misrepresented material facts about Illumina's ability to correctly forecast declining instrument sales;

(4) Whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

(5) Whether the prices of Illumina common stock during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

(6) To what extent the Settlement Class members have sustained damages, and the proper measure of damages. Doc. 95-1 at 25.

The Court finds that determination of the truth or falsity of the abovementioned questions would necessarily determine the validity of the claims of each class member. Accordingly, the commonality requirement is satisfied.

### 3. Typicality

Typicality requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). The Ninth Circuit has found the typicality requirement satisfied when the named plaintiffs do not set forth different claims or subject a defendant to setting forth unique defenses from those brought

by any other class member. *See e.g., Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995). Plaintiffs contend the typicality requirement is satisfied because Defendants' alleged course of conduct uniformly affected all Settlement Class member. Doc. 95-1 at 25. Also, Plaintiffs' claims are typical of other Settlement Class members who were allegedly injured when Illumina's inability to forecast declining sales of its instruments came to light. *Id.* at 26. The Court agrees. As such, the typicality requirement is satisfied.

### 4. Adequacy

Adequacy evaluates whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A named plaintiff adequately represents a class if the plaintiff "does not have conflicts of interest with the proposed class" and is "represented by qualified and competent counsel." *See Wal-Mart Stores, Inc.*, 564 U.S. at 350 n.5. Here, the Court agrees with Plaintiffs' contentions that they have been committed to prosecuting this case and have reached a resolution in the best interests of the Settlement Class. Doc. 95-1 at 26. The Court also finds that class counsel is competent. Accordingly, the adequacy requirement is satisfied.

Therefore, Plaintiffs satisfied each Rule 23(a) class certification prerequisite.

### 5. Type of Class Action

Plaintiffs contend that certification is appropriate here because questions of law or fact common to members of the Settlement Class predominate over any questions affecting only individual members, and the superior method of fairly and efficiently adjudicating the action is through class action. Doc. 95-1 at 26-27 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 607 (1997)).

Predominance weighs "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). "Rule 23(b)(3) requires a showing that questions common to the class predominate." *Amgen, Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013). The predominance requirement is satisfied as questions of fact and law

18

common to the Settlement Class, such as whether Defendants' disseminated releases and statements during the Class period misrepresented material facts, outweigh any individual issues that may arise. Additionally, class action is the superior method for fair and efficient adjudication here because any manageability problems that may have existed are eliminated by the Settlement. *See* Doc. 95-1 at 27.

For the forgoing reasons, the Court conditionally certifies the Settlement Class under Rule 23(b)(3).

**C. Notice**

"Adequate Notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citation and quotation omitted).

The Court finds the proposed notice program here is satisfactory. The parties will primarily provide notice via U.S. mail, but the Stipulation also calls for the claims administrator to publish a summary notice on its website and in a national business newswire. Doc. 95-1 at 28. After reviewing the Notice of Proposed Settlement, the Court finds that sufficient exists "to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village*, 361 F.3d at 575. However, the Court orders the following change be made to the Notice of Proposed Settlement: (1) strike the sentence "Judge M. James Lorenz is in charge of this class action[]" [doc. 95-2 at 69 line 1]; *See* Doc. 95-2 at 9. (2) remove the phrase, "shall be deemed to be in the custody of the Court" from paragraph p "Escrow Account" of the Agreement [doc. 95-2 at 9]; and (3) modify "The Court asked . . ." to "The Court appointed . . ." under the "Do I have a lawyer?" paragraph in the mail notice [doc. 95-2 at 76 ¶16]. Notwithstanding, this factor weighs in favor of approval.

/ / /

**Conclusion**

For the reasons stated above, the Court hereby orders as follows:

1. The Court finds the settlement is preliminarily fair, reasonable, and adequate to the proposed class;

2. The following settlement class is preliminarily certified for settlement purposes under Rule 23(a) and Rule 23(b)(3):

   "[A]ll persons or entities who purchased or otherwise acquired a legal or beneficial ownership interest in Illumina's common stock between July 26, 2016 through October 10, 2016, inclusive. [Except for] any putative Settlement Class Members who exclude themselves by filing a timely and valid request for exclusion in accordance with the requirements set forth in the Notice; (ii) Defendants and their family members; (iii) any entity in which Defendants have or had controlling interest; and (iv) the legal representatives, agents, executors, successors, or assigns of any of the foregoing excluded persons or entities, in their capacities as such." *Ibid.*

3. Plaintiff Anton Asgoshkov, as assignee of the claims of Lead Plaintiff Natissisa, Braden Van Der Wall, and Steven Romanoff are approved as Class Representatives;

4. Signature Bank as the Escrow Agent to manage the Settlement Fund for the benefit of the Class;

5. JND Legal Administration to provide all notices to potential Settlement Class members and to administer Claims as Claims Administrator;

6. Levi & Korinsky, LLP are approved as Lead Counsel;

7. The Settling Parties must identify an appropriate *cy pres* award recipient prior to the commencement of the Notice Program. The *cy pres* award recipient must be approved by the Court before Notice begins;

8. Defendants must serve 28 U.S.C. § 1715(b) notice upon the appropriate state official of each state in which a class member resides and the appropriate federal official within ten (10) days of this order's filing; and

9. The Notice Program is as set forth in the Settlement Agreement and modified by this order is approved, the form and content of such notices should be modified accordingly to align with this order's instruction. The following schedule shall govern the filing deadlines for this settlement:

   a. Notice shall be completed no later than **February 14, 2020**;

   b. The Motion for Class Representative Service Awards and Fee and Expense Application shall be filed no later than **March 2, 2020**;

   c. The Parties' deadline to file a Motion for Final Approval of Class Action Settlement is **March 2, 2020**

   d. Absent Settlement Class Members shall opt out or object to any part of the Settlement, the Settlement as a whole, Class Counsel's requests for fees and expenses, and/or Class Counsel's Request for Service Awards for the Class Representatives, as instructed in the Settlement and Class Notices, no later than **March 23, 2020**;

   e. Responses to objections to the Motion for Class Representative Service Awards and Fee and Expense Application and the Motion for Final Approval of Class Action Settlement shall be filed no later than **April 6, 2020**; and

   f. The Court shall hold a Final Approval of Class Action Settlement hearing on **April 20, 2020** at **10:30 a.m.**

Dated: December 18, 2019

Hon. M. James Lorenz
United States District Judge