UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ILLUMINA, INC. SECURITIES LITIGATION | Case No.: 3:16-cv-3044-L-MSB<br><br>**ORDER (1) GRANTING FINAL APPROVAL OF CLASS SETTLEMENT [DOC NO. 105]; (2) GRANTING IN PART AND DENYING IN PART APPLICATION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS [DOC NO, 106]; (3) DISBURSEMENT OF FUNDS [DOC NO. 112]; AND (4) JUDGMENT [DOC NO. 111.]** |

Pending before the Court are Class Counsel's unopposed motions for final approval of class action settlement, Doc. 105; joint motion for judgment, Doc. No. 111; application for Class Counsel's attorney's fees, costs, and litigation expenses, as well as Class Representatives' awards, Doc. 106; along with a Motion for Approval of Fund Disbursement, Doc. No. 112, filed by Lead Plaintiff Natissisa Enterprises Ltd. ("Natissisa") and Plaintiffs Anton Agoshkov, Braden Van Der Wall, and Steven Romanoff (hereinafter referred together as "Plaintiffs").

The Court has considered the motions, and the file in this matter. For the reasons stated below, the motion for final approval of class action settlement is granted, the application for Class Counsel's attorneys' fees, costs, and litigation expenses, as well as Class Representatives awards is granted in part and denied in part, and the motion for approval of funds distribution is granted.

## I.  Procedural Background

This is a securities class action brought on behalf of all persons who purchased or otherwise acquired Illumina, Inc. ("Illumina") common stock during the period between July 26, 2016 and October 10, 2016. Plaintiffs' Amended Complaint claimed that Illumina and Defendants Francis A. deSouza and Marc A. Stapley (together, "individual defendants") (all together "Defendants") violated federal securities laws by providing investors misleading material information concerning Illumina's revenue and sales for the third quarter of the 2016 fiscal year. *See* Doc. 28. Specifically, it is alleged Defendants failed to disclose that Illumina lacked adequate internal controls over financial reporting; and, on October 10, 2016, Illumina revealed, in a press release, that its third quarter revenue ($607 million) was significantly lower than Defendants' previous forecast of $625 million to $630 million. *Id.* After the press release, Illumina's stock price fell from $184.85 per share on October 10, 2016 to $138.99 per share on October 11, 2016. *Id.*

On December 16, 2016, plaintiffs Yi Fan Chen and Frontline Global Trading Pte. filed a class action complaint in this Court against Defendants, alleging violations of the Security Exchange Act of 1943 ("SEA"). *See* Doc. 1. On January 10, 2017, plaintiff James McLeod filed a second, substantially similar class action complaint against Defendants in this Court for the same violations. *See McLeod v. Illumina Inc., et al.*, No. 3:17-cv-0053. Subsequently, the district court consolidated both class actions and appointed Natissisa as lead plaintiff and Levi & Korsinsky, LLP, as lead counsel pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4. *See* Doc. 19. On May 30, 2017, Natissisa filed the Amended Complaint alleging Defendants committed fraud under Section 10(b) of the SEA and SEC Rule 10b-5 as: (1) Illumina failed to truthfully disclose

that the demand for one of its premier products was decreasing, (2) Illumina's earning projections were misleading, and (3) control liability had attached. *See* Doc. 28.

Defendant moved to dismiss the Amended Complaint, and the Court granted in part and denied in part the motion on certain allegations. *See* Docs. 32, 39. The parties began discovery after the Honorable Karen S. Crawford, United States Magistrate Judge, held a case management conference and issued a scheduling order. Docs. 54, 55. On September 12, 2018, Natissisa moved to amend the Amended Complaint to include Anton Agoshkov as an additional named plaintiff. *See* Doc. 62. On September 14, 2018, Natissisa and Anton Agoshkov moved for class certification. *See* Doc. 63. On October 4, 2018, plaintiffs, Braden Van Der Wall and Steven Romanoff filed a Complaint against the Defendants. *See Van Der Wall et ano. v. Illumina, Inc., et al.*, No. 3:18-cv-2307. Upon joint motion of the parties, the Court granted a stay in the *Van Der Wall* action pending the resolution of the class certification motion. *Id.* at Doc. 26.

On December 14, 2018, the parties filed a joint request to extend scheduling order deadlines in order to provide the parties more time to complete discovery and participate in private mediation. Doc. 83. The Court granted the joint motion on December 18, 2018. Doc. 84. On January 8, 2019, the Court denied Natissisa's motion to amend without prejudice. Doc. 85. Around January 30, 2019, the parties scheduled a mediation for April 18, 2019. Doc. 95-1 at 11. The parties participated in mediation on April 18, 2019 and tentatively agreed to a settlement after a full day of negotiations. *Id.* at 11-12. On April 25, 2019, the Court granted the parties' joint motion to stay resolution of the class certification motion due to the settlement. Doc. 93. On May 29, 2019, the Court granted the joint motion to hold the Court's ruling on class certification in abeyance in order to (1) allow the parties to finalize necessary settlement paperwork and (2) allow Plaintiff to file a motion for preliminary approval of the settlement. *See* Doc. 94. On December 18, 2019, the Court conditionally granted Plaintiffs' unopposed motion for preliminary approval of class settlement and issued a briefing schedule for filing Motion for Class Representative

Service Awards, Fee and Expense Application, and Final Approval of Class Action Settlement.

Plaintiffs filed the Motion for Final Approval of the Settlement and Motion for Attorney's Fees on March 2, 2020. Doc. No. 105. On May 29, 2020, Plaintiffs filed the Joint Motion for Judgment. Doc. No. 111. Plaintiffstatos filed the Motion for Disbursement of Funds on November 3, 2020. Doc. No. 112.

## II.  Settlement Agreement

The Court incorporates by reference the Settlement Agreement as outlined in the Conditional Preliminary Approval Order with the following changes:

The Parties modified the settlement terms, as ordered by the Court, to identify the *cy pres* recipient. The Agreement calls for any portion of the Net Settlement Fund remaining following distribution, granted the amount limits the effectiveness of a redistribution to the Settlement Class, to be donated to Investor Protection Trust, a 501(c)(3) organization located in Washington D.C. that serves to educate investors in the United States.  Doc. 103 at 2.

The Notice Program was modified in accordance with the instructions provided in the Court's Conditional Preliminary Approval Order and is approved in all respects;

The Parties modified the definition of "Escrow Account" in the Stipulation of Settlement pursuant to the Court's instructions.

The Parties have agreed to amend the definitions of "Effective Date" and "Preliminary Approval Order" set forth in the Stipulation of Settlement to refer to the Conditional Preliminary Approval Order entered by this Court.

## III.  Settlement Class Certification

The Court evaluated the class certification requirements solely for purposes of the Settlement in its Order Granting Preliminary Approval of Class Action Settlement, conditionally certifying the Settlement Class under Rule 23(b)(3).  Ord. Granting Prelim. Approval, Doc. No. 102 at 19. There have been no additional facts raised since that time, therefore, the Court incorporates by reference the determination of Rule 23(b)(3) class

certification from the prior Order, and approves the Settlement Class solely for purposes of the Settlement.

//

//

## IV. Discussion

A class action settlement must be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). When, as here, parties reach an agreement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

In determining whether a class action settlement is fair, adequate, and reasonable, the Court considers whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>   (i) The costs, risks, and delay of trial and appeal;
>   (ii) The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   (iii) The terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv) Any agreement required to be identified under Rule 23(e)(3); and
> (D) The proposal treats class members equitably relative to each other.

Fed. R. Civ. Proc. 23(e)(2). Subsection (e)(2) was added to Rule 23 as a part of the 2018 amendments. Fed. R. Civ. Proc. 23, Advisory Comm. Notes. Prior to the amendments, the analysis was guided by the *Churchill* factors;

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the

5

3:16-cv-3044-L-MSB

> extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members of the proposed settlement

*In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 941 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen.Elec.*, 361 F.3d 566, 577 (9th Cir. 2004); other citation omitted). The goal of the 2018 amendment "was not to displace any factor, but rather to focus . . . on the core concerns . . . that should guide the decision whether to approve the propos[ed settlement]." Fed. R. Civ. Proc. 23, Advisory Comm. Notes. Several of the *Churchill* factors were incorporated into Rule 23(e)(2) as amended.

On balance, the Court finds that the relevant factors support a finding that the proposed Settlement is fair, adequate, and reasonable.

### A. Class Representatives and Class Counsel Have Adequately Represented the Class

The named Plaintiffs and Class Counsel have demonstrated their ability to vigorously prosecute this action on behalf of the class through significant motion practice and discovery efforts. These efforts included defeating a comprehensive motion to dismiss and briefing motions for leave to amend and class certification. Named Plaintiffs have also actively participated in the case by submitting numerous documents, and in the case of Plaintiff Agoshkov, traveling from Moscow, Russia to New York City to participate in a day long deposition. Plaintiffs have been committed to prosecuting this case and reaching a resolution in the best interests of the Settlement Class.

### B. Proposal was Negotiated at Arm's Length

Plaintiffs and the Settlement Class, by and through their counsel, have sufficiently investigated the facts and law relating to the matters alleged in the Amended Complaint, including through discovery and motion practice, legal research as to the sufficiency of the claims, an evaluation of the risks associated with continued litigation, trial, and/or appeal. The parties here engaged in formal mediation before an experienced mediator for a full day, after completing discovery. Following a full day of negotiation, the parties tentatively

6

3:16-cv-3044-L-MSB

agreed to a settlement with the mediator's assistance. As such, the Court finds that this settlement was the product of arm's-length negotiation.

### C. Supplemental Agreement under Rule 23(e)(3);

In a Supplemental Agreement, separate from the parties' stipulation, the parties gave Illumina the right to terminate the Settlement if the "Opt-Out Threshold" is exceeded. Docs. 95-1 at 20-21, 95-2 at 11. Although the Parties did not submit the Supplemental Agreement for review, the Court finds the content of the Supplemental Agreement as described in the Motion to be adequate and reasonable under the circumstances. *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, *7 (N.D. Cal. 2018); *see also Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 329 (C.D. Cal. 2016) (compiling cases). Therefore, the Rule 23(e)(3) agreement does not weigh against approval

### D. Relief Provided for the Class is Adequate.

(i) The costs, risks, and delay of trial and appeal

Plaintiffs recognize that settlement prevails over the substantial risks of continued litigation. Doc. 95-1 at 17-18. Whether the alleged misrepresentation in this case was "forward-looking" and thus protected under the safe harbor provision of the Securities Exchange Act of 1934 is a critical risk to Plaintiffs' case. Defendants would likely challenge this issue by introducing evidence that could prove dispositive at summary judgment. Another issue that Defendants would challenge in continued litigation is Plaintiffs' ability to prove damages. Either issue would be appealed by the non-prevailing party; therefore, considerable expenditure and delay of any recovery by Settlement Class members, assuming Plaintiffs succeeded, would arise in further litigation. Moreover, continued litigation could prove to be difficult, expensive, time consuming, and possibly fruitless as a motion for class certification was contested and pending prior to settlement. The Court concludes that the strength of Plaintiffs' case, risk, expense, complexity, and risk of maintaining class status throughout trial factors weighs in favor of approving settlement.

(ii) <u>Effectiveness of Proposed Method of Distributing Relief</u>

The Court considers "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(C)(ii). Assessment of a plan of allocation of settlement proceeds in a class action under Fed. R. Civ. P. 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair, reasonable, and adequate. *Seattle*, 955 F.2d at 1284; *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1045 (N.D. Cal. 2008).

Here, a Settlement Class member must complete and sign the Proof of Claim and Release Form to recover from the Settlement Fund. Doc. 95-2 at 82. A Recognized Loss will be assigned to each Settlement Class member that submits a valid claim (an "Authorized Claimant"). See Doc. 95-2 at 70. An Authorized Claimant's Recognized Loss will depend upon the number of Illumina shares purchased or acquired during the Class Period and held at the close of trading on October 10, 2016. *Ibid*. The Plan of Allocation as set forth in the long-form Notice of Proposed Settlement reads as follows:

> For each share of Common Stock purchased, an Authorized Claimant's Recognized Loss is equal to:
>
> • If the share was purchased during the Class Period and held through January 9, 2017, then the Recognized Loss is equal to the price paid for the share minus $134.01 (which is the mean trading price of Illumina's Common Stock during the 90-day period following the Class Period);
>
> • If the share was purchased during the Class Period and sold between October 11, 2016 and January 9, 2017, then the Recognized Loss is equal to the price paid for the share minus the greater of (i) $134.01 or (ii) the price at which you sold the share.
>
> • If the share was purchased during the Class Period and sold on or before October 10, 2016, then the Recognized Loss is $0. This is because the share was not harmed in accordance with Plaintiffs' theory of liability and, therefore, there are no recoverable damages.

See Doc. 95-2 at 70.

The Plan of Allocation outlined above correlates each Settlement Class members' recovery to the timing of any sales or purchases of Illumina common stock to calculate each Settlement Class member's Recognized Loss. See Doc. 95-2 at 71. "After the deadline for all Authorized Claimants to send in their Proof of Claim forms, the payment [each Settlement Class member gets] will be a proportion of the Net Settlement Fund equal to [each Settlement Member's] Recognized Loss divided by the total of each Authorized Claimant's Recognized Losses." *Ibid*. The Court finds that "[i]t is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *In re Omnivision Techs., Inc*., 559 F.Supp.2d at 1045 (N.D. Cal. 2008). The Court also finds that the Settlement treats absent class members equitably relative to each other.

The Plan of Allocation here is fair, reasonable, and adequate as it reflects the best estimate of damages, crediting all Class members with the best possible result they could have achieved. Lending support to this conclusion is the fact that no objections to the Settlement have been received, and only two exclusions have been submitted.

        *(iii)*   *Exclusions*

To be excluded, the Notice stated that Settlement Class members must send a letter, by mail, to Lead Counsel's office indicating the member's desire to be excluded from *In re Illumina Inc. Securities Litigation*, No. 3:16-cv-3044-L-MSB. Doc. 95-2 at 75. In the letter, a Settlement Class member must provide their name, address, telephone number, signature, the number of Illumina shares they purchased or otherwise acquired during the Class Period, and the dates of such purchases or acquisitions. *Ibid*.

The Parties do not object to the exclusion submitted by Robert Fisher, which complied with the Settlement's directive by providing information on the 32 shares of Illumina stock he purchased during the Class Period. Supp. Dec. Ewashko Doc. No. 108-1.

However, the Parties object to the request for exclusion submitted on behalf of deceased class member, Jack Reilly. The Patrick Reilly Trust informed the Claims

Administrator that it did not have information about the number of shares purchased and the dates of these transactions. Resp. Req. Exclusion at 2 Doc. No. 110. Counsel for Defendant Illumina requests that the Court reject this request for exclusion because "[w]ithout knowing the number of shares purchased by a class member who seeks to opt out, Defendants cannot ascertain whether the Opt-Out Threshold has been triggered and whether they have a resulting termination right." *Id*. at 3.

The letter from the Patrick Reilly Trust states that Mr. Reilly passed away "4/4/2018 and it is unknown dates of purchases and acquisitions. The trust is closed. Please exclude him from this settlement class." Supp. Dec. Ewashko Ex. A Doc. No. 108-1. It is unclear from the record whether Mr. Reilly was a member of the class, or how many shares (if any) he purchased during the Class Period." Resp. Req. Exclusion at 3 Doc. No. 110. .

However, Illumina's right to terminate the Settlement Agreement arises only when the number of *Class Members* agreed upon is exceeded. The Supplemental Agreement "provides Illumina with the right to terminate the Settlement if a *certain number of Class Members* exceeds a threshold." Mot. for Order on Preliminary Approval. 95-1 at 21(emphasis added). The Opt Out provision addresses the number of Class Members, not the number of shares a class member holds. Defendants object to the exclusion based on the unknown number of shares Patrick Reilly purchased. This is not the salient inquiry for purposes of the Opt Out provision here. Instead, the Court looks to the number of Class Members, and notes that if the Patrick Reilly Trust, as a representative for one potential class member, is excluded from the Settlement, the Class Member pool remains the same because the Trust does not have the required information to submit a claim. In addition, the Patrick Reilly Trust is now closed, indicating all financial matters have been resolved. Because the time for claims has passed, any potential risk to Defendant Illumina if Patrick Reilly is excluded from the Settlement Class is negligible, if it exists. For the foregoing reasons, the Court grants the request for exclusions by Robert Fisher and the Patrick Reilly Trust, on behalf of Patrick Reilly.

//

(iv) <u>Attorney's Fees</u>

Under the Agreement, the Parties agreed that Class Counsel could apply for an award from the Settlement not to exceed 25% ($3,462,500) of the Settlement Value. Class Counsel has now requested $2,125,332.25 in fees. Class Counsel was also entitled to request reimbursement of out-of-pocket litigation expenses up to $180,000, that were advanced in connection with the Consolidated Action. Class Counsel have now applied $169,727.62 in costs and expenses. The requested fees and expenses are within the range approved by this Court in its Preliminary Approval of Class Settlement, and are therefore presumptively reasonable.

In order to determine the fairness and adequacy of a settlement, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton*, 327 F.3d at 963. "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941 (citations omitted). In a common fund case, district courts may use either the percentage-of-the-fund method or the lodestar method to calculate an appropriate attorneys' fee award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).; *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994). When applying the percentage-of-the-fund method, an attorneys' fee award of "twenty-five percent is the 'benchmark' that district courts should award." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

Even when courts employ the percentage of recovery method, a lodestar crosscheck on the reasonableness of the fee is often performed. *Vizcaino*, 290 F.3d at 1047. Any class member must be allowed an opportunity to object to the fee motion itself, aside from any objection the class member may have to the preliminary notice that such a motion will be filed. *See In re Mercury Interactive Corp. Sec. Litig.* 618 F.3d 988, 993-95 (9th Cir. 2010).

In the Ninth Circuit, courts generally consider the following factors when reviewing a proposed fee: 1) the results achieved; 2) awards made in similar cases; 3) the risk of litigation; 4) the skill required and the quality of the work; 5) the contingent nature of the fee and the financial burden carried by the plaintiffs; 6) the reaction of the class to the proposed fee and expense request; 7) whether the percentage appears reasonable in light of a lodestar cross-check. *Vizcaino*, 290 F.3d at 1048-50.

In their Application for Fees and Costs, Class Counsel request $2,125,332.25 in fees. Counsel's request is approximately 25% of the settlement fund, which is an established benchmark for awarding class action fees, making it consistent with fee awards granted in similar actions. *Six Mexican Workers*, 904 F.2d at 1311; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

Plaintiffs' counsel achieved a settlement of $13,850,000, which is approximately 4.5% of the total recoverable damages of $300 million, as estimated by Plaintiffs' expert. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Service Com'n,* 688 F.2d 615, 628 (9th Cir. 1982).

Plaintiffs' Counsel undertook the representation of Plaintiffs on a wholly contingent basis, received no compensation during the pendency of this action, and yet incurred significant expenses for the benefit of the Class, totaling over $160,000. Counsel bore the risks of litigation which included a strong possibility that the action would be dismissed at the pleading stage due to the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). *See generally In re Impac Mortg. Holdings, Inc*. 554 F.Supp. 2d 1083, 1089 (S.D. Cal. May 19, 2008). It was also possible that the case could be dismissed because, among other factors, the alleged misrepresentation was "forward looking" and therefore arguably subject to the safe harbor provision of the Securities Exchange Act of 1934. Counsel also faced difficulties in calculating damages because the price of Illumina's stock varied during the course of the Class Period which made it

difficult to ascertain the actual damage caused by the alleged fraud. Apton Dec. ¶¶ 22, 23. The litigation risks faced by Counsel warrant approval of the requested fee.

Plaintiffs' Counsel is experienced with securities class actions, as demonstrated by the recovery obtained and reflected in the firm's profile and biographies. Mot. Ex. A Doc. No. 105-3. Plaintiffs' Counsel defeated a motion to dismiss. Plaintiff's Counsel further managed the complexity of the litigation, which was increased due to Natissia's bankruptcy filing during pendency of the case.

Finally, a lodestar cross-check demonstrates that the requested fee is reasonable. Plaintiffs' lodestar of $2,125,332.25 reflects 3,936.20 hours of billable time. This includes hourly rates charged by Lead Counsel of $850 to $1025 for partners, and $350 to $650 for associates. Lead Counsel sufficiently supported their attorneys' fee request with declarations of counsel summarizing the tasks and time devoted to the prosecution of this case. The Court has reviewed the attorneys' hourly rates along with the hours worked, and finds them reasonable in light of the procedural background of this action and the favorable Class Settlement.

The Agreement demands that Lead Counsel be paid any amounts awarded in the Court's later attorneys' fees order from the Escrow Account within three (3) days of that order's filing, notwithstanding any appeal or collateral attack. Doc. 95-2 at 28. The Agreement also obligates Lead Counsel to refund any "attorneys' fees and Litigation Expenses that have been paid, plus interest thereon at the same rate as would have been earned had those sums remained in the Escrow Account[,]" to the extent the attorneys' fess order is later reversed or modified. The Court finds this timing is reasonable as it compensates Lead Counsel for its unpaid efforts as soon as practicable without forfeiting protection of the Settlement Fund's principal held in the Escrow Account.

The Court therefore, approves the fee request of $2,125,332.25 in attorneys' fees.

(v)  Costs

Lead Counsel seeks $169,727.62 in costs and litigation expenses. In addition to fees for experts, travel, meals, computer research, and filings, Counsel seeks $2,000 for travel

to the Final Approval Hearing. Supp. Dec. Apton Doc. No. 105-2 at 6. The Court decided the motion for final approval without conducting a hearing per Civil Local Rule 7.1.d.1., therefore, the request for $2,000 for travel expenses to the Final Approval Hearing is denied as moot. Upon review of itemized lists, the Court finds the request reasonable, with the exclusion of the $2,000 for travel to the Final Approval Hearing, and approves costs for a total amount of $167,727.62.

  (vi) <u>Plaintiff Incentive Awards</u>

  Lead Counsel requests the Court award Plaintiffs' incentive awards to Anton Agoshkov in the amount of $25,000; Braden Van Der Wall in the amount of $1,000; and Steven Romanoff in the amount of $1,000. Mot. Atty's Fees Doc. 106-1 at 9. Incentive awards such as this "are discretionary and are intended to compensate class representatives for work done on behalf of the class, [and] to make up for financial or reputational risk undertaken in bringing the action . . ." *Rodriquez v. West Publ'g Corp*., 563 F.3d 948, 958-59 (9th Cir. 2009)(internal citations omitted). The amount of the award should be related to the actual service or value the class representative provides to the class. *See id*. at 960. While incentive awards are "fairly typical in class actions," *id*. at 958, they "should not become routine practice," lest the representatives be "tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Radcliffe v. Experian Information Solutions* Inc., 715 F.3d 1157, 1163 (9th Cir. 2013)(internal quotation marks and citations omitted).

  Here, Mr. Agoshkov submitted a declaration in which he stated he spent approximately 70 hours of time assisting in the case, including conferring with counsel concerning issues and strategy, reviewing court filings, traveling from Moscow, Russia to New York City for a full-day deposition, and evaluating the settlement with counsel. Agoshkov Dec. ¶2 105-7. In light of the considerable time and expense spent by Mr. Agoshkov assisting with this case, an award of $25,000 is reasonable.

  Mr. Romanoff and Mr. Van Der Wall also submitted declarations in which each individual noted that he consulted with counsel about the issues and strategy of the case,

reviewed court filings, and collected documents relevant to the claims. Romanoff Dec. ¶2 Doc. No. 105-8; Van Der Wall Dec. ¶2 105-9. Mr. Romanoff and Mr. Van Der Wall's recommended award of $1,000 each is reasonable with respect to the time and efforts each individual devoted to the case.

For the foregoing reasons, the Court grants the application for incentive awards to the extent of $25,000 to Plaintiff Agoshkov, and $1,000 each to Plaintiffs Romanoff and Van Der Wall.

Taking into account all the foregoing factors, the Court finds the proposed settlement adequate under Rule 23.

## IV.  CONCLUSION

For the reasons stated above, the Court hereby orders as follows:

1. Plaintiffs' motion for final approval of class action Settlement is GRANTED, Doc. No. 105;
2. Plaintiff's Motion for Disbursement of Funds is GRANTED as outlined above;
3. Plaintiffs' request for $2,125,332.25 in attorneys' fees is GRANTED, Doc. No. 106;
4. Plaintiff's request for expenses is GRANTED IN PART AND DENIED IN PART, as noted above in the amount of $167,727.62, Doc. No. 6;
5. Plaintiffs' request for incentive awards is GRANTED as follows:
    a. $25,000 for Anton Agoshkov;
    b. $1,000 for Braden Van Der Wall; and
    c. $1,000 for Steven Romanoff;

The Court further orders as follows:

1. The Complaint (Doc. No. 1) is dismissed with prejudice.
2. Upon the Effective Date as defined in the Settlement Agreement, this Judgment will permanently bar, extinguish, and discharge any and all claims, actions, suits, causes of action, or demands by any person against the Released Parties, whether for contribution or indemnification or however styled, where the alleged injury

consists of or arises from liability to the Settlement Class or any Settlement Class Member for a claim arising out of or related to the allegations in the Consolidated Action.

3. The class members who requested exclusion, Robert Fisher and Patrick Reilly, are not bound by this Settlement Agreement or Judgment of the Court.

4. Provided it is economically feasible, should any funds remain after the initial distribution of the class member awards, the parties shall do a second distribution to Settlement Class Members who received their class member awards. Should residual funds remain following a second distribution, or in the event a second distribution is not economically feasible, the Parties shall distribute the remaining funds, if any, to *cy pres* recipient, Investor Protection Trust, a 501(c)(3) organization located in Washington D.C.

5. The Court retains jurisdiction over implementation and enforcement of the Agreement.

6. The Court finds that no just reason exists for delay in entering Final Judgment and, accordingly, the Clerk is hereby directed to enter Final Judgment forthwith. Doc. No. 111.

Dated: March 17, 2021

Hon. M. James Lorenz
United States District Judge